RECEIVED

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA  JUN 15 P 3: 43

|  |  |
|---|---|
| **BLUECROSS AND BLUESHIELD OF ALABAMA; and BLUECROSS AND BLUESHIELD OF MICHIGAN,** | ⌐ ⌐ R. HACKETT C⌐ ⌐<br>⌐ ⌐STRICT CC⌐⌐<br>⌐⌐⌐LE DISTRICT ALA |
| Plaintiffs, | Civil Action No. 2 : 06cv 536 - DRB |
| v. |  |
| **TAP PHARMACEUTICAL PRODUCTS INC.; ABBOTT LABORATORIES; TAKEDA PHARMACEUTICAL COMPANY LIMITED; TAKEDA AMERICA HOLDINGS, INC.; ONCOLOGY SUPPLY COMPANY; AMERISOURCEBERGEN SPECIALTY GROUP; AMERISOURCEBERGEN CORPORATION; and FICTITIOUS DEFENDANTS,** | **Notice of Removal**<br><br>(Diversity and Federal Question) |
| Defendants. |  |

## NOTICE OF REMOVAL

Pursuant to 28 U.S.C. § 1441 et seq., defendants hereby notice removal of this civil

action from the Circuit Court of Montgomery, Alabama, to the United States District Court for

the Middle District of Alabama.  This Court has removal jurisdiction because this is a civil action

"of which the district courts have original jurisdiction" by virtue of the fact that there is complete

diversity between the parties and the amount in controversy is in excess of $75,000.  *See* 28

U.S.C. § 1441(a); 28 U.S.C. § 1332.  Additionally and alternatively, this Court has removal

jurisdiction because this is a civil action "founded on a claim or right arising under … the laws of

the United States."  *See* 28 U.S.C. § 1441(b); 28 U.S.C. § 1331.

In further support of this Notice, defendants state:

1.    On or about May 12, 2006, plaintiffs BlueCross and BlueShield of Alabama ("BCBS Alabama") and BlueCross and BlueShield of Michigan ("BCBS Michigan") filed the civil action captioned *BlueCross and BlueShield of Alabama and BlueCross and BlueShield of Michigan v. TAP Pharmaceutical Products Inc., et al.*, CV 2006-1350 in the Circuit Court of Montgomery, Alabama (the "Complaint"). On or about May 16, 2006, BCBS filed an amended complaint in the above captioned case, again in the Circuit Court of Montgomery, Alabama (the "Amended Complaint").

2.    Defendants were first served by receiving summons and a copy of the Complaint by certified mail between May 24 and May 31, 2006. Specifically, defendant TAP Pharmaceutical Products Inc. was served with summons and the Complaint on May 30, 2006. Defendant Abbott Laboratories, was served with summons and the Complaint on May 30, 2006. Defendant Takeda America Holdings, Inc. was served with summons and the Complaint on May 30, 2006. Defendant Takeda Pharmaceutical Company Limited ("Takeda"), was purportedly served with summons and the Complaint on May 30, 2006.[1] Defendant AmerisourceBergen Corporation was served with the summons and the Complaint on May 31, 2006. Defendant Oncology Supply was purportedly served with summons and the Complaint on May 24, 2006.[2]

---

[1] Plaintiffs attempted to serve Takeda, a Japanese corporation, by delivering a copy of the summons and complaint to non-party Takeda Pharmaceuticals North America, Inc. This attempt to serve Takeda was not proper or effective, as Takeda will demonstrate at the appropriate time.

[2] Plaintiff attempted to serve Oncology Supply by certified mail at a business address in Dothan, Alabama. Oncology Supply is a trade name of ASD Specialty Healthcare, Inc., a California corporation with its principal place of business in Texas. This attempt to serve Oncology Supply was not proper or effective, as will be demonstrated at the appropriate time.

