## UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| IN RE LUPRON® MARKETING AND SALES PRACTICES LITIGATION | ) ) ) ) | Master File No. 01-CV-10861 (MDL 1430) |
| THIS DOCUMENT RELATES TO ALL ACTIONS | ) ) ) ) | |

### SETTLEMENT AGREEMENT AND RELEASE

This Settlement Agreement and Release (the "Class Agreement") is submitted pursuant to Rule 23 of the Federal Rules of Civil Procedure. Subject to the approval of the Settlement Court, this Class Agreement is entered into between and among (i) the Class Representatives on behalf of themselves and the Lupron® Purchaser Class (the "Plaintiffs") and (ii) Defendants TAP Pharmaceutical Products Inc. ("TAP"), Abbott Laboratories ("Abbott"), and Takeda Pharmaceutical Company Limited (f/k/a Takeda Chemical Industries, Ltd.) ("Takeda") (collectively the "Defendants"), by and through their respective counsel.

WHEREAS, there is pending in the United States District Court for the District of Massachusetts a consolidated and coordinated proceeding comprised of actions, including the above-captioned actions, in which the Plaintiffs have alleged, *inter alia*, that some or all Defendants have engaged in improper and fraudulent marketing, pricing, and sales of the prescription drug Lupron®.

WHEREAS, Defendants have asserted a number of defenses to the claims by the Plaintiffs;

CHI-1445245

WHEREAS, the Plaintiffs and Defendants agree that this Class Agreement shall not be deemed or construed to be an admission or evidence of any violation of any statute or law or of any liability or wrongdoing by Defendants or of the truth of any of the claims or allegations alleged in any Lupron® Pricing Litigation or a waiver of any defenses thereto;

WHEREAS, Class Settlement Counsel have concluded, after extensive discovery and investigation of the facts and after carefully considering the circumstances of the class action, including the claims asserted in the complaint filed in the class action and the possible legal and factual defenses thereto, that it would be in the best interests of the Plaintiffs to enter into this Class Agreement in order to avoid the uncertainties of litigation and to assure that the benefits reflected herein are obtained for the Plaintiffs; and, further, that Class Settlement Counsel consider the settlement set forth herein to be fair, reasonable and adequate and in the best interests of the Plaintiffs;

WHEREAS, the Lupron® Purchaser Class is comprised of (i) third-party payor ("TPP") purchasers, and (ii) individual consumers ("Consumers"), who paid for all or part of the cost of Lupron® prescribed, provided or administered in the United States during the Class Period;

WHEREAS, a group of health insurance companies and health plans ("Settling Health Plans," "SHPs," or "SHP Group"), who have represented that the SHPs, in the aggregate, provide or administer prescription drug and health benefits to at least seventy percent (70%) of the 197,869,000 covered lives privately insured in the United States (based on U.S. Census data published

December 31, 2003), have executed a separate settlement agreement with Defendants (the "SHP Agreement");

WHEREAS, the settlement between the SHP Group and Defendants requires a coordination of the claims administration process for the Lupron® Purchaser Class and the SHP Group;

WHEREAS, Defendants, through their counsel, Plaintiffs, through Class Settlement Counsel, and the SHP Group, through SHP Group Counsel, after months of vigorous, arms-length negotiations, have conditionally agreed to payment by Defendant TAP of one hundred-fifty million dollars ($150,000,000) to settle the Lupron® MDL Actions and all claims of the Plaintiffs and the SHP Group, of which amount ninety-five million dollars ($95,000,000) will be allocated to the Plaintiffs and fifty-five million dollars ($55,000,000) will be allocated to the SHP Group as provided in this Class Agreement and the SHP Agreement;

WHEREAS, additional class counsel appointed by Class Settlement Counsel engaged in vigorous arms-length negotiations to apportion the ninety-five million dollars ($95,000,000) allocated to the Plaintiffs (the "Class Settlement Fund") between Consumers and TPPs, and reached agreement to apportion forty million dollars ($40,000,000) to Consumer Class Members (the "Consumer Settlement Pool") and fifty-five million dollars ($55,000,000) to TPP Class Members (the "TPP Settlement Pool");

WHEREAS, the Settlement Court has found that Takeda is not subject to personal jurisdiction as to Lupron®-related actions filed in Massachusetts,

Alabama, and Minnesota, and Takeda does not by virtue of this Class

Agreement concede that it had or has minimum contacts with any state

sufficient to subject it to personal jurisdiction in that state;

WHEREAS, Defendants, despite their belief that they have good defenses

to the claims asserted against them in the Lupron® MDL Actions and in other

Lupron® Pricing Litigation, have nevertheless agreed to enter into this Class

Agreement and the SHP Agreement to reduce and avoid further expense,

inconvenience, and the distraction of burdensome and protracted litigation,

and thereby to resolve this controversy;

NOW, THEREFORE, it is agreed by and between the undersigned on

behalf of Defendants and the Plaintiffs that any and all claims made or that

could have been made against Defendants by Plaintiffs in the Lupron® MDL

Actions or any other Lupron® Pricing Litigation be settled, compromised and

dismissed on the merits and with prejudice and, except as hereafter provided,

without costs as to Plaintiffs or Defendants, subject to the approval of the

Settlement Court, on the following terms and conditions:

1.    Lupron® Purchaser Class Definition.  Subject to the Settlement

Court's approval, and the conditions of Paragraphs 23 and 24, the undersigned

agree and consent to the certification of the following settlement class (the

"Lupron® Purchaser Class") in the Lupron® MDL Actions:

> All individual persons or entities who, during the Class Period,
> made Lupron® Purchases.  Excluded from the class are the Settling
> Health Plans; Defendants, their respective present and former,
> direct and indirect, parents, subsidiaries, divisions, partners and
> affiliates; and the United States government, its officers, agents,

agencies and departments, and all other government entities' claims, to the extent that they previously released their claims pursuant to the 2001 Settlement Agreement and Release resolving the matter of *United States of America v. TAP Pharmaceutical Products, Inc.* (D. Mass.) and related litigation.

2.    <u>General Definitions</u>.  As used in this Class Agreement, the following terms shall have the indicated meanings:

(a)    "Class Period" means January 1, 1985 through the end of the Settlement Notice period established by the Settlement Court, which date shall be no earlier than December 31, 2004.

(b)    "Consumer" means any person falling within the definition of the Lupron® Purchaser Class who is a natural person and not a TPP. "Consumer" includes living persons as well as the executors, heirs, administrators, trustees, or other authorized representatives of deceased persons.

(c)    "Consumer Class Members" means Consumers who are not Class Opt-Outs.

(d)    "Consumer Settlement Pool" means forty million dollars ($40,000,000) from the Class Settlement Fund, which amount shall be segregated into an account for Consumer Class Members as described in Paragraph 9, plus all interest or other income that accrues thereon.

(e)    "Net Consumer Settlement Pool" means the balance of the Consumer Settlement Pool after deducting fees, expenses and costs, and is more fully discussed in Paragraph 17.

(f)    "Authorized Consumer Claimant" means a Consumer Class Member who submits a Proof of Claim that is accepted in whole or in part by the Claims Administrator.

(g)    "Court" or "Settlement Court" means the Honorable Richard G. Stearns of the United States District Court for the District of Massachusetts, or if Judge Stearns is not available, another judge from the United States District Court for the District of Massachusetts who will be designated by Judge Stearns or who is appointed, or any subsequent court before which Defendants' Counsel and Class Settlement Counsel agree to settle the claims of the Lupron® Purchaser Class.

(h)    "Class Member" means any person or entity falling within the definition of the Lupron® Purchaser Class other than any Class Opt-Outs.

(i)    "Class Counsel" means all attorneys and law firms that have filed a general appearance on behalf of a putative class of plaintiffs in any of the Lupron® MDL Actions as of November 1, 2004.

(j)    "Class Settlement Counsel" means the law firms of SPECTOR ROSEMAN & KODROFF; COHEN, MILSTEIN, HAUSFELD & TOLL, P.L.L.C.; LIEFF

CABRASER HEIMANN & BERNSTEIN, LLP; FOOTE MEYERS MIELKE & FLOWERS; and HAGENS BERMAN LLP.

(k)    "Class Opt-Out" means any person or entity falling within the definition of the Lupron® Purchaser Class who timely and validly submits a request for exclusion from the Lupron® Purchaser Class in accordance with the procedures set forth in the Settlement Notice. A Class Opt-Out that is a Consumer is also referred to as a "Consumer Opt-Out." A Class Opt-Out that is a TPP is also referred to as a "TPP Opt-Out."

(l)    "Class Representatives" means the named plaintiffs who have asserted claims on behalf of themselves and a putative class in the Lupron® MDL Actions.

(m)    "Claims Administrator" means Complete Claim Solutions, Inc.

(n)    "Claim Documentation" means the materials required for submission of a claim pursuant to this Class Agreement. The Claim Documentation is set forth in Exhibit F.

(o)    "Defendants" means TAP Pharmaceutical Products Inc., Abbott Laboratories, and Takeda Pharmaceutical Company Limited (f/k/a Takeda Chemical Industries, Ltd.).

(p)    "Defendants' Counsel" means the law firms of JONES DAY, WINSTON & STRAWN LLP, and JENNER & BLOCK LLP.

(q)    "Effective Date" has the meaning ascribed in Paragraph 7 of this Class Agreement.

(r)    "Escrow Account" means the account established pursuant to Paragraph 9 of this Class Agreement.

(s)    "Lupron®" means Lupron® and Lupron Depot®.

(t)    "Lupron® Purchases" means payment or reimbursement, direct or indirect, for all or part of the cost of Lupron® prescribed, provided or administered in the United States; including, but not limited to, the payment or partial payment for or reimbursement of Lupron® to any doctor, medical practice, pharmacy or any other health care provider, or the payment of a co-insurance amount, deductible amount, flat payment amount or co-pay amount for Lupron® pursuant to a Medicare co-insurance obligation, an insurance agreement, or other health care plan. "Lupron® Purchases" includes, but is not limited to, transactions where the cost, reimbursement amount or price of the Lupron® to the Consumer Class Member, TPP Class Member, SHP Group Member, or any doctor, pharmacy or other health care provider, was based in any part on the Average Wholesale Price ("AWP") or any other price of Lupron® or any other product as published by Redbook, Medispan, or any similar

publication.  "Lupron® Purchases" does not include purchases of Lupron® for resale purposes.

(u)    "Lupron® MDL Actions" means the consolidated claims of the Lupron® Purchaser Class and SHP Group in *In Re Lupron® Marketing and Sales Practice Litigation*, Case No. 01-CV-10861 (D. Mass.) (MDL 1430).

(v)    "Lupron® Pricing Litigation" means the Lupron® MDL Actions and all other pending litigation in any federal or state court asserting claims against the Defendants or any of them in any way similar to the Released Claims.

(w)    "Plaintiffs" means the Class Representatives together with all putative members of the Lupron® Purchaser Class.

(x)    "Releasees" means TAP Pharmaceutical Products Inc. (formerly TAP Holdings Inc.); TAP Pharmaceuticals Inc.; TAP Finance Inc.; Abbott Laboratories; Takeda Pharmaceutical Company Limited (formerly Takeda Chemical Industries, Ltd.); Takeda Pharmaceuticals North America, Inc.; Takeda America Holdings, Inc.; and each of their respective past, present and future, direct and indirect, parents, subsidiaries, divisions, partners and affiliates, and their respective past, present and future stockholders, officers, directors, employees, managers, sales representatives, agents, attorneys, insurers, and any other persons or entities who are alleged to have been involved in the distribution, dispensing and prescription of Lupron® and any of

their legal representatives, and the predecessors, heirs, successors, executors, trustees, administrators and assigns of each of the foregoing. As used in this Paragraph, "affiliates" means entities controlling, controlled by or under common control with a Releasee.

(y) "Released Claims" means any and all claims, demands, actions, suits, causes of action, damages whenever incurred, liabilities of any nature whatsoever, including costs, expenses, penalties and attorneys' fees, known or unknown, suspected or unsuspected, in law or equity, that any Releasor who has not timely excluded themselves from the Lupron® Purchaser Class, whether or not they object to the settlement and whether or not they make a claim upon or participate in the Class Settlement Fund, ever had, now has, or hereafter can, shall or may have, directly, representatively, derivatively or in any capacity, arising out of any conduct, events or transactions alleged or that could have been alleged in any litigation relating to the marketing, sale, cost, pricing or purchase of Lupron®. "Released Claims" specifically includes, but is not limited to, all claims against any person or entity relating to Lupron® transactions where the cost, reimbursement amount or price of the Lupron® to the Consumer Class Member, TPP Class Member, SHP Group Member, or any doctor, pharmacy or other health care provider, was based in any part on the Average Wholesale Price ("AWP") or any other price of Lupron® or any other product as published by Redbook, Medispan, or any similar publication. All Releasors covenant and agree that, after the Effective Date of this Class Agreement, they shall not seek to establish liability based, in whole or in part,

on any of the Released Claims. "Released Claims" shall not include claims arising out of this Class Agreement or claims between members of the Lupron® Purchaser Class and any of the Releasees concerning product liability or personal physical injury.

(z)    "Releasors" means (1) all Consumer Class Members, as well as their successors, assigns, heirs, executors, trustees, and administrators, and (2) all TPP Class Members and each TPP Class Member's respective present and former, direct and indirect, parents, subsidiaries, divisions, partners and affiliates, their respective present and former stockholders, officers, directors, employees, managers, agents, attorneys and any of their legal representatives, any future operating entities created and controlled by a TPP Class Member (not including any successor of a TPP Opt-Out), and any predecessors, successors, heirs, executors, trustees, administrators and assigns of each of the foregoing, all in their capacities as such, and any entities or persons (including, to the extent that a TPP Class Member administered their Lupon® Purchases, all entities for which any TPP Class Member provides or provided administrative services) on whose behalf the TPP Class Member is authorized to act. All Released Claims are forever discharged, and such claims cannot be asserted by any of Releasors' future, direct and indirect, parents, subsidiaries, divisions, partners and affilliates, their respective future stockholders, officers, directors, employees, managers, agents, attorneys and any of their legal representatives, or any successors, heirs, executors, trustees, administrators, or assigns of each of the foregoing. As used in this Paragraph, "affiliates"

means entities controlling, controlled by or under common control with a Releasor.

(aa)  "Settlement Amount" means one hundred fifty million dollars ($150,000,000), which is to be paid by TAP in full and final satisfaction of all Released Claims held by any Consumer Class Member, TPP Class Member or SHP Group Member.  The Settlement Amount is inclusive of any payments for reasonable attorneys' fees and costs of any kind, including all costs associated with Settlement Notice and claims and escrow administration.

(bb)  "Class Settlement Fund" means ninety-five million dollars ($95,000,000), which represents the Settlement Amount minus the SHP Group Initial Payment.  TAP shall transfer the Class Settlement Fund, and it shall be allocated into the "TPP Settlement Pool" and the "Consumer Settlement Pool" as provided in Paragraph 9.

(cc)  "Settlement Notice" means the Notice of Pendency and Proposed Settlement of Class Action, Motion for Attorneys' Fees and Settlement Hearing substantially in the form annexed hereto as <u>Attachment 1</u> to <u>Exhibit A</u> and the Summary Notice annexed hereto as <u>Attachment 2</u> to <u>Exhibit A</u>.

(dd)  "SHP Group," "Settling Health Plans," or "SHPs" means all of the entities identified in <u>Exhibit C</u> to this Class Agreement (the "SHP Group Members"), together with all self-funded healthcare plans and/or entities ("SFPs") for which one or more SHP Group Members provides or provided

prescription drug or health benefit services through administrative services-only contracts or as a third-party administrator and on whose behalf the SHP Group Member warrants it is authorized to make a claim, to the extent that such SHP Group Member administered such SFP's Lupron® Purchases. Such SFPs will be identified in the Claim Documentation submitted by the SHP Group pursuant to Paragraph 12 of this Class Agreement and Paragraph 4 of the SHP Agreement. Additional members may be added to the SHP Group as provided in Paragraph 17 of the SHP Agreement.

(ee)    "SHP Group Counsel" means the law firms of DEWEY BALLANTINE LLP; SCHNADER HARRISON SEGAL & LEWIS LLP; LOWEY DANNENBERG BEMPORAD & SELINGER P.C.; SUSMAN & GODFREY, LLP; and RAWLINGS & ASSOCIATES, P.L.L.C..

(ff)    "SHP Group Recognized Claim Percentage" or "SHPRCP" means the total amount of claims by all SHP Group Members that are allowed by the Claims Administrator divided by the total allowed claims of (a) all Authorized TPP Claimants, (b) all members of the SHP Group, and (c) all TPP Opt-Outs for which TAP receives a refund from the TPP Settlement Pool pursuant to Paragraph 11 of this Class Agreement.

(gg)    "SHP Group Initial Payment" means fifty-five million dollars ($55,000,000) from the Settlement Amount.

(hh)  "SHP Group Escrow" means fifteen million dollars ($15,000,000) from the SHP Group Initial Payment.

(ii)  "SHP Over/Underage" means the SHPRCP less fifty percent (50%). For example, if the SHPRCP is 60%, then the SHP Over/Underage would be a positive 10%. If the SHPRCP is 42%, then the SHP Over/Underage would be a negative 8%.

(jj)  "SHP Group Reversion Amount" means an amount calculated after all TPP claims have been processed and the total allowed claim amounts for all Authorized TPP Claimants and the SHP Group have been determined by the Claims Administrator. The SHP Group Reversion Amount is calculated differently depending on whether the SHP Over/Underage is positive or negative.

If the SHP Over/Underage is positive, then the SHP Group Reversion Amount means the amount determined by the following calculation:  SHP Over/Underage x [($110,000,000 - TAP Refund) x (1 - TPP Class Fees & Expenses/$55,000,000)]. "TAP Refund" is defined in Paragraph 2(kk). "TPP Class Fees & Expenses" is defined in Paragraph 2(nn) below.

If the SHP Over/Underage is negative, the SHP Group Reversion Amount means the amount determined by the following calculation: (-SHP Over/Underage) x $110,000,000. In this formula, the "(-SHP Over/Underage)" makes the negative SHP Over/Underage a positive percentage. The SHP Group Reversion Amount calculated pursuant to this formula can be no more than

the value of the SHP Group Escrow as of the date of payment of the SHP Group Reversion Amount.

By way of illustration, <u>Exhibit E</u> to this Class Agreement sets forth sample calculations of the SHP Group Reversion Amount.

(kk)   "TAP Refund" means the refund owed to TAP as a result of any TPP Opt-Outs, and is further described in Paragraph 11.

(ll)   "Third-Party Payor" or "TPP" means a private or governmental entity that was at risk by contract to pay all or part of the cost of Lupron® prescribed, provided or administered in the United States for individual beneficiaries of the TPP's prescription drug or health coverage. Excluded are Defendants, their respective present and former, direct and indirect, parents, subsidiaries, divisions, partners and affiliates; and the United States, its officers, agents, agencies and departments, and all other government entities' claims, to the extent that they previously released their claims pursuant to the 2001 Settlement Agreement and Release resolving the matter of *United States of America v. TAP Pharmaceutical Products, Inc.* (D.Mass.) and related litigation.  A claim may be made pursuant to this Class Agreement on behalf of a TPP Class Member by an agent thereof, including the third-party administrator of the TPP Class Member's prescription drug or health benefit plan, if the TPP Class Member authorizes the agent to make such a claim.

(mm)  "TPP Class Members" means TPPs falling within the definition of the Lupron® Purchaser Class, excluding any Class Opt-Outs.

(nn)  "TPP Class Fees and Expenses" means the sum of (1) the lesser of (a) the total attorney fee award granted by the Settlement Court pursuant to Paragraph 13 of this Class Agreement times the TPP Class Formula (defined below) or (b) thirteen million seven hundred fifty thousand dollars ($13,750,000); plus (2) all litigation-related expenses and costs approved by the Settlement Court pursuant to Paragraph 13 of this Class Agreement times the TPP Class Formula.  The TPP Class Formula equals (TPP Settlement Pool - TAP Refund)/((TPP Settlement Pool-TAP Refund) + Consumer Settlement Pool).

(oo)  "TPP Settlement Pool" means fifty-five million dollars ($55,000,000) from the Class Settlement Fund, which amount shall be segregated into an account as provided in Paragraph 9, plus all interest or other income that accrues thereon.

(pp)  "Net TPP Settlement Pool" means the TPP Settlement Pool after the payment of fees, expenses, costs, the SHP Group Reversion Amount, and the TAP Refund, if any.

(qq)  "Authorized TPP Claimant" means a TPP Class Member who submits a Proof of Claim that is accepted in whole or in part by the Claims Administrator.  The Claims Administrator shall not authorize any claims made by TPP Class Members on behalf of Defendants, their respective present and former, direct and indirect, parents, subsidiaries, partners and affiliates, or on behalf of any government entity to the extent that such government entity's

claims have been released or are otherwise excluded pursuant to Paragraph 1 of this Class Agreement.

(rr)    "United States" means the United States of America including its states, commonwealths, territories and possessions.

3.    <u>Reasonable Best Efforts to Effectuate This Settlement</u>.  The parties and their counsel agree to use their reasonable best efforts, including all steps and efforts contemplated by this Class Agreement and any other steps and efforts that may be necessary or appropriate, including, to the extent applicable, the steps and efforts contemplated by the SHP Agreement, by order of the Settlement Court or otherwise, to carry out the terms of this Class Agreement.

