## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF ALABAMA

| | |
|---|---|
| BLUECROSS AND BLUESHIELD OF ALABAMA; and BLUECROSS AND BLUESHIELD OF MICHIGAN, <br><br> Plaintiffs, <br><br> v. <br><br> TAP PHARMACEUTICAL PRODUCTS INC. (formerly known as TAP HOLDINGS, INC.); ABBOTT LABORATORIES; TAKEDA PHARMACEUTICAL COMPANY LIMITED (formerly known as TAKEDA CHEMICAL INDUSTRIES, LTD.); TAKEDA AMERICA HOLDINGS, INC., ONCOLOGY SUPPLY; AMERISOURCE BERGEN SPECIALTY GROUP; AMERISOURCE BERGEN CORPORATION; FICTITIOUS DEFENDANTS, the identities of which are unknown to Plaintiffs, and through the exercise of due diligence cannot be known to Plaintiffs at this time, but who will be added as defendants by amendment as necessary upon Plaintiffs' identifying them, A-Z, intending to refer those entities or persons that committed any of the acts and/or omissions of which the named Defendants are alleged herein to have committed; AA-ZZ, intending to refer to those persons or entities that conspired to commit any of the acts and/or omissions of which the named Defendants are alleged herein to have committed; AAA-ZZZ, intending to refer to those persons or entities that have committed any acts or omissions that have proximately caused injury and damage to Plaintiffs as alleged herein, <br><br> Defendants. | CIVIL ACTION NO. 2:06-CV-536-MEF |

## PLAINTIFFS' MOTION TO REMAND TO STATE COURT
## AND MEMORANDUM OF LAW IN SUPPORT THEREOF

Come now the Plaintiffs, BlueCross and BlueShield of Alabama ("BCBS Alabama") and BlueCross and BlueShield of Michigan ("BCBS Michigan"), and move this Court to remand this case to the Circuit Court of Montgomery County, Alabama. This Court should remand this case because (a) Defendants failed to comply with the procedural requirements of 28 U.S.C. § 1446; (b) this case presents only state law claims, and (c) there is no complete diversity of citizenship between the parties. Were this Court to disagree and not remand this case forthwith, Plaintiffs request permission to proceed with the jurisdictional discovery served this week. As further grounds for this Motion, Plaintiffs state:

## I. INTRODUCTION

1. This lawsuit has been improperly removed to this Court and should be remanded to the Circuit Court of Montgomery County, Alabama, where it was originally filed. The Defendants filing the Notice of Removal were required by 28 U.S.C. § 1446(a) to file "a copy of all process, pleadings, and orders served upon such defendant or defendants in such action," 28 U.S.C. § 1446(a), with the Notice of Removal within 30 days after service. 28 U.S.C. § 1446(b). The only documents (other than supporting affidavits) filed with the Notice of Removal were the Complaint, Amended Complaint, and two summonses (for service of the Complaint and the Amended Complaint) addressed to and served on Defendant TAP Pharmaceutical Products, Inc. Neither the Civil Cover Sheet, nor the summonses filed and served on the remaining defendants, have been filed with this Court. Therefore, the Notice of Removal fails to comply with 28 U.S.C. § 1446(a), and this case should be remanded on this procedural basis alone. *Kisor v. Collins*, 338 F. Supp. 2d 1279, 1281 (N.D. Ala. 2004).

2. In addition, contrary to what the Defendants assert in their removal petition, this Court lacks subject matter jurisdiction over this litigation because it involves no federal

question. *See* 28 U.S.C. § 1331. Indeed, the Complaint states expressly: "Plaintiffs bring this action pursuant to state common law and statutes. No federal claim is asserted." Complaint ¶ 48. Moreover, there is a lack of diversity of citizenship between the parties pursuant to 28 U.S.C. § 1332 because of the presence of known (Oncology Supply) and as-yet-unidentified (the Fictitious Doctor-Defendants) Alabama resident defendants.

## II.    ARGUMENT[1]

### A.    STANDARD FOR REMOVAL

3.    A defendant in a state court action can remove the case to a United States District Court only if that court has original jurisdiction over the action. 28 U.S.C. §1441(a). Subject matter jurisdiction is a question of law. *Triggs v. John Crump Toyota,* Inc., 154 F.3d 1284, 1287 (11th Cir. 1998), *citing Tapscott v. MS Dealer Service Corp.,* 77 F.3d 1353, 1356 (11th Cir. 1996). In making that legal determination, all factual allegations in the complaint must be accepted as true and construed in the light most favorable to the plaintiff. *Henderson v. Washington Nat'l Ins. Co.,* 2006 WL 1867353, at *2 (11th Cir. July 7, 2006).

4.    The party seeking to remove a case to federal court must bear the heavy burden of establishing federal jurisdiction. *Triggs*, 154 F.3d at 1287 n.4; *Burns v. Windsor Ins. Co.*, 31 F.3d 1092, 1095 (11th Cir. 1994). "Removal is a statutory privilege, rather than a right, and the removing party must comply with the procedural requirements mandated in the statute when desirous of availing the privilege." *Jerrell v. Kardos Rubber Co.,* 348 F. Supp. 2d 1278, 1283 (M.D. Ala. 2004) (quoting *Shamrock Oil & Gas Corp. v. Sheets*, 313 U.S. 100, 104 (1941)).

---

[1]    As the procedural defect in the Notice of Removal is so clear, Plaintiffs do not further address that basis for remand in the Argument, but address only the federal question and diversity bases raised by the Notice of Removal.

