IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA

| | | |
|---|---|---|
| **BLUECROSS AND BLUESHIELD OF ALABAMA; and BLUECROSS AND BLUESHIELD OF MICHIGAN,** | | |
| **Plaintiffs,** | | Civil Action No.  2:06CV536 |
| **v.** | | **Judge Fuller** |
| **TAP PHARMACEUTICAL PRODUCTS INC.; ABBOTT LABORATORIES; TAKEDA PHARMACEUTICAL COMPANY LIMITED; TAKEDA AMERICA HOLDINGS, INC.; ONCOLOGY SUPPLY COMPANY; AMERISOURCE BERGEN SPECIALTY GROUP; AMERISOURCE BERGEN CORPORATION; and FICTITIOUS DEFENDANTS,** | | **Defendants' Joint Opposition To Plaintiffs' Motion To Remand** |
| **Defendants.** | | |

## DEFENDANTS' JOINT OPPOSITION TO PLAINTIFFS' MOTION TO REMAND

This Court has jurisdiction over this lawsuit on two independent bases:  (1) there is

complete diversity of citizenship between the parties, with the amount in controversy being in

excess of $75,000; and (2) the allegations of the complaint show this to be a civil action

"founded on a claim or right arising under…the laws of the United States."  *See* 28 U.S.C. 1441;

28 U.S.C. 1331-32.  In their Notice of Removal ("Notice"), Defendants established that the First

Amended Complaint ("FAC")[1] was erroneous in its attribution of Alabama citizenship to

defendant Oncology Supply.  Now that this error has been pointed out, Plaintiffs struggle to

avoid the jurisdiction of this Court by arguing, contrary to all authority and the plain language of

the removal statute, that the Court should consider entities not subject to suit and fictitious,

---

[1] At the time this case was removed, Plaintiffs had already filed their First Amended Complaint in state court.  As there is no substantive difference affecting the question of remand between the two complaints, Defendants analyze the FAC in this Opposition, as Plaintiffs did in their Motion.

unnamed defendants in the diversity analysis; by denying the import of the allegations of their

own complaint relating to federal questions; and by asserting that because the state court file

provided with the Notice contained one but not all of the summonses served on Defendants, the

Notice was defective and remand automatically is required. As shown below, Plaintiffs are

wrong on the law and its application to this case. Accordingly, Plaintiffs' Motion for Remand

("Motion") should be denied.

## ARGUMENT

**I.    THIS COURT HAS SUBJECT MATTER JURISDICTION BECAUSE COMPLETE DIVERSITY EXISTS.**

The federal diversity statute confers subject-matter jurisdiction over "all civil actions

where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and

costs, and is between . . . citizens of different States." 28 U.S.C. § 1332(a)(1). As this Court has

recognized, "[o]n a motion to remand, the burden of establishing jurisdiction" is satisfied "by

proving, by a preponderance of the evidence, facts supporting the existence of jurisdiction."

*McKinley v. Petsmart, Inc.*, 2:05-CV562F, 2005 WL 2108107, *2 (M.D.Ala., Aug. 24, 2005) (J.

Fuller). Defendants easily meet that burden here, as to both elements of the diversity statute.[2]

The amount in controversy here exceeds $75,000; Plaintiffs do not contend otherwise.

Moreover, this suit is "between . . . citizens of different States" – that is, there is "complete

diversity" among the Plaintiffs and Defendants. *See Riley v. Merrill Lynch, Pierce, Fenner &

Smith, Inc.*, 292 F.3d 1334, 1337 (11th Cir. 2002). Indeed, Plaintiffs do not even dispute that

complete diversity exists between them and named Defendants TAP Pharmaceutical Products

---

[2] Plaintiffs wrongly imply that the removing defendants bear an evidentiary burden at the time of removal. A notice of removal simply must contain a "short and plain statement of the grounds for removal." 28 U.S.C. § 1446(a). There is no requirement that Defendants make any evidentiary showing. When either the court *sua sponte* or a party raises a question about the basis for federal jurisdiction, a removing party may have to come forward with a more extensive showing of the propriety of federal jurisdiction. Here, now that Plaintiffs have challenged jurisdiction, Defendants have come forward with the evidentiary basis for the concise grounds stated in the Notice and Ms. Kammerer's affidavit attached to the Notice. *See infra*; Exs. 1-4.

Inc. ("TAP"), Abbott Laboratories, Takeda Pharmaceutical Company Limited, Takeda America

Holdings, Inc, AmerisourceBergen Corporation, and AmerisourceBergen Specialty Group.

Plaintiffs do raise two specific challenges to diversity. *First*, Plaintiffs claim that Defendant

Oncology Supply, which Plaintiffs allege is a subsidiary of AmerisourceBergen Corporation,

must be considered an Alabama citizen and destroys diversity. *Second*, Plaintiffs contend that

the "fictitious defendants" referenced in the Complaint destroy diversity. Neither of these

contentions, however, has merit.

### A.    None Of The Named Defendants Is A Citizen Of Alabama.

Plaintiffs claim that "Oncology Supply Company," which Plaintiffs allege is a subsidiary

of "Amerisource Bergen Corporation",[3] must be considered independently in a diversity

analysis. They further contend that Oncology Supply has its principal place of business in

Alabama, and thus, its presence destroys diversity. *See* FAC ¶ 43. Plaintiffs are wrong, for two

reasons. *First*, Oncology Supply is merely a doing-business name of ASD Specialty Healthcare,

Inc., and not a separate corporate entity. As such, it is irrelevant to a diversity analysis. *Second*,

ASD Specialty Healthcare, Inc., which is relevant to a diversity analysis (and could have been

named but was not), is incorporated in California with its principal place of business in Texas.

Thus, no Alabama entity has been sued, complete diversity exists, and removal is appropriate.

### 1.  Oncology Supply Is Not A Separate Corporate Entity; It Is A Doing-Business Name For ASD Specialty Healthcare, Inc., And Is Thus Irrelevant To A Diversity Analysis.