Defendant AmerisourceBergen Specialty Group was purportedly served with summons and the

Complaint on May 26, 2006.[3]

     3.     Pursuant to 28 U.S.C. § 1446(a) and Local Rule 81.1, attached hereto as Exhibit 1

is a true and correct copy of all proceedings from the state court.

     4.     Pursuant to 28 U.S.C. § 1446(d), defendants will file a copy of this Notice of

Removal with the Clerk of the Circuit Court of Montgomery, Alabama and serve plaintiffs and

all other parties with this Notice of Removal promptly after the filing of this Notice.

## I. REMOVAL BASED ON DIVERSITY

     5.     Federal district courts have original jurisdiction over cases where complete

diversity exists and the amount in controversy exceeds $75,000. *See* 28 U.S.C. § 1332. Where

those conditions are met, defendants have a statutory right to remove actions from state to federal

court. *See* 28 U.S.C. § 1441.

     6.     Complete diversity requires that no defendant in a diversity action be a citizen of

the same state as any plaintiff. *See* 28 U.S.C. § 1332. For diversity purposes, a corporation is

deemed a citizen of the state of its incorporation and the state where it has its principal place of

business. *See* 28 U.S.C. § 1332(c); *MacGinnitie v. Hobbs Group LLC,* 420 F.3d 1234, 1239

(11th Cir. 2005). Citizenship for diversity purposes is determined at the time the suit is filed. *Id.*

     7.     Here, none of the defendants are citizens of the same state as any of the plaintiffs.

Further, plaintiffs' Complaint alleges damages far in excess of $75,000. *See* Compl. ¶¶ 28-29

("plaintiffs have not been compensated for their losses, which are in the tens of millions of

dollars"). Finally, none of the defendants is a citizen of the state of Alabama. Therefore, this

---

     [3] Plaintiffs attempted to serve AmerisourceBergen Specialty Group at a business address in
Addison, Texas. AmerisourceBergen Specialty Group is a trade name of ASD Specialty Healthcare,
Inc., a California corporation with its principal place of business in Texas. This attempt to serve
AmerisourceBergen Specialty Group was not proper or effective, as will be demonstrated at the
appropriate time.

Court has subject matter jurisdiction under 28 U.S.C. § 1332 and removal is proper under 28 U.S.C. § 1441(a).

A.    **The Citizenship of the Parties**

8.    According to the allegations of the Complaint, plaintiff BCBS Alabama is an Alabama corporation with its principal place of business in Birmingham, Alabama and is thereby a citizen of the state of Alabama. *See* Compl. ¶ 30.

9.    According to the allegations of the Complaint, plaintiff BCBS Michigan is a Michigan corporation with its principal place of business in Detroit, Michigan and is thereby a citizen of the state of Michigan. *See* Compl. ¶ 33.

10.    Defendant TAP Pharmaceutical Products Inc. is a Delaware corporation with its principal place of business in Lake Forest, Illinois and is thereby a citizen of the states of Delaware and Illinois. *See* Declaration of George C. Kokkines attached as Ex. 2.[4]

11.    Defendant Abbott Laboratories, is an Illinois corporation with its principal place of business in Abbott Park, Illinois and is thereby a citizen of the state of Illinois. *See* Declaration of Ellen Klaus attached as Ex. 3.

12.    Defendant Takeda is a Japanese corporation with its principal place of business in Osaka, Japan and is thereby a citizen of Japan. *See* Compl. ¶ 38.

13.    Defendant Takeda America Holdings, Inc. is a New York corporation with its principal place of business in New York, New York and is thereby a citizen of the state of New York. *See* Compl. ¶ 41.

---

[4] A court determining the citizenship of the parties for purposes of determining removability may look at evidence presented beyond the allegations of the Complaint. *See TKI Inc. v. Nichols Research Corp.*, 191 F.Supp.2d 1307 (M.D. Ala. 2002) (in determining citizenship of one of the named defendants for purposes of removability, court examined affidavits and documents submitted by the parties).