4.    <u>Motion for Preliminary Approval</u>.  Concurrent with or shortly following the submission of this Class Agreement for consideration by the Settlement Court, and in no event later than November 12, 2004, Class Settlement Counsel shall submit to the Settlement Court a motion for preliminary approval of the settlement set forth in this Class Agreement, and requesting entry of a Preliminary Approval Order substantially in the form annexed hereto as <u>Exhibit A</u>.

5.    <u>Notice to Class</u>.  In the event the Settlement Court preliminarily approves the settlement set forth in this Class Agreement, Class Settlement Counsel shall, in accordance with Rule 23 of the Federal Rules of Civil

Procedure and the Preliminary Approval Order, provide all those members of the Lupron® Purchaser Class who can be identified by reasonable means with a copy of the Summary Notice substantially in the form annexed hereto as Attachment 2 to Exhibit A. Notice to members of the Lupron® Purchaser Class shall also be given by publication in national print media, as ordered by the Settlement Court, and by publication on the web site established at the direction of Class Settlement Counsel. In addition, all members of the Lupron® Purchaser Class shall be directed to review a copy of the detailed Settlement Notice, set forth in Attachment 1 to Exhibit A, which will be published on the web site and will be mailed to any Lupron® Purchaser Class Member upon request. All costs of Settlement Notice shall be paid exclusively from the Class Settlement Fund as provided in this Class Agreement.

6.  Entry of Final Judgment. If, after the settlement fairness hearing scheduled by the Settlement Court in the Preliminary Approval Order, the Settlement Court approves this Class Agreement, then counsel for the parties shall request that the Settlement Court enter an Order and Final Judgment substantially in the form annexed hereto as Exhibit B.

7.  Effective Date of Settlement. The settlement detailed in this Class Agreement shall be effective on the first date after all of the following events have occurred:

(a)  entry of the Preliminary Approval Order substantially in the form annexed hereto as Exhibit A, or entry of a Preliminary Approval Order not

substantially in the form annexed hereto with respect to which neither Defendants nor Class Settlement Counsel invoke their termination rights within the period prescribed in Paragraph 8 below;

(b)    final approval by the Settlement Court of the Class Agreement, following notice to the Lupron® Purchaser Class and a fairness hearing, as prescribed by Rule 23 of the Federal Rules of Civil Procedure;

(c)    entry by the Settlement Court of an Order and Final Judgment, substantially in the form set forth in <u>Exhibit B</u> annexed hereto, and the expiration of any time for appeal or review of such Order and Final Judgment, or, if any appeal is filed and not dismissed, after such Order and Final Judgment is upheld on appeal in all material respects and is no longer subject to review upon appeal or review by writ of certiorari, or, in the event that the Settlement Court enters an order and final judgment in a form other than that provided above ("Alternative Judgment") and none of the parties hereto elect to terminate this Class Agreement as permitted by Paragraph 8, the date that such Alternative Judgment becomes final and no longer subject to appeal or review; and

(d)    this Class Agreement is no longer subject to termination by any party as provided for in Paragraphs 8 or 25.

8.    <u>Termination</u>. Defendants and Class Settlement Counsel shall each have the right to terminate this Class Agreement by providing written notice of

their election to do so ("Termination Notice") to each other and to the SHP Group within thirty (30) days of (a) the Settlement Court declining to enter the Preliminary Approval Order substantially in the form annexed hereto as Exhibit A; (b) the Settlement Court declining to enter the Order and Final Judgment substantially in the form annexed hereto as Exhibit B; (c) the date upon which the Order and Final Judgment is modified or reversed in any material respect by the U.S. Court of Appeals or the U.S. Supreme Court; or (d) the date upon which an Alternative Judgment is modified or reversed in any material respect by the U.S. Court of Appeals or the U.S. Supreme Court. A modification at any stage or reversal on appeal of (1) any amount of attorneys' fees and expenses requested by plaintiff counsel from the Class Settlement Fund, (2) the amount of incentive fees to be awarded to Class Representatives or other named plaintiffs in any Lupron® Pricing Litigation, or (3) the proposed plan of distribution set forth in this Class Agreement shall not constitute a material change that would entitle a party to terminate this Class Agreement pursuant to this Paragraph. If Class Opt-Outs exceeding a certain amount (as specified and calculated pursuant to the terms of a Supplemental Class Agreement between the parties) exclude themselves from the Lupron® Purchaser Class, Defendants shall be entitled to terminate this Class Agreement pursuant to the terms of said Supplemental Class Agreement. Defendants shall also be entitled to terminate this Class Agreement if they exercise their right to terminate the SHP Agreement at any time before the Settlement Court has finally approved

this Class Agreement.  Finally, Defendants shall be entitled to terminate this Class Agreement as provided in Paragraph 25.

9.    Settlement Consideration.  Subject to the provisions hereof, and in full, complete and final settlement of all Released Claims as provided herein, TAP agrees to transfer, within five (5) business days after the Settlement Court enters an order granting preliminary approval of this Class Agreement, the Class Settlement Fund into an Escrow Account designated by Class Settlement Counsel and acceptable to Defendants.  The Escrow Account shall be established and administered pursuant to an Escrow Agreement to be agreed upon prior to preliminary approval of this Class Agreement.  Upon receipt of the Class Settlement Fund, forty million dollars ($40,000,000) shall be segregated into an account for the Consumer Settlement Pool, and fifty-five million dollars ($55,000,000) shall be segregated into an account for the TPP Settlement Pool.  The Consumer Settlement Pool and the TPP Settlement Pool shall be invested by the Escrow Agent in short term United States Agency or Treasury Securities (or a mutual fund investing solely in such instruments) or other similar short-term United States government obligations as may be agreed upon, and any interest or other income earned thereon shall become part of the respective Consumer Settlement Pool and TPP Settlement Pool. TAP's transfer of the Class Settlement Fund to the Escrow Account shall satisfy TAP's obligation to make payments under this Class Agreement, and no other payment by any Defendant shall be required.  Defendants shall not, under any circumstances, have any liabilities, obligations or responsibilities with respect

to the investment, payment, disposition or distribution of the Class Settlement Fund after such transfer, or with respect to any administration of claims made upon the Class Settlement Fund.

10.    <u>Qualified Settlement Fund</u>.  The Escrow Account is intended by the parties hereto to be treated as a single "qualified settlement fund" for federal income tax purposes pursuant to Treas. Reg. § 1.468B-1, and to that end the parties hereto shall cooperate with each other and shall not take a position in any filing or before any tax authority that is inconsistent with such treatment. Whether or not final approval of this Class Agreement has occurred, and whether or not the Escrow Account qualifies as a qualified settlement fund within the meaning of Treas. Reg. § 1.468B-1, the Escrow Agent shall cause to be paid from the Escrow Account any taxes or estimated taxes due on any income earned on the funds in the Escrow Account and all related costs and expenses.  The parties elect that the Escrow Account should be treated as a qualified settlement fund from the earliest possible date and agree to make any "relation back" election that may be available.  If amounts received by the Class Members, or by TAP upon any refund or other reversion, are construed to be income, it is the recipient's sole responsibility to pay taxes on the amount construed to be income, plus any penalties or interest.

11.    <u>Modification Of Class Settlement Fund</u>.  As detailed in the Settlement Notice, all requests to opt out of the Lupron® Purchaser Class must be received no later than fifteen (15) days before the final approval hearing set

by the Settlement Court.  In the event that any TPP Class Members submit valid and timely requests to opt-out of the Lupron® Purchaser Class pursuant to this Class Agreement and do not thereafter participate in the SHP Agreement, TAP shall be entitled to a refund from the TPP Settlement Pool in an amount equal to the percentage of Lupron® Purchases made by such TPP Opt-Out(s) (calculated in the same manner as the SHPRCP, described in Paragraph 2(ff) to this Class Agreement) multiplied by one hundred ten million dollars ($110,000,000) (the "TAP Refund").  In the event that one or more Defendants reaches a separate settlement of any Lupron®-related claims asserted against it by one or more TPP Opt-Outs, such Defendant(s) shall provide written notice to Class Settlement Counsel of the existence of any such settlement.  Such notice shall be provided to Class Settlement Counsel no later than fifteen (15) business days prior to the transfer of funds to any such TPP Opt-Out pursuant to such settlement agreement.  Class Settlement Counsel may petition the Settlement Court, or any other appropriate court, for (i) an order allowing Class Settlement Counsel access to the confidential terms of any such settlement under an appropriate protective order; and (ii) an order directing that a portion of the monies to be paid pursuant to any such settlement be allocated to Class Settlement Counsel as a reasonable attorneys' fee to compensate Class Settlement Counsel for efforts undertaken in the Lupron® MDL Actions for the benefit of all putative class members.

      12.    <u>SHP Group Reversion Amount and Requirements.</u>

(a) On or before January 21, 2005, or twenty-one (21) days prior to the final approval hearing set by the Settlement Court, whichever is later, the SHP Group shall submit its Claim Documentation to the Claims Administrator, with a copy to Class Settlement Counsel and Defendants' Counsel.

(b) Class Settlement Counsel shall submit a schedule of all TPP Opt-Outs to SHP Group Counsel, with a copy to Defendants' Counsel, no later than thirteen (13) days before the final approval hearing set by the Settlement Court. SHP Group Members shall then submit to the Claims Administrator, with a copy to Defendants' Counsel and Class Settlement Counsel, any necessary amendments to their Claim Documentation to exclude claims made on behalf of any TPP Opt-Outs no later than nine (9) days before the final approval hearing.

(c) The Claims Administrator shall not authorize any claims made by SHP Group Members on behalf of Defendants, their respective present and former, direct and indirect, parents, subsidiaries, partners and affiliates, or on behalf of any government entity to the extent that such government entity's claims have been released or are otherwise excluded pursuant to Paragraph 1 of this Class Agreement. The Claims Administrator also shall not allow duplication of claims by SHP Group Members and/or TPP Class Members.

(d)    <u>Representations and Warranties</u>.  As part of the SHP
Agreement, each Settling Health Plan shall warrant that any Claim
Documentation, data, or other information it submits to the Claims
Administrator will be true and accurate.

(e)    <u>Effect of Failure of an SHP Group Member to Submit Claim
Documentation.</u>  To verify the accuracy of claim information and to prevent
duplication of claims, the Claims Administrator may request additional
information from SHP Group Members as deemed appropriate by the Claims
Administrator.  The SHP Agreement shall set forth that SHP Group Members
will provide additional information to the Claims Administrator as requested.
The calculation of the SHP Group Reversion Amount shall not include claims of
any SHP Group Member that fails to timely submit the above Claim
Documentation or additional claims documentation requested by the Claims
Administrator.

(f)    <u>Confidentiality.</u>  All Claim Documentation (including the
identification of SFPs) or other information submitted by SHP Group Members
pursuant to this Paragraph shall be kept confidential and may be used or
disclosed only for the purpose of effectuating this Class Agreement and the
SHP Agreement, including disclosure to the Claims Administrator, Defendants,
Class Settlement Counsel, and the Settlement Court.  Adequate steps shall be
taken to protect against unlawful disclosure of confidential patient information,
if any, that is included in such Claim Documentation, or other information.

(g)    SHP Group Reversion Amount Computation

(1)    Notice of Proposed Computation. The Claims
Administrator shall make available to SHP Group Counsel a list of the
identities of all TPP Class Members that submit Claim Documentation (the
"TPP Claimant List"). The TPP Claimant List shall be deemed confidential and
can be used only for the purposes of determining duplication of claims or
whether any entity submitting Claim Documentation falls within the definition
of TPP as set forth in Paragraph 2(ll). The TPP Claimant List shall be generated
by the Claims Administrator and transmitted to SHP Group Counsel no later
than the date for the fairness hearing set by the Settlement Court. The Claims
Administrator shall also generate and transmit to SHP Group Counsel an
updated and final TPP Claimant List twenty (20) days after the date set for
postmark of all claims by Lupron® Purchaser Class Members, or sooner if
available. SHP Group Counsel shall have the opportunity, within twenty-one
(21) days of receipt of a TPP Claimant List, to identify in writing to Class
Settlement Counsel any TPP Class Member that SHP Group Counsel believe
has submitted a claim that is duplicative of a claim already asserted by another
TPP Class Member or SHP Group Member, or that falls outside the definition of
TPP as set forth in Paragraph 2(ll). At least thirty-five (35) days prior to any
distribution of the Net TPP Settlement Pool under Paragraph 17 to TPP Class
Members, Class Settlement Counsel shall provide SHP Group Counsel with the
proposed computation of the SHP Group Reversion Amount payment, including
a list reflecting the Claims Administrator's determination of the amount of each

SHP Group Member's allowed claims for Lupron® Purchases. Such

computation will become binding upon the SHP Group unless within ten (10)

business days of receipt of computation, SHP Group Counsel disputes the

amount of the proposed SHP Group Reversion Amount payment in writing to

Class Settlement Counsel. In the event of such a dispute, SHP Group Counsel

may request and receive from Class Settlement Counsel a list of the TPP Class

Members who have the 50 largest aggregate claims approved by the Claims

Administrator and the amount of such claims (the "TPP List"). The TPP List

shall be held in confidence by SHP Group Counsel, will be provided for

attorneys' eyes only, and shall not be provided or shared with any other

person, including any member of the SHP Group or another TPP. SHP Group

Counsel shall be entitled to show the list to a single third-party consultant who

is not employed by any TPP, and who agrees in writing to be bound by the

same confidentiality as SHP Group Counsel, solely for purposes of dispute

resolution under this Paragraph. Other than as provided in this Class

Agreement and the SHP Agreement, the SHP Group and SHP Group Counsel

shall not be entitled to any information collected or generated by the Claims

Administrator or Class Settlement Counsel, except to the extent permitted by

the Court in a proceeding under subparagraph (g)(2) below.

        (2)    Dispute Procedure. Class Settlement Counsel and the

SHP Group shall attempt to resolve any disputes raised pursuant to this

Paragraph through good faith negotiations. If the dispute cannot be resolved

informally, it shall be submitted to binding arbitration. The arbitrator will be

agreed upon by the parties or, if no agreement can be reached, the arbitrator will be selected by the Settlement Court. The arbitrator's decision shall be final and will not be subject to appeal. Defendants shall not be involved in any arbitration pursuant to this Paragraph, and shall have no obligations or liability with respect thereto.

(h)    <u>SHP Group Reversion Amount Payment.</u>  On or before five (5) days after the Effective Date, or within five (5) days of any resolution of a dispute under Paragraph 12(g)(2) above, or within five (5) days after all TPP claims have been processed and the total authorized claim amounts for all Authorized TPP Claimants and SHP Group Members has been finally determined, whichever is later, the parties shall cause the payment of the SHP Group Reversion Amount to be made as follows:

(1)    If the SHP Group Reversion Amount is calculated by reference to a positive SHPRCP, Class Settlement Counsel shall cause the Escrow Agent to pay from the TPP Settlement Pool and into an account designated by SHP Group Counsel an amount equal to the SHP Group Reversion Amount and SHP Group Counsel may release the SHP Group Escrow to SHP Group Members as provided in the SHP Agreement; or

(2)    If the SHP Group Reversion Amount is calculated by reference to a negative SHPRCP, SHP Group Counsel shall cause payment to be made from the SHP Group Escrow to the TPP Settlement Pool in an amount equal to the SHP Group Reversion Amount; provided, however, that such

payment shall not exceed the total value of the SHP Group Escrow as of the date of payment of the SHP Group Reversion Amount. In addition to Defendants' right of enforcement, Class Settlement Counsel shall have the right to enforce this provision against the SHP Group.

(3)     Under no circumstances shall Defendants be liable for collective payment in excess of the one hundred fifty million dollars ($150,000,000) paid by TAP pursuant to this Class Agreement and the SHP Agreement, regardless of the outcome of any disputes pursuant to Paragraph 12(g)(2) or the calculation of the SHP Group Reversion Amount pursuant to this Paragraph.

(i)     <u>Conformance of SHP Agreement with this Class Agreement.</u> Any provisions of this Class Agreement requiring the cooperation of the SHP Group or binding the SHP Group to act shall be set forth as a binding requirement of the SHP Group in the SHP Agreement.

(j)     <u>Defendants' Limited Liability.</u> The parties hereto agree that Defendants have no involvement with the resolution of any disputes pursuant to Paragraph 12 of this Class Agreement or Paragraph 11 of the SHP Agreement. Members of the Lupron® Purchaser Class covenant not to sue the Releasees, or any of them, based on any claim or cause of action related to or arising out of a dispute over the allocation of funds under this Class Agreement or the SHP Agreement.

13.    <u>Attorneys' Fees And Fee Disputes</u>.

(a)    <u>Amount of Fees.</u>  Understanding that the award of attorneys' fees is a matter committed to the sole discretion of the Settlement Court, Defendants will not object to Class Counsel's request to the Settlement Court for a reasonable attorneys' fee not to exceed 30% percent of the difference of ninety-five million dollars ($95,000,000) minus the TAP Refund (thus, the formula is .30 x ($95,000,000 - TAP Refund)).  Defendants also will not object to Class Counsel's request to the Settlement Court for an award of reasonable expenses.  Such fees and expenses shall be paid exclusively from the Class Settlement Fund.

(b)    <u>Inclusion of Other Plaintiffs Counsel in Fee Award</u>. Additionally, Class Counsel agree to use their reasonable, good faith efforts to include in the fee award all plaintiff counsel who are currently involved in any Lupron® Pricing Litigation and who timely submit a fee petition to the Settlement Court in order to participate in the settlement process.

(c)    <u>Disputes Over Attorneys' Fees.</u>  In the event of a dispute among Class Counsel (on the one hand) and any other plaintiffs' counsel involved in any pending Lupron® Pricing Litigation and who timely submit a fee petition under Paragraph 13(b) above (on the other hand), over the appropriate allocation of attorneys' fees, Class Counsel agree to resolve any such dispute with such other plaintiffs' counsel through binding arbitration and to allow, under reasonable terms approved by the Settlement Court, any such other

plaintiffs' counsel to participate. Those counsel who participate in any such arbitration shall agree upon the arbitrator, or, if they cannot agree, the arbitrator shall be appointed by the Settlement Court. The decision of the arbitrator will not be subject to appeal. Defendants will not be a party to or have any involvement in any such arbitration, and will have no obligations or liability with respect thereto.

(d)   Release of All Claims for Attorneys' Fees. Upon payment pursuant to Paragraph 17(b)(3) of this Class Agreement of the attorneys' fees and expenses as awarded by the Settlement Court, all plaintiffs' counsel who submitted a fee petition to the Settlement Court release and forever discharge any claims, demands, actions, suits, causes of action, or other liabilities relating to any attorneys' fees or expenses incurred in the Lupron® MDL Actions or in any other Lupron® Pricing Litigation up to and including the date of such payment.

14.   All Claims Satisfied by Class Settlement Fund. Each Lupron® Purchaser Class Member shall look solely to the Class Settlement Fund for settlement and satisfaction, as provided herein, of all Released Claims.

15.   Payment of Expenses. The Defendants shall not be liable for any of the expenses of the Lupron® Pricing Litigation, including without limitation attorneys' fees, fees and expenses associated with the provision of notice to the members of the Lupron® Purchaser Class, claims administration, fees and expenses incurred in administering the Escrow Account (as provided in this

Class Agreement or the SHP Agreement), fees and expenses of expert witnesses and consultants, and expenses associated with discovery, motion practice, hearings before the Settlement Court, other courts and appeals, except as provided in Paragraph 20 below. All such fees and expenses as are approved by the Settlement Court shall be paid out of the Class Settlement Fund in accordance with this Class Agreement.

16.    Court Approval of Disbursements and Distributions.  Approval by the Settlement Court shall be required prior to any disbursement or any distribution from the Class Settlement Fund, other than for any fees and expenses incurred to administer the Escrow Account, costs associated with Settlement Notice and claims administration, taxes on the Class Settlement Fund, or any TAP Refund.

17.    Disbursements and Distributions from the Class Settlement Fund. The Class Settlement Fund shall be distributed as follows or as otherwise ordered by the Settlement Court:

(a)    Prior to the Effective Date of this Class Agreement:

(1)    Any fees and expenses incurred in administering the Escrow Account shall be paid pursuant to the Escrow Agreement. The costs of Settlement Notice shall be paid by the Escrow Agent to the Claims Administrator at the direction of Class Settlement Counsel, with notice of such payments provided to Defendants. Such fees, expenses and costs referred to in

this Paragraph 17(a)(1) and (b)(1) shall be paid exclusively from the Consumer Settlement Pool, except that the greater of one million dollars ($1,000,000) or the actual costs of notice and claim administration for the TPP Class shall be paid from the TPP Settlement Pool.