5.    Once a case has been removed to federal court, the non-removing party may move for remand, which will be granted if "it appears that the district court lacks subject matter jurisdiction." *See* 28 U.S.C. § 1447(c) .

6.    It is well-settled that "removal statutes are construed narrowly; where plaintiff and defendant clash about jurisdiction, uncertainties are resolved in favor of remand." *Burns*, 31 F.3d at 1095; *University of South Ala. v. Amer. Tobacco Co.*, 168 F.3d 405, 411 (11th Cir. 1999). "[T]he letter of the law is clear and it requires strict construction of the language of the [removal] statute" and "all doubts about removal must be resolved in favor of remand." *Jerrell*, 348 F. Supp. 2d at 1281, 1283.

7.    In this case, remand is warranted because there is no federal question at issue, and there is a lack of complete diversity of citizenship between the parties, depriving this Court of subject matter jurisdiction over the case.


**B.    THIS CASE SHOULD BE REMANDED BECAUSE IT PRESENTS ONLY STATE LAW CLAIMS AND NO FEDERAL QUESTION IS PRESENT.**

8.    No federal claim is raised or in any way implicated by any of the claims in Plaintiffs' Complaint, as originally filed or amended.  Defendants distort and misrepresent precedent on this very point in their Notice of Removal.   Since no federal question is present, this case should be remanded to the Circuit Court of Montgomery County, Alabama.

9.    Plaintiffs' Complaint was filed on May 12, 2006, and the First Amended Complaint ("FAC") was filed on May 16, 2006, in the Circuit Court of Montgomery County, Alabama.

10    The FAC seeks recovery for the actions of Defendants, manufacturers (TAP Pharmaceutical Products, Inc., Abbott Laboratories, Takeda Pharmaceutical Company, Limited, Takeda America Holdings, Inc.), wholesalers (Oncology Supply Company, AmeriSource Bergen Specialty Group, Amerisource Bergen Corporation), and fictitious doctor-defendants (medical providers in the State of Alabama) for their fraudulent schemes and conspiracy, including manipulation of the average wholesale price ("AWP") of Lupron , to maximize their profits from the sale of the injectable drug at Plaintiffs' expense.

11    Specifically, the FAC asserts only state law claims for: Count I, Unjust Enrichment, ¶¶ 152-59; Count II, Fraud, ¶¶ 160-66; Count III, Violation of Consumer Protection Statute, ¶¶ 167-84; Count IV, Civil Conspiracy, ¶¶ 185-90; Count V, Aiding & Abetting/Facilitating, ¶¶ 191-97.  Plaintiffs have expressly and unequivocally disavowed any federal claims.  *See* Complaint ¶ 48.

12.    Before being removed to this Court, this case was assigned by the Circuit Court of Montgomery County, Alabama, to the Honorable Charles Price,[2] the judge handling the State of Alabama's average wholesale price litigation.  *See State of Alabama v. Abbott Laboratories, Inc., et al.*, Civil Action No. CV05-219 (Circuit Court of Montgomery County, Alabama) (Price, J.) (copy of Order dated October 13, 2005, attached hereto as Exhibit B).

13.    In support of their removal petition, Defendants contend that this Court has subject matter jurisdiction over this case because Plaintiffs' state law claims allegedly are preempted by the Medicare Act.  Defendants are wrong.

_____

[2]    *See* Docket, BlueCross and BlueShield of Alabama, et al. v. TAP Pharmaceutical Products, Inc., Civil Action No. 2006cv1350 (attached hereto as Exhibit A), at 4 (Entry for Date: 05232206; Time; 1110).

14.    At the outset, no court has ever agreed with this argument, despite the fact that certain of these Defendants, and other drug companies in related litigation, have raised this precise argument over and over.

15.    Further, the determination of whether defendants' conspiratorial schemes were fraudulent in violation of Alabama state law will not require resolution of any issue concerning the administration of the Medicare program. Thus, there can be no federal preemption of these claims.

16.    Defendants argue that Plaintiffs' state law claims raise substantial federal questions, citing *Franchise Tax Bd. v. Constr. Laborers Vacation Trust*, 463 U.S. 1 (1983).  In *Franchise Tax Bd.*, the Supreme Court, citing the established well-pleaded complaint rule, held that removal was inappropriate.  In the context of an ERISA defense, the Court explained that the federal question forming the basis for removal "must be an element, and an essential one, of plaintiff's cause of action." *Franchise Tax Bd.*, 463 U.S. at 12.

17.    As in *Franchise Tax Bd.*, the litigation against defendants in the present case in no way "turns on a question of federal law." *Franchise Tax Bd.*, 463 U.S. at 28.  Plaintiffs are not challenging the concept, but rather the manipulation by Defendants, of AWP to determine physician reimbursement under the Medicare program, as Defendants insist. (In point of fact, as of January 1, 2005, the Medicare program no longer uses AWP as a benchmark for reimbursement, having switched instead to a system based on Average Sales Price ("ASP").  The fact that Plaintiffs' FAC seeks an award of damages and other relief "through at least January 2005" undermines Defendants' contention that the state law claims asserted by Plaintiffs in any way "turn on" questions pertaining to the federal Medicare Program).

18.    Rather, Plaintiffs allege that the Defendants' provision of free samples, intentional artificial inflation of the AWP, and arranging for doctors to seek and receive

6

reimbursements at the inflated AWP from Plaintiffs is the cornerstone of the alleged scheme and conspiracy to defraud Plaintiffs by increasing physician profits at the expense of Plaintiffs. Plaintiffs' claims will in no way require resolution of complex issues of federal law. Thus, the Defendants' introduction of a straw-man issue regarding the interpretation of the term "AWP" under the federal Medicare regulations has no merit.