Oncology Supply is not a corporation; it is a d/b/a or trade name of the corporation ASD

Specialty Healthcare, Inc. (which is not named as a defendant). As an initial matter, Oncology

Supply cannot be a subsidiary corporation of any other entity because it is not a corporation in its

---

[3] There is no corporation named "Amerisource Bergen Corporation," although there is an AmerisourceBergen Corporation ("ABC"), which, presumably, Plaintiffs' intended to name. Further, as explained below, "Oncology Supply" is a trade name and not a corporation.

own right. It has no members or shareholders. It is simply a name under which business is conducted. Ala. Code § 10-2B-4.01 explicitly requires that corporations organized after January 1, 1981 have a name containing the word "corporation" or "incorporated" or an abbreviation of such. "Oncology Supply" does not, which should have suggested to Plaintiffs that it is not a corporation.

Beyond that, Defendants have submitted extensive evidence on this point. *See* affidavit of Diane Kammerer ("Kammerer Aff."), attached as Exhibit 4 to Notice; affidavit of Michael Mullen, ("Mullen Aff.") attached hereto as Ex. 1. In addition to the affidavit of Michael Mullen, attached as Exhibit 1, Defendants submit the following exhibits establishing this fact:

> **Exhibit 2**:    Two distributor permits for two different distribution centers from the Alabama State Board of Pharmacy. One is for ASD Specialty Healthcare, Inc. and the other is for "ASD Specialty Healthcare, Inc. DBA Oncology Supply."

> **Exhibit 3**:    The Commonwealth of Kentucky's Certificate of Assumed Name certifying that Oncology Supply is an assumed name (or d/b/a) of ASD Specialty Healthcare, Inc.[4]

> **Exhibit 4**:    The Articles of Incorporation filed in the State of California setting out the merger in which the surviving California corporation emerges with the name ASD Specialty Healthcare, Inc.[5]

These exhibits conclusively establish that Oncology Supply is simply a d/b/a or trade name, and that it is not a separate corporate entity that is subject to suit. That should end the matter. It is well-settled that, when the only putative in-state defendant is designated in a state court complaint by its trade name rather than its true name, the proper course for the defendants

---

[4] Alabama law does not require a corporation to file an "Assumed Name Certificate" in which the corporation would list the doing-business as names it uses in the state. Many other states – Kentucky is but one example – require such a filing, as evidenced by Exhibit 3.

[5] Plaintiffs imply in their Motion to Remand that their inability to locate information via internet search about ASD Specialty Healthcare, Inc. has some evidentiary significance. It obviously does not but, in any event, there is ample information available on the internet as to ASD Specialty Healthcare, Inc. For example, the Alabama Secretary of State's website confirms that ASD Specialty Healthcare, Inc. is a California corporation qualified to do business in Alabama. (*See* http://arc-sos.state.al.us/CGI/SOSCRP10.mbr/output?PGM=1&P01=919902M.)

is to remove and for that defendant then to file a motion pursuant to Fed. R. Civ. P. 12(b)(4) or

(5) to dismiss the claims against it. *Brizendine v. Continental Casualty Company*, 773 F.Supp.

313, 320, n.9 (N.D.Ala. 1991). Defendants have followed this procedure with respect to

Oncology Supply and ABSG, which were incorrectly named as Defendants in this action.[6]

Plaintiffs struggle mightily to portray Oncology Supply as a separate Defendant, alleging

that Oncology Supply is a "member company of ABSG which is a subsidiary of ABC." (FAC ¶

3). In their Motion, Plaintiffs rely on statements found on websites describing Oncology Supply

as "part of the AmerisourceBergen Corporation," a "member company" and one of "Our

[ABSG's] Companies." (Motion at n. 5-6) These characterizations do not establish that

Oncology Supply is a separate or subsidiary *corporation*. Oncology Supply can be properly

named as a defendant only by properly naming and serving the corporation which does business

as Oncology Supply. *See id.* at 320. That corporation is ASD Specialty Healthcare, Inc.

Plaintiffs also cite several cases which stand for the proposition that a subsidiary

corporation does not always have the same principal place of business as its parent corporation.

*See* Motion at ¶ 32.[7] Because the subsidiaries in those cases were actual corporations, the cases

are wholly inapposite. Those cases do not, and could not, stand for the proposition that a trade

name which has no separate corporate existence could ever be deemed to have a different

citizenship than the corporate entity which uses that name. Perhaps because the question

answers itself, there are few explicit statements by courts about the lack of separate identity for

corporations and their trade names. In addition to *Brizendine*, there is *Western Beef, Inc. v.*

---

[6] A Motion to Dismiss Oncology Supply and AmerisourceBergen Specialty Group on this basis is being filed on even date herewith. *See* n. 8 *infra*.

[7] *See Fitzgerald v. Seaboard System Railroad, Inc.*, 647 F. Supp. 205 (S.D.Ga. 1985) (CSX Corporation was sole owner of subsidiary incorporated in Virginia); *Burnside v. Sanders Associates, Inc.*, 507 F. Supp. 165 (N.D.Tex. 1980) (subsidiary corporation was treated by parent as "division" for some purposes but was deemed a separate entity). Oddly, Plaintiffs also cite *Vareka Investments v. American Inv. Properties, Inc.*, 724 F. 2d 907, 910 (11th Cir. 1984). *Vareka* did not involve a subsidiary corporation but, instead, simply contains an analysis of a foreign corporation's principal place of business.

*Compton Investment Co.*, 611 F.2d 587 (5th Cir. 1980), where the Fifth Circuit reviewed claims against Western Beef Grain, a division of Western Beef, Inc.  The Court stated that "a division of a corporation is not a separate legal entity but is the corporation itself." *Id.* at 591 *citing In re Sugar Industry Antitrust Litigation (Stotter and Co., Inc. v. Amstar Corp. et al.)*, 579 F.2d 13, 18 (3d Cir. 1978); *see also Kingvision Pay-Per-View, Ltd. v. McCoy*, No. 00-288, 2001 WL 274800, *2 (D.N.H. Jan. 11, 2001) ("As to the unincorporated business entities, (under which the individual defendants are alleged to have conducted business) . . . strictly speaking such entities cannot be sued.  Instead the principal doing business under that name is the proper party.")