14.    Defendant AmerisourceBergen Corporation is a Delaware corporation with its principal place of business in Pennsylvania and is a citizen of the states of Delaware and Pennsylvania. *See* Affidavit of Diane Kammerer attached as Ex. 4.

15.    Defendant AmerisourceBergen Specialty Group is a d/b/a or trade name of ASD Specialty HealthCare, Inc., which is a California corporation with its principal place of business in Texas. *See* Affidavit of Diane Kammerer attached as Ex. 4.

16.    The Complaint alleges that defendant, Oncology Supply, is a wholly owned subsidiary of defendant, AmerisourceBergen Corporation. *See* Compl. ¶ 3. The Amended Complaint alleges that Oncology Supply Company is a "member company" of AmerisourceBergen Corporation, and further alleges that Oncology Supply Company's principal place of business is in Alabama. *See* Amended Compl. ¶¶ 3, 43. Oncology Supply (mis-identified as Oncology Supply Company in the First Amended Complaint) is the only identified defendant in either version of the Complaint alleged to be a citizen of the state of Alabama.

17.    Plaintiffs' allegations as to Oncology Supply's citizenship are inaccurate. Defendant Oncology Supply is a d/b/a or trade name of ASD Specialty HealthCare, Inc., a California corporation with its principal place of business in Texas. *See* Affidavit of Diane Kammerer attached as Ex. 4.

18.    Because Oncology Supply is a trade name of a corporation diverse from all plaintiffs, its presence does not destroy diversity. *See Brizendine v. Continental Casualty Co.,* 773 F. Supp. 313 (N.D. Ala. 1991).

19.    Finally, the Complaint names a number of "Fictitious Defendants A-ZZZ" identified only as "doctor defendants and medical providers located throughout the state of Alabama." *See* Compl. ¶ 44. Under the removal statute, "for purposes of removal under this

chapter, the citizenship of defendants sued under fictitious names shall be disregarded." *See* 28 U.S.C. §1441(a).

20.    Thus, because none of the defendants is a citizen of the same state as any of the plaintiffs, none of the defendants is a citizen of the state of Alabama, and plaintiffs seek to recover more than $75,000, complete diversity exists and removal is proper. *See* 28 U.S.C. §1441.

## II. REMOVAL BASED ON FEDERAL QUESTION JURISDICTION

21.    As an alternative ground for removal, this Court has original jurisdiction over this action pursuant to 28 U.S.C. § 1331 because it arises under the laws of the United States. Specifically, federal question jurisdiction exists in this action because plaintiffs' right to relief under their state law claims depends on the resolution of substantial questions of federal Medicare law. *See Franchise Tax Bd. v. Construction Laborers Vacation Trust*, 463 U.S. 1, 9, 28 (1983) (holding that federal question jurisdiction exists whenever "the plaintiff's right to relief necessarily depends on resolution of a substantial question of federal law").

22.    Generally, "[t]he presence or absence of federal-question jurisdiction is governed by the 'well-pleaded complaint rule,' which provides that federal jurisdiction exists only when a federal question is presented on the face of the plaintiff's properly pleaded complaint." *Caterpillar Inc. v. Williams*, 482 U.S. 386, 392 (1987). "[I]t is an independent corollary of the well-pleaded complaint rule," however, that "a plaintiff may not defeat removal by omitting to plead necessary federal questions in a complaint." *Franchise Tax Bd.*, 463 U.S. at 22. Thus, regardless of whether a plaintiffs' complaint on its face asserts only state causes of action, removal is proper where the lawsuit implicates a substantial federal question. *See e.g. Shaner v. Fleet Bank*, 132 F. Supp. 2d 953, 956 (M.D. Ala. 2001) (in assessing whether removal is proper, court "is to determine whether even if the plaintiff has couched the complaint in terms of state

law, the real nature of the claim is federal").  Federal question jurisdiction applies to those "cases where, even though the cause of action is not created by federal law, the case's resolution depends on resolution of a federal question sufficiently substantial to arise under federal law within the meaning of 28 U.S.C. § 1331." *Ormet Corp. v. Ohio Power Co.*, 98 F.3d 799, 806 (4th Cir. 1996).