(2)    Disbursements for the payment of any taxes (including any estimated taxes, interest or penalties) due as a result of income earned by the Consumer Settlement Pool and/or the TPP Settlement Pool shall be made promptly by the Escrow Agent pursuant to the Escrow Agreement, with notice of such disbursements provided to Class Settlement Counsel and Defendants. Such costs shall be paid ratably from the Consumer Settlement Pool and the TPP Settlement Pool in proportion to the income earned in each such pool; and

(b)    After the Effective Date of this Class Agreement, the Class Settlement Fund shall be distributed as follows:

(1)    First, any remaining fees or expenses incurred in connection with the administration of the Escrow Account shall be paid pursuant to the Escrow Agreement, and to the extent, if any, that the reasonable fees and expenses incurred as part of Settlement Notice and claims administration have not been paid, such fees and expenses shall be distributed to the Claims Administrator by the Escrow Agent with notice of such disbursements provided to Class Settlement Counsel. Such fees, expenses and costs shall be paid from the Consumer Settlement Pool and TPP Settlement Pool as provided in this Paragraph 17(a)(1);

(2)    <u>Second</u>, disbursements for the payment of any taxes (including any estimated taxes, interest or penalties) due as a result of income earned by the Consumer Settlement Pool and/or the TPP Settlement Pool shall be made promptly by the Escrow Agent pursuant to the Escrow Agreement with notice of such disbursements provided to the Class Settlement Counsel.  Such costs shall be paid ratably from the Consumer Settlement Pool and the TPP Settlement Pool in proportion to the income earned in the two pools;

(3)    <u>Third</u>, any attorneys' fees and litigation expenses awarded by the Settlement Court shall be paid to Class Settlement Counsel for distribution to all plaintiff counsel who are included in the fee award by the Settlement Court.  Unless otherwise ordered by the Settlement Court, such attorneys' fees and expenses as are awarded by the Settlement Court shall be paid from the Consumer Settlement Pool and the TPP Settlement Pool in proportion to the total of the amounts deposited into the two pools.

(4)    <u>Fourth</u>, any incentive award determined by the Settlement Court for services rendered to the Lupron® Purchaser Class by the Class Representatives or any other named plaintiff in any Lupron® Pricing Litigation shall be distributed to such persons or entities.  Defendants shall not object to Class Settlement Counsel's request that such an incentive award be paid.  Any incentive award for a TPP shall be paid from the TPP Settlement Pool and any incentive award to a Consumer shall be paid from the Consumer Settlement Pool;

(5)    Fifth, payment to TAP from the TPP Settlement Pool of the TAP Refund, if any, pursuant to Paragraph 11.

(6)    Sixth, the Net Consumer Settlement Pool shall be payable to Authorized Consumer Claimants in accordance with a formula proposed in the Motion for Preliminary Approval, or as otherwise directed by the Settlement Court.

(i)    Payments from the Net Consumer Settlement Pool to Authorized Consumer Claimants shall be made as promptly as practicable after the Effective Date. If the total of all payments to Authorized Consumer Claimants would exceed the value of the Net Consumer Settlement Pool, then the payments to all Authorized Consumer Claimants shall be reduced pro rata.

(ii)    All unclaimed funds remaining in the Net Consumer Settlement Pool shall be distributed in the discretion of the Settlement Court as it deems appropriate. If all or part of any unclaimed funds is distributed to one or more charitable organizations, TAP reserves whatever right it may have to claim any appropriate tax deductions for any such charitable donation(s), and no member of the Consumer Class or the TPP Class or the SHP Group shall have a claim to any such deductions.

(7)    Seventh, any SHP Group Reversion Amount shall be paid from or to the TPP Settlement Pool as provided in Paragraph 12 above;

(8)    <u>Eighth</u>, the Net TPP Settlement Pool shall be payable to Authorized TPP Claimants ratably according to each Authorized TPP Claimant's percentage of the total allowed claims of all Authorized TPP Claimants, or as otherwise directed by the Settlement Court.

(9)    <u>Ninth</u>, after computation and any modification pursuant to Paragraph 12(h)(2) of this Class Agreement, the balance of the SHP Group Escrow shall be distributed to the SHP Group Members according to a formula to be agreed upon by the SHP Group.

18.    <u>Releases</u>.

(a)    Upon the Effective Date of this Class Agreement and in accordance with Paragraphs 7 and 8, the Releasees shall be released and forever discharged from any and all claims, demands, actions, suits, causes of action, damages whenever incurred, liabilities of any nature whatsoever, including costs, expenses, penalties and attorneys' fees, known or unknown, suspected or unsuspected, in law or equity, that any Releasor who has not timely excluded themselves from the Lupron® Purchaser Class, whether or not they object to the Class Agreement and whether or not they make a claim upon or participate in the Class Settlement Fund, ever had, now has, or hereafter can, shall or may have, directly, representatively, derivatively or in any capacity, arising out of any conduct, events or transactions alleged or that could have been alleged in any Lupron® Pricing Litigation. All Releasors

covenant and agree that they shall not hereafter seek to establish liability against any Releasee based, in whole or in part, on any of the Released Claims.

(b)    In addition, each Class Member hereby expressly waives and releases, upon the Class Agreement becoming effective, any and all provisions, rights and benefits conferred by § 1542 of the California Civil Code, which reads:

> Section 1542. <u>General Release; extent</u>. A general release does not extend to claims which the creditor does not know or suspect to exist in his favor at the time of executing the release, which if known by him must have materially affected his settlement with the debtor;

or by any law or any state or territory of the United States, or principle of common law, which is similar, comparable or equivalent to § 1542 of the California Civil Code. Each Class Member may hereafter discover facts other than or different from those which he, she or it knows or believes to be true with respect to the claims which are the subject matter of this Class Agreement, but each Class Member hereby expressly waives and fully, finally and forever settles and releases, upon this Class Agreement becoming effective, any known or unknown, suspected or unsuspected, contingent or non-contingent Released Claims with respect to the subject matter of this Class Agreement whether or not concealed or hidden, without regard to the subsequent discovery or existence of such different or additional facts. Each Class Member also hereby expressly waives and fully, finally and forever settles and releases any and all Released Claims it may have against Releasees under

§ 17200, *et seq.*, of the California Business and Professions Code, which claims are expressly incorporated into this Paragraph.

19.    <u>Preservation of Rights</u>.  The parties hereto agree that this Class Agreement, whether or not the Effective Date occurs, and any and all negotiations, documents and discussions associated with it shall be without prejudice to the rights of any party, shall not be deemed or construed to be an admission or evidence of any violation of any statute or law, of any liability or wrongdoing by Defendants or of the truth (or by the Plaintiffs of the infirmity) of any of the claims or allegations contained in the various complaints in the Lupron® MDL Actions or any other Lupron® Pricing Litigation; and evidence thereof shall not be discoverable or used directly or indirectly by the Lupron® Purchaser Class or any third party, in any way (except that the provisions of this Class Agreement may be used by the parties to enforce its terms), whether in the Lupron® Pricing Litigation or in any other action or proceeding.  The parties expressly reserve all their rights and defenses if this Class Agreement does not become final and effective substantially in accordance with the terms of this Class Agreement.

20.    <u>Payments In The Event Of Termination</u>.  If this Class Agreement is terminated pursuant to Paragraphs 8 or 25 hereto, or the Effective Date is prevented from occurring for any reason, then (a) the Class Settlement Fund, together with any interest or other income earned thereon, shall be returned to TAP net of (i) taxes paid or due to be paid on the Class Settlement Fund, (ii) the fees and costs paid or incurred for Settlement Notice, and (iii) any fees or costs

38

paid or incurred for administration of the Escrow Account; (b) the Class Agreement shall be of no force or effect, except for payment of Settlement Notice and fees and costs associated with administration of the Escrow Account; (c) any release pursuant hereto shall be of no force or effect; and (d) Plaintiffs and Defendants jointly shall request that the Settlement Court vacate any order certifying the Lupron® Purchaser Class. The parties expressly reserve all of their rights and defenses if this Class Agreement is terminated or does not become final and effective.

21.    Disposition of the SHP Group Escrow and SHP Group Reversion Amount in the Event of Termination of the Class Agreement After Final Approval. If the Settlement Court's final approval of the Class Agreement is materially altered or reversed on appeal (an "Adverse Appellate Decision") and either Defendants or Class Settlement Counsel exercise the right of termination pursuant to Paragraph 8 of this Class Agreement, then the SHP Group Escrow and SHP Group Reversion Amount shall be distributed as follows:

(a)    if the parties are not able to negotiate amendments to the Class Agreement such that it is approved by the Settlement Court and becomes effective within thirty (30) months after the entry of the Adverse Appellate Decision, then the entire amount of the SHP Group Escrow shall be returned to TAP net of (i) taxes paid or due to be paid on the SHP Group Escrow, and (ii) any fees or costs paid or incurred for administration of the Escrow Account that is established pursuant to Paragraph 5 of the SHP Agreement;

(b)     if the Adverse Appellate Decision is for non-monetary reasons that do not affect the Settlement Amount or the Class Settlement Fund and the Class Agreement is amended, finally approved by the Settlement Court, and becomes effective within thirty (30) months after entry of the Adverse Appellate Decision, then (assuming that the SHP Group Escrow and/or SHP Group Reversion Amount provisions were not modified or reversed on appeal or in subsequent negotiations among Defendants' Counsel, SHP Group Counsel, and Class Settlement Counsel) the SHP Group shall be permitted to participate in the SHP Group Escrow and SHP Group Reversion Amount on terms substantially similar to those provided above in Paragraphs 12 and 17;

(c)     if the Adverse Appellate Decision is for reasons relating to allocation of the Settlement Amount among the Consumer Class Members, TPP Class Members, and the SHP Group, then, as part of any attempted re-negotiation of the Class Agreement, any additional monies required to be allocated to one such group shall reduce the monies allocated to the remaining groups pro rata.  In the case of the SHP Group, such monies re-allocated cannot exceed the value of the SHP Group Escrow, including any interest or other income earned thereon.  If the Class Agreement is so amended, finally approved by the Settlement Court, and becomes effective within thirty (30) months after entry of the Adverse Appellate Decision, then the SHP Group shall be permitted to participate in the SHP Group Escrow (as adjusted) and SHP Group Reversion Amount (as adjusted) on terms substantially similar to those provided above in Paragraphs 12 and 17.

22.   <u>Plaintiffs Agree That The Settlement Is Fair And Reasonable and That An Injunction Is Unnecessary</u>.  Plaintiffs stipulate and agree that the payment of monies pursuant to this Class Agreement constitutes a fair, reasonable, and adequate settlement of all claims Plaintiffs have raised or could raise in any Lupron® Pricing Litigation.  Plaintiffs further stipulate and agree and will jointly with Defendants seek findings from the Settlement Court that further relief, in the form of an injunction against any Defendant or some other equitable relief, is not warranted in light of (i) the requirement that TAP comply with a comprehensive Corporate Integrity Agreement entered into with the United States relating to Lupron®; and (ii) changes to government statutes and regulations as part of the Medicare Prescription Drug, Improvement, and Modernization Act of 2003, that, among other things, changed the pricing and reimbursement approach for Lupron®.

23.   <u>No Admission</u>.  Nothing in this Class Agreement or the SHP Agreement shall be construed as an admission in any action or proceeding of any kind whatsoever, civil, criminal or otherwise, before any court, administrative agency, regulatory body or any other body or authority present or future, by any Releasee including, without limitation, that any Releasee has engaged in any conduct or practice that violates any federal or state statute or other law.  Neither this Class Agreement, nor any negotiations preceding it, nor any proceedings undertaken in accordance with the terms set forth herein, shall be construed as or deemed to be evidence of or an admission or concession by any Releasee as to the truth (or by the Plaintiffs as to the

infirmity) of any claim or allegation that Plaintiffs have or could have asserted against them or as to any liability by them, which liability is hereby expressly denied and disclaimed by Releasees. Neither this Class Agreement, nor any of its provisions, nor any statement or document made or filed in connection herewith nor the fact of this Settlement, shall be filed, offered, received in evidence or otherwise used in any action or proceeding or any arbitration, except in connection with the parties' application for approval or enforcement of this Class Agreement and all proceedings incident thereto, including requests for attorneys' fees, costs and disbursements and compensation to the Lupron® Purchaser Class. This Class Agreement and all of the terms herein constitute compromises and offers to compromise covered by F.R.E. 408. In the event that this Class Agreement is terminated pursuant to Paragraphs 8 or 25, nothing in this Class Agreement or its negotiation may be used as evidence in any action between the parties hereto.

24.    Class Certification For Settlement Purposes Only.  Defendants conditionally stipulate to certification of the Lupron® Purchaser Class as defined in Paragraph 1 for settlement purposes only, and for the sole purpose of creating that settlement class.  Defendants' conditional stipulation is contingent upon the execution by the parties of this Class Agreement and that this Class Agreement is finally approved by the Settlement Court and is not terminated pursuant to this Class Agreement.  If the Class Agreement is for any reason not finally approved, or is otherwise terminated, Defendants reserve the right to reassert all of their objections and defenses to certification of any

class for trial purposes, and Plaintiffs will not offer Defendants' conditional stipulation to certification of the Lupron® Purchaser Class as part of this Agreement as any evidence in support of a motion to certify any class for trial purposes.

25.   <u>Stay and Resumption of Proceedings</u>.  The parties to this Class Agreement shall cooperate in promptly seeking a stay of all Lupron® Pricing Litigation pending in any federal or state court.  Defendants may terminate this Class Agreement if all such Lupron® Pricing Litigation is not stayed within forty-five (45) days of entry by the Settlement Court of an order granting preliminary approval of the Class Agreement.  A schedule of all such Lupron® Pricing Litigation is attached hereto as <u>Exhibit D</u>.  The parties agree, subject to approval of the Settlement Court, that all Lupron® MDL Actions, other than proceedings relating to the settlement contemplated herein (including but not limited to providing Notice of the Pendency of this action as a class action), shall be stayed except to the extent discovery is necessary with respect to the amount of Lupron® Purchases or other information regarding Class Opt-Outs, information necessary to effectuate notice to Class Members and for purposes of administering and consummating this Class Agreement.  In the event that this Class Agreement is terminated or the Effective Date is prevented from occurring, all such stayed proceedings will resume in the Lupron® Pricing Litigation in a reasonable manner to be approved by the Settlement Court and/or the presiding federal and state courts before which such actions are pending.

26.    <u>Claims Disputes</u>.  The parties hereby agree that all matters relating to administration of claims under this Class Agreement shall be handled by the Claims Administrator.  The parties further agree that any disputes among TPP Class Members and/or SHP Group Members relating to claims administration or settlement payments will be resolved through binding arbitration before a neutral arbitrator appointed by the parties and approved by the Settlement Court.  Defendants shall have no duties or responsibilities with respect to claims administration or any related arbitration, and shall have no liability with respect thereto.

27.    <u>Consent to Jurisdiction</u>.  Defendants and Plaintiffs hereby irrevocably submit to the exclusive jurisdiction of the Settlement Court only for the specific and very limited purpose of any suit, action, proceeding or dispute arising out of, or relating to, this Class Agreement or the applicability of the Class Agreement other than Claims Disputes, which are provided for in Paragraph 26, and for no other purpose.

28.    <u>Resolution of Disputes: Retention of Jurisdiction</u>.  Except as otherwise provided in this Class Agreement, any disputes between or among Defendants and any Class Members concerning matters contained in this Class Agreement (other than Claims Disputes) shall, if they cannot be resolved by negotiation and agreement, be submitted to the Settlement Court.  The Settlement Court shall retain jurisdiction over the implementation and enforcement of this Class Agreement.

29.    <u>Enforcement of Settlement</u>. Notwithstanding Paragraph 19 above, this Class Agreement may be pleaded as a full and complete defense to any action, suit or other proceeding that has been or may be instituted, prosecuted or attempted with respect to any of the Released Claims and may be filed, offered and received into evidence and otherwise used for such defense.

30.    <u>Binding Effect</u>. This Class Agreement shall be binding upon, and inure to the benefit of, the successors and assigns of the parties hereto.

31.    <u>Authorization to Enter Class Agreement</u>. The undersigned representatives of Defendants represent that they are fully authorized to enter into and to execute this Class Agreement on behalf of the Defendants. Class Settlement Counsel represent that they are fully authorized to conduct settlement negotiations with Defense Counsel on behalf of the Plaintiffs and to enter into, and to execute, this Class Agreement on behalf of Plaintiffs, subject to Settlement Court approval pursuant to Fed. R. Civ. P. 23(e).

32.    <u>No Party Is the Drafter</u>. None of the parties hereto shall be considered to be the drafter of this Class Agreement or any provision hereof for the purpose of any statute, case law or rule of construction that would or might cause any provision to be construed against the drafter hereof.

33.    <u>Choice of Law</u>. All terms of this Class Agreement shall be governed by and interpreted according to the substantive laws of the State of Illinois without regard to its choice of law or conflict of laws principles.

34.    <u>Amendment or Waiver</u>.  This Class Agreement shall not be modified in any respect except by a writing executed by all the parties hereto, and the waiver of any rights conferred hereunder shall be effective only if made by written instrument of the waiving party.  The waiver by any party of any breach of this Class Agreement shall not be deemed or construed as a waiver of any other breach, whether prior, subsequent or contemporaneous, of this Class Agreement.

35.    <u>Execution in Counterparts</u>.  This Class Agreement may be executed in counterparts.  Facsimile signatures shall be considered as valid signatures as of the date thereof, although the original signature pages shall thereafter be appended to this Class Agreement and filed with the Settlement Court.

36.    <u>Integrated Agreement</u>.  This Class Agreement, including the exhibits hereto and all provisions and terms from the SHP Agreement that are referenced herein, together with the Supplemental Class Agreement and any exhibits thereto, contain an entire, complete, and integrated statement of each and every term and provision agreed to by and between the parties hereto, and supercede all prior oral or written agreements and contemporaneous oral agreements among the parties, including but not limited to the *Memorandum of Understanding Relating to Class Action*, dated as of October 11, 2004.

37.    <u>Construction</u>.  This Class Agreement shall be construed and interpreted to effectuate the intent of the parties, which is to provide, through

this Class Agreement, for a complete resolution of the Released Claims with respect to the Releasees.

38.    <u>Notices</u>.  All notices and other communications required or permitted under this Class Agreement shall be in writing and delivered in person, by overnight delivery service or by facsimile.  Any such notice shall be deemed given as of the date of receipt and shall be delivered to the parties as follows:

(a)    If To Plaintiffs: Thomas M. Sobol, HAGENS BERMAN LLP, One Main St., 4th Floor, Cambridge, MA 02142 and David Stellings, LIEFF CABRASER HEIMANN & BERNSTEIN, LLP, 780 Third Ave., 48th Floor, New York, NY 10023.

(b)    If To Settling Health Plan: J. Hoke Peacock, SUSMAN & GODFREY, 1000 Louisiana, Suite 5100, Houston, TX 77002; Terry Loscalzo, SCHNADER HARRISON SEGAL & LEWIS LLP, 1600 Market St., Suite 3600, Philadelphia, PA 19103-7286; Michael Hefter, DEWEY BALANTINE LLP, 1301 Avenue of the Americas, New York, NY 10019; Richard Cohen, LOWEY DANNENBERG BEMPORAD & SELINGER P.C., The Gateway, One North Lexington Ave., White Plains, NY 10601; and Mark Fischer, RAWLINGS & ASSOCIATES, P.L.L.C., 1700 Waterfront Plaza, 325 W. Main St., Louisville, KY 40201.

(c)    If To Defendants:  James R. Daly, JONES DAY, 77 W. Wacker Dr., Suite 3500, Chicago, IL  60601-1692; Robert R. Stauffer, JENNER & BLOCK

LLP, One IBM Plaza, 42nd Floor, Chicago, IL 60611; and George C. Lombardi, WINSTON & STRAWN LLP, 35 W. Wacker Dr., Chicago, IL 60601.

39.    Severability.  In the event any one or more of the provisions contained in the Class Agreement shall for any reason be held to be invalid, illegal, or unenforceable in any respect, such invalidity, illegality or unenforceability shall not affect any other provision if Defendants and Class Settlement Counsel mutually elect to proceed as if such invalid, illegal or unenforceable provision had never been included in the Class Agreement.

40.    Headings.  The headings to this Class Agreement have been inserted for convenience only and are not to be considered when construing the provisions of this Class Agreement.

IN WITNESS WHEREOF, the parties hereto, through their fully authorized representatives, have executed this Class Agreement as of the date first written below.

Dated: November 15, 2004

Assented and agreed by and among:

HAGENS BERMAN LLP

By: _____
        Thomas M. Sobol

One Main Street, 4th Floor
Cambridge, MA 02142
*Class Plaintiffs' Liason Counsel*

SPECTOR ROSEMAN & KODROFF

By: _____
      Jeffrey L. Kodroff

1818 Market Street, Suite 2500
Philadelphia, PA 19103
*Class Co-Lead Counsel*

COHEN, MILSTEIN, HAUSFELD & TOLL, P.L.L.C.