19.    No court in the country has ever accepted Defendants' argument of a federal question pertaining to Medicare that warrants removal in this context. In *Montana v. Abbott Laboratories*, 266 F. Supp. 2d 250 (D. Mass. 2003), and again in *Minnesota v. Pharmacia Corp.*, No. 03-10069-PBS, 2003 WL 21977227 (D. Mass. Aug 20, 2003), the AWP MDL Judge in Boston, Judge Patti Saris, sensibly, and correctly, ruled that the mere need to look to federal law to construe the meaning of "Average Wholesale Price" [in the context of the specific cases before her] did not generate a federal question sufficient for jurisdiction, where the federal law in question does not provide a private right of action for violation of that federal law. *See Merrell Dow Pharmaceuticals, Inc. v. Thompson*, 478 U.S. 804 (1986). Such a task certainly falls well within the competence of the Circuit Court of Montgomery County, especially in light of the pending related State of Alabama's AWP case.

20.    It should be noted that Defendants' discussion of Judge Saris' opinion in *Montana,* 266 F. Supp. 2d at 255-56, is disingenuous at best. This is because Defendants fail to quote essential qualifying language used by the Court in describing its holding. Contrary to Defendants' assertion, Judge Saris did not "hold," Defendants' Notice of Removal at ¶ 25, that the defendant in that case "readily wins this dispute." *Montana*, 266 F. Supp. 2d at 255. Instead, in the very next sentence following this quote, the Court qualifies that "**[a]t first blush**, this element of Minnesota's suit presents a federal question." *Id*. (bold emphasis added). Although the Court

acknowledges that "adjudication of whether the term 'average wholesale price' in the Medicare statute embraces a 'spread **could have** broad implications for Medicare reimbursements and co-payments," Judge Saris holds "[b]ut this Court is bound by the Supreme Court's decision in *Merrell Dow*, which requires remanding Minnesota's suit." *Id.* (bold emphasis added).

21.     If, after this decision, any question lingered as to the issue of federal question jurisdiction, it was put to rest in a subsequent decision by Judge Saris remanding seven (7) state cases brought by the Attorneys' General of the States of Illinois, Kentucky and New York. *See* March 13, 2006 Order *In re Pharmaceutical Industry Average Wholesale Price Litig.*, 2006 WL 704473 (D. Mass. March 13, 2006).  In that Order, the MDL Court resoundingly rejected a second effort by the manufacturer defendants to federalize the otherwise state-law claims of the state Attorneys General.  *See id.* at *5  ("In the defendants' view, the issue of defining the term AWP in the federal Medicare statute, 42 U.S.C. § 1395u(o), meets the *Grable* three-part test for determining when a state law raises a federal question; that is to say, it is a contested federal issue, the issue is substantial and allowing federal jurisdiction would be "consistent with congressional judgment about the sound division of labor between state and federal courts governing the application of § 1331." *Grable*, 125 S. Ct. at 2367).

22.     The AWP MDL Court's rejection of this argument this past Spring came on the heels of similar rejections of the argument by several other federal courts, namely, the Eastern District of Pennsylvania, the Western District of Wisconsin and the District of Minnesota. *See Pennsylvania v. TAP Pharm. Prods., Inc.*, 415 F. Supp. 2d 516, 524, 525 (E.D. Pa. 2005) (finding that Pennsylvania's claim "does not present an issue arising under federal law" because... "the administration of Medicare would be unaffected by a state-court adjudication of this matter....");

8

*Wisconsin v. Abbott Labs.*, 390 F. Supp. 2d 815 (W.D. Wis. 2005) (same); *Minnesota v. Pharmacia Corp.*, 2005 WL 2739297 (D. Minn. Oct. 24, 2005) (same).

23.    The interpretation of "Average Wholesale Price" or "AWP" under the Medicare statute is but one of many issues which Defendants seek to impose with regard to the state claims asserted by Plaintiffs.  While it may become an appropriate inquiry down the line – a point which Plaintiffs do not concede at this juncture given the confines of their state law theories under their well-pleaded Complaint – that particular question will not be the only or even predominant legal or factual issue presented in the case. Nor do Defendants explain how or why interpretation of the Medicare statute is important, much less central to this case.  This Alabama litigation was filed in state court under exclusively state law theories. To the extent the interpretation of one term in a Medicare statute becomes necessary, the Alabama state court is capable of performing that legal function in connection with the state law claims, as every other court which has faced the question has held.

24.    This case is akin to Eleventh Circuit precedent in which federal question jurisdiction has been found lacking even though the interpretation of some federal act or statute was a necessary element of Plaintiffs' state law claims. For example, in *City of Huntsville v. City of Madison*, 24 F.3d 169 (11th Cir. 1994), the Plaintiff contended that federal question jurisdiction existed because the interpretation of a section of the federal Tennessee Valley Authority ("TVA") Act was "pivotal" to the contractual dispute between the parties. *Id.* at 172.  Recognizing that the TVA Act did not provide a private remedy and concluding that the TVA Act was not "that rare [federal] statute" that raises a federal question "substantial enough to confer federal question jurisdiction when it is an element of a state cause of action," the court refused to exercise federal jurisdiction over the action.  *Id.* at 174-75; *see also Jairath v. Dyer*, 154 F.3d 1280, 1283 (11th Cir.