Oncology Supply has no existence apart from ASD Specialty Healthcare, Inc. and its citizenship is the same as ASD Specialty Healthcare, Inc.  If Plaintiffs wish to name Oncology Supply in this action, they should dismiss the claims against it and seek leave to amend the FAC to name (and then properly serve) ASD Specialty Healthcare, Inc., d/b/a Oncology Supply.  Of course, Plaintiffs resist the proper procedure because they know that ASD Specialty Healthcare, Inc. is diverse from Plaintiffs and inclusion of ASD Specialty Healthcare, Inc. as a defendant would undo their effort to keep this case out of federal court.[8]

### 2.  ASD Specialty Healthcare Inc. d/b/a Oncology Supply Is Not A Citizen of Alabama.

At the risk of wasting the Court's time on an issue Plaintiffs may still not contest, Defendants nonetheless demonstrate below that ASD Specialty Healthcare Inc. (and therefore, Oncology Supply) is not a citizen of Alabama and therefore does not destroy diversity.

---

[8] The foregoing analysis also applies to ABSG, which consists of the management and administrative group that oversees all of the actions of ASD Specialty Healthcare, Inc.  Like Oncology Supply, it is a d/b/a or trade name of ASD Specialty Healthcare, Inc. and thus has the same citizenship as ASD Specialty Healthcare, Inc.  Because Plaintiffs acknowledge that ABSG's principal place of business is Texas and their efforts are focused on defeating federal jurisdiction, they have not given the same attention to the issues of naming and serving ABSG as they have for Oncology Supply.

For diversity purposes, a corporation is deemed a citizen of the state of its incorporation and the state where it has its principal place of business. *See* 28 U.S.C. §1332. As previously stated, ASD Specialty Healthcare Inc. is incorporated in the state of California. *See* Ex. 4.

A corporation has only one principal place of business. *Moll v. Allstate Floridian Insurance Company*, 3:05CV160RVMD, 2005 WL 2007104 (N.D.Fla. Aug. 16, 2005). Courts in the Eleventh Circuit look to the total activities of the entity to determine a corporation's principal place of business. This analysis consists of two tests: a "place of activities test" and a "nerve center" test. *Sweet Pea Marine, Ltd. v. APJ Marine, Inc.*, 411 F.3d 1242, 1247 (11th Cir. 2005); *Vareka*, 724 F.2d at 910. Defendants submit that ASD Specialty Healthcare, Inc.'s principal place of business is in Texas, but all they really have to show is that it is not Alabama:

> a corporation's citizenship by virtue of its principal place of business need not be conclusively determined to satisfy § 1332 provided the party asserting the claim demonstrates diversity by conclusively establishing the corporation's citizenship by virtue of its state of incorporation and by demonstrating that the corporation's PBB [principal place of business] is not in a state which would destroy complete diversity.

*Sweet Pea Marine, Ltd.* 411 F.3d at 1248, n. 2.

Both the "nerve center" and "place of activities" tests are to be considered, though the relative importance of each can vary. The "nerve center test" is the most important factor in determining a corporation's principal place of business if it has "far flung activities" that "cannot be confined to one location." *Vareka* 724 F.2d at 910. The "nerve center test" emphasizes the locus of managerial and policy making functions of the corporation. *Id.* at 910.

There can be no dispute that ASD Specialty Healthcare, Inc. has far-flung activities. ASD Specialty Healthcare, Inc. is a nationwide distributor of specialty pharmaceutical products to healthcare providers. It buys pharmaceutical products from vendors internationally, distributes these products in all 50 states, holds distribution licenses in over 40 states that require

such licenses, and is formally qualified to do business in 13 states. In addition to Oncology

Supply and ABSG, it uses the trade names ASD Healthcare, whose offices are located in Texas,

and Besse Medical, whose offices are located in Ohio. ASD Healthcare's products are

distributed from distribution centers located in Kentucky and Nevada which are operated by and

owned/leased by ASD Specialty Healthcare, Inc. d/b/a ABSG. Besse Medical's products are

distributed from the Kentucky distribution center with those of ASD Healthcare. Oncology

Supply's products are distributed from a distribution center located in Alabama. *See* Mullen

Aff., Ex. 1.

Accordingly, the "nerve center" test is the most important factor. Clearly the "nerve

center" of ASD Specialty Healthcare, Inc. is not in Alabama. The following indisputable facts

about ASD Specialty Healthcare, Inc. are pertinent:

1.     Its corporate office and mailing address are in Addison, Texas.

2.     Its only shareholder is ABC (a Delaware corporation) which has its principal place of business in Pennsylvania.

3.     Meetings of its Board of Directors occur in Pennsylvania.

4.     Its Minute Books and Stockholder Register are kept in Pennsylvania.

5.     Its sales and distribution records are kept in Texas, although the individual branch offices also keep sales records for their particular branch at their offices in Ohio, Texas, and Alabama. Corporate balance sheets and financial statements are kept in Texas and submitted to Pennsylvania for consolidation with the financial records for ABC.

6.     All of the officers and directors reflected on the Corporate Minute Books of ASD Specialty Healthcare, Inc. reside in Texas or Pennsylvania.

7.     All corporate-wide directives and guidelines are generated in Texas or Pennsylvania.

8.     In-house legal, administration, and Information Technology services are all performed in Texas. Payroll checks are issued from Pennsylvania. Human resource manuals and compliance manuals are generated in Pennsylvania. Supplemental human resources and compliance guidelines are generated in Texas.

Each branch office also has a finance department.  With respect to Sarbanes-Oxley compliance, each divisional finance department reports to the ABSG controller in Addison, Texas, who in turn reports to the vice-president of finance of ABC who is in Pennsylvania.