      23.    Here, the Complaint alleges that the defendant drug manufacturers caused plaintiffs to overpay for defendants' products, by reporting inflated average wholesale prices ("AWP"), which has "historically been used as the basis for Medicare reimbursement for prescription drugs." *See* Compl. ¶¶ 10-12, 20, 64.  Plaintiffs allege that for their beneficiaries who were qualified to receive federal Medicare benefits, plaintiffs paid, among other things, portions of the 20% co-payment that was due from those beneficiaries under the federal Medicare Part B program, which plaintiffs allege was until recently based on AWP. *See* Compl. ¶¶ 66-69.[5]  Plaintiffs also allege that they "used AWP as an industry standard benchmark to determine the amount of reimbursement respecting other programs administered by plaintiffs under which they provided coverage to patients throughout Alabama and elsewhere." *See* Compl. ¶ 76.  The Complaint further alleges that the "Medicare program has publicly announced that it would use the AWP published in pharmaceutical publications" as the basis for reimbursement and that those publications "simply published the prices that were supplied by the Manufacturer Defendants." *See* Compl. ¶¶ 70-71.  Plaintiffs allege that they were injured by paying a higher 20% co-payment under federal Medicare Part B than they would have paid absent defendants' alleged inflation of the AWP. *See* Compl. ¶¶ 10, 155.  Plaintiffs seek to recover the amounts they allegedly overpaid. *See* Compl. ¶¶ 28, 29, 154, 159, 162, 190.

---

[5] The Complaint alleges that Lupron®, the only drug at issue in this case, by virtue of the fact that it is an injectable drug, is one of a limited number of drugs reimbursed under the federal Medicare Part B system. *See* Complaint ¶ 62.

24.     Plaintiffs' Complaint makes quite plain that its state law claims necessarily depend on an interpretation of the federal law, and specifically, the interpretation of "AWP" as used by Medicare.   The heart of plaintiffs' allegations is that there are significant discrepancies between what the "Manufacturer Defendants" reported to the pharmaceutical publications and the prices charged to the "Doctor Defendants" (the so called "spread").  *See* Compl. ¶ 73. Plaintiffs allege that they "reasonably relied upon the fact that the government chose AWP as a benchmark for reimbursement of Medicare Part B drugs" when the plaintiffs decided to rely on AWP as a benchmark as well.  *See* Compl. ¶ 77.

25.     Obviously, the determination of the proper measure of "AWP" is a question arising under federal law.  Indeed, Judge Patty Saris of the United States District Court for the District of Massachusetts has already held that a plaintiff in an AWP action cannot recover on its state law claims relating to the federal Medicare Part B co-payments unless it proves its fundamental assertion that AWP was inflated as the term "AWP" has been interpreted under the federal Medicare reimbursement statute and regulations.  *See State of Montana v. Abbott Laboratories, Inc.*, 266 F. Supp. 2d 250, 255-56 (D. Mass. 2003).  Specifically, in deciding a removal matter that raised this specific issue, Judge Saris held that the defendant "readily wins this dispute" because an "essential element of the plaintiffs claim is proof of a discrepancy between the published AWP and the meaning of AWP under the Medicare statute." *Id.* at 255. Judge Saris went on to observe that "the adjudication of whether the term 'average wholesale price' in the Medicare statute embraces a "spread" could have broad implications for Medicare reimbursements and co-payments." *Id.*[6] Here, plaintiffs specifically claim that they reimbursed

---

[6] Judge Saris ultimately remanded the case based on a belief that federal jurisdiction did not exist unless the federal statute at issue provided a private right of action. *See State of Montana*, 266 F. Supp. 2d at 256.  That belief was mistaken, as the Supreme Court subsequently made clear. *See Grable & Sons Metal Prods. Inc. v. Darue Engineering & Manufacturing*, 545 U.S. 308, ___, 125 S.