By: _Lisa Mezzetti_
/Lisa Mezzetti

1100 New York Avenue, N.W., Suite 500, West Tower
Washington, DC 20005
*Class Co-Lead Counsel*

LIEFF CABRASER HEIMANN & BERNSTEIN, LLP

By:

Joseph Saveri

275 Battery Street, 30th Floor
San Francisco, CA 94111-3339
*Class Co-Lead Counsel*

FOOTE MEYERS MIELKE AND FLOWERS

By: _____
    Robert Foote

416 South Second Street
Geneva, IL 60134

*Counsel for Goetting*
*Liason Counsel for Coordinated Cases*

CHI-1445245    53

JONES DAY

By:

Daniel E. Reidy
James R. Daly

77 West Wacker Drive, Suite 3500
Chicago, IL 60601-1692

*Counsel for TAP Pharmaceutical Products Inc.*

WINSTON & STRAWN LLP

By: _____
George C. Lombardi
Erik W. Snapp

35 West Wacker Drive
Chicago, IL 60601-9703

*Counsel for Abbott Laboratories*

JENNER & BLOCK LLP

By: _____

Thomas P. Sullivan
Jeffrey D. Colman

One IBM Plaza
41st Floor
Chicago, IL 60611

*Counsel for Takeda Pharmaceutical Company Limited*

# EXHIBIT A

## TO THE CLASS AGREEMENT

**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

|  |  |  |
|---|---|---|
| | ) | |
| **In re: LUPRON® MARKETING AND** | ) | **MDL NO. 1430** |
| **SALES PRACTICES LITIGATION** | ) | |
| | ) | **CA No. 01-CV-10861** |
| | ) | |
| **THIS DOCUMENT RELATES TO** | ) | **Judge Richard Stearns** |
| **ALL ACTIONS** | ) | |
| | ) | |

**[PROPOSED] ORDER GRANTING PRELIMINARY APPROVAL OF SETTLEMENT,
CERTIFYING CLASS FOR PURPOSES OF SETTLEMENT, DIRECTING NOTICE
TO THE CLASS AND SCHEDULING FAIRNESS HEARING**

WHEREAS, this matter has come before the Court pursuant to a *Joint Motion for Preliminary Approval of Proposed Settlement, Certification of Class for Purposes of Settlement, and Approval of Form and Manner of Notice* (the "Motion"); and

WHEREAS, the Court finds that it has jurisdiction over these actions and each of the parties for purposes of settlement only; and

WHEREAS, this Court has conducted a preliminary approval hearing on _____, 2004 and is otherwise fully advised in the premises;

IT IS HEREBY ORDERED THAT:

**Preliminary Approval of Settlement Agreement**

1.    The terms of the Class Agreement dated November 15, 2004, including all Exhibits thereto, attached to the Motion, are hereby preliminarily approved, subject to further consideration thereof at the Fairness Hearing provided for below. This Order incorporates herein, and makes a part hereof, the

Class Agreement, including the Exhibits thereto. Unless otherwise provided herein, the terms defined in the Class Agreement shall have the same meanings herein. The Class Agreement between the Plaintiffs and Defendants TAP Pharmaceutical Products Inc ("TAP"), Abbott Laboratories ("Abbott") and Takeda Pharmaceutical Company Limited (f/k/a Takeda Chemical Industries, Ltd.) ("Takeda") (collectively, "Defendants"), was entered into at arm's-length by experienced counsel for the parties to the Class Agreement and only after extensive arm's-length negotiation with counsel for certain Third Party Payors who have executed a separate settlement agreement with Defendants (the "SHP Group"). The Court finds that the settlement embodied in the Class Agreement (the "Settlement") is sufficiently within the range of reasonableness so that notice of the Settlement should be given as provided in paragraphs 6 through 8 of this Order.

2.    The Court preliminarily finds that the proposed nationwide Lupron® Purchaser Class, for the purpose of this Settlement only, meets all the applicable requirements of Rule 23(a) and (b)(3) of the Federal Rules of Civil Procedure, and hereby conditionally certifies the following nationwide Class for settlement purposes only:

> All individual persons or entities who, during the Class Period, made Lupron® Purchases. Excluded from the class are the Settling Health Plans; Defendants, their respective present and former, direct and indirect, parents, subsidiaries, divisions, partners and affiliates; and the United States government, its officers, agents, agencies and departments, and all other government entities' claims, to the extent that they previously released their claims pursuant to the 2001 Settlement Agreement and Release resolving the matter of *United States of America v. TAP Pharmaceutical Products, Inc.* (D. Mass.) and related litigation.

This includes all individual Consumers and Third Party Payors as those terms are defined in the Class Agreement.

2

3.     The Court hereby preliminarily finds that the following Plaintiffs are adequate and appropriate representatives of the nationwide Lupron ® Purchaser Class, for settlement purposes only:

(a)    Willam Porter
(b)    the Estate of William Brickey
(c)    the Estate of Carl Goetting
(d)    Beacon Healthplans, Inc.
(e)    Twin Cities Bakery Workers Health and Welfare Fund

4.     If the Class Agreement is terminated or is not consummated for any reason whatsoever, the certification of the nationwide Lupron ® Purchaser Class shall be void, and Plaintiffs and Defendants shall be deemed to have reserved all of their rights to propose or oppose any and all class certification issues.

5.     The Court further preliminarily finds that the following attorneys fairly and adequately represent the interests of the nationwide Lupron ® Purchaser Class and hereby appoints them as class counsel pursuant to Rule 23(g) for settlement purposes only:

Thomas M. Sobol
HAGENS BERMAN, LLP
One Main Streer, 4th Floor
Cambridge, MA 02142

Jeffrey L. Kodroff
SPECTOR ROSEMAN & KODROFF
1818 Market Street, Suite 2500
Philadelphia, PA 19103

Lisa M. Mezzetti
COHEN, MILSTEIN, HAUSFELD & TOLL, P.L.L.C.
1100 New York Avenue, N.W., Suite 500 West Tower
Washington, DC 20005

3

Joseph R. Saveri
LIEFF CABRASER HEIMANN & BERNSTEIN, LLP
275 Battery Street, 30th Floor
San Francisco, CA 94111-3339

Robert Foote
FOOTE MEYERS MIELKE & FLOWERS
416 South Second Street
Geneva, IL 60134

## Notice to Potential Class Members

6.      The Court has reviewed and hereby approves the notice plan designed by Hilsoft

Notifications attached as Exhibit A to the Affidavit of Thomas M. Sobol in Support of Motion for

Preliminary Approval (the "Notice Plan"). On or before _____ 200_, Class Settlement Counsel

shall cause copies of the Summary Notice, substantially in the form attached as Exhibit 2 hereto, and the

Third-Party Payor Proof of Claim Form attached as Exhibit 3 hereto, to be mailed by first-class mail,

postage pre-paid, to all TPP Class Members, to the extent that they can be identified with reasonable

diligence or who have requested a copy. By the same date, _____, 200_, Class Settlement Counsel

shall cause copies of the detailed Settlement Notice, set forth as Exhibit 1 hereto (the "Long-Form Notice")

and the Consumer Claim Form, attached as Exhibit 4 hereto, to be mailed by first class mail to all

Consumer Class Members who have requested a copy as set forth in the Notice Plan and to all Consumer

Class Members who brought claims or excluded themselves from other Lupron® class actions. All

members of the nationwide Lupron® Purchaser Class shall be directed to review a copy of the Long-Form

Notice. The Long Form Notice shall be published on the website established in accordance with the

4

Notice Plan and Class Settlement Counsel shall cause a copy of the Long-Form Notice to be mailed to any Lupron® Purchaser Class Member upon request.

7.     On or before _____ 200_, Class Settlement Counsel shall: (a) cause the Summary Notice of Pendency of Class Action, Proposed Settlement and Fairness Hearing (the "Summary Notice") in the form attached as <u>Exhibit 2</u> hereto to be published in accordance with the Notice Plan; (b) cause the detailed Settlement Notice, Summary Notice, the Class Agreement and all claim forms and instructions thereto to be published on the website established for purposes of this Settlement; and (c) otherwise implement the Notice Plan.

8.     On or before _____, 200_, Class Settlement Counsel shall serve and file or cause to be served and filed a sworn statement attesting to compliance with the provisions of paragraphs 5 through 7 of this Order.

9.     The Court appoints Complete Claim Solutions, Inc. as the Claims Administrator. Responsibilities of the Claims Administrator shall include the following: (a) establishing a post office box and toll-free phone number (to be included in the Long Form Notice and the Summary Notice (together, the "Notices" to the Class)) for purposes of communicating with nationwide Lupron® Purchaser Class members;; (b) coordinating with Hilsoft Notifications to establish and maintain a website for purposes of posting the Notices, the Class Agreement and related documents; (c) accepting and maintaining documents sent from nationwide Lupron® Purchaser Class members and members of the SHP Group, including claim forms, exclusion requests and other documents relating to claims administration; and (d) administering claims for the allocation of the settlement funds among nationwide Lupron® Purchaser Class Members and the SHP Group.

10.    After review of the proposed Notice Plan designed by Hilsoft Notifications, the Court approves the expenditure of actual notice and administrative costs reasonably incurred for the purpose of providing notice to the nationwide Lupron® Purchaser Class in accordance with the Notice Plan and in connection with the administration of this Settlement. The Escrow Agent is directed to pay such costs upon approval by Class Settlement Counsel and Defendants.

11.    The notice to be provided as set forth in paragraphs 6 through 8 of this Order (the "Notice Provisions") is hereby found to be the best practicable notice under the circumstances and, when completed, shall constitute due and sufficient notice of the Settlement and the Fairness Hearing to all persons and entities affected by and/or entitled to participate in the Settlement, in full compliance with the notice requirements of Rule 23 of the Federal Rules of Civil Procedure and due process.

### Requests for Exclusion from the Lupron ® Purchaser Class

12.    Any member of the nationwide Lupron® Purchaser Class who wishes to be excluded from the nationwide Lupron® Purchaser Class shall mail a written notice of exclusion to the Claims Administrator, so that it is received no later than _____, 2005, and clearly state the following: the name, address, taxpayer identification number, telephone number and fax number (if any) of the individual or entity that wishes to be excluded from the nationwide Lupron ® Purchaser Class as well as the time period during which the class member made Lupron® Purchases. For Third Party Payors, the notice of exclusion must also include a signed certification containing the following language:

> The undersigned individual hereby represents that he/she has authority to sign and submit this notice of exclusion on behalf of the above-named class member.

6

The undersigned also certifies that he/she has not received any advice from the parties to this litigation or their attorneys concerning his/her or the class member's fiduciary obligations under the Employee Retirement Income Security Act of 1974, 29 U.S.C. § 1100, *et seq.*, or other laws governing their obligations to any class member. The undersigned understands that by submitting this notice of exclusion, the class member identified above will not be entitled to receive any proceeds of the Class Settlement Fund. By affixing my signature below, I certify under penalty of perjury that the foregoing is true and correct. 28 U.S.C. § 1746.

13.    If the person providing a certification in the notice of exclusion is not a duly authorized officer, director or employee of the TPP Class Member requesting exclusion (if a corporation), or a general partner or duly authorized employee of the TPP Class Member requesting exclusion (if a partnership), he/she must attach written evidence of the TPP Class Member's grant of authority to him/her to execute the notice of exclusion on its behalf.

14.    In addition, for purposes of implementing the Class Agreement, including *inter alia* 1) the calculation of the amount of the TAP Refund (as described in Paragraph 11 of the Class Agreement), 2) the SHP Group Reversion Amount, and 3) whether the termination contingency referenced in the Class Agreement has been met, each TPP Class Member requesting exclusion shall be required to set forth in the Exclusion Form the amounts paid for Lupron ® during the 2000 through 2001 time period.

15.    Class Opt-Outs shall not be bound by the Class Agreement, the Settlement, or the Final Order and Judgment. Upon receipt, the Claims Administrator shall promptly provide copies of each notice of exclusion to Class Settlement Counsel and Defendants' Counsel.

16.    Any member of the nationwide Lupron® Purchaser Class that does not properly and timely mail a notice of exclusion as set forth in paragraphs 12 through 14 above shall be automatically included in the nationwide Lupron® Purchaser Class and shall be bound by all the terms and provisions

7

of the Class Agreement and the Settlement and the Final Order and Judgment, whether or not such member of the nationwide Lupron® Purchaser Class shall have objected to the Settlement and whether or not such member of the nationwide Lupron® Purchaser Class makes a claim upon or participates in the Class Settlement Fund.

<p align="center">**Proofs of Claim**</p>

17.    To effectuate the Settlement and the provisions of the Notice Plan, the Claims Administrator shall be responsible for the receipt of all notices of exclusion and proofs of claim. The Claims Administrator shall preserve (on paper or transferred into electronic format) all notices of exclusion, proofs of claim, and any and all other written communications from members of the nationwide Lupron® Purchaser Class in response to the notices for a period of five (5) years, or pursuant to further order of the Court. All written communications received by the Claims Administrator from members of the Lupron® Purchaser Class relating to the Class Agreement shall be available at all reasonable times for inspection and copying by Class Settlement Counsel and Defendants' Counsel, until payments are mailed to each Class Member.

18.    In order to be entitled to participate in the Settlement if it is effected in accordance with all of the terms and conditions set forth in the Class Agreement, each member of the nationwide Lupron® Purchaser Class shall take the following actions and be subject to the following requirements:

(a)    A nationwide Lupron® Purchaser Class Member who wishes to receive a distribution from the Class Settlement Fund must mail a properly executed proof of claim (either a TPP proof of claim or a consumer proof of claim, whichever is appropriate (collectively, a "Proof of Claim")) to the Claims Administrator at the address indicated in the notice, to be postmarked on or before

<p align="center">8</p>

_____, 2005. If such Proof of Claim is transmitted in any manner other than the United States Postal Service, it shall be deemed to have been submitted when actually received by the Claims Administrator and must be received by the Claims Administrator no later than _____, 2005.

        (b)    Each Proof of Claim must satisfy the following conditions: (i) the Proof of Claim must be properly completed in accordance with the instructions thereon and submitted in a timely manner in accordance with subparagraph (a) of this paragraph; (ii) the Proof of Claim must be signed and certified under penalty of perjury; (iii) if the person executing the Proof of Claim is acting in a representative capacity, certification of such person's authority to act on behalf of the claimant must be furnished with the Proof of Claim; and (iv) the Proof of Claim must be complete and contain no material deletions or modifications of any of the printed matter contained therein;

        (c)    Each Consumer Proof of Claim shall be accompanied by evidence of payment for Lupron® as called for in the Consumer Proof of Claim attached as an Exhibit to the Notice Plan. Consumer Class Members shall be required to certify 1) the time period over which they, or the Consumer Class Member on whose behalf they are submitting a Proof of Claim, took or were administered Lupron® and 2) the total out-of-pocket payments for Lupron® (including any co-pay or cash payments therefore) net of any reimbursements from insurers or any other source during the Class Period. In addition, Consumer Class Members shall be required to provide ONE of the following as evidence of payment for Lupron® during the Class Period:

        (i) a copy of a single written prescription for Lupron® during the Class Period;

        (ii) a copy of a single receipt evidencing payment of a co-pay or cash payment for Lupron® during the Class Period;

(iii) a single EOB (explanation of benefits) form from an insurer or other health plan evidencing a co-pay or cash payment for Lupron® during the Class Period;

(iv) a single cancelled check evidencing payment of a co-pay or cash payment for Lupron® during the Class Period;

(v) a letter from the Consumer Class Member's physician stating that the consumer was administered Lupron® and paid a co-pay or cash payment therefore and stating the amount paid during the Class Period; or

(vi) a notarized statement indicating that Consumer Class Member paid a co-pay or cash payment for Lupron® during the Class Period and setting forth the total out-of-pocket payments for Lupron® during the Class Period.

(d)    Each TPP Proof of Claim shall be accompanied by evidence of payment as called for in the TPP Proof of Claim attached as an exhibit to the Notice Plan. Each TPP Class Member and or SHP Group Member shall be required to certify the total expenditures for Lupron® during the calendar years 2000 and 2001 net of any co-pays, reimbursements, discounts or rebates received for Lupron® during these years. Any TPP Proof of Claim, including any Proof of Claim submitted by an SHP member, which claims a total net expenditure for Lupron® of $300,000.00 or more during the calendar year 2000-01 time period shall also be accompanied by electronic evidence of payment in the form attached to the TPP Proof of Claim or such other evidence as is acceptable to the Claims Administrator. Any TPP Proof of Claim that claims a total net expenditure for Lupron® of less than $300,000.00 shall not need to be accompanied by electronic evidence of payment to be considered by the Claims Administrator (although such information may be requested by the Claims Administrator);

10

(e)    Each Proof of Claim shall be submitted to and reviewed by the Claims Administrator, who shall make a recommendation to Class Settlement Counsel about which claims should be allowed in whole or in part;

(f)    The Claims Administrator will notify each member of the nationwide Lupron® Purchaser Class that filed a Proof of Claim of any recommendation of disallowance, in whole or in part, of the Proof of Claim submitted by such nationwide Lupron® Purchaser Class Member and will set forth the reasons for any such disallowance.  Lupron® Purchaser Class Members shall be permitted a reasonable period of time to cure once any deficiency with respect to their respective Proofs of Claim is identified.  A copy of such notification shall also be sent by the Claims Administrator to Class Settlement Counsel.  The Claims Administrator shall apply the same process described in this paragraph to the claims submitted by members of the SHP Group for payment from the TPP Settlement Pool in accordance with the Class Agreement;

(g)    All members of the nationwide Lupron® Purchaser Class that do not submit timely Proofs of Claim, or submit Proofs of Claim that are disallowed and not cured, shall be barred from participating in the Class Settlement Fund (except to the extent that a Proof of Claim may be partially allowed) but otherwise shall be bound by all of the terms and provisions of the Class Agreement; and

(h)    Each member of the Lupron® Purchaser Class that submits a Proof of Claim shall thereby expressly submit to the jurisdiction of the Court with respect to the claims submitted and shall (subject to final approval of the Settlement) be bound by all the terms and provisions of the Class Agreement.

11

## Claims Process

(19)   The total expenditure for Lupron® during the Class Period claimed by each Consumer Class Member on the Consumer Proof of Claim as verified and accepted by the Claims Administrator shall be multiplied by a factor of .30 in order to calculate the Consumer's "Recognized Claim". This calculation is Plaintiffs' approximation for purposes of settlement of the measure of the alleged inflation of the price paid for Lupron® by Consumer Class Members.

(20)   A minimum payment to Consumer Class Members shall be recommended to the Court by Class Settlement Counsel at the final Fairness Hearing based upon the number and magnitude of the claims filed by Consumer Class Members. Any Consumer Class Member whose Recognized Claim falls below the minium payment as set by the Court at the Fairness Hearing will receive the minimum payment in lieu of his/her recognized claim, subject to Paragraph 21 below. The Court recognizes the importance of having a minimum payment in order to encourage Consumer Class Members to file Proofs of Claim and hereby authorizes Class Settlement Counsel to represent in the Notices that based on an analysis of the potential claims by Consumer Class Members, a minimum payment of $100.00 or more is anticipated.

(21)   If the total of all payments to all Consumer Class Members (the total of all Recognized Claims plus minimum payments where applicable) is less than the Net Consumer Settlement Pool, all Consumer Class Members will be paid up to 100% of their Recognized Claim or the minimum payment as set by the Court at the Fairness Hearing, whichever is larger. Any remaining funds in the Net Consumer Settlement Pool, after distribution to Consumer Class Members in accordance with the Class Agreement, shall be subject to distribution at the discretion of this Court. If the total of all payments to Consumer Class Members (the total of all Recognized Claims plus minimum payments where applicable) would equal or

12

exceed the Net Consumer Settlement Pool, all consumers shall share *pro rata* in the Net Consumer Settlement Pool in proportion to the size of their Recognized Claim.

(22)    The total expenditure for Lupron® during the Class Period claimed by each TPP Class Member or SHP Group Member on the TPP Proof of Claim, as verified and accepted by the Claims Administrator, shall be considered the "Recognized Claim" for each TPP Class Member. Each TPP Class Member shall share pro rata in the Net TPP Settlement Pool (which is net of payment of the SHP Group Reversion Amount and the TAP Refund as set forth in the Class Agreement) in proportion to the size of their Recognized Claim.

## Confidentiality

(23)    Any information received by the Claims Administrator in connection with this Settlement that pertains to a particular member of the nationwide Lupron® Purchaser Class or to the SHP Group, or information submitted in conjunction with a notice of exclusion (other than the identity of the entity requesting exclusion), shall not be disclosed to any other person or entity other than Class Settlement Counsel, Defendants' Counsel, and the Court, or as otherwise provided in the Class Agreement.

## The Fairness Hearing

(24)    A hearing on final settlement approval (the "Fairness Hearing") will be held on _____, 2005 at _____ before this Court, at the, United States District Court for the District of Massachusetts, One Courthouse Way, Boston, Massachusetts 02210, to consider, *inter alia*, the following: (a) whether the nationwide Lupron® Purchaser Class should be finally certified, for settlement purposes only; (b) the fairness, reasonableness and adequacy of the Settlement, the dismissal with prejudice

13

of the Lupron® MDL Actions as to the Defendants, and the entry of final judgment; (c) whether Class Counsel's application for attorneys' fees, expenses and incentive awards for the Class Representatives and any other appropriate parties or the application for fees and expenses of any other counsel involved in any Lupron® Pricing Litigation ("the Fee Petition") should be granted; and (d) whether to approve the proposed plan of allocation and distribution.

(25)    On or before _____, 2005, Class Settlement Counsel shall file with the Court: (i) any memoranda or other materials in support of final approval of the Settlement; and (ii) any Fee Petition.

(26)    Any member of the nationwide Lupron® Purchaser Class that has not filed a notice of exclusion in the manner set forth above may appear at the Fairness Hearing in person or by counsel and may be heard, to the extent allowed by the Court, either in support of or in opposition to the fairness, reasonableness and adequacy of the Settlement, the dismissal with prejudice of the Lupron® MDL Actions as to Defendants, the entry of final judgment, and/or the Fee Petition; provided, however, that no person shall be heard in opposition to the Settlement, dismissal and/or entry of final judgment or the Fee Petition, and no papers or briefs submitted by or on behalf of any such person shall be accepted or considered by the Court, unless submitted to the Court and served upon Counsel for the parties on or before _____, 2005. Such person must (a) file with the Clerk of the Court a notice of such person's intention to appear as well as a statement that indicates the basis for such person's opposition and any documentation in support of such opposition on or before _____, 2005, and (b) serve copies of such notice, statement and documentation, as well as any other papers or briefs that such person files with the Court, either in person or by mail, upon all Counsel to the parties on or before _____,

14

2005. Class Members who fail to object in the manner and by the dates provided herein shall be deemed

to have waived and shall forever be foreclosed from raising any such objections.