1988) (concluding that removal jurisdiction was improperly exercised because proof of violation of the Americans with Disabilities Act, although a necessary element of the Plaintiff's state law discrimination claim, was an insufficiently substantial federal question). Similarly here, to the extent any interpretation of the Medicare statute is required regarding Plaintiffs' payments to Alabama healthcare providers for the drug Lupron®, that interpretation is not substantial enough to confer federal question jurisdiction over this case.

25.    This is not the first time this issue has been presented to this Court. In the related action filed by the Attorney General for the State of Alabama, Judge Myron Thompson of this Court rejected this very argument. Judge Thompson remanded the case despite Defendants', including present Defendant Abbott Laboratories', argument "that the [Plaintiffs' state law] claims 'necessarily raise a stated federal issue, actually disputed and substantial, which a federal forum may entertain without disturbing any congressionally approved balance of federal and state judicial responsibilities.'" *See* Order dated August 11, 2005, in *State of Alabama v. Abbott Laboratories, Inc., et al.*, Civil Action No. 2:05cv647-T (attached hereto as Exhibit C).[3]

26.    Plaintiffs respectfully submit that this Court should follow the lead of Judge Thompson and every other federal court to face the question of federal subject matter jurisdiction in AWP litigation, and remand this case to the Circuit Court of Montgomery County, Alabama.

---

[3]    As noted above, the *State of Alabama* case was assigned to the Honorable Charles Price, to whom this case will be remanded once this Court determines the lack of federal jurisdiction. *See* Exhibit A hereto. At that point, this case can proceed efficiently in a coordinated fashion with the State's case, which raises similar issues.

C.    THIS CASE SHOULD BE REMANDED BECAUSE THERE IS NOT COMPLETE DIVERSITY   OF CITIZENSHIP BETWEEN PLAINTIFFS AND DEFENDANTS.

27.    Plaintiffs allege that Oncology Supply Company ("OSC") is a member company of  the Amerisource Bergen Specialty Group ("ABSG"), which is a subsidiary of Amerisource Bergen Corporation ("ABC").  FAC ¶ 3.  Plaintiffs allege that "Defendant OSC has its principal place of business in Alabama.  Defendants ABC and ABSG have their principal places of business in, respectively, Pennsylvania and Texas." *Id.*  Because OSC has Alabama citizenship, there is no complete diversity and this case should be remanded.

28.    Defendants' Notice of Removal claims that OSC is not an Alabama citizen, contending that OSC and ABSG are "d/b/a or trade name[s] of ASD Specialty HealthCare, Inc., a California corporation with its principal place of business in Texas. " Notice of Removal ¶ 17 (relying on a three paragraph affidavit from ABC's Senior Legal Assistant, Ms. Kammerer, Exhibit 4 to Notice of Removal).  Defendants' arguments fail both as a matter of fact and of law to meet their heavy burden of establishing removal jurisdiction.

29.    The Defendants' own public information regarding themselves nowhere mentions an entity named  "ASD Specialty Healthcare, Inc[4]."  As alleged by Plaintiffs, Defendants publicly represent that OSC and an ASD Healthcare ("ASD") are "sister companies"[5] and member

---

[4]    No reference is made to any such entity apart from "ASD Healthcare" on any of the Defendants' websites.  A computer search of "ASD Specialty HealthCare, Inc." links to the ASD Healthcare website, www.asdhealthcare.com (last viewed July 12, 2006).

[5]    OSC's website, www.oncologysupply.com (last viewed July 12, 2006), under "About Us," and "Company Information," states that it "is a part of the Amerisource Bergen Corporation and through its sister companies can offer a full array of  diagnostics, plasma derivatives, nephrology pharmaceuticals, and vaccines."

companies of ABSG,[6] a subsidiary of ABC.  OSC's headquarters and address are in Dothan,

Alabama[7]; ABSG's is Addison, Texas;[8] and ABC's is Pennsylvania.[9]

        30.     Due to the lack of any mention of an entity named "ASD Specialty HealthCare

Group, Inc." except as ASD Healthcare, Ms. Kammerer's Affidavit seemingly contradicts the

organizational structure given on Defendants' own websites and held out to the public.  In light of

this confusion, Defendants have failed to meet their heavy burden of demonstrating diversity

jurisdiction by clear and convincing evidence, and this case should be remanded.  *Poole v. American*

*International Group, Inc.,* 2006 WL 623962, at *1 & *2 (M.D. Ala. March 9, 2006) ("Because

federal court jurisdiction is limited and removal jurisdiction raises significant federalism concerns,

---

[6]     *See* ABSG's website, www.absg.com (last viewed July 12, 2006). Under "Our Companies," "Distribution Services" the following companies, with links to their websites, appear:

> ASD Healthcare - A leading supplier to physicians in nephrology, oncology, plasma, primary care and vaccine health care.
> Besse Medical - One of the largest nationwide distributors of vaccines, biologicals, and injectables.
> Oncology Supply - One of the largest nationwide distributors of oncology products and practice management solutions.

No mention is made of an ASD HealthCare Specialty Group, Inc.

[7]     On the "Contact Us" section of its website, www.oncologysupply.com, (last viewed July 12, 2006), OSC gives its address as "Oncology Supply Company, 2801 Horace Shepard Drive, Dothan, AL 36303-1038."

[8]     www.absg.com (last viewed July 12, 2006).