9.      ASD Specialty Healthcare, Inc.'s federal tax returns are prepared in Pennsylvania.  State tax returns (individual and consolidated returns) are also prepared in Pennsylvania.  There are no separate state or federal tax returns for Oncology Supply.

*See* Mullen Aff., Ex. 1.

The other relevant inquiry is the "place of activities."  This inquiry merely confirms the conclusion of the "nerve center" analysis:  ASD Specialty Healthcare, Inc. is not a citizen of Alabama.  While some day-to-day activities of ASD Specialty Healthcare, Inc. take place in Alabama, just as they do in many other states in the country, the totality of the circumstances demonstrates clearly that the principal place of business is not Alabama:

•      All incoming payments come to lockboxes in Illinois and Texas.  There are no corporate trade bank accounts in Alabama.  Payments to vendors are made from Texas.  Payroll checks are issued from Pennsylvania.

•      Only approximately one third of all employees work in Alabama.  There are 12 individuals who constitute the senior management of ABSG which oversees all of the businesses of ASD Specialty Healthcare, Inc.  Only two live in Alabama.  Nine live in Texas and one lives in Ohio.

•      The computer systems and IT department are in Texas.

•      All corporate filings for ASD Specialty Healthcare, Inc. are prepared in Pennsylvania.

•      Less than 15 % of the current estimated real property, plant, and equipment value of ASD Specialty Healthcare, Inc. is located in Alabama.

•      Each location makes day to day decisions about staffing and routine business matters, but personnel issues are supervised by the HR department in Texas and all non-routine, major decisions about the business require consultation with senior management in Texas.

*See* Mullen Aff., Ex. 1. Simply put, there can be no question that the principal place of business of ASD Specialty Healthcare, Inc. is not Alabama.

*        *        *

In sum, Oncology Supply is not a citizen of Alabama; it is a trade name of ASD Specialty Healthcare Inc.; and therefore, it has no bearing on a diversity analysis. ASD Specialty Healthcare, Inc., which does matter for diversity purposes, is a California corporation whose principal place of business *is not* Alabama. There is no non-diverse Defendant here.

**B.      The Citizenship Of The Fictitious Defendants Cannot Be Considered For Purposes Of Removal.**

Since it was amended in 1988, the plain language of the removal statute has provided that when a district court determines whether removal based on diversity is proper, "the citizenship of defendants sued under fictitious names *shall be disregarded*." 28 U.S.C. §1441(a) (emphasis added). Despite this unambiguous language, Plaintiffs urge this Court to ignore the text of the statute, and instead consider the citizenship of the fictitious defendants they allege to be "medical providers located throughout the state of Alabama and the country." *See* Motion at ¶¶ 39-59. The Court should not be taken in.

Since 1988, the Courts of the Middle District of Alabama have uniformly and consistently applied the plain language of the amended statute concerning fictitious defendants. *See e.g. Owens v. Life Ins. Co. of Georgia*, 289 F.Supp.2d 1319, 1322, n.2 (M.D. Ala. 2003) (Fuller, J.) ("[F]or purposes of removal, the court does not consider the citizenship of fictitious defendants in assessing complete diversity."). Perhaps the clearest statements on this issue appear in Judge Albritton's opinion in *Howell v. Circuit City*, 330 F.Supp.2d 1314, 1318 (M.D. Ala. 2004). There, the plaintiff asked the court to remand a case to state court based on the citizenship of three fictitious defendants alleged to be Alabama residents, who plaintiff asserted

- 10 -

would be identified during discovery. *Id.* at 1317. Indeed, in support of its argument, the

plaintiff cited the very same cases as Plaintiffs do here. *See* Motion at ¶ 50 (citing *Marshall v.*

*CSX Transportation*, 916 F.Supp. 1150 (M.D. Ala. 1995); *Brown v. TranSouth Financial Corp.*,

897 F.Supp. 1398 (M.D. Ala. 1995); *Tompkins v. Lowe's Home Ctr. Inc.*, 847 F.Supp. 462 (E.D.

La. 1994); *Green v. Mutual of Omaha*, 550 F.Supp. 815 (N.D. Cal. 1982)).

Judge Albritton, however, would have none of it, concluding "these cases do not support

plaintiff's argument [for remand]. They either involve cases in which the Plaintiff [had filed a

motion] seeking to add a resident defendant by amendment (*Marshall* and *Brown*) or predate the

1988 amendment (*Green*) or incorrectly rely on pre-1988 law (*Tompkins*)." *Id.* at 1318. Thus,

Judge Albritton held "the clear language of the statute to be dispositive of the issue," found

subject matter jurisdiction proper, and denied plaintiff's motion to remand. *Id.* at 1317-18.

The result here should be no different. Plaintiffs' primary authorities for consideration of

the citizenship of fictitious defendants are cases that Judge Albritton distinguished and rejected.

(*See* Motion at ¶¶ 52-54). Two of the cases apply the pre-amendment law, which is inapplicable

here. The other two cases involved a very different procedural context: the fictitious defendants

had been identified by name and action had been taken to amend the complaints to replace the

fictitious defendant with the newly named individual.[9] *See Marshall*, 916 F.Supp. at 1154-55;

---

[9] *Marshall*, the principal case upon which Plaintiffs rely, is completely inapposite to the instant facts. There, plaintiffs filed suit to recover for injuries suffered in a train accident, naming the train company, one of the two engineers operating the train at the time of the accident, and a "fictitious defendant" identified as "the [second] engineer who was operating the train at the time of the incident described in the complaint, whose true and correct name is unknown to the plaintiffs at this time, but which will be substituted by amendment when ascertained." *Marshall*, 916 F.Supp. at 1151. The plaintiffs were aware of the first engineer's name from the police report filed regarding the incident, but the name of the second engineer was omitted from that report and was unknown when the complaint was filed. Prior to the case being removed to federal court, the plaintiffs learned the name of the second engineer, filed a motion for leave to amend their complaint in state court to substitute that individual for the fictitious defendant, and informed defense counsel of the same. *Id.* One day later the defendants removed the case to federal court. Judge DeMent found the motion to amend the complaint properly before him, determined that it would deem the now identified second engineer as a defendant in place of the fictitious defendant, and considered his citizenship in ordering remand. *Id.* at 1154-55. None of these facts bear even the slightest resemblance to those present in this case, where no particular individual defendant has been identified prior to removal and the facts do not warrant Plaintiffs' effort to depart from the clear language of the removal statute.