beneficiaries for Medicare 20% co-payments based on inflated AWP's. Compl. ¶ 11. These

claims are based directly on the theory that the amounts billed to Medicare were inflated. *See*

Compl. ¶¶ 10, 155. This determination cannot be made without determining what amount should

have been billed to Medicare under the laws and regulations governing Medicare reimbursement

26.    According to plaintiffs' own claims, the amount of their alleged injury for their

Medicare co-payment claims would be 20% of the difference between the amount Medicare

actually reimbursed for Lupron® prescribed to their beneficiaries, subscribers and insureds and

the amount that Medicare would have reimbursed for that Lupron® but for defendants' alleged

conduct. To decide what the Medicare reimbursement rates for Lupron® would have been absent

defendants' alleged conduct, the Court will be required to evaluate in detail the Medicare Act

and regulations, as well as the reimbursement rate-setting decisions made by Congress and the

Health Care Financing Administration ("HCFA") (now called the Centers for Medicare and

Medicaid Services ("CMS")). Plaintiffs' Medicare co-payment claims contest Congress's

decision that Medicare should reimburse for Lupron® based on the drug's AWP, a term that

Congress and the HCFA chose to leave undefined. *See* Medicare, Medicaid and SCHIP Benefits

Improvement and Protection Act of 2000, Pub. L. No. 106-554, 14 Stat. 2763. Plaintiffs' claims

at their core constitute a challenge to these important policy decisions made by Congress and

federal agencies. All of these questions raise inherently federal -- not state -- law questions.

27.    Therefore, federal question jurisdiction exists over plaintiffs' claims, as alleged in

their Complaint, regarding their payments for Lupron® provided to their beneficiaries under the

federal Medicare Part B program. These claims raise a substantial federal question in that they

_____

(continued...)

Ct. 2363, 2369-70 (2005) (holding that a federal cause of action is not a prerequisite to federal
question jurisdiction).

require the resolution of issues relating to the federal Medicare program, namely the meaning of "AWP" in the federal Medicare statute and regulations. *See Grable*, 125 S. Ct. at 2368 (2005) (removal jurisdiction exists where the meaning of a federal statute is an essential element of a state law claim).

28.    Last year, a court within this district remanded a case involving AWP related issues that had been removed pursuant to federal question jurisdiction, determining, contrary to the statements of Judge Saris quoted above, that the claims did not "necessarily raise a stated federal issue." *See State of Alabama v. Abbott Laboratories*, 02-CV-647 (M.D.Ala., Aug. 11, 2005). There, the State of Alabama's claims concerned state law questions involving the state Medicaid program's reimbursement for various pharmaceuticals (not including Lupron®). Conversely, plaintiffs in the instant Complaint extensively detail alleged claims based on the reimbursement for Lupron® under the federal Medicare Part B program and plaintiffs' own decision to rely on the federal Medicare reimbursement formula in determining its own reimbursement for its non-Medicare beneficiaries. *See* Compl. ¶¶ 60-75, 76-79. These claims unquestionably require the resolution of issues involving the federal Medicare program's reimbursement scheme, and are therefore removable.

29.    Moreover, plaintiffs' unjust enrichment claim (Count I) relies on a purported violation by defendants of the federal Prescription Drug Marketing Act "and other federal and state laws." *See* Compl. ¶ 154.

30.    Because plaintiffs' claims seeking to recover payments made based on the AWP implicate the meaning and application of federal statutes and regulations, as well as challenge congressional and administrative policy decisions, removal is proper under 28 U.S.C. §1441(b).