(27)     Counsel for the parties who must be served with all documentation described above in

Paragraph 26 are as follows:

Counsel for nationwide Lupron ® Purchaser Class

Thomas M. Sobol
HAGENS BERMAN, LLP
One Main Street, 4th floor
Cambridge, MA 02142

David Stellings
LIEFF CABRASER HEIMANN & BERNSTEIN, LLP
780 Third Avenue, 48th Floor
New York, NY 10017-2024

Counsel for Defendants

Daniel E. Reidy
James R. Daly
JONES DAY
77 West Wacker Drive, Suite 3500
Chicago, IL 60601-1692

*Counsel for TAP Pharmaceutical Products Inc.*

Georege C. Lombardi
WINSTON & STRAWN LLP
35 West Wacker Drive
Chicago, IL 60601-9703

*Counsel for Abbott Laboratories*

Thomas P. Sullivan
Jeffrey D. Colman
JENNER & BLOCK LLP

15

One IBM Plaza
41st Floor
Chicago, IL 60611

*Counsel for Takeda Pharmaceutical Company Limited*

(28)    The date and time of the Fairness Hearing shall be set forth in the Notice and Summary

Notice, but shall be subject to adjournment by the Court without further notice to the members of the

Class other than that which may be posted at the Court, on the Court's website, and/or the website to

be established pursuant to the Notice Plan.

(29)    All discovery and other pretrial proceedings in the Lupron® MDL Actions among the

parties are stayed and suspended, pending the Effective Date of the Settlement ("Final Approval"),

except such proceedings as are provided for in the Class Agreement, or which may be necessary to

implement the terms of the Class Agreement, the Settlement, or this Order.

(30)    Any Lupron ® Purchaser Class member may hire an attorney at his or her or its own

expense to appear in the action.  Such attorney shall serve a Notice of Appearance on the Counsel

listed in Paragraph 27 above by _____, 2005 and file it with the Court on or before

_____, 2005.

(31)    Pending Final Approval, no nationwide  Lupron ® Purchaser Class Member, either

directly, representatively, or in any other capacity (other than a Lupron ® Purchaser Class Member

who validly and timely elects to be excluded from the Class), shall commence, continue or prosecute

against any or all Releasees any action or proceeding in any court or tribunal asserting any of the

matters, claims or causes of action that are to be released upon Final Approval pursuant to the Class

16

Agreement, and are hereby enjoined from so proceeding. Upon Final Approval, all Lupron®

Purchaser Class Members that do not file a timely notice of exclusion shall be forever enjoined and

barred from asserting any of the matters, claims or causes of action released pursuant to the Class

Agreement, and any such Lupron® Purchaser Class Member shall be deemed to have forever released

any and all such matters, claims and causes of action as provided for in the Class Agreement.


## Other Provisions

(32)     The Court hereby approves the terms of the Escrow Agreement as  submitted by the

parties.

(33)     The Court preliminarily approves the allocation and distribution of the Class Settlement

Fund, as described in Paragraph 17 of  the Agreement.

(34)     Upon Final Approval, each and every term and provision of the Class Agreement

(except as may be modified by the Final Approval Order) shall be deemed incorporated into the Final

Order and Judgment  as if expressly set forth and shall have the full force and effect of an Order of the

Court.

(35)     In the event the Settlement is terminated in accordance with the provisions of the Class

Agreement, the Settlement and all proceedings had in connection therewith shall be null and void,

except insofar as expressly provided in the Class Agreement, and without prejudice to the *status quo*

*ante* rights of  Plaintiffs and Defendants.

(36)     Neither this Order nor the Class Agreement shall constitute any evidence or admission

of liability by any Defendant, or an admission regarding the propriety of any certification of any

17

particular class for purposes of litigation, nor shall they be offered in evidence in this or any other proceeding except to consummate or enforce the Class Agreement or the terms of this Order, or by any Releasee in connection with any action asserting Released Claims.

SO ORDERED this _____ day of _____ 2004

_____

HON. RICHARD G. STEARNS

18

**Exhibit 1**

<u>UNITED STATES DISTRICT COURT FOR THE DISTRICT OF MASSACHUSETTS</u>

# If you paid for Lupron®—used to treat prostate cancer, endometriosis, uterine fibroids, and precocious puberty—you could get a payment from a legal settlement.

*A federal court authorized this notice. This is not a solicitation from a lawyer.*

- A nationwide settlement has been proposed in class action litigation about the cost of Lupron®. This notice is for:

  - **Consumers who paid for Lupron®, for example, as part of their treatment for prostate cancer, endometriosis, uterine fibroids, or precocious puberty.**

  - **Private and certain governmental Insurers, Employee Welfare Benefits Plans, and governmental employers that paid for Lupron®.**

- The settlement will pay cash to those who submit valid claims. It will also pay fees for the lawyers appointed by the Court, plus expenses and the costs of the notice and settlement administration.

## — This does not involve the safety or effectiveness of Lupron® —

| YOUR LEGAL RIGHTS AND OPTIONS IN THIS SETTLEMENT: | |
|---|---|
| **SUBMIT A CLAIM FORM** | The only way to get a payment. |
| **EXCLUDE YOURSELF** | Get no payment. This is the only option that allows you to start, or remain part of any other lawsuit against the Defendants about the cost of Lupron® or other legal claims in this case. |
| **OBJECT** | Write to the Court about why you don't like the settlement. |
| **GO TO A HEARING** | Ask to speak in Court about the settlement. |
| **DO NOTHING** | Get no payment. Give up your rights to be part of any other lawsuit against the Defendants about the cost of Lupron® or other legal claims in this case. |

- These rights and options—**and the deadlines to exercise them**—are explained in this notice.

- The Court in charge of this case has to decide whether to approve the settlement. Payments will be made if the Court approves the settlement, and after any appeals are resolved. Please be patient.

**QUESTIONS? CALL 1-800-000-0000 TOLL FREE, OR VISIT <u>WWW.LUPRONCLAIMS.COM</u>**
**PARA UNA NOTIFICACIÓN EN ESPAÑOL, VISITE NUESTRO SITIO DE INTERNET**
**- 1 -**

## WHAT THIS NOTICE CONTAINS

**BASIC INFORMATION**.............................................................................................. **PAGE 3**
    1.   Why was this notice issued?
    2.   What is the lawsuit about?
    3.   Why is this a class action?
    4.   Why is there a settlement?

**WHO IS IN THE SETTLEMENT**................................................................................. **PAGE 4**
    5.   How do I know if I am part of the settlement?
    6.   Are there exceptions to being included?
    7.   How are consumers included?
    8.   Which entities are included?
    9.   What if I'm not sure whether I'm included in the settlement?

**THE SETTLEMENT BENEFITS—WHAT YOU GET**................................................... **PAGE 5**
    10.   What does the settlement provide?
    11.   How much will my payment be?
    12.   What am I giving up as part of the settlement?

**HOW DO YOU GET A PAYMENT—SUBMITTING A CLAIM FORM**.............................. **PAGE 6**
    13.   How can I get a payment?
    14.   When would I get my payment?

**EXCLUDING YOURSELF FROM THE SETTLEMENT**.................................................. **PAGE 7**
    15.   If I exclude myself, can I get money from this settlement?
    16.   What about other cases involving Lupron®?
    17.   If I don't exclude myself, can I sue later?
    18.   How do I get out of the settlement?

**THE LAWYERS REPRESENTING YOU**....................................................................... **PAGE 8**
    19.   Do I have a lawyer in the case?
    20.   How will the lawyers be paid?

**OBJECTING TO THE SETTLEMENT**......................................................................... **PAGE 9**
    21.   How do I tell the Court if I don't like the settlement?
    22.   What's the difference between objecting and excluding?

**THE COURT'S FAIRNESS HEARING**....................................................................... **PAGE 10**
    23.   When and where will the Court decide whether to approve the settlement?
    24.   Do I have to come to the hearing?
    25.   May I speak at the hearing?

**IF YOU DO NOTHING**............................................................................................. **PAGE 11**
    26.   What happens if I do nothing at all?

**GETTING MORE INFORMATION**.............................................................................. **PAGE 11**
    27.   How do I get more information?

QUESTIONS? CALL **1-800-000-0000** TOLL FREE, OR VISIT WWW.LUPRONCLAIMS.COM

# BASIC INFORMATION

### 1. Why was this notice issued?

A Court authorized this notice because you have a right to know about a nationwide proposed settlement of this class action, including the right to claim money, and about all of your options, before the Court decides whether to give "final approval" to the settlement. If the Court approves the settlement, and after any appeals are resolved, payments will be made to everyone who submitted a valid claim. This notice explains the lawsuit, the settlement, your legal rights, what benefits are available, who may be eligible for them, and how to get them.

Judge Richard G. Stearns of the United States District Court for the District of Massachusetts is overseeing this class action. The case is known as *In re Lupron® Marketing and Sales Practices Litigation*, No. 01-CV-10861, MDL 1430. The people who sued are called the "Plaintiffs," and the companies they sued, TAP Pharmaceutical Products Inc. ("TAP"), Abbott Laboratories, and Takeda Pharmaceutical Company Limited (formerly known as Takeda Chemical Industries, Ltd.), are called the "Defendants."

### 2. What is the litigation about?

There are lawsuits about the cost of Lupron®, an injectable drug usually given by a doctor to treat prostate cancer in men, endometriosis and uterine fibroids in women and precocious puberty in children. The litigation is about whether people or entities were unlawfully overcharged and defrauded by the Defendants. **This does not involve the safety or effectiveness of Lupron®.** The Plaintiffs say that there was a fraudulent scheme by the Defendants about the marketing, sale and distribution of Lupron®, and that the alleged scheme caused people to overpay for Lupron®. They say the scheme involved: 1) artificially inflating the average wholesale price ("AWP") so that doctors could charge more for Lupron®; 2) giving free samples to doctors knowing they would charge patients and insurers for them; and 3) giving valuable gifts to doctors as incentives to prescribe Lupron® instead of other less costly alternatives.

The Defendants deny all of these claims. Specifically, the defendants say they have many defenses, that they are not liable to the Plaintiffs, and that the Plaintiffs are not entitled to any money or benefits from the litigation. The Defendants say the federal government created and still uses AWP instead of cost-to-acquire as a basis for reimbursing physicians, despite decades of knowledge and criticism that AWP does not necessarily reflect the actual cost-to-acquire. Defendants also believe that the Plaintiffs cannot prove they lost any money or had "damages" from free samples given by TAP to certain doctors.

### 3. Why is this a class action?

In a class action, one or more people or entities like you, called Class Representatives, sue on behalf of people who have similar claims. All these people are a "Class" or "Class Members."

One court resolves the issues for all Class Members, except for those who exclude themselves from the Class.

**4. Why is there a settlement?**

Both sides agreed to a settlement to avoid the cost and risk of a trial, and so that the people affected can get compensation, in exchange for releasing the Defendants from all liability. The settlement does not mean the Defendants did anything wrong or that they violated any laws. The Class Representatives and the lawyers representing them think the settlement is best for all Class Members.

## WHO IS IN THE SETTLEMENT?

To see if your rights will be affected by this settlement or if you will get money from the settlement, you first have to determine if you are a Class Member.

**5. How do I know if I am part of the settlement?**

The Court decided that Class Members in the settlement include: *All individual persons or entities who paid for Lupron® from January 1, 1985 through Month 00, 0000.*

Note: This includes all formulations of Lupron®, including Lupron Depot®.

**6. Are there exceptions to being included?**

Excluded from the class are several large insurers called "Settling Health Plans" who are settling separately (*See* Question 10), the Defendants, their respective present and former, direct and indirect, parents, subsidiaries, divisions, partners and affiliates; and the United States government, its officers, agents, agencies and departments, and all other government entities' claims, to the extent that they previously released their claims pursuant to the 2001 Settlement Agreement and Release resolving the matter of *United States of America v. TAP Pharmaceutical Products Inc.* (D. Mass.) and related litigation.

**7. How are consumers included?**

Consumers, i.e., people who paid any amount for Lupron®, including co-pays and deductibles, are included in the settlement. Lupron® is not the typical prescription drug that is "paid for" at a pharmacy. Instead, your doctor usually injects it—to treat prostate cancer in men, endometriosis and uterine fibroids in women, or precocious puberty in children—and includes a charge for it on your bill. You may have paid for a portion of the cost of Lupron® if your insurance company did not pay your doctor his/her full charge for Lupron® (e.g. you paid a "copay"). If you have no insurance, or your insurance does not cover Lupron®, you may have paid more.

**8. Which entities are included?**

Entities, also known as "third party payors," could include health insurers (other than the Settling Health Plans) that paid part or all of the cost of Lupron® for their insured patients. Entities may also include employee welfare benefit plans, governmental plans or union plans that paid some portion of the cost of Lupron® for insureds, employees or family members of employees insured under these plans.

**9. What if I'm not sure whether I'm included in the settlement?**

If you are not sure whether you or your company is included in the Class, you may call the toll-free number 1-800-000-0000 with questions. You may also write with questions to Lupron Settlement Administrator, P.O. Box 00000, City, ST 00000.

## THE SETTLEMENT BENEFITS—WHAT YOU GET

**10. What does the settlement provide?**

Up to $150 million will be paid by TAP, on behalf of all the Defendants. After allocating $55 million to a separate settlement with the Settling Health Plans, a $95 million fund will be set up for the Class Members in this settlement. After deducting certain amounts, including attorneys' fees, expenses, and payments to Class Representatives (*See* Question 20), the net fund will be distributed in cash to consumers who submit valid claim forms, as well as to third party payors. Consumers will receive up to 42.1% of the net fund, and up to 57.9% will go to third party payors. The amount of money for third party payors may be reduced if the Settling Health Plans show that their claims entitle them to more than the $55 million currently allocated to them.

If you are a third party payor and want to get out of the settlement (*See* the section called "Excluding Yourself From the Settlement" below), the third party payor settlement fund will be reduced by the amount of money you could have received if you had filed a valid claim. More details are available in the Settlement Agreement at www.lupronclaims.com.

**11. How much will my payment be?**

Your share of the settlement fund will be based on how much Lupron® you paid for and on how many Class Members file valid claims. Consumers will get $100 each or 30% of their Lupron® purchases from January 1, 1985 through Month 00, 0000, whichever is greater. If the amount of claims received is too great to allow payment of either of these amounts, consumers will get a *pro rata* share (based on what each consumer paid in proportion to what all consumers paid). Third party payors' payments will be *pro rata*, based on how much Lupron® third party payors paid for, and the January 1, 2000 through December 31, 2001 time period will be used to determine each *pro rata* share.

The Defendants will not be involved in deciding how much money you may receive.

## 12. What am I giving up as part of the settlement?

If the settlement becomes final, consumer and third party payor Class Members will be releasing the Defendants and other people and entities for all the claims described and identified in paragraphs 2(y) and 18 of the Settlement Agreement. The Settlement Agreement is available at www.lupronclaims.com. The Settlement Agreement describes the released claims with specific descriptions, in necessarily accurate legal terminology, so read it carefully. The release does not cover any legal claims about the safety or effectiveness of Lupron®. Even if you registered with, or excluded yourself from, a different Lupron® lawsuit about similar claims, you'll be giving up rights described in this Settlement Agreement.

## HOW DO YOU GET A PAYMENT—SUBMITTING A CLAIM FORM

## 13. How can I get a payment?

To ask for a payment, you must complete and submit a claim form. You can get a claim form at www.lupronclaims.com or by calling the Settlement Administrator at 1-800-000-0000 or writing to the address below. If you are a consumer Class Member you need to include the dates you used Lupron® and send proof that you paid for Lupron® sometime from January 1, 1985 through Month 00, 0000 (only one proof of purchase is required), and any amount paid during that period. Proof may be in the form of 1) a written prescription for Lupron®, 2) a receipt, cancelled check, or credit card statement that shows that you paid for Lupron®, 3) an EOB (explanation of benefits) that shows you made a co-pay for Lupron®, or 4) a letter from your doctor saying he or she prescribed and that you paid part of the cost of Lupron® at least once, including the amount paid. Contact the Settlement Administrator if you do not have any proof. Third party payors need to provide all of the information required on the claim form, including the amount paid for Lupron® from January 1, 2000 through December 31, 2001. On third party payors' claims for purchases over $300,000, more information must be provided.

Claim forms must be postmarked by **Month 00, 0000**, and mailed to:

Lupron Settlement Administrator
P.O. Box 00000
City, ST 00000

**14. When would I get my payment?**

Payments will be mailed to Class Members after the Court grants "final approval" of the settlement and any appeals are resolved. Send in your claim form postmarked by **Month 00, 0000.** The Court is scheduled to consider final approval at a hearing on **Month 00, 0000** (*See* section called "The Court's Fairness Hearing" below).

## EXCLUDING YOURSELF FROM THE SETTLEMENT

If you don't want a payment from this settlement, but you want to keep the right to sue or continue to sue Defendants over the legal issues in this case, then you must take steps to get out. This is called asking to be excluded from—or sometimes called "opting out" of—the Class. The deadline for exclusions to be received is **Month 00, 0000.**

**15. If I exclude myself, can I get money from this settlement?**

No. If you exclude yourself, you cannot get money from this settlement, and should not send in a claim form to request a payment. If you ask to be excluded, you will not get any settlement payment, and you cannot object to the settlement. But you may sue, continue to sue, or be part of a different lawsuit against Defendants in the future. You will not be bound by anything that happens in this lawsuit or settlement. If a third party payor excludes itself, the share of the money it could have received if it had stayed in will be removed from the $55 million set aside for third party payors and given back to TAP.

**16. What about the other cases involving Lupron®?**

You may have received or seen other notices about other class actions about the cost of Lupron®, including a national case in a North Carolina court, *Stetser v. TAP Pharmaceutical Products, Inc.*, and a statewide case in a New Jersey court, *Walker v. TAP Pharmaceutical Products, Inc.* If you registered with, or if you excluded yourself from, one of those or other cases, you need to exclude yourself from this case if you want to sue, continue to sue, or be part of a different lawsuit against the Defendants about the cost of Lupron® or any other legal issues in this case, ever again. The courts overseeing those cases may dismiss those cases, but they may not, so check with your lawyer about how this case will affect your rights.

**17. If I don't exclude myself, can I sue later?**

No. Unless you exclude yourself, you give up the right to sue the Defendants for all the claims that this settlement resolves. You must exclude yourself from this Class to start or continue your own lawsuit, or to be part of any different lawsuit relating to these claims.

## 18. How do I get out of the settlement?

If you wish to be excluded from the settlement you must, in writing, state that you want to be excluded from *In re Lupron® Marketing and Sales Practices Litigation,* provide the time period (month/year to month/year) during which you paid for Lupron®, include your name, address, taxpayer identification number, telephone number, fax number (if any), and your signature.

Third party payor Class Members must include the total amounts paid for Lupron® from January 1, 2000 through December 31, 2001. If you are submitting an exclusion request on behalf of a third party payor Class Member, you must also provide a signed certification with the following wording, indicating that the Class Member has given you the authority to submit the exclusion.

> "The undersigned individual hereby represents that he/she has authority to sign and submit this notice of exclusion on behalf of the above-named class member. The undersigned also certifies that he/she has not received any advice from the parties to this litigation or their attorneys concerning his/her or the class member's fiduciary obligations under the Employee Retirement Income Security Act of 1974, 29 U.S.C. § 1100, et seq., or other laws governing their obligations to any class member. The undersigned understands that by submitting this notice of exclusion, the class member identified above will not be entitled to receive any proceeds of the Class Settlement Fund. By affixing my signature below, I certify under penalty of perjury that the foregoing is true and correct. 28 U.S.C. § 1746."

Any exclusion requests must be <u>received</u> on or before **Month 00, 0000** at this address:

<div align="center">

Lupron® Settlement Administrator
P.O. Box 00000
City, ST 000000

</div>

## THE LAWYERS REPRESENTING YOU

## 19. Do I have a lawyer in the case?

The Court has appointed the law firms of Cohen, Milstein, Hausfeld, & Toll, P.L.L.C., of Washington, DC; Foote Meyers Mielke & Flowers, of Geneva, IL; Hagens Berman LLP, of Cambridge, MA; Lieff Cabraser Heimann & Bernstein, LLP, of San Francisco, CA; and Spector Roseman & Kodroff, of Philadelphia, PA to represent you and other Class Members as "Class Counsel." You will not be charged for these lawyers. If you want to be represented by your own lawyer, you may hire one, at your own cost.

## 20. How will the lawyers be paid?

Class Counsel will ask the Court for attorneys' fees not to exceed 30% of the $95 million settlement fund (after deducting any amount that TAP gets back from any third party payor exclusions—*See* Question 15) plus reimbursement of their expenses. The Defendants have agreed not to oppose these fees and a request for reasonable expenses. Class Counsel will also ask for a total of $_____ for the Class Representatives, who helped the lawyers on behalf of the whole Class. The Court may award less than these amounts to Class Counsel or to the Class Representatives.

# OBJECTING TO THE SETTLEMENT

You can tell the Court that you don't agree with the settlement or some part of it.