[9]     ABC is the largest pharmaceutical supply channel in the world, "with five business units and more than 13,000 associates in the United States, Puerto Rico, Canada and the United Kingdom. Revenues for fiscal 2005 were $50 billion." *See* "About Us," "Our History," www.amerisourcebergen.com (last viewed July 12, 2006).  ABC's website lists its "subsidiaries," including "Amerisource Bergen Specialty Group" and an "ASD Healthcare."  Links to those websites are given.  No mention is made of an ASD Specialty Healthcare, Inc.  *Id.*

the Eleventh Circuit Court of Appeals has held that it favors remand of removed cases when federal jurisdiction is not absolutely clear, explaining that 'removal statutes are construed narrowly; where plaintiff and defendant clash about jurisdiction, uncertainties are resolved in favor of remand.'" (quoting *Rayfield v. Nat'l Auction Group, Inc.*, 878 F. Supp. 203, 206 (M.D. Ala. 1995)).

31.    Further, Ms. Kammerer's Affidavit baldly states legal conclusions that ABSG and OSC are "not a separate legal entity" from "ASD Specialty Healthcare, Inc.," and that their "principal place of business" is in Texas.  Again, under controlling law, this does not meet the Defendants' burden on removal of establishing that there is not complete diversity of citizenship. "[T]he removing party has a burden of showing facts sufficient to establish diversity of citizenship, which mere legal conclusions and generalities fail to establish.  A statement that a state is "the 'principal place of business' is a mere legal conclusion without factual content or weight." *McMahan v. CRC Industries, Inc.*, 2005 WL 2077318, at *2 (M.D. Fla. August 29, 2005).  Further, the *McMahan* court noted that where, as here, a defendant's "dismissive submission of a sparse and conclusory affidavit, notwithstanding the readily available and abundant information about the location and extent of the corporate enterprise, leaves the disinterested observer somewhat puzzled but, nonetheless, confident that [defendant] has not met the initial burden necessary to maintain federal diversity jurisdiction." *Id.*

32.    It is well settled in the Eleventh Circuit that a parent corporation's citizenship is not automatically imputed to its subsidiaries.  *See Fitzgerald v. Seaboard System R.R., Inc.*, 647 F. Supp. 205, 208 (S.D. Ga. 1985) (refusing to impute citizenship of parent to subsidiary).  The issue is whether the subsidiary is a separate entity.  "Whether a subsidiary is a separate entity is a question of fact." *Id.* (quoting *Burnside v. Sanders Associates, Inc.*, 507 F. Supp. 165, 166-67 (N.D.

Tex. 1980), *aff'd* 643 F.2d 389 (5th Cir. 1981)); *see also Vareka Investments v. American Inv. Properties, Inc.*, 724 F.2d 907, 910 (11th Cir. 1984).

  33. The factual determination of a corporation's principal place of business is made based on "total activities" of the entities. "This analysis incorporates both the 'place of activities' test (focus on production or sales activities), and the 'nerve center' test (emphasis on the locus of the managerial and policymaking functions of the corporation)." *Vareka*, 724 F.2d at 910; *Sweet Pea Marine, Ltd. v. APJ Marine, Inc.*, 411 F.3d 1242, 1247 (11th Cir. 2005). "The evaluation of a corporation's nerve center is a rather straightforward inquiry, looking at the locus of the corporation's managerial and policymaking functions." *Moll v. Allstate Floridian Insurance*, 2005 WL 2007104, *3 (M.D. Fla. 2005). The 'place of activities' prong involves a pragmatic focus on the day-to-day activities of the corporate life." *Id.*; *see also Mercury Finance Corp. of Alabama v. Aetna Cas. & Sur. Co. of Illinois*, 900 F. Supp. 390, 393-95 (M.D. Ala. 1995) (discussing both tests and factors to be considered).

  34. In applying these tests to the issue of whether or not a subsidiary is a separate entity from a parent, the "courts consider such matters as the degree of control exercised by the parent, the relationship between parent and subsidiary activities, the membership of the Board of Directors, and the maintenance of separate corporate books." *Fitzgerald*, 647 F. Supp. at 208; *see also Sweet Pea Marine,* 411 F.3d at 1248 (considering factors of mailing address, location of directors, annual meetings location, and location of only asset in determining principal place of business for foreign corporation); *Vareka,* 724 F.2d at 910 (same). These factors are not exhaustive.

  35. Ms. Kammerer's Affidavit contains no information regarding any of these critical factual considerations as to whether, as she claims, OSC or ABSG are in fact non-separate

legal entities from an ASD Specialty Healthcare Group, Inc.  Again, defendants have failed to meet their heavy burden of establishing jurisdiction on removal and this case should be remanded.[10]

      36.     Ironically, both of the cases cited by Defendants on this point in their Notice of Removal in fact support Plaintiffs.  *McGinnitie v. Hobbs*, 420 F.3d 1234, 1239 (11th Cir. 2005) involved a straightforward application of the nerve center test prong of the total activities test to an inactive in-state corporation which was purchased by and integrated into an out-of-state corporation as a holding company.  Because defendant had shown that all decisions and control regarding the in-state passive holding company were made from out-of-state, the Court found it not to be a separate entity, despite the corporate form, for purposes of diversity jurisdiction.  No allegation has been made by defendants that OSC is merely a holding company with no Alabama activities.