*Brown*, 897 F.Supp. at 1401; *see also Bryant v. Hardees Food Systems*, 3:99CV109, 1999 WL

33537223 (N.D.Miss. Nov. 4, 1999) (cited in Motion at ¶ 54) (while complaint had not yet been

amended, fictitious defendant had been specifically identified by name prior to filing of remand

motion).

Further, Plaintiffs' request to engage in "jurisdictional discovery" [10] to "identify" the

fictitious defendants prior to any remand decision must also be denied, as the propriety of a

petition for removal is considered as of the time of removal. *See Porterfield v. Flowers Baking

Co. of Opelika, LLC.*, 2:05-CV-937, 2006 WL 1147333, *2 (M.D.Ala. May 1, 2006). The only

case cited by Plaintiffs in support of their request, *Harris v. Beaulieu Group LLC*, 394 F.Supp.2d

1348 (M.D.Ala. 2005), recognizes this rule and actually rejects Plaintiffs' position. In *Harris*,

the Court *denied* Plaintiffs' motion to remand, found diversity jurisdiction existed, and

specifically denied plaintiff's request to consider the citizenship of the fictitious defendants in

doing so. *See* 394 F.Supp.2d at 1352-53. [11]

Finally, Plaintiffs' assertion that the possibility of coordinating this case with other cases

pending in state court might favor remand is directly contrary to the holdings in this district. In

*Harris*, the Court held that "the possibility that upon remand a state court would consolidate

Plaintiff's tort lawsuit with her worker's compensation case simply does not prove a valid reason

to remand the case." *Id.* at 1352 *citing Losoya v. Coca-Cola Enters. Inc.*, 05-007, 2005 WL

1799618, *2 (S.D.Tex. July 26, 2005) ("simplification of the process of litigation is not a basis

---

[10] At the time they filed their Motion, in clear violation of Rule 26(d), Plaintiffs propounded document requests on all Defendants and issued third party subpoenas. Plaintiffs subsequently sent letters to those third parties to whom they issued subpoenas informing them not to respond to them at this time. Defendants have also informed Plaintiffs that the discovery served on them was premature, and that Plaintiffs' request to conduct a planning meeting was likewise premature, given the fact that the Court has not yet entered a Rule 26(f) order or indicated that the case is ripe for entry of a scheduling order or commencement of discovery.

[11] In *Harris*, the discovery came after remand was denied, and in fact after the named defendants had been dismissed from the lawsuit. The court permitted limited discovery solely to determine whether any person could be identified against whom plaintiff could pursue a claim. *Id.* at 1356-57.

for remand."). There is nothing in the removal statute or the case law that permits consideration

of such factors. In any event, Plaintiffs' assertion that this case is related to the AWP case

pending before Judge Price is misleading, as there has been no finding to that effect. Rather,

contrary to local practice, Plaintiffs simply asserted on the civil cover sheet that they filed in

state court that the instant case is related to the AWP cases. That assertion, with which

Defendants do not agree, appears to have led to a reassignment to Judge Price.

## II.     THIS COURT HAS SUBJECT MATTER JURISDICTION BECAUSE PLAINTIFFS' COMPLAINT RAISES A SUBSTANTIAL FEDERAL ISSUE.

Federal courts have federal question jurisdiction over civil actions that arise "under the

Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331. According to the

Supreme Court, the dispositive question in determining whether federal question jurisdiction

exists is "does a state law claim necessarily raise a stated federal issue, actually disputed and

substantial." *Grable & Sons Metal Prods., Inc. v. Darue Eng'g & Mfg.*, 545 U.S. 308, ___ 125

S.Ct. 2363, 2368 (2005). Federal law "must be an essential element of plaintiff's claim; the

federal right or immunity that forms the basis of the claim must be such that the claim will be

supported if the federal law is given one construction and defeated if it is given another." *Mobil*

*Oil Corp. v. Coastal Petroleum Co.*, 671 F.2d 419, 422 (11th Cir. 1988).

As demonstrated in the Notice, the essential element of Plaintiffs' FAC is what the term

"AWP" means under the federal Medicare statutes. Plaintiffs' FAC spells out clearly and

repeatedly that this lawsuit is about whether or not Defendants manipulated the AWP for

Lupron® , and the answer to this question as alleged in the FAC cannot be answered without

determining what AWP means under federal law and how it was determined.

Rather than address Defendants' arguments in the Notice demonstrating this to be true,

Plaintiffs instead try to downplay the import of AWP's meaning as not the "predominant factual

or legal issue presented in the case." *See* Motion at ¶23. Plaintiffs' argument ignores the plain

fact that each of the five counts of the FAC are premised on the claim that, because Plaintiffs

reimbursed for Lupron® based on AWP and the medical providers they reimbursed paid less

than AWP for Lupron®, the AWP was "inflated" and Plaintiffs were therefore damaged.[12] *See*

FAC ¶¶ 154-55; 162-164; 169; 177; 186-88; Paragraph after paragraph of the FAC refers to:

- The federal government's decision to use AWP as a reimbursement benchmark under the federal Medicare program (FAC ¶¶ 64-67, 70);

- Plaintiffs' own decision to rely on the federal government's choice of AWP as an industry standard benchmark for reimbursement in various private assistance programs (FAC ¶¶ 76-79);

- Defendants' supposed inflation of the AWP for Lupron® above the cost at which medical providers obtained Lupron® (FAC ¶¶ 12, 14, 73, 75, 80);

- Defendants' alleged marketing of a so called "spread" between the AWP and the cost at which medical providers obtained Lupron® (FAC ¶¶ 12, 13, 81-94).