31.    This Court has supplemental jurisdiction over all of plaintiff's non-federal claims pursuant to 28 U.S.C. § 1367.

### III.    REMOVAL IS TIMELY

32.    Removal is timely because defendants filed their Notice of Removal within thirty days after defendants were served with the summons and Complaint, and less than one year from when plaintiffs first commenced their action in the Alabama state court. *See Murphy Brothers v. Michetti Pipe Stringing Inc.*, 526 U.S. 344 (1999) (thirty day removal period runs from the service of the summons). Defendants were first served (or purported to be served) by receiving summons and a copy of the Complaint by certified mail between May 24 and May 31, 2006. While the Eleventh Circuit has yet to decide when the removal clock begins, regardless of whether the time for removal is calculated based on receipt of process by the first-served defendant or the last-served defendant, this Notice of Removal is timely and proper pursuant to 28 U.S.C. § 1446(b).

### IV.    CONSENT TO REMOVAL

33.    All served defendants consent to and have joined in this Notice of Removal.[7]

34.    No defendant waives any defense to the Complaint, including but not limited to lack of service, improper service, or lack of personal jurisdiction.

WHEREFORE, Defendants notice the removal of this case to the United States District Court for the Middle District of Alabama pursuant to 28 U.S.C. §§ 1331-32 and § 1441 *et seq.*

---

[7] The consent of defendants Oncology Supply and AmerisourceBergen Specialty Group is attached as Exhibit 5.

- 11 -

Dated:  June 16 , 2006

Of counsel:
Daniel E. Reidy
James R. Daly
JONES DAY
77 West Wacker
Chicago, IL  60601-1692
Telephone:  (312) 782-3939
Facsimile:  (312) 782-8585

(*pro hac vice* motions to be filed)

Tabor R. Novak, Jr. (ASB-9503-V72T)
BALL, BALL, MATTHEWS & NOVAK, P.A.
P.O. Box 2148
Montgomery, AL 36102-2148
Telephone:  (334) 387-7680
Facsimile:  (334) 387-3222

**Counsel for Defendant
TAP PHARMACEUTICAL PRODUCTS INC.**

Dated: June 16, 2006

Of counsel:
George C. Lombardi
Erik W. Snapp
WINSTON & STRAWN LLP
35 West Wacker
Chicago, IL 60601
Telephone: (312) 558-5600
Facsimile: (312) 558-5700

(*pro hac vice* motions to be filed)

Robert A. Huffaker (ASB-1868-U79R)
RUSHTON, STAKELY, JOHNSTON &
GARRETT, P.A.
184 Commerce Street
Montgomery, Alabama 36104
Telephone: (334) 206-3100
Facsimile: (334) 481-0814

**Counsel for Defendant
ABBOTT LABORATORIES**

CHI-1538412v2

Dated: June _16_ , 2006

Of counsel:
Thomas P. Sullivan
Robert R. Stauffer
Nada Djordjevic
JENNER & BLOCK LLP
One IBM Plaza
Chicago, IL 60611
Telephone: (312) 222-9350
Facsimile: (312) 840-7305

(*pro hac vice* motions to be filed)

Joseph C. Espy III / ASB-6591-S82J
MELTON, ESPY & WILLIAMS, P.C.
P.O. Drawer 5130 (36103)
301 Adams Avenue
Montgomery, Alabama 36104
Telephone: (334) 263-6621
Facsimile: (334) 263-7252
**jespy@mewlegal.com**

**Counsel for Defendants
TAKEDA PHARMACEUTICAL COMPANY
LIMITED AND TAKEDA AMERICA
HOLDINGS INC.**

Dated:  June 16, 2006

                                      _____

Sandy G. Robinson (ROB15756)
Ian D. Rosenthal (ROSE16905)
CABANISS, JOHNSTON, GARDNER,
DUMAS & O'NEAL LLP
Post Office Box 2906
Mobile, Alabama 36652
Telephone: (251) 415-7308
Facsimile: (251) 415-7350

**Counsel for Defendant**
**AMERISOURCEBERGEN CORPORATION**

CHI-1538412v2