## 21. How do I tell the Court if I don't like the settlement?

If you are a Class Member and you do not exclude yourself, you can object to the settlement if you don't like any part of it. If you decide to object to the settlement you should give reasons why you think the Court should not approve it. The Court will consider your views. To object, you must do so in writing. Be sure to include your name, address, telephone number, your signature, and the reasons why you object to the settlement, and any documentation supporting your objection. Send the objection to these three different places postmarked no later than **Month 00, 0000**:

| COURT | CLASS COUNSEL | DEFENSE COUNSEL |
|---|---|---|
| Clerk of Court<br>John Joseph Moakley U. S.<br>  Courthouse<br>1 Courthouse Way<br>Boston, MA  02210 | Edward Notargiacomo<br>Hagens Berman, LLP<br>225 Franklin Street, 26th Floor<br>Boston, MA 02110 | Jason G. Winchester<br>Jones Day<br>77 West Wacker, Suite 3500<br>Chicago, Illinois 60601-1692 |

## 22. What's the difference between objecting and excluding?

Objecting is simply telling the Court that you don't like something about the settlement. You can object only if you stay in the Class. Excluding yourself is telling the Court that you don't want to be part of the Class. If you exclude yourself, you cannot object to the settlement or to the attorneys' fees because the case no longer affects you, and you will not receive any settlement payment.

## THE COURT'S FAIRNESS HEARING

The Court will hold a hearing to decide whether to approve the settlement. You may attend, but you don't have to. You may also ask to speak at the hearing.

**23.  When and where will the Court decide whether to approve the settlement?**

The Court will hold a Fairness Hearing at _:__ _.m. on _____, **Month 00, 0000** at the United States District Court for the District of Massachusetts, Court Room No. __, 1 Courthouse Way, Boston, MA. At this hearing the Court will consider whether the settlement is fair, reasonable, and adequate. The Court will consider whether to approve the settlement and the request for attorneys' fees, expenses, and awards for Class Representatives and others. If there are objections, the Court will consider them. The hearing may be moved to a different date without additional notice, so it is a good idea to check www.lupronclaims.com for updated information.

**24.  Do I have to come to the hearing?**

No. Class Counsel will answer any questions the Court may have. But you are welcome to attend the hearing at your own expense. If you send a written objection, you don't have to come to Court to talk about it. As long as you mailed your written objection on time, the Court will consider it. You may also pay your own lawyer to attend, but it is not necessary.

**25.  May I speak at the hearing?**

To speak at the Fairness Hearing, you must send a letter or other written document saying that the letter or document is your "Notice of Intention to Appear" in *In re Lupron Marketing and Sales Practices Litigation*, No. 00-CV-10861, MDL 1430. Be sure to include your name, address, telephone number, and your signature. You must also include the information on what you intend to say at the hearing. You must send your "Notice of Intention to Appear" to the three addresses listed in Question 21 above. It must be postmarked no later than **Month 00, 0000**. The Court will decide if you will be allowed to speak at the hearing.

## IF YOU DO NOTHING

**26.  What happens if I do nothing at all?**

If you do nothing, you will not get any payment from this settlement.  And, unless you exclude yourself from this Class, you will not be able to start a lawsuit, continue with a lawsuit, or be part of any other lawsuit, including any other class action lawsuit, against the Defendants about the cost of Lupron® or any other legal issues in this case.

## GETTING MORE INFORMATION

**27.  How do I get more information?**

This notice summarizes the proposed settlement.  You can get a copy of the Settlement Agreement at www.lupronclaims.com.  You may also write with questions to Lupron® Settlement Administrator, P.O. Box 00000, City, ST 00000. You can get a claim form at the website or by calling the toll free number below.

**Exhibit 2**

LEGAL NOTICE

# If you paid for Lupron® —used to treat prostate cancer, endometriosis, uterine fibroids, and precocious puberty—you could get a payment from a legal settlement.

A nationwide class action settlement includes people and entities (together called "class members") who paid for Lupron® from January 1, 1985 through Month 00, 0000, and who qualify under the settlement. Lupron® is an injectible drug used to treat prostate cancer, endometriosis, uterine fibroids, and precocious puberty. If you're included, you may ask for a payment, or exclude yourself from, or object to, the settlement. The United States District Court for the District of Massachusetts will have a hearing to decide whether to approve the settlement so that payments can be issued.

This is not about the safety or effectiveness of Lupron®.

Lawsuits said there was a fraudulent scheme that caused class members to overpay for Lupron®. The defendants, TAP Pharmaceutical Products Inc., Abbott Laboratories, and Takeda Pharmaceutical Company Limited deny all the allegations.

## WHAT DOES THE SETTLEMENT PROVIDE?

Up to $150 million will be paid. After allocating $55 million to a separate settlement with certain large insurers, and then deducting attorneys' fees (not to exceed 30% of $95 million), expenses, and payments to class representatives, the net fund will be distributed in cash to consumers who submit valid claim forms, as well as to insurers and employee welfare benefit plans and other entities, which are also included. Up to 42.1% of the net fund will go to consumers—about $100 minimum each, or more. A detailed notice and the settlement agreement are available at www.lupronclaims.com, or by calling 1-800-000-0000.

## HOW DO YOU GET A PAYMENT?

Simply fill out and follow the instructions on the claim form below, and mail it by Month 00, 0000. Or get a claim form at www.lupronclaims.com. The amount you get depends on how much Lupron® you paid for, and how many valid claims are filed.

## YOUR OTHER RIGHTS.

If you don't want a payment, and if you don't want to be legally bound, you must exclude yourself by Month 00, 0000, or you won't be able to sue, or continue to sue, the defendants about the cost of Lupron® or other legal claims in this case, ever again. If you exclude yourself, you can't get a payment from this settlement. If you stay in the settlement, you may object to it if you do so by Month 00, 0000. The detailed notice explains how to exclude yourself or object. The Court will hold a hearing in this case, called *In re Lupron® Marketing and Sales Practices Litigation*, No. 01-CV-10861, MDL 1430, on Month 00, 0000, to consider whether to approve the settlement and a request for fees and expenses by the lawyers representing class members. You may ask to appear and speak at the hearing at your own cost, but you don't have to. For more information call toll free or go to the website listed below.

---

**www.lupronclaims.com**     **1-800-000-0000**

---

## I'd like a payment from the Lupron® settlement.     | Consumer Claim Form |

Complete and mail to the address below, postmarked by Month 00, 0000.

| | |
|---|---|
| *Your Name* | *Dates You or Patient took Lupron® (Month/Year - Month/Year)* |
| *Your Address* | *Name of Doctor who Prescribed Lupron®* |
| *Your City, State, Zip* | *Doctor's City and State* |
| *Name of Lupron® Patient / Relationship to you* | *Patient's Date of Birth* |

How much money did you pay for Lupron® from Month 00, 0000 through Month 00, 0000? (Notes: Deduct any insurance reimbursements you got. Attach one proof of payment if you have it. See the detailed notice. You may be asked for more information at a later time.)     $_____

I declare that the information here is true and correct. If not submitting this for myself, I am authorized to submit this form on behalf of the patient above.

Mail by Month 00, 0000 to:
Lupron Settlement Administrator
P.O. Box 00000
City, ST 00000

*Signature*                    *Date*

LEGAL NOTICE

# If you paid for Lupron® —used to treat prostate cancer, endometriosis, uterine fibroids, and precocious puberty—you could get a payment from a legal settlement.

A nationwide class action settlement includes people and entities (together called "class members") who paid for Lupron® from January 1, 1985 through Month 00, 0000, and who qualify under the settlement. Lupron® is an injectible drug used to treat prostate cancer, endometriosis, uterine fibroids, and precocious puberty. If you're included, you may ask for a payment, or exclude yourself from, or object to, the settlement. The United States District Court for the District of Massachusetts will have a hearing to decide whether to approve the settlement so that payments can be issued.

### This is not about the safety or effectiveness of Lupron®.

Lawsuits said there was a fraudulent scheme that caused class members to overpay for Lupron®. The defendants, TAP Pharmaceutical Products Inc., Abbott Laboratories, and Takeda Pharmaceutical Company Limited deny all the allegations.

## WHAT DOES THE SETTLEMENT PROVIDE?

Up to $150 million will be paid. After allocating $55 million to a separate settlement with certain large insurers, and then deducting attorneys' fees (not to exceed 30% of $95 million), expenses, and payments to class representatives, the net fund will be distributed in cash to consumers who submit valid claim forms, as well as to insurers and employee welfare benefit plans and other entities, which are also included. Up to 42.1% of the net fund will go to consumers—about $100 minimum each, or more.

A detailed notice and the settlement agreement are available at www.lupronclaims.com, or by calling 1-800-000-0000.

## HOW DO YOU GET A PAYMENT?

Call toll-free 1-800-000-0000 or go to the website to get a claim form, and mail it no later than Month 00, 0000. Or get a claim form at www.lupronclaims.com. The amount you get depends on how much Lupron® you paid for, and how many valid claims are filed.

## YOUR OTHER RIGHTS.

If you don't want a payment, and if you don't want to be legally bound, you must exclude yourself by Month 00, 0000, or you won't be able to sue, or continue to sue, the defendants about the the cost of Lupron® or other legal claims in this case, ever again. If you exclude yourself, you can't get a payment from this settlement. If you stay in the settlement, you may object to it if you do so by Month 00, 0000. The detailed notice explains how to exclude yourself or object. The Court will hold a hearing in this case, called *In re Lupron® Marketing and Sales Practices Litigation*, No. 01-CV-10861, MDL 1430, on Month 00, 0000, to consider whether to approve the settlement and a request for fees and expenses by the lawyers representing class members. You may ask to appear and speak at the hearing at your own cost, but you don't have to. For more information call toll free or go to the website listed below.

**www.lupronclaims.com          1-800-000-0000**

Reader's Digest Page

LEGAL NOTICE

# Employee Welfare Benefit Plans, Insurers, and other entities that paid for Lupron® —used to treat prostate cancer, endometriosis, uterine fibroids, and precocious puberty— could get a payment from a legal settlement.

A nationwide class action settlement includes "class members" which are people together with entities known as "third party payors" (e.g., insurers, employee welfare benefit plans, and certain government employer plans), that paid any portion of the price of Lupron® between January 1, 1985 through Month 00, 0000, and who qualify under the settlement. Lupron® is an injectible prescription drug used to treat prostate cancer, endometriosis, uterine fibroids, and precocious puberty.

A third party payor class member, through its authorized agent, can exclude itself from, or object to, the settlement. The United States District Court for the District of Massachusetts authorized this notice and will have a hearing to decide whether to approve the settlement so that payments can be issued.

## WHAT'S THIS ABOUT?

This does not involve the safety or effectiveness of Lupron®. Lawsuits said there was a fraudulent scheme about the marketing, sale, and distribution of Lupron® that caused class members to overpay. The defendants, TAP Pharmaceutical Products Inc., Abbott Laboratories, and Takeda Pharmaceutical Company Limited deny all of the allegations.

## WHAT DOES THE SETTLEMENT PROVIDE?

Up to $150 million will be paid. After allocating $55 million to certain large insurers (called "Settling Heath Plans" or "SHPs"), who are settling their claims separately, and then deducting certain amounts including attorneys' fees (not to exceed 30% of $95 million), expenses, and payments to class representatives, the net fund will be distributed in cash to third party payors who submit valid claim forms, as well as to individual consumers, who are also included. Up to 57.9% of the net fund will be allocated to third

party payors. The amount of money available to the third party payors may be reduced if the SHPs show that their claims entitle them to more than the $55 million currently allocated to them. A detailed notice, available at www.lupronclaims.com or by calling 1-800-000-0000, explains all of these things. The class settlement agreement is available at the website.

## HOW DO YOU GET A PAYMENT?

Simply fill out the attached claim form and mail it no later than Month 00, 0000 to the address on the form. Or get a claim form at www.lupronclaims.com. Your pro rata share will be based on how much Lupron® you paid for from January 1, 2000 through December 31, 2001, and how many valid claims are filed.

## YOUR OTHER RIGHTS.

If a third party payor doesn't want a payment, and doesn't want to be legally bound, its authorized agent must exclude it by Month 00, 0000, or it won't be able to sue, or continue to sue, the defendants about the cost of Lupron® or other legal claims in this case, ever again. Exclusions submitted in other similar Lupron® cases are not effective. If a third party payor asks to be excluded, it can't get a payment from this settlement. If a third party payor stays in the settlement, its authorized agent may object to it, if it does so by Month 00, 0000. The detailed notice explains how to exclude a third party payor or object. The Court will hold a hearing in this case, called In re Lupron® Marketing and Sales Practices Litigation, No. 01-CV-10861, MDL 1430, on Month 00, 0000, to consider whether to approve the settlement and a request for fees and expenses by the lawyers representing the class members. Authorized agents of third party payors may ask to appear and speak at the hearing at their own cost, but don't have to. For more information, call toll-free 1-800-000-0000, or go to www.lupronclaims.com.

**www.lupronclaims.com          1-800-000-0000**

Please read the enclosed Court-ordered Notice.

Insurers, Employee Welfare Benefit Plans and
Governmental Employer Plans that paid for Lupron° could get
a payment from a nationwide class action settlement.

(Back of outside of mailing above.)

(Front of outside of mailing below.)

Lupron Settlement Administrator for U.S. District Court
P.O. Box 00000
City, ST 00000

## Legal Notice to Insurers, Employee Welfare Benefit Plans, and other entities

<First Name> <Last Name>
<Title>
<Organization>
<Address>
<City>, <ST> <00000-0000>

**Exhibit 3**

## LUPRON® THIRD PARTY PAYOR CLAIM FORM

To get a share of the settlement fund you need to complete and sign the Claim Form and mail it postmarked by **Month 00, 0000** to: Lupron® Settlement Administrator, P.O. Box 00000, City, ST 00000.

The information you provide will be kept confidential and will be used only for administering this settlement. If you have any questions please call the Settlement Administrator at **1-800-000-0000.**

The Class Member or an authorized agent can complete this Claim Form. If both a Class Member and its authorized agent submit a Claim Form, the Settlement Administrator will only consider the Class Member's Claim Form. The Settlement Administrator may request supporting documentation. The claim may be rejected if any requested documentation is not provided.

If one of more Class Members has authorized you to submit a Claim Form on its behalf, you must provide the information requested in Section B in addition to the other information requested by this Claim Form. You may submit a separate Claim Form for each Class Member that has duly authorized you to do so, OR you may submit one Claim Form for all such Class Members that have authorized you to do so. If you are submitting Claim Forms both on your own behalf as a Class Member AND on behalf of one or more Class Members that have authorized you to do so, you should submit one Claim Form for yourself and another Claim Form for the other Class Member(s). **Do not submit a Claim Form on behalf of any Class Member without specific prior authorization from that Class Member.**

### SECTION A – CLAIMANT IDENTIFICATION

Please indicate whether you are claiming on your own behalf as a Class Member or as the authorized agent of one or more Class Members by placing an "X" in the appropriate space below. If you wish to make a claim as a Class Member *and also* as the authorized agent of other Class Members, please complete one Claim Form for your claim as a Class Member and a separate Claim Form for those Class Members for whom you are authorized to submit a claim:

❑  I am the Class Member                ❑ I am filing as the authorized agent of a Class Member\*\*

\*\*As Authorized Agent, please check how your relationship with the Class Member is best described:

❑    Third Party Administrator (other than a Pharmacy Benefits Manager)      ❑    Pharmacy Benefits Manager

❑    Other  (Explain):_____

### SECTION B –CLASS MEMBER OR AGENT INFORMATION

_____
*Class Member's/Authorized Agent's Name*

_____
*Street Address*                                    *Floor/Suite*

_____
*City*                                    *State*                    *Zip Code*
(         )                                          (         )
*Area Code – Telephone Number*                    *Area Code – Fax Number*
_____
*Class Member's/Authorized Agent's Tax Identification Number*

If you file as a Class Member, list other names by which you have been known or other FEINs you have used from January 1, 1985 through Month 00, 0000.
_____
_____

If you are filing as the Class Member, check the term below that best describes your company/entity:

❑    Health Insurance Company/HMO      ❑    Self-Insured Employee Health Plan

❑    Self-Insured Union Health & Welfare Fund      ❑    Other (Explain):_____

### SECTION C – CLAIM BY AUTHORIZED AGENT

Please list the Federal Employer Identification Number and name of every Class Member for whom you have been duly authorized to submit this Claim Form (attach additional sheets to this Proof of Claim as necessary). Alternatively, you may submit the requested list of Class Member names and FEINs in an acceptable electronic format.  Please contact the Settlement Administrator to determine what formats are acceptable.

_____

_____

### SECTION D – TOTAL AMOUNT OF LUPRON PURCHASES

For the Class Member on whose behalf you are submitting a claim, state the total and final amount paid or reimbursed for claims covering injections or prescriptions of Lupron® with a date of service or date of fill from January 1, 2000 through December 31, 2001, including all credits and adjustments after initial payment (if any).  *If you paid for Lupron® before or after this period, but not during this period, contact the Claims Administrator.  If you are claiming more than $300,000 you will need to provide additional information (See Section F):*

$_____

*Claimant certifies that the figures are true and accurate and are based upon actual records maintained by or otherwise available to the claimant.*

### SECTION E – JURISDICTION OF THE COURT AND CERTIFICATION

By signing below, I hereby swear and affirm that:  (1) I have authority to submit this Claim Form either directly on behalf of the Class Member or as its Authorized Agent, and, in turn, have been given the authority to submit this Claim Form by each Class Member identified in this Claim Form and in any attachments to it, and to receive on behalf of each such Class Member any and all amounts that may be allocated from the TPP Settlement Pool to such Class Member; (2) the information contained in this Claim Form and any attachments hereto is true and accurate, based on records maintained by or otherwise available to me; (3) I, the Authorized Agent (if any), and the Class Member on whose behalf this Claim Form is submitted, hereby submit to the jurisdiction of the United States District Court for the District of Massachusetts (the "Court") for all purposes associated with this Claim Form and the Settlement, including resolution of disputes relating to this Claim Form; (4) in the event that amounts from the TPP Settlement Pool are distributed to the Authorized Agent of a Class Member, and the Class Member later claims that the Authorized Agent did not have the authority to claim and receive such amounts on its behalf, the Authorized Agent, I and/or my employer will hold the Class, counsel for the Class, Defendants, Counsel for Defendants, and the Settlement Administrator harmless with respect to any claims made by said Class Member.

_____          _____
*Signature*                                                       *Position*

_____          _____
*Print Name*                                                    *Month/Day/Year*

The following information is to be provided by the Individual that signs and certifies this Claim Form:
I am filing this Claim Form as the authorized employee of the following Class Member or Authorized Agent for Class Member:

_____
*Name of Individual's Employer*

_____      _____      _____      _____
*Business Address*                          *City*                 *State*              *Zip Code*

(_____)_____      (_____)_____
*Area Code – Telephone Number*      *Area Code – Fax Number*

_____
*E-mail Address*

Mail the completed Claim Form to the address listed on the reverse side, postmarked by **Month 00, 0000**.

**SECTION F – CLAIM DOCUMENTATION INSTRUCTIONS**

If you are claiming less than $300,000 of purchases of Lupron® for the 2000-2001 period, you do not need to attach any additional information. However, even if your purchase amount is less than $300,000, you should retain the information required for claims over $300,000 because any claim may be audited.

If you are claiming $300,000 or more of purchases of Lupron®, you <u>must</u> provide documentation with your Claim Form to have your claim considered by the Settlement Administrator. Attached is a mock spreadsheet reflecting the required data fields necessary for your participation as a TPP Class Member. Please provide the required data fields, as presented in the attached mock spreadsheet, for all paid claims with a date of service or a date of fill between January 1, 2000 and December 31, 2001. Please provide this data along with the Claim Form to the Settlement Administrator no later than **Month 00, 0000**:

1. J-Code or NDC Number - provide the applicable J-Code or NDC Number for each transaction. The J-Codes are limited to J-9217, J-9218 and J-1950. A list of NDC Numbers is attached.

2. Patient Identifier - provide a random encrypted patient identification number. This number must consistently reflect the same patient.

3. Age - the difference between date of birth and date of service (or date of fill), rounded down to the nearest year.

4. Service and/or Fill Date - we expect service date will be available for J-Code entries and fill date will be available for NDC entries. Please include both if they are available.

5. Group Number - provide the group number assigned to each transaction. As part of the auditing process, you may be asked to provide the corresponding group name for each group number. Only the Settlement Administrator will have access to this information.

6. Amount Billed - billed charges or the initial amount billed by the provider or providers before any adjustments.

7. Net Amount Paid - final amount paid for each discrete transaction, net of co-pays, deductibles, co-insurance, and any other credits and adjustments after initial payment.

**OTHER INFORMATION**

- If you are able, please provide units for each transaction.
- Finally, please provide a list of all self-funded healthcare plans ("SFPs") for which you are authorized to make a claim.
- All information you provide is subject to the protective order governing this action.