      37.     *Brizendine v. Continental Casualty Co.*, 773 F. Supp. 313 (N.D. Ala. 1991), cited by Defendants, resulted in a *remand* to state court of a case where a company had been sued under its trade name.  The decision does not address the issue of the citizenship for diversity jurisdiction purposes.  In *Brizendine*, the defendant, named in the complaint as CNA Insurance Company, alleged that because the name "CNA" was a trade name used by Continental Casualty Company, it had been improperly served, and the time for federal removal began when the Plaintiff amended its pleading to add Continental Casualty Company.  The court disagreed and remanded on the grounds the removal was untimely, after finding that service was proper under Alabama law because Defendant had widely used its trade name to engage in the insurance business and that

---

[10]     At a minimum, Plaintiffs are entitled to responses to their jurisdictional discovery on this point and the requisite factors.

Defendant in fact received service of the original complaint despite the fact that it was named by its trade name.[11]

38.    For these reasons, as well as those given above, this case should be remanded to the Circuit Court of Montgomery County, Alabama.

**D.    WHERE CITIZENSHIP OF FICTITIOUS DEFENDANTS CANNOT BE QUESTIONED, REMAND IS APPROPRIATE.**

39.    Plaintiffs' FAC asserts claims against "Fictitious Defendants, the identities of which are unknown to Plaintiffs, and through the exercise of due diligence cannot be known to Plaintiffs at this time, but who will be added as defendants by amendment as necessary upon Plaintiffs identifying them, A-Z, intending to refer those entities or persons that committed any of the acts and/or omissions of which the named Defendants are alleged herein to have committed; AA-ZZ, intending to refer to those persons or entities that conspired to commit any of the acts and/or omissions of which the named Defendants are alleged herein to have committed; AAA-ZZZ, intending to refer to those persons or entities that have committed any acts or omissions that have proximately caused injury and damage to Plaintiffs as alleged herein . . ." FAC Caption.

40.    The FAC also alleges that "Fictitious Defendants A-ZZZ, include, but are not limited to, medical providers located throughout the State of Alabama and the country (the "Doctor

---

[11]    The Alabama Supreme Court has similarly ruled that failure to correctly name a party that operates under a trade name is not improper service if the correct party received notice of the action. *Lifestar Response of Alabama, Inc. v. Lemuel*, 908 So. 2d 207, 215 (Ala. 2005). Here, Defendants contend OSC and ABSG were improperly served at their business addresses, as given on their websites, and should be served as "ASD Specialty Healthcare, Inc." Defendants do not contest service on ABC, and contend that ASD Specialty Healthcare, Inc. is a wholly owned subsidiary of ABC. Both ABSG and ASD Healthcare have the same Addison, Texas address: 4006 Belt Line Road, Addison, Texas 75001. While Plaintiffs reserve the right to amend to add ASD Specialty Healthcare, Inc., as a defendant, based on their jurisdictional discovery, notice by service to ABC, OSC, and ABSG clearly meets the *Brizendine* and *Lifestar Response* standards.

Defendants")." It further alleges that "[a]t all times material hereto, the Doctor Defendants were in the business of treating cancer patients who were plan beneficiaries of insurance plans offered by Plaintiffs. Each of these Doctor Defendants treated Plaintiffs' plan beneficiaries with Lupron® and thereafter sought and received reimbursement for the Lupron® from Plaintiffs at the inflated prices described herein." FAC ¶ 4.

41.    The FAC also states that "[r]eferences to the Defendants in this Complaint include the Manufacturer Defendants, the Wholesaler Defendants and Fictitious Defendants, including the Doctor Defendants." FAC ¶ 5.

42.    "The Fictitious Defendants A-ZZZ include the Doctor Defendants, medical providers located throughout the State of Alabama and the country. At all times material hereto, the Doctor Defendants were in the business of treating cancer patients who were plan beneficiaries of insurance plans offered by Plaintiffs. Each of these Doctor Defendants treated Plaintiffs' plan beneficiaries with Lupron® and thereafter sought and received reimbursement for the Lupron® from Plaintiffs." FAC ¶ 44.

43.    "Therefore, the Manufacturer Defendants' fraudulent scheme and conspiracy to artificially inflate the AWP for Lupron® above the actual wholesale price, to sell it to medical providers, like the Doctor Defendants, at substantially lower cost and to market that spread as a financial incentive to medical providers directly caused Plaintiffs to overpay substantially respecting Lupron® received by their non-Medicare insureds. When the medical providers, like the Doctor Defendants billed Plaintiffs at the AWP for Lupron®, and Plaintiffs paid the inflated AWP, the fraud was complete and Plaintiffs' damage therefrom was realized." FAC ¶ 79.

44.    "The Manufacturer and Doctor Defendants consistently misrepresented to Plaintiffs that the actual average wholesale price for Lupron® was increasing, while in practice, the

Manufacturer Defendants consistently and significantly reduced the price to the providers like the Doctor Defendants for the drug.  But all Defendants took steps to fraudulently conceal these facts from Plaintiffs, the government and the public. " FAC ¶ 92.

45.     The Doctor Defendants were also guilty of billing Plaintiffs for free samples of Lupron supplied by the Manufacturer Defendants." FAC ¶ 95.

46.     "The Manufacturer Defendants also set up a network to handle the flow of "black market" Lupron.  This was done as a stopgap effort to prevent declining sales that would have resulted from the federal government's efforts to rein in the high cost of Lupron® in Alabama and other States.  All the Defendants named herein participated in this scheme to further defraud Lupron purchasers, like Plaintiffs." FAC ¶ 102.