Plaintiffs' allegations all hinge on answering the question of whether the fact that some

medical providers obtained Lupron® at a lower rate than the AWP is proof that the AWP was

"inflated" under those same federal statutes.

Plaintiffs' Motion also ignores the fact that the alleged damages for their Medicare co-

payment claims are 20% of the difference between the amount Medicare actually chose to

reimburse for Lupron® prescribed to Plaintiffs' insureds, and the amount Medicare would have

reimbursed, absent Defendants' alleged conduct. This determination cannot be made without

determining what amount should have been billed to Medicare under the laws and regulations

governing Medicare reimbursement. Because of Plaintiffs' damages theory, the Court will be

required to evaluate federal Medicare laws, as well as reimbursement rate-setting decisions made

---

[12] Plaintiffs' unjust enrichment and civil conspiracy counts are also premised on the additional federal issue that Defendants allegedly acted "in violation of the [federal] PDMA and other federal and state laws." *See* FAC. ¶154; *see also* ¶186-87.

by Congress and the Health Care Financing Administration. These determinations undoubtedly require application of federal law, as Plaintiffs' claims "will be supported if the federal law is given one construction and defeated if it is given another." *Mobil Oil*, 671 F.2d at 422.

Plaintiffs' assertion that "no court has ever agreed with this argument" simply cannot be squared with Judge Saris's opinion in *State of Montana v. Abbott Laboratories, Inc.* 266 F.Supp.2d 250, 255-56 (D.Mass. 2003). Judge Saris made clear her belief that an "essential element of the plaintiffs' claim is proof of a discrepancy between the published AWP and the measure of AWP under the Medicare statute" and "the adjudication of whether the term 'average wholesale price' in the Medicare statute embraces a 'spread' could have broad implications for Medicare reimbursements and co-payments." *Id.* at 255.[13] Similarly, the essential element of Plaintiffs' FAC is "proof of a discrepancy between the published AWP and the measure of AWP under the Medicare statute." *Id.* at 255. Plaintiffs' attempt to pretend otherwise in their Motion should be rejected.

Because Plaintiffs' claims necessarily raise a substantial federal issue, there is a second and independent basis for federal jurisdiction over this action.

## III. PLAINTIFFS' CLAIM THAT THE OMISSION OF SUMMONSES AND THE CIVIL COVER SHEET FROM THE ORIGINAL NOTICE OF REMOVAL REQUIRES REMAND IS ALSO SPECIOUS AND SHOULD BE REJECTED.

There is no dispute that Defendants provided with their Notice copies of both complaints filed against all Defendants, the summons served on TAP, and the dates of service of the

---

[13] Plaintiffs' charge that Defendants' reading of Judge Saris's opinion is "disingenuous at best" requires little response. Defendants expressly recognized in their Notice that Judge Saris ultimately remanded the *State of Montana* case finding federal question jurisdiction did not exist. *See* Notice at n. 6. But as Defendants also pointed out, this remand was based on Judge Saris's mistaken belief that the Supreme Court's decision in *Merrill Dow Pharmaceuticals v. Thompson*, 478 U.S. 804 (1986) required a federal statute to provide a private right of action in order to confer federal question jurisdiction. *State of Montana*, 266 F.Supp.2d at 256 ("we simply conclude that the congressional determination that there should be no federal remedy for the violation of this federal statute is tantamount to a congressional conclusion that the presence of a claimed violation of the statute as an element of a state cause of action is insufficiently 'substantial' to confer federal-question jurisdiction"). The Supreme Court subsequently made clear in *Grable* that a federal cause of action is *not* a prerequisite to federal question jurisdiction. *See* 545 U.S. 308, ___, 125 S.Ct. 2363, 2369-70 (2005).

summons and complaints on all Defendants, identified by way of affidavits. Plaintiffs and the

Court were thus given all the information necessary to determine the propriety of the Notice.

Plaintiffs nevertheless argue in one paragraph of their Motion that Defendants' omission from

their Notice of the state court civil cover sheet and the summonses served on defendants other

than TAP requires remand. The law of this Circuit, and of almost every federal court

nationwide, rejects Plaintiffs' position.

      The materials included with Defendants' Notice, along with the Notice itself, provided

Plaintiffs and this Court with "more than sufficient information to decide the question of removal

jurisdiction." *Boxdorfer v. Daimler Chrysler Corp.*, 396 F.Supp.2d 946, 951 (C.D.Ill. 2005); *see*

*also* Notice at ¶ 2. In addition, Defendants, in their Supplemental Submission, have now

provided copies of all remaining summonses, along with the civil cover sheet, to this Court.

*Yellow Transportation Inc. v. Apex Digital Inc.*, 406 F.Supp.2d 1213, 1219 (D.Kan. 2005)

(omission of summons from notice of removal not a basis for remand and may be "easily

remedied"). Plaintiffs do not (nor could they) complain that they were prejudiced in any way by

the original filing. *See id.*; *Littleton v. American Bankers Life Ins. Co. of Florida*, 289 F.Supp.2d

776, 781-82 (S.D. Miss. 2003) (remand not warranted by omissions from notice of removal of

certain documents from state court file, since "any omissions did not prejudice either party").

      Plaintiffs' argument that the Defendants' filing is deficient and requires remand has been

rejected by the vast majority of the courts that have dealt with the issue. In *Covington v.*

*Indemnity Ins. Co. of North America*, 251 F.2d 930 (5th Cir. 1957) *cert, denied*, 357 U.S. 921

(1958), the former Fifth Circuit rejected the argument that it did not have jurisdiction because of

the removing party's failure to file copies of a number of state court filings with the removal

petition, reasoning that failures to file all state court filings with the notice of removal under

§1446(a) are defects that are "merely modal and formal and are completely without effect upon the removal." *Id.* at 933. Further, the court held that any state court filings absent from the notice of removal "may be later supplied." *Id.*; *see also Usatores v. Marina Mercante Nicaraguenses*, 768 F.2d 1285, 1286 (11th Cir. 1985) (citing *Covington* for proposition that removing party's omission of motion to dismiss filed in state court from the notice of removal did not waive the defenses asserted by that motion and could be cured by subsequent filing).