## ABC Health Plan

### Lupron Payment Data: 01/01/00 through 12/31/01

| | | | 01/01/00 through 12/31/01 | | | |
|---|---|---|---|---|---|---|
| 00026288489 | olcu812hmy | 45 | 13-Feb-00 | 524854 | $743.40 | $643.40 |
| 00055288586 | lsmft1b2s2 | 58 | 21-Feb-00 | 325125 | $684.00 | $684.00 |
| 00099588586 | obafgkmms | 65 | 19-Aug-00 | 25212352 | $31,215.25 | $28,215.25 |
| 00055288586 | tgcfaoqtcd | 52 | 25-Feb-00 | 7985248 | $789.15 | $684.00 |
| 00099588586 | adempbopp | 45 | 09-Apr-01 | 9287960 | $101,548.25 | $97,215.25 |
| 00026288586 | fupc069941 | 23 | 05-Jun-00 | 52180085 | $2,014.20 | $1,920.95 |
| 00026288682 | iwo24hftiw | 51 | 20-Jan-00 | 548320 | $250.25 | $166.62 |
| 00026288489 | clwtcwityw | 51 | 21-Feb-00 | 215480 | $854.25 | $643.40 |
| 00045288586 | nply2shwoy | 18 | 09-Aug-01 | 302504 | $6,547.25 | $5,471.00 |
| 00026528844 | bttwgtwwwh | 45 | 29-May-01 | 40504 | $14,258.30 | $11,782.50 |
| 00026288586 | 1lbla2ibsa | 23 | 08-Feb-00 | 5487931 | $8,547.25 | $7,225.30 |
| 00026288489 | 76tltbpa11 | 61 | 05-Mar-00 | 3215480 | $958.25 | $643.40 |
| 00045288586 | aechocirac | 45 | 31-Jul-01 | 3215874 | $6,581.03 | $5,471.00 |
| 00099588586 | 13moadmcyh | 25 | 01-Aug-00 | 9517536 | $3,658.47 | $2,895.25 |
| 00026288586 | oyg43bleco | 35 | 22-Jul-00 | 6584014 | $2,487.02 | $1,920.95 |
| 00099588586 | 55bitbptat | 14 | 01-Aug-01 | 38527419 | $325.14 | $215.25 |
| 00026288586 | imnttmotma | 61 | 05-Jun-00 | 6547893 | $3,547.20 | $1,920.95 |
| 00099588586 | wmiwtdmebs | 34 | 25-Sep-01 | 4587125 | $33,547.78 | $27,215.25 |
| 00026288586 | 99yitp99yb | 51 | 26-May-00 | 65487854 | $3,547.10 | $1,920.95 |
| **TOTAL PAID 01/01/00 TO 12/31/01** | | | | | $222,103.54 | $196,854.67 |
| | | | | | | |
| ** Age at date of service or date of fill. | | | | | | |

**Exhibit 4**

## Lupron® Consumer Claim Form

### I'd like a payment from the Lupron® settlement.

Complete and mail to the address below, postmarked by Month 00, 0000.

Your Name _____    Dates you or Patient took Lupron® (Month/Year - Month/Year)

Your Address _____    Name of Doctor who Provided Lupron®

Your City, State, Zip _____    Doctor's City and State

Name of Lupron® Patient / Relationship to you _____    Patient's Date of Birth

How much money did you pay for Lupron® from January 1, 1985 through Month 00, 0000?
(Notes: Deduct any insurance reimbursements you got. Attach one proof of payment if you
have it. See the detailed notice. You may be asked for more information at a later time.)    $ _____

I declare that the information here is true and correct. If not submitting this for
myself, I am authorized to submit this form on behalf of the patient above.

Signature _____    Date _____

Mail by Month 00, 0000 to:
Lupron Settlement Administrator
P.O. Box 00000
City, ST 00000

# EXHIBIT B

## TO THE CLASS AGREEMENT

**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

| | | |
|---|---|---|
| | ) | |
| **In re: LUPRON® MARKETING AND** | ) | **MDL NO. 1430** |
| **SALES PRACTICES LITIGATION** | ) | |
| | ) | **CA No. 01-CV-10861** |
| | ) | |
| **THIS DOCUMENT RELATES TO** | ) | **Judge Richard Stearns** |
| **ALL ACTIONS** | ) | |
| | ) | |

**[PROPOSED] FINAL ORDER AND JUDGMENT GRANTING**

<u>**FINAL APPROVAL TO PROPOSED CLASS ACTION SETTLEMENT**</u>

This Court having considered: (a) the Settlement Agreement and Release dated

November ____, 2004, including all Exhibits thereto (the "Class Agreement") between the Plaintiffs and

Defendants TAP Pharmaceutical Products Inc ("TAP"), Abbott Laboratories ("Abbott") and Takeda

Pharmaceutical Company Limited (f/k/a Takeda Chemical Industries, Ltd.) ("Takeda") (collectively

the "Defendants"); (b) the proposed allocation and distribution of the Class Settlement Fund; and (c)

Class Counsel's application for attorneys' fees, reimbursement of litigation expenses and incentive

awards for the Class Representatives; and having held a hearing on _____, 200__; and

having considered all of the submissions and arguments with respect thereto, and otherwise being fully

informed, and good cause appearing therefore,

IT IS HEREBY ORDERED, ADJUDGED and DECREED that:

1.      This Final Order and Judgment incorporates herein and makes a part hereof,

the Class Agreement, including the Exhibits thereto.  Unless otherwise provided herein, the terms

defined in the Class Agreement shall have the same meanings for purposes of this Final Order and Judgment.

      2.     The Court has personal jurisdiction over all Class Representatives, nationwide

Lupron Purchaser Class Members and Defendants for purposes of this settlement only, and has subject

matter jurisdiction to approve the Class Agreement.

      3.     Based on the record before the Court, including all submissions in support of

the Settlement set forth in the Class Agreement ("Settlement"), objections and responses thereto, as

well as the Class Agreement, the Court hereby certifies, for settlement purposes, the following

nationwide Lupron® Purchaser Class:

> All individual persons or entities who, during the Class Period,
> made Lupron®® Purchases. Excluded from the class are the Settling
> Health Plans; Defendants, their respective present and former, direct
> and indirect, parents, subsidiaries, divisions, partners and affiliates; and
> the United States government, its officers, agents, agencies and
> departments, and all other government entities' claims, to the extent that
> they previously released their claims pursuant to the 2001 Settlement
> Agreement and Release resolving the matter of *United States of
> America v. TAP Pharmaceutical Products, Inc.* (D. Mass.) and
> related litigation.

In so holding, the Court finds that the prerequisites of Rule 23(a) and (b)(3) have been satisfied

for certification of the nationwide Lupron® Purchaser Class for settlement purposes only: the

nationwide Lupron® Purchaser Class, numbering in the hundreds of thousands, is so numerous that

joinder of all members is impracticable; there are questions of law and fact common to the nationwide

Lupron® Purchaser Class, such as whether  Class Members were overcharged for Lupron®; the

claims and defenses of the Class Representatives are typical of the claims and defenses of the

nationwide Lupron® Purchaser Class; the Class Representatives have fairly and adequately protected

-2-

the interests of the nationwide Lupron® Purchaser Class with regard to the consolidated claims of the

nationwide Lupron® Purchaser Class; the common questions of law and fact predominate over

questions affecting only individual nationwide Lupron® Purchaser Class Members, rendering the

nationwide Lupron® Purchaser Class sufficiently cohesive to warrant a nationwide class settlement ;

and the certification of the nationwide Lupron® Purchaser Class is superior to individual litigation

and/or settlement as a method for the fair and efficient resolution of the Lupron® MDL Litigation.

In making all of the foregoing findings, the Court has exercised its discretion in certifying

a nationwide settlement class. Defendants have preserved all of their defenses and objections against

and rights to oppose certification of a nationwide litigation class if the Settlement does not become final

and effective in accordance with the terms of the Class Agreement.

4.    The record shows that Notice has been given to the nationwide Lupron®

Purchaser Class in the manner approved by the Court in its Preliminary Approval Order

of_____, 2005 [Docket No. ___]. The Court finds that such Notice: (i) constitutes reasonable

and the best practicable notice; (ii) constitutes notice that was  reasonably calculated, under the

circumstances, to apprise members of the nationwide Lupron® Purchaser Class of the pendency of the

Lupron® MDL Actions , the terms of the Settlement, and nationwide Lupron® Purchaser Class

Members' right to object to or exclude themselves from the nationwide Lupron® Purchaser Class and

to appear at the settlement fairness hearing held on _____, 200_ (the "Fairness Hearing");

(iii) constitutes due, adequate, and sufficient notice to all persons or entities entitled to receive notice;

and (iv) meets the requirements of due process and Rule 23 of the Federal Rules of Civil Procedure.

5.      No individuals or entities, other than those listed on <u>Exhibit A</u> hereto, have excluded themselves from the nationwide Lupron® Purchaser Class. This Order shall have no force or effect on the persons or entities listed on <u>Exhibit A</u> hereto.

6.      The Court finds that extensive arm's-length negotiations have taken place in good faith between Class Settlement Counsel, Defendants' Counsel and SHP Group Counsel resulting in the Class Agreement.

7.      Pursuant to Rule 23(e) of the Federal Rules of Civil Procedure, the Court hereby finally approves in all respects the Settlement set forth in the Class Agreement ("the Settlement") and finds that the Settlement, the Class Agreement, and the plan of distribution of the Class Settlement Fund as set forth in Paragraph 17 of the Class Agreement, are, in all respects, fair, reasonable and adequate, and in the best interest of the nationwide Lupron® Purchaser Class. The Court finds that further relief, in the form of an injunction against any Defendant or some other equitable relief, is not warranted in light of (i) the requirement that TAP comply with a comprehensive Corporate Integrity Agreement entered into with the United States relating to Lupron®; and (ii) changes to government statues and regulations as part of the Medicare Prescription Drug, Improvement, and Modernization Act of 2003, that among other things changed the pricing and reimbursement approach for Lupron®. The Court further approves the establishment of the Class Settlement Fund under the terms and conditions set forth in the Class Agreement and the Escrow Agreement submitted by the parties. The parties are hereby directed to implement and consummate the Settlement according to the terms and provisions of the Class Agreement. In addition, the parties are authorized to agree to and adopt such amendments and modifications to the Class Agreement as (i) shall be consistent in all material respects

-4-

with this Final Order and Judgment, and (ii) do not limit the rights of nationwide Lupron® Purchaser

Class Members.

8.      The Lupron® MDL Actions are hereby dismissed with prejudice and without

costs to any party, except as otherwise provided herein.

9.      Upon the Effective Date of the Class Agreement, the Releasors (as defined in

Paragraph 2(z) of the Class Agreement) shall release and forever discharge the Releasees (as defined in

Paragraph 2(x) of the Class Agreement) from the Released Claims (as defined in Paragraph 2(y) of the

Class Agreement).

In addition, each Class Member expressly waives and releases, upon the Effective Date

of the Agreement, any and all provisions, rights and benefits conferred by §1542 of the California Civil

Code, which reads:

> Section 15.42.  <u>General Release; extent</u>.  A general release does not extend to claims
> which the creditor does not know or suspect to exist in his favor at the time of executing
> the release, which if known by him must have materially affected his settlement with the
> debtor;

or by any law or any state or territory of the United States, or principle of common law, which

is similar, comparable or equivalent to § 1542 of the California Civil Code.  Each Releasor may

hereafter discover facts other than or different from those which he, she or it knows or believes to be

true with respect to the claims which are the subject matter of the Agreement, but each Releasor

expressly waives and fully, finally and forever settles and releases, upon this Order becoming final, any

known or unknown, suspected or unsuspected, contingent or non-contingent Released Claims with

respect to the subject matter of the Agreement whether or not concealed or hidden, without regard to

-5-

the subsequent discovery or existence of such different or additional facts. Each Releasor also hereby expressly waives and fully, finally and forever settles and releases any and all Released Claims it may have against Releasees under § 17200, *et seq.*, of the California Business and Professions Code.

10.    The Court finds that the Class Settlement Fund is a "Qualified Settlement Fund" as defined in section 1.468B-1(a) of the Treasury Regulations in that it satisfies each of the following requirements:

(a)    The Class Settlement Fund is established pursuant to an order of this Court and is subject to the continuing jurisdiction of this Court;

(b)    The Class Settlement Fund is established to resolve or satisfy one or more contested or uncontested claims that have resulted or may result from an event that has occurred and that has given rise to at least one claim asserting liability arising out of an alleged violation of law; and

(c)    The assets of the Class Settlement Fund are segregated from other assets of TAP, the transferor of payments to the Class Settlement Fund, and from the assets of persons related to TAP.

11.    Under the "relation-back" rule provided under section 1.468B-1(j)(2)(i) of the Treasury Regulations, the Court finds that:

-6-

(a)    The Class Settlement Fund met the requirements of paragraphs 10(b) and 10(c) of this Order prior to the date of this Order approving the establishment of the Class Settlement Fund subject to the continued jurisdiction of this Court; and

(b)    TAP and the"administrator" under section 1.468B-2(k)(3) of the Treasury Regulations may jointly elect to treat the Class Settlement Fund as coming into existence as a "Qualified Settlement Fund" on the later of the date the Class Settlement Fund met the requirements of paragraphs 10(b) and 10(c) of this Order or January 1 of the calendar year in which all of the requirements of paragraph 10 of this Order are met. If such relation-back election is made, the assets held by the Class Settlement Fund on such date shall be treated as having been transferred to the Class Settlement Fund on that date.

12.    Nothing in this Final Order and Judgment, the Settlement, or the Class Agreement is or shall be deemed or construed to be an admission or evidence of any violation of any statute or law or of any liability or wrongdoing by any of the Defendants.

13.    Class Counsel have moved pursuant to Rules 23(h), 54(d) and 52(a) of the Federal Rules of Civil Procedure for an award of attorneys' fees and reimbursement of expenses. Pursuant to Rule 23(h)(3) and 52(a) this Court makes the following findings of fact and conclusions of law:

(a)    that the Settlement confers a substantial benefit on the nationwide Lupron® Purchaser Class;

-7-

(b)     that the value conferred on the nationwide Lupron® Purchaser Class is immediate and readily quantifiable.  Upon this Judgment becoming final, each nationwide Lupron® Purchaser Class Member who has submitted a valid proof of claim will receive a cash payment that represents a significant portion of the alleged financial harm alleged to have been  incurred as a result of Defendants' alleged conduct;

(c)     that Class Counsel vigorously and effectively pursued the nationwide Lupron® Purchaser Class Members' claims before this Court in this highly complex case;

(d)     that the Settlement was obtained as a direct result of Class Counsel's skillful advocacy;

(e)     that the Settlement was reached following extensive negotiation between Class Settlement Counsel, Defendants' Counsel and SHP Group Counsel, and was negotiated in good-faith and in the absence of collusion;

(f)     that during the prosecution of the Lupron® MDL Actions, Class Counsel incurred expenses in the amount of $_____ which included costs for expert witnesses and other expenses which the Court  finds to be reasonable and necessary to the representation of the nationwide Lupron® Purchaser Class;

(g)     that  nationwide Lupron® Purchaser Class Members were advised in the "Notice of Pendency of Class Action, Proposed Settlement and Class Certification for the Settlement" approved by the Court that Class Counsel intended to apply for an award of attorneys'

-8-

fees in an amount up to 30% of the Class Settlement Fund (plus interest thereon), plus the opportunity to petition the Court for a fee on any amounts refunded to TAP as a result of TPP Opt Outs under the circumstances described in Paragraph 11 of the Class Agreement, plus reimbursement of reasonable costs and expenses incurred in the prosecution of this action;

(h)    that _____ member(s) of the nationwide Lupron® Purchaser Class has (have) submitted written objection(s) to the award of attorneys' fees and expenses;

(i)    that counsel who recover a common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorneys' fee from the fund as a whole. *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980); *Blum v. Stenson*, 465 U.S. 866, 900 n.16 (1984);

(j)    that use of the percentage of the fund method in common fund cases is the prevailing practice in this Circuit for awarding attorneys' fees and permits the Court to focus on a showing that a fund conferring benefit on a class resulted from the lawyers' efforts. *In re Thirteen Appeals Arising Out of the San Juan Dupont Plaza Hotel Fire Litig.*, 56 F.3d 295 (1st Cir. 1995); and

(k)    the requested fee award is well withing the applicable range of percentage awards in this Circuit; *In re Relafen Antitrust Litig.*, No. 01-12239 (D. Mass. April 9, 2004) [Doc. No. 297]; *Mowbray v. Waste Management Holdings*, No. 98-11534-WGY (D. Mass. Aug. 2, 2001); *In re Copley Pharmaceutical, Inc. Sec. Litig.*, No. 94-11897-WGY (D.

-9-

Mass. Feb. 8, 1996); *Wilensky v. Digital Equipment Corp.*, No. 94-10752-JLT (D. Mass. July 11, 2001).

Accordingly, Class Counsel are hereby awarded $_____ from the balance of the Class Settlement Fund, as their fee award which the Court finds to be fair and reasonable, and which amount shall be paid to Class Counsel from the Class Settlement Fund in accordance with the terms of the Class Agreement, with interest from _____, 2004 (the date of the funding of the Class Settlement Fund) to the date of payment, at the same net interest rate earned by the Class Settlement Fund. Further, Class Counsel are hereby awarded

$_____ for their expenses which the Court finds to be fair and reasonable, and which amount shall be paid to Class Counsel from the Class Settlement Fund in accordance with the terms of the Class Agreement. The attorneys' fees and expenses awarded by the Court shall be allocated among Class Counsel by Class Settlement Counsel, subject to the provisions of the Class Agreement concerning the inclusion of all plaintiffs' counsel currently involved in any Lupron® Pricing Litigation and concerning the resolution of disputes over attorneys' fees.

14.    The Class Representatives and other appropriate parties, as stated in the Order Granting Preliminary Approval of the Settlement, Certifying Class for Purposes of Settlement dated _____, 200_, are hereby granted an incentive award of $_____, to be divided among them by Class Settlement Counsel, which amount is in addition to whatever monies the Class Representatives will receive from the Class Settlement Fund pursuant to the Class Agreement.

-10-

15.    Without affecting the finality of this Final Order and Judgment, the Court retains continuing and exclusive jurisdiction over all matters relating to administration, consummation, enforcement and interpretation of the Class Agreement and of this Final Order and Judgment, to protect and effectuate this Final Order and Judgment, and for any other necessary purpose. Defendants, Class Representatives and each member of the nationwide Lupron® Purchaser Class are hereby deemed to have irrevocably submitted to the exclusive jurisdiction of this Court, for the purpose of any suit, action, proceeding or dispute arising out of or relating to the Class Agreement or the applicability of the Class Agreement, including the Exhibits thereto, and only for such purposes. Without limiting the generality of the foregoing, and without affecting the finality of this Final Order and Judgment, the Court retains exclusive jurisdiction over any such suit, action or proceeding.  Solely for purposes of such suit, action or proceeding, to the fullest extent they may effectively do so under applicable law, the parties hereto are deemed to have irrevocably waived and agreed not to assert, by way of motion, as a defense or otherwise, any claim or objection that they are not subject to the jurisdiction of this Court, or that this Court is, in any way, an improper venue or an inconvenient forum.

16.    In the event that the Settlement does not become effective according to the terms of the Class Agreement, this Order and Final Judgment shall be rendered null and void as provided by the Class Agreement, shall be vacated and, all orders entered and releases delivered in connection herewith shall be null and void to the extent provided by and in accordance with the Class Agreement.

17.    No nationwide Lupron ® Purchaser Class Member, either directly, representatively, or in any other capacity (other than a nationwide Lupron ® Purchaser Class Member who validly and

-11-

timely elected to be excluded from the Class), shall commence, continue or prosecute against any or

all Releasees any action or proceeding in any court or tribunal asserting any of the Released Claims

defined in the Class Agreement, and are hereby permanently enjoined from so proceeding.

DATED:   _____        _____

                                    Hon. Richard G. Stearns

## EXHIBIT A

INDIVIDUALS AND ENTITIES THAT HAVE PROPERLY EXCLUDED

THEMSELVES FROM THE NATIONWIDE LUPRON® PURCHASER CLASS IN
ACCORDANCEWITH THE ORDER OF _____, 200___ (Docket No. ___).