47.     "It is unlawful for doctors to 'wholesale' and re-sell prescription drugs without a license.  Nevertheless, doctors throughout Alabama and the country bought massive amounts of excess Lupron and re-sold the same to the Wholesaler-Defendants through former TAP employees and others.  It is believed and therefore averred that the Doctor Defendants participated in the diversionary black market described herein by buying excess Lupron from TAP and re-selling through the Wholesaler Defendants and others." FAC ¶ 105.

48.     The FAC clearly alleges that there are Alabama citizens that are fictitious defendants in this action, specifically doctors in Alabama that have been involved in the fraudulent scheme to overcharge Plaintiffs for Lupron, particularly Plaintiff BlueCross and BlueShield of Alabama. Indeed, Defendants Abbott and TAP have alleged in the State of Alabama's AWP litigation that the doctors involved in the scheme are necessary parties to litigation against Abbott and TAP.  *See* Order of October 13, 2005, *State of Alabama v. Abbott Laboratories, et al.,* CV05-219 (Circuit Court of Montgomery County, Alabama) (Price, J.) (attached hereto as Exhibit B).

49.    While Plaintiffs may be aware of doctors they have reimbursed for Lupron, Plaintiffs cannot know, without discovery, which of these Alabama doctors were influenced by Abbott and TAP's offers of greater profits to join in their fraudulent schemes. Only Abbott, TAP, and the Fictitious Doctor Defendants know this. And, as to those Alabama doctors who participated in Abbott, TAP and the Wholesaler Defendants' diversionary schemes, only Abbott, TAP, the Wholesaler Defendants, and the Fictitious Doctor Defendants know this.

50.    While 28 U.S.C. § 1441(a) instructs the Court to disregard fictitious defendants for purposes of removal, "courts have found that where a plaintiff's complaint provides a description of a fictitious defendant in such a way that his or her identity cannot reasonably be questioned, the court should consider the citizenship of the fictitious defendant." *Marshall v. CSX Transportation Co.*, 916 F. Supp. 1150, 1152 (M.D. Ala. 1995) (citing *Lacy v. ABC Ins. Co.*, 1995 WL 688786 at *3 (E.D. La. Nov. 17, 1995); *Brown v. TranSouth Financial Corp.*, 897 F. Supp. 1398, 1401-02 (M.D. Ala. 1995); *Tompkins v. Lowe's Home Ctr., Inc.*, 847 F. Supp. 462, 464 (E.D. La. 1994); *Green v. Mutual of Omaha*, 550 F. Supp. 815, 818 (N.D. Cal. 1982)).

51.    This Court's holding in *Marshall* is in keeping with the purpose for the 1988 amendment to 28 U.S.C. § 1441(a), which added the reference to fictitious defendants. As explained in the commentary to that statute, "[i]t permits other (and named) defendants to remove the case without having to determine, and without waiting to determine, the citizenship of the fictitious party." 28 U.S.C. § 1441, cmt. to 1988 Amendment of Subdivision (a).

52.    Indeed, as this Court noted in *Marshall*, "the fact that the defendant was in a better position than the plaintiff to ascertain the citizenship of the non-diverse defendant at the commencement of the action in state court is a factor that weighs in favor of considering a fictitious defendant's citizenship for diversity purposes." *Id.* (citing *Lacy*, 1995 WL 688786 at *3).

19

53.    In *Marshall*, this Court found that where the defendant knew the identity and citizenship of the non-diverse fictitious defendant before filing its notice of removal, remand was appropriate. *Id.* at 1153. In addition, this Court was persuaded that where, as here, coordination of similar cases in state court (like the State of Alabama's AWP case) would be economical, both for the parties and the judicial system, remand is favored. *Id.* at 1155.

54.    This Court in *Marshall* also emphasized that the filing of a motion to amend to add the non-diverse, identified fictitious defendants, is not a prerequisite to their being considered on motion to remand. *Id.* (citing *Wright v. Sterling Investors Life Ins. Co.*, 747 F. Supp. 653, 655 (N.D. Ala. 1990)); *see also Bryant v. Hardees Food Systems, Inc.*, 1999 WL 33537223 (N.D. Miss. Nov. 4, 1999) (recognizing amendment to complaint not necessary to remand).

55.    Plaintiffs are serving Defendants with discovery meant to evoke the identities of the fictitious Doctor Defendants, and have issued subpoenas to certain Alabama doctors whom they have reimbursed for Lupron and therefore believe could have been involved in the fraudulent scheme detailed in the FAC.

56.    This Court, pursuant to *Marshall* and the cases cited therein, should consider the Alabama citizenship of the fictitious Doctor Defendants and remand this action to Montgomery County Circuit Court.

57.    In the alternative, Plaintiffs request the opportunity to complete jurisdictional discovery to ascertain the identity of the Alabama doctors who will eventually be defendants in this action, the method employed by this Court in *Harris v. Beaulieu Group, L.L.C.*, 394 F. Supp. 2d 1348, 1356-57 (M.D. Ala. 2005) (where citizenship of fictitious defendants was not clear from the complaint).

58.     As this Court held in *Brown*, "[i]t would be unfair to force the plaintiffs from their state court forum into federal court by allowing [the defendants] to plead ignorance about the [fictitious defendants'] identity and citizenship when [the defendants were] in a position to know that information." *Brown*, 897 F. Supp. at 1402.

59.     For these reasons, as well as those given above, this case should be remanded to the Circuit Court of Montgomery County, Alabama.

## III.     CONCLUSION

60.     Plaintiffs respectfully request that this case be remanded forthwith to the Circuit County of Montgomery County, Alabama.  In the alternative, Plaintiffs respectfully request that this Court permit jurisdictional discovery as to the citizenship of OSC and to ascertain the identity of the Alabama doctors who will eventually be defendants in this action.