Plaintiffs' sole support for their position is the widely rejected opinion in *Kisor v. Collins*, 338 F.Supp.2d 1279 (N.D.Ala. 2004) (J. Acker). The *Kisor* court granted remand based solely on a removing party's omission of the summons to his notice of removal, but did so only by rejecting the binding precedent of *Covington*. Just six months ago, one federal judge described Judge Acker's analysis in *Kisor*, along with his similar ruling in *Burnett v. Birmingham Board of Education*, 861 F.Supp. 1036 (N.D.Ala. 1994), as "appear[ing] to stand alone in modern jurisprudence in their rigid application of the procedural requirements of §1446(a)." *Gilfert v. Liberty Mutual Ins. Co.*, No. 305CV527S, 2006 WL 288628, *3 (W.D.Ky. Feb. 2, 2006).[14]

On the other hand, courts in this Circuit, including another court in the Northern District of Alabama, follow the long held, well settled precedent expressed in *Covington*: where the information necessary to consider the issues raised by the removal is provided, omission of state court filings with a notice of removal does not support remand and may instead be corrected, even after the filing of a motion for remand under 1447(c). *Kizzire v. General Motors Corp, Inc.*, No. 95-B-1322, 1996 WL 539739, *1 (N.D.Ala. March 19, 1996) (J. Blackburn) ("the court will not grant the motion to remand on the ground that General Motors did not attach a copy of plaintiff's amendment to complaint to the Notice of Removal as required by 28 U.S.C.

---

[14] *Kisor* is based on a dubious distinction of *Covington* that, as noted below, is contrary to the widespread view of the federal judiciary. *See* cases cited *infra* at 20-21; *see also Gilfert*, 2006 WL 288628, *3 (specifically rejecting *Kisor* and noting that a number of cases, including *Covington*, that "stand in direct contravention to the holding in *Kisor*"); *Yellow Transportation*, 406 F.Supp.2d at 1218 (rejecting the "logic" of *Kisor*).

1446(a)"); *Agee v. Huggins*, 888 F. Supp. 1573, 1577 (N.D.Ga. 1995) (omitting certain state court filings in notice of removal "not grounds for remand. Rather, the subsequent filing of these documents is the proper remedy.").

Federal district courts in other circuits have also consistently concluded that the absence of state court filings, including summonses, from the notice of removal does not support remand:

- **Second Circuit**

  - *In re MTBE Products Liability Litigation*, 399 F.Supp.2d 340, 348 (S.D.N.Y. 2005) (denying remand for failure to attach certain papers to notice of removal as "the failure to file all the state court papers is curable in federal court if there is a motion to remand");

- **Third Circuit**

  - *Efford v. Milam*, 368 F.Supp.2d 380, 383 (E.D.Pa. 2005) (granting remand on other grounds, but holding that failure to attach summons to notice of removal did not itself require remand and plaintiffs' argument to the contrary was "without merit");

- **Fifth Circuit**

  - *Littleton v. American Bankers Life Ins. Co. of Florida*, 289 F.Supp.2d 776, 781-82 (S.D. Miss. 2003) (omitting certain state court filings with notice of removal did not call for remand, court instead "instructs Defendants to ensure that all required documents" are subsequently included);

  - *Flores v. Baldwin*, No. 301CV2873P, 2002 WL 1118504, *4 (N.D. Tex. May 28, 2002) (granting remand on other grounds, but holding failure to attach 33 state court filings to notice of removal was "not a basis for remand since the record may be easily supplemented to correct any remaining defects");

- **Sixth Circuit**

  - *Gilfert v. Liberty Mutual Ins. Co.*, No. 305CV527S, 2006 WL 288628, *3 (W.D.Ky. Feb. 2, 2006) (removing party's "inadvertent omission" of summons from notice of removal was curable and did not require remand, and court provided 14 days to removing party to so cure);

- **Seventh Circuit**

  - *Issa v. Priority Transportation LLC*, No. 05-CV-394, 2006 WL 304028, *2 (N.D.Ind. Feb. 7, 2006) (failure to file complaint with notice of removal did not require remand);

  - *Boxdorfer v. Daimler Chrysler Corp.*, 396 F.Supp.2d 946, 950-51 (C.D.Ill. 2005) (while granting remand on other grounds, removing party's failure to attach the original complaint to notice of removal did not support remand);

  - *Anderson v. Federated Mut. Ins. Co.*, No. 00 C 0312, 2000 WL 34228194, *2 (W.D.Wis. Aug. 15, 2000) (failure to attach summons and complaint to notice of removal was technical, curable error not supporting remand);

  - *International Gateway Communications, Inc. v. Communication Telesystems Int'l Inc.*, 922 F.Supp. 122, 124 (N.D.Ill. 1996) (failure to attach summons to notice of removal was "not incurable" and did not warrant remand);

  - *McKnight v. United Airlines Inc.*, 1993 WL 434093, *3 (N.D.Ill. Oct. 22, 1993) (failure to attach copy of original complaint "does not warrant remanding").

- **Ninth Circuit**

  - *Cooper v. Washington Mutual Bank*; No. 03-554, 2003 WL 1563999, *1 (N.D.Cal. March 19, 2003) (granting remand on other grounds, but noting that failure to attach state court filings to notice of removal was a "merely procedural" defect and "therefore correctable");

- **Tenth Circuit**

  - *Yellow Transportation Inc. v. Apex Digital Inc.*, 406 F.Supp.2d 1213, 1219 (D.Kan. 2005) (denying remand and holding "it can see no valid reason for remanding this case solely because the defendant failed to attach the summons to the notice of removal");

  - *Bank IV Salina, N.A. v. Aetna Casualty & Surety Co.*, 783 F.Supp. 1315, 1317 (D.Kan 1992) ("find[ing] no reason to remand for" failure to file copy of state court pleadings with clerk of the federal court).