**[list all Consumer  and TPP Opt Outs]]**

# EXHIBIT C

# TO THE CLASS AGREEMENT

Arkansas Blue Cross and Blue Shield
Health Advantage
Assurant Inc. f/k/a Fortis Insurance
Blue Cross Blue Shield Association
Blue Cross Blue Shield  Georgia
Blue Cross Blue Shield Healthcare Plan of GA
Blue Cross & Blue Shield of Massachusetts
Blue Cross & Blue Shield of Mississippi
Blue Cross Blue Shield Missouri
Blue Cross Blue Shield of North Carolina
Blue Cross Blue Shield of Vermont
The Vermont Health Plan
Blue Cross of California
BC Life & Health Ins. Co.
Blue Cross of Idaho Health Service, Inc.
Capital Blue Cross
CIGNA HealthCare, Inc.
Coventry Health Care
Crossroads Acquisition Corp.
Excellus Health Plan
Government Employees Hospital Assoc.
Golden Rule Ins. Co.
Great-West Life & Annuity Ins. Co.
Group Health Cooperative
The Guardian Life Ins. Co. of America
Health Alliance Plan
Health Net
HealthNow New York, Inc.
HealthPartners
HIP Health Plan of New York
Humana Inc.
The Mail Handlers Benefit Plan
Medical Mutual of Ohio
Medical Mutual Services, LLC
Mid Atlantic Medical Services, LLC
Mountain State Blue Cross Blue Shield
Mutual of Omaha
Noridian Mutual Insurance Company
PacifiCare Health Systems, Inc.
Premera Blue Cross
Priority Health
The Regence Group

Regence BlueCross BlueShield of Oregon
Regence BlueCross BlueShield of Utah
Regence Blue Shield
Regence Blue Shield of Idaho
Tufts Associated HMO
Tufts Benefit Administrators, Inc.
Total Health Plan, Inc.
Tufts Health Plan of New England, Inc..
Unicare Life & Health Ins. Co.
Unicare Health Insurance Co. of Texas, Inc.
Unicare Health Insurance Co. of The Midwest
Unicare Health Plans
Unicare Health Plans of Texas, Inc.
Unicare Health Plans of The Midwest, Inc.
WPS Health Insurance
EPIC Life Insurance Company
UnitedHealth Group, Inc.
Aetna Inc.
Anthem, Inc.
Health Care Service Corporation
WellChoice, Inc.
Highmark, Inc.
CareFirst, Inc.
Group Health Incorporated
Blue Cross and Blue Shield of Florida, Inc.
BlueCross BlueShield of Tennessee
Horizon Blue Cross Blue Shield
Blue Shield of California
Wellmark, Inc.
Oxford Health Plans, Inc.
Blue Cross and Blue Shield of Louisiana
Blue Cross and Blue Shield of Kansas City
Hawaii Medical Service Association
Blue Cross and Blue Shield of Nebraska
Blue Cross and Blue Shield of Montana

# EXHIBIT D

## TO THE CLASS AGREEMENT

## LUPRON® PRICING LITIGATION

| | | |
|---|---|---|
| 1. | MDL 1430: *In Re Lupron® Marketing and Sales Practices Litigation* | United States District Court for the District of Massachusetts<br><br>Case No. 01-CV-10861<br><br>Judge Richard G. Stearns |
| 2. | *Empire Healthchoice, Inc., d/b/a Empire Blue Cross and Blue Shield, Blue Cross and Blue Shield of Florida, Inc., Health Options, Inc., Trigon Insurance Company, d/b/a Trigon Blue Cross Blue Shield, Healthkeepers, Inc., Priority Health Care, Inc., Health Peninsula Care, Inc., Blue Cross and Blue Shield of Kansas City, Good Health HMO, Inc., Wellmark, Inc., d/b/a Wellmark Blue Cross and Blue Shield of Iowa, Wellmark of South Dakota, Inc., d/b/a Wellmark Blue Cross and Blue Shield of South Dakota, Blue Cross Blue Shield of Montana, Inc., California Physicians' Service, d/b/a Blue Shield of California, CareAmerica Life Insurance Company, CPIC Life Insurance Company, Highmark Inc., d/b/a/ Highmark Blue Cross Blue Shield, Keystone Health Plan West, Keystone Health Plan Central, Highmark Services, Inc., Healthguard of Lancaster, Inc., Blue Cross and Blue Shield of Nebraska, Corporate Diversified Services, Inc., Louisiana Health Service & Indemnity Company, Inc., d/b/a Blue Cross and Blue Shield of Louisiana, and Blue Cross Blue Shield of Tennessee, Inc., Tennessee Health Care Network, Inc., Volunteer State Health Plan, Inc., Horizon Healthcare Services, Inc., and Oxford Health Plans, Inc.*<br>*vs. TAP Pharmaceutical Products, Inc., Abbott Laboratories and Takeda Chemical Industries, Ltd.* | United States District Court for the District of Massachusetts<br><br>Part of MDL 1430 - Case No. 01-CV-10861 (Original Case Nos. 02-10015 and 02-10139)<br><br>Judge Richard G. Stearns |
| 3. | *Aetna Health, Inc. vs. TAP Pharmaceutical Products, Inc.* | United States District Court for the District of Massachusetts<br><br>Part of MDL 1430 - Case No. 01-CV-10861 (Original Case No. 1:04-CV-10076)<br><br>Judge Richard G. Stearns |
| 4. | *Cobalt Corporation vs. Abbott Laboratories, Inc., Takeda Chemical Industries Ltd. and TAP Pharmaceutical Products Inc.* | United States District Court for the District of Massachusetts<br><br>Case No. 02-CV-11692 (Original Case No. 02-11692)<br><br>Judge Richard G. Stearns |
| 5. | *Health Care Service Corporation, a Mutual Legal Reserve Company vs. Takeda Chemical Industries, Ltd., TAP Pharmaceutical Products, Inc., and Abbott Laboratories* | United States District Court for the District of Massachusetts<br><br>Part of MDL 1430 - Case No. 01-CV-10861 (Original Case Nos. 02-10015 and 02-10139)<br><br>Judge Richard G. Stearns |

## LUPRON® PRICING LITIGATION

| 6. | *Liberty National Insurance Company and United American Insurance Company vs. Abbott Laboratories, Inc., Takeda Chemical Industries, Ltd., and TAP Pharmaceuticals Products, Inc.* | United States District Court for the District of Massachusetts<br><br>Part of MDL 1430 - Case No. 01-CV-10861 (Original Case No. 04-10175)<br><br>Judge Richard G. Stearns |
|----|----|----|
| 7. | *Harry E. Stetser, Dale E. Nelson, and Michael de Montbrun, individually and on behalf of themselves and all others similarly situated vs. TAP Pharmaceutical Products Inc., Abbott Laboratories, Takeda Chemical Industries, Ltd., Johnson & Johnson, Ethicon Endo-Surgery, Inc., Indigo Laser Corporation, Davit Jett, Christopher Coleman, Scott Hidalgo and Eddy James Hack* | Superior Court<br>New Hanover County, North Carolina<br><br>Case No. 1 CVS 5268<br><br>Judge Paul L. Jones |
| 8. | *Bernard Walker, individually and on behalf of those similarly situated vs. TAP Pharmaceutical Products, Inc., Abbott Laboratories and Takeda Chemical Industries, Ltd.* | Superior Court of New Jersey<br>Cape May County<br><br>Case No. CPM L-682-01<br><br>Judge Joseph C. Visalli |
| 9. | *Acie C. Clark vs. TAP Pharmaceuticals, Inc., Abbott Laboratories, Inc., and Takeda Pharmaceuticals, America, Inc.* | Circuit Court<br>First Judicial Circuit<br>Williamson County, Illinois<br><br>Case No. 01L132<br><br>Judge Phillip G. Palmer |
| 10. | *In re Lupron® Drug Cases*<br>*(JCCP No. 4238)*<br><br>INCLUDES:<br>*Brenda Campbell-Hubbard vs. Abbott Laboratories, Inc.; Takeda Chemical Industries, Ltd.; TAP Pharmaceuticals, Inc.; Doe Corporations 1-20; Does 1 to 100 Inclusive*<br><br>*J. Kelly Farris vs. Abbott Laboratories, Inc. Takeda Chemical Industries, Ltd., Takeda American Holdings, Inc., Takeda Pharmaceuticals America, Inc., and TAP Pharmaceutical Products, Inc. and Does 1-100*<br><br>*Carol Sullivan vs. TAP Pharmaceutical Products, Inc. and Does 1-50* | Superior Court<br>San Francisco, CA<br><br>JCCP No. 4238<br><br>Judge Paul L. Kramer |
| 11. | *Joseph Benoit vs. Takeda Chemical Industries, Ltd., TAP Pharmaceutical Products, Inc., and Abbott Laboratories* | District Court, Jefferson County, Texas 60th District<br><br>Case No. B166742<br><br>Judge James Gary Sanderson |

## LUPRON® PRICING LITIGATION

| | | |
|---|---|---|
| 12. | *Kenneth David Lee Jarman vs. TAP Pharmaceutical Products, Inc. and TAP Pharmaceuticals, Inc.* | Circuit Court<br>Third Judicial Circuit<br>Madison County, Illinois<br><br>Case No. 01L1019<br><br>Judge Daniel J. Stack |
| 13. | *Commonwealth of Pennsylvania vs. TAP Pharmaceutical Products, Inc.; Abbott Laboratories; Takeda Chemical Industries, Ltd.; AstraZeneca PLC; Zeneca, Inc.; AstraZeneca Pharmaceuticals LP; AstraZeneca LP; Bayer AG; Bayer Corporation; GlaxoSmithKline, P.L.C.; SmithKline Beecham Corporation; Glaxo Wellcome, Inc; Pfizer, Inc.; Pharmacia Corporation; Johnson & Johnson; Amgen, Inc.; Bristol-Myers Squibb Company; Baxter International Inc.; Aventis Pharmaceuticals, Inc.; Boehringer Ingelheim Corporation; Schering-Plough Corporation; Dey, Inc.*<br><br>(only insofar as it relates to Lupron®) | Commonwealth Court of Pennsylvania<br>Harrisburg, PA<br><br>Case No. 212 MD 2004 |
| 14. | *State of Wisconsin vs. Abbott Laboratories, et al.*<br><br>(only insofar as it relates to Lupron®) | Circuit Court of Dane County, Wisconsin<br><br>Case No. 04 CV 1709 |
| 15. | *The City of New York vs. Abbott Laboratories Inc. et al.*<br><br>(only insofar as it relates to Lupron®) | Southern District of New York<br><br>Case No. 04 CV 6054<br><br>Judge Barbara S. Jones |
| 16. | *Robert J. Swanston, individually and on behalf of himself and all others similarly situated vs. TAP Pharmaceutical Products Inc.; Abbott Laboratories; Takeda Chemical Industries, Ltd.; Astra Zenecca, PLC; Astra Zeneca Pharmaceuticals, LP; Pharmacia Corporation; Pharmacia & Upjohn, Inc.; Endo-Surgery, Inc.; Indigo Laser Corporation; David Jett and Jane Doe Jett; Christopher Coleman and Jane Doe Coleman; Scott Hidalgo and Amanda Hidalgo; Eddy James Hack and Jane Doe Hack; Kimberlee Chase and John Doe Chase; Janice M. Swirski and John Doe Swirski; Donna Tom and John Doe Tom; David Guido and Jane Doe Guido; Henry Van Mourick and Jane Doe Van Mourick; and Alan Mackenzie and Jane Doe Mackenzie; Does 1-10; ABC Corporations 1-10; XYZ Partnerships and Associations 1-10*<br><br>(only insofar as it relates to Lupron®) | Superior Court, Maricopa County, Arizona<br><br>Case No. CV 2002-004988<br><br>Judge Rebecca A. Albrecht |
| 17. | *Peralta vs. Abbott Laboratories, Inc.*<br><br>(only insofar as it relates to Lupron®) | Superior Court for the State of California, Los Angeles County<br><br>Case No. BC 259587<br><br>Judge Victoria Chaney |

## LUPRON® PRICING LITIGATION

| 18. | *Commonwealth of Kentucky v. Alpharma, Inc et al.*<br><br>(only insofar as it relates to Lupron®) | Commonwealth of Kentucky<br>Franklin Circuit Court - Div. 1<br><br>Civil Action No. 04-CI-1487 |
| --- | --- | --- |

# EXHIBIT E

# TO THE CLASS AGREEMENT

**SHP Reversion Calculation Example 1 (70% SHPRCP) and No TAP Refund**

**Assumptions**

| | | |
|---|---|---|
| SHP Group Total Claims | $ | 70,000,000.00 |
| Total Claims | $ | 100,000,000.00 |
| Total Value of TPP Opt-Outs (TAP Refund) | $ | - |
| Class Counsel Fees Approved by Court | $ | 23,750,000.00   $95M * .25 |
| Total Litigation Related Costs and Expenses Approved by Court | $ | 3,000,000.00 |

**Calculation of TPP Class Fees and Expenses**

| | | |
|---|---|---|
| TPP Class Formula (TPP Settlement Pool-TAP Refund)/((TPP Settlement Pool-TAP Refund) + Consumer Settlement Pool) | $55,000,000/$95,000,000 | 0.578947368 |
| TPP Class Fees Equals the Lesser of Total Class Counsel Fees times TPP Class Formula or $13,750,000 | | $13,750,000 |
| TPP Class Expenses Equals TPP Class Formula times Approved Costs and Expenses | $ | 1,736,842.11 |
| TPP Share of Notice and Admin Expenses | $ | 1,000,000.00 |

**Calculation of SHP Group Reversion Amount**

| | | | | |
|---|---|---|---|---|
| SHPRCP | | | 70.00% $70,000,000/$100,000,000 | |
| SHP Over/Underage | | | 20.00% | |
| | SHP Over/Under % | Times TPP Settlement | Times 1 - (TPP Share of Fees and Expenses) Divided by $55M | |
| | 20.00% | $ 110,000,000.00 | 70.024% $ | |
| SHP Group Reversion Amount | | | | Equals 15,405,263.16 |

**SHP Reversion Calculation Example 1A (70% SHPRCP) and $2,000,000 TAP Refund**

**Assumptions**

| | | |
|---|---|---|
| SHP Group Total Claims | $ | 70,000,000.00 |
| Total Claims | $ | 100,000,000.00 |
| Total Value of TPP Opt-Outs (TAP Refund) | $ | 2,000,000.00 |
| Class Counsel Fees Approved by Court | $ | 23,750,000.00   $95M * .25 |
| Total Litigation Related Costs and Expenses Approved by Court | $ | 3,000,000.00 |

**Calculation of TPP Class Fees and Expenses**

| | | |
|---|---|---|
| TPP Class Formula (TPP Settlement Pool−TAP Refund)/((TPP Settlement Pool−TAP Refund) + Consumer Settlement Pool) | $53,000,000/$93,000,000 | 0.569892473 |
| TPP Class Fees Equals the Lesser of Total Class Counsel Fees times TPP Class Formula or $13,750,000 | | $13,534,946 |
| TPP Class Expenses Equals TPP Class Formula times Approved Costs and Expenses | $ | 1,709,677.42 |
| TPP Share of Notice and Admin Expenses | $ | 1,000,000.00 |

**Calculation of SHP Group Reversion Amount**

| | | | |
|---|---|---|---|
| SHPRCP | | | 70.00%   $70,000,000/$100,000,000 |
| SHP Over/Underage | | | 20.00% |
| | SHP Over/Under % | **Times**<br>TPP Settlement − TAP Refund | **Times**<br>1 − (TPP Share of Fees and Expenses)<br>Divided by $55M |
| SHP Group Reversion Amount | 20.00% | $   108,000,000.00 | 70.464% |

| | |
|---|---|
| | **Equals** |
| | $ 15,220,293.26 |

**SHP Reversion Calculation Example 2 (SHPRCP is Negative)**

**Assumptions**

| | | |
|---|---|---|
| SHP Group Total Claims | $ 42,000,000.00 | |
| Total Claims | $ 100,000,000.00 | |
| Class Counsel Fees | $ 23,750,000.00 | $95M * .25 |
| TPP Share of Class Counsel Fees | | 11/19 $55M of $95M |
| Class Counsel Expenses | $ 3,000,000.00 | |
| TPP Share of Class Counsel Expenses | | 11/19 $55M of $95M |
| TPP Share of Notice and Admin Expenses | $ 1,000,000.00 | |

**Calculation**

| | | |
|---|---|---|
| SHPRCP | 42.00% | |
| SHP Over/Underage | -8.00% | |
| SHP Underage Times $110,000,000 | $ 8,800,000.00 | |
| Deducted from $15,000,000 escrow Leaving Group Escrow at | $ 6,200,000.00 | |
| Interest to be returned pro rata | | |

**SHP Reversion Calculation Example 3 (80% SHPRCP) and No TAP Refund**

**Assumptions**

| | | |
|---|---|---|
| SHP Group Total Claims | $ | 80,000,000.00 |
| Total Claims | $ | 100,000,000.00 |
| Total Value of TPP Opt-Outs (TAP Refund) | $ | - |
| Class Counsel Fees Approved by Court | $ | 23,750,000.00  $95M * .25 |
| Total Litigation Related Costs and Expenses / | $ | 3,000,000.00 |

**Calculation of TPP Class Fees and Expenses**

| | | |
|---|---|---|
| TPP Class Formula (TPP Settlement Pool-TAP Refund)/((TPP Settlement Pool-TAP Refund) + Consumer Settlement Pool) | $55,000,000/$95,000,000.l | 0.578947368 |
| TPP Class Fees Equals the Lesser of Total Class Counsel Fees times TPP Class Formula or $13,750,000 | $13,750,000 | |
| TPP Class Expenses Equals TPP Class Formula times Approved Costs and Expenses | $ | 1,736,842.11 |
| TPP Share of Notice and Admin Expenses | $ | 1,000,000.00 |

**Calculation of SHP Group Reversion Amount**

| | | | | | |
|---|---|---|---|---|---|
| SHPRCP | | 80.00% $80,000,000/$100,000,000 | | | |
| SHP Over/Underage | | 30.00% | | | |
| | | SHP Over/Under % 30.00% | Times TPP Settlement $110,000,000.00 | Times 1 - (TPP Share of Fees and Expenses) Divided by $55M 70.024% | Equals $ 23,107,894.74 |
| SHP Group Reversion Amount | | | | | |

**SHP Reversion Calculation Example 3A (80% SHPRCP) and $2,000,000 TAP Refund**

**Assumptions**

| | | |
|---|---|---|
| SHP Group Total Claims | $ | 80,000,000.00 |
| Total Claims | $ | 100,000,000.00 |
| Total Value of TPP Opt-Outs (TAP Refund) | $ | 2,000,000.00 |
| Class Counsel Fees Approved by Court | $ | 23,750,000.00 $95M * .25 |
| Total Litigation Related Costs and Expenses / | $ | 3,000,000.00 |

**Calculation of TPP Class Fees and Expenses**

| | | |
|---|---|---|
| TPP Class Formula (TPP Settlement Pool-TAP Refund)/(TPP Settlement Pool-TAP Refund) + Consumer Settlement Pool) | $53,000,000/$93,000,0 | 0.569892473 |
| TPP Class Fees Equals the Lesser of Total Class Counsel Fees times TPP Class Formula or $13,750,000 | $13,534,946 | |
| TPP Class Expenses Equals TPP Class Formula times Approved Costs and Expenses | $ | 1,709,677.42 |
| TPP Share of Notice and Admin Expenses | $ | 1,000,000.00 |

**Calculation of SHP Group Reversion Amount**

| | | |
|---|---|---|
| SHPRCP | 80.00% | $80,000,000/$100,000,000 |
| SHP Over/Underage | 30.00% | |

| | Times | |
|---|---|---|
| | SHP Over/Under % | Settlement -TAP Re |
| | 30.00% | $ 108,000,000.00 |

| | Times 1 - (TPP Share of Fees and Expenses) Divided by $55M | |
|---|---|---|
| | 70.464% | |

| SHP Group Reversion Amount | Equals $ 22,830,439.88 |
|---|---|

# EXHIBIT F

# TO THE CLASS AGREEMENT

## ABC Health Plan

### Lupron Payment Data: 01/01/00 through 12/31/01

| J Code | | | | 01/01/00 through 12/31/01 | | |
|---|---|---|---|---|---|---|
| 00026288489 | oicu812hmy | 45 | 13-Feb-00 | 524854 | $743.40 | $643.40 |
| 00055288586 | lsmft1b2s2 | 58 | 21-Feb-00 | 325125 | $684.00 | $684.00 |
| 00099588586 | obafgkmms | 65 | 19-Aug-00 | 25212352 | $31,215.25 | $28,215.25 |
| 00055288586 | tgcfaoqtcd | 52 | 25-Feb-00 | 7985248 | $789.15 | $684.00 |
| 00099588586 | adempbopp | 45 | 09-Apr-01 | 9287960 | $101,548.25 | $97,215.25 |
| 00026288586 | fupc069941 | 23 | 05-Jun-00 | 52180085 | $2,014.20 | $1,920.95 |
| 00026288682 | iwo24hftiw | 51 | 20-Jan-00 | 548320 | $250.25 | $166.62 |
| 00026288489 | clwtcwityw | 51 | 21-Feb-00 | 215480 | $854.25 | $643.40 |
| 00045288586 | nply2shwoy | 18 | 09-Aug-01 | 302504 | $6,547.25 | $5,471.00 |
| 00026528844 | bttwgtwwwh | 45 | 29-May-01 | 40504 | $14,258.30 | $11,782.50 |
| 00026288586 | 1ibla2ibsa | 23 | 08-Feb-00 | 5487931 | $8,547.25 | $7,225.30 |
| 00026288489 | 76tltbpa11 | 61 | 05-Mar-00 | 3215480 | $958.25 | $643.40 |
| 00045288586 | aechocirac | 45 | 31-Jul-01 | 3215874 | $6,581.03 | $5,471.00 |
| 00099588586 | 13moadmcyh | 25 | 01-Aug-00 | 9517536 | $3,658.47 | $2,895.25 |
| 00026288586 | oyg43bieco | 35 | 22-Jul-00 | 6584014 | $2,487.02 | $1,920.95 |
| 00099588586 | 55bitbptat | 14 | 01-Aug-01 | 38527419 | $325.14 | $215.25 |
| 00026288586 | lmnttmotma | 61 | 05-Jun-00 | 6547893 | $3,547.20 | $1,920.95 |
| 00099588586 | wmiwtdmebs | 34 | 25-Sep-01 | 4587125 | $33,547.78 | $27,215.25 |
| 00026288586 | 99yitp99yb | 51 | 26-May-00 | 65487854 | $3,547.10 | $1,920.95 |
| **TOTAL PAID 01/01/00 TO 12/31/01** | | | | | $222,103.54 | $196,854.67 |
| | | | | | | |
| ** Age at date of service or date of fill. | | | | | | |