Respectfully submitted,


/s/ Pamela B. Slate
Pamela B. Slate (ASB-8938-A43P)
pslate@slatekennedy.com
SLATE KENNEDY LLC
166 Commerce Street, Suite 350
Montgomery, AL 36104
Telephone:     (334) 262-3300
Facsimile:     (334) 262-3301

Kimberly R. West (ASB-2419-E65K)
kw@wallacejordan.com
WALLACE, JORDAN, RATLIFF & BRANDT, LLC
P.O. Box  530910
Birmingham, AL 35298
Telephone:     (205) 870-0555
Facsimile:     (205) 871-7534

21

Donald E. Haviland, Jr.
Donald.Haviland@KlineSpecter.com
Shanin Specter
Shanin.Specter@KlineSpecter.com
**KLINE & SPECTER**
**A PROFESSIONAL CORPORATION**
1525 Locust Street, 19th Floor
Philadelphia, PA 19102
Telephone:     (215) 772-1000
Facsimile:     (215) 735-0957
*Motions for Admission Pro Hac Vice To Be Filed*


**ATTORNEYS FOR PLAINTIFFS**
**BLUE CROSS AND BLUE SHIELD OF ALABAMA AND**
**BLUE CROSS AND BLUE SHIELD OF MICHIGAN**

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this date, July 17, 2006, I electronically filed the foregoing with the

Clerk of the United States District Court for the Middle District of Alabama, using the CM/ECF

system, which will send notification of such filing to the following:

COUNSEL FOR DEFENDANT TAP PHARMACEUTICAL PRODUCTS, INC.

Tabor Robert Novak, Jr., Esquire
Ball Ball Matthews & Novak PA
P.O. Box 2148
Montgomery, AL 36102-2148
Telephone:    (334) 387-7680
Facsimile:     (334) 387-3222
tnovak@ball-ball.com

Daniel Edward Reidy, Esquire
Jones Day
77 West Wacker Drive
Chicago, IL 60601-1692
Telephone:    (312) 269-4140
Facsimile:     (312) 782-8585
dereidy@jonesday.com

James R. Daly, Esquire
Jones Day
77 West Wacker Drive
Chicago, IL 60601-1692
Telephone:    (312) 782-4141
Facsimile:     (312) 782-8585
jrdaly@jonesday.com

COUNSEL FOR DEFENDANT ABBOTT LABORATORIES

Robert A. Huffaker, Esquire
Rushton Stakely Johnston & Garrett PC
P.O. Box 270
Montgomery, AL 36101-0270
Telephone:    (334) 206-3100
Facsimile:     (334) 262-6277
rah@rsjg.com

Erik W. Snapp, Esquire
Winston & Strawn LLP
35 West Wacker Drive
Chicago, IL 60601
Telephone:    (312) 558-5600
Facsimile:     (312) 558-5700
esnapp@winston.com

George Carter Lombardi, Esquire
Winston & Strawn LLP
35 West Wacker Drive
Chicago, IL 60601
Telephone:    (312) 558-5969
Facsimile:     (312) 558-5700
glombardi@winston.com

23

COUNSEL FOR DEFENDANTS TAKEDA AMERICA HOLDINGS, INC.
and
TAKEDA PHARMACEUTICAL COMPANY LIMITED

Joseph C. Espy, III, Esquire
Melton Espy & Williams, PC
P.O. Drawer 5130
Montgomery, AL 36103-5130
Telephone:     (334) 263-6621
Facsimile:     (334) 263-7252
jespy@mewlegal.com

Nada Djordjevic, Esquire
Jenner & Block LLP
One IBM Plaza
330 North Wabash Avenue
Chicago, IL 60611
Telephone:     (312) 222-9350
Facsimile:     (312) 840-7305
ndjordjevic@jenner.com

Robert R. Stauffer, Esquire
Jenner & Block LLP
One IBM Plaza
330 North Wabash Avenue
Chicago, IL 60611
Telephone:     (312) 923-2905
Facsimile:     (312) 840-7305
rstauffer@jenner.com

Thomas P Sullivan, Esquire
Jenner & Block, LLP
One IBM Plaza
330 North Wabash Avenue
Chicago, IL 60611
Telephone:     (312) 923-2928
Facsimile:     (312) 840-7305
tsullivan@jenner.com

COUNSEL FOR DEFENDANTS AMERISOURCE BERGEN CORPORATION,
AMERISOURCE BERGEN SPECIALTY GROUP,
and
ONCOLOGY SUPPLY COMPANY

Sandra Grisham Robinson, Esquire
Cabaniss Johnston Gardner Dumas & O'Neal
P.O. Box 2906
Mobile, AL 36652-2906
Telephone:     (251) 415-7308
Facsimile:     (251) 415-7350
sgr@cabaniss.com

Ian David Rosenthal, Esquire
Cabaniss Johnston Gardner Dumas & O'Neal
P.O. Box 2906
Mobile, AL 36652-2906
Telephone:     (251) 415-7309
Facsimile:     (251) 415-7350
idr@cabaniss.com

/s/ Pamela B. Slate
Pamela B. Slate (ASB-8938-A43P)
pslate@slatekennedy.com
SLATE KENNEDY LLC
166 Commerce Street, Suite 350
Montgomery, AL 36104
Telephone:     (334) 262-3300
Facsimile:     (334) 262-3301