*See also* 14 Charles Alan Wright, et al., Federal Practice & Procedure, § 3733 at 350-51 (3d ed. 1998) (failure to include all state court filings in a notice of removal is "curable in the federal courts if there is a motion for remand."); 29A Federal Procedure, Lawyers Ed. §69:75 (West

2006) ("failure of the party seeking removal to file with the notice all of the documents required

by the statute should not render the notice of removal defective. The failure to file such

documents should not be considered a jurisdictional defect, but merely a formal omission which

may be remedied subsequently.").[15]

This Court should follow the sweeping view of the federal courts, including the binding

precedent of the Eleventh Circuit, and reject Plaintiffs' hyper-technical effort to avoid federal

jurisdiction.[16]

### CONCLUSION

For the foregoing reasons, Plaintiffs' Motion to Remand, as well as Plaintiffs' request to

undertake "jurisdictional discovery" before the Motion to Remand is decided, should be denied.

---

[15] Plaintiffs also complain that Defendants' Notice violates Local Rule 81.1, which has similar requirements as §1446(a). Given these similarities, Defendants' analysis remains the same as to both as well. *See e.g. In re MTBE Products Liability Litigation,* 399 F.Supp.2d 340, 356 (omission of state court filings violated District of Maryland rule but did not require remand); *Flores,* 2002 WL 1118504, at *4 (omission of state court filings violated Northern District of Texas local rules, but did not support remand); *Bank IV Salina,* 783 F.Supp. at 1317 (omission of state court filings violated District of Kansas local rule, but did not support remand).

[16] A sampling of cases removed to this Court reveal that it is not uncommon for the removal papers to omit copies of the summons served upon one or more of the removing defendants. In such instances, the Court has continued to exercise jurisdiction and has not considered the omissions of summons to be fatal to the removal process mandating the summary remand directed by § 1446. See e.g. *Largent v. East Alabama Water, Sewer & Fire Protection District,* 3:03-cv-00876-MEF (one defendant, no summons attached); *Thornton v. Federal Express,* 2:05-cv-00656-MEF (one defendant, no summons attached); *Porterfield v. Flowers Baking Company of Opelika, LLC,* 2:05-cv-00937-MEF (one defendant, no summons attached); *Cantrell v. Currey,* 1:03-cv-00668-MEF (two removing defendants, only one summons attached); *Gibbs v. Metropolitan Life Insurance Company,* 1:03-cv-00630-MEF (one defendant, no summons attached); *Rountree v. Merck & Company, Inc.,* 2:05-cv-185-MEF (one defendant, no summons attached).

Dated:  August 2, 2006

s/ Tabor R. Novak Jr.
_____

Of counsel:
Daniel E. Reidy
James R. Daly
JONES DAY
77 West Wacker
Chicago, IL  60601-1692
Telephone:  (312) 782-3939
Facsimile:  (312) 782-8585

Tabor R. Novak, Jr.
BALL, BALL, MATTHEWS & NOVAK, P.A.
2000 Interstate Park Drive
Suite 204
Montgomery, AL 36109
Telephone:  (334) 387-7680
Facsimile:  (334) 387-3222

**Counsel for Defendant**
**TAP PHARMACEUTICAL PRODUCTS INC.**

Dated:  August 2, 2006

|  | s/ Robert A. Huffaker |
|---|---|
| Of counsel:<br>George C. Lombardi<br>Erik W. Snapp<br>WINSTON & STRAWN LLP<br>35 West Wacker<br>Chicago, IL  60601<br>Telephone:  (312) 558-5600<br>Facsimile:  (312) 558-5700 | Robert A. Huffaker (ASB-7668-U79R)<br>RUSHTON, STAKELY, JOHNSTON &<br>GARRETT, P.A.<br>184 Commerce Street<br>Montgomery, Alabama 36104<br>Telephone:  (334) 206-3100<br>Facsimile:  (334) 481-0814<br><br>**Counsel for Defendant**<br>**ABBOTT LABORATORIES** |

Dated:  August 2, 2006

s/ Joseph C. Espy III
_____

Of counsel:

Thomas P. Sullivan

Robert R. Stauffer

Nada Djordjevic

JENNER & BLOCK LLP

One IBM Plaza

Chicago, IL  60611

Telephone:  (312) 222-9350

Facsimile:   (312) 840-7305

Joseph C. Espy III (ASB-6591-S82J)

MELTON, ESPY & WILLIAMS, P.C.

301 Adams Avenue

Montgomery, Alabama 36104

Telephone: (334) 263-6621

Facsimile: (334) 263-7252

**Counsel for Defendants**
**TAKEDA PHARMACEUTICAL COMPANY**
**LIMITED AND TAKEDA AMERICA**
**HOLDINGS INC.**

Dated:  August 2, 2006

s/ Sandy G. Robinson
Sandy G. Robinson (ROBI5756)
Ian D. Rosenthal (ROSEI6905)
CABANISS, JOHNSTON, GARDNER,
DUMAS & O'NEAL LLP
Post Office Box 2906
Mobile, Alabama 36652
Telephone: (251) 415-7308
Facsimile: (251) 415-7350

**Counsel for Defendants
AMERISOURCEBERGEN CORPORATION;
AMERISOURCEBERGEN SPECIALTY
GROUP; AND
ONCOLOGY SUPPLY**

# CERTIFICATE OF SERVICE

I hereby certify that on August 2, 2006, I electronically filed the foregoing with the Clerk of the Court, using the CM/ECF system which will send notification of such filing to the following registered persons and that those persons not registered with the CM/ECF system served by U.S. mail:

Shanin Specter. Esq.
Donald E. Haviland, Esq.
Kline & Specter
1525 Locust Street, 19th Floor
Philadelphia, PA 19102

Pamela B. Slate, Esq.
Slate Kennedy LLC
166 Commerce Street
Suite 350
Montgomery, AL 36104

Kimberly R. West, Esq.
Wallace, Jordan, Ratliff & Brandt, LLC
P. O. Box 530910
Birmingham, Alabama 35298

/s/ Tabor R. Novak, Jr.