**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA**

| | |
|---|---|
| BLUECROSS AND BLUESHIELD OF ALABAMA; and BLUECROSS AND BLUESHIELD OF MICHIGAN, Plaintiffs, <br><br> v. <br><br> TAP PHARMACEUTICAL PRODUCTS INC. (formerly known as TAP HOLDINGS, INC.);ET AL., <br><br> Defendants. | Case No.: 2:06cv536 MEF |

## PLAINTIFFS' REPLY TO DEFENDANTS' JOINT OPPOSITION TO PLAINTIFFS' MOTION TO REMAND

Defendants' sweeping generalities of law and parsing of the facts in their Joint Opposition to Plaintiffs' Motion to Remand ("Defs. Opp." Dkt. 32) do not withstand careful scrutiny. Their papers do nothing to alter the conclusion that this Court should remand this case because (1) Defendants failed to comply with the procedural requirements for removal; (2) this case presents only state law claims; and (3) there is no complete diversity of citizenship between the parties. Were this Court to disagree and not remand this case forthwith, Plaintiffs request permission to proceed with limited jurisdictional discovery. [1] In further reply to Defendants' Opposition, Plaintiffs state:

**I.     This Case Should be Remanded to State Court Because the Defendants' Notice of Removal is Procedurally Defective.**

Defendants cannot dispute that their Notice of Removal is procedurally defective. By failing to file, with their Notice of Removal, the summons served on each of the removing defendants, they

---

[1] *See* Plaintiffs' Motion to Remand (Dkt. 25) (requesting limited jurisdictional discovery); Plaintiffs' Motion for Limited Jurisdictional Discovery Or, in the Alternative, for Rule 26(f) Conference (Dkt. 35).

violated 28 U.S.C. § 1446(a). *See Newman v. Spectrum Stores, Inc.*, 109 F. Supp. 2d 1342, 1345 (M.D. Ala. 2000) (Albritton, J.) ("A defendant, or defendants, desiring to remove a civil action, must file a notice of removal, together with all process, pleadings, and orders served upon such defendant or defendants, in the appropriate United States District Court." (citing 28 U.S.C. § 1446(a))). By failing to file, "simultaneously with the notice of removal, clear and legible copies of all records and proceedings from the state court," Defendants also violated M.D. Ala. LR 81.1.

Defendants also cannot dispute that Plaintiffs have filed a timely motion to remand that raises the procedural defects in the Notice of Removal. *Whetstone v. Fred's Stores of Tenn., Inc.*, No. 1:05-cv-1171-MEF, 2006 WL 559596, at *1 (M.D. Ala. Mar. 7, 2006) (Fuller, C.J.) ("[W]ithin 30 days after the filing of the notice of removal, the non-removing party may move for remand on the basis of a defect other than lack of subject matter jurisdiction."). "When a plaintiff questions the propriety of a defendant's removal petition, the defendant bears the burden of showing that the removal was proper." *Newman*, 109 F. Supp. 2d at 1345 (citations omitted).

As this Court has previously held, "'[r]emoval is a statutory privilege, rather than a right, and the removing party must comply with the procedural requirements mandated in the statute when desirous of availing the privilege.'" *Adams v. Charter Communications VII, LLC*, 356 F. Supp. 2d 1268, 1271 (M.D. Ala. 2005) (Fuller, C. J.) (citations omitted). "A court must strictly construe the requirements of the removal statute, as removal constitutes an infringement on state sovereignty." *Newman*, 109 F. Supp. 2d at 1345 (citations omitted). "This is a central concept of federalism." *Id.* (citations omitted).

"[C]lear Eleventh Circuit precedent mandat[es] remand of removed cases where federal jurisdiction **and compliance with the procedural requirements for removal** is not absolutely

clear." *Crews v. National Boat Owners Ass'n (NBOA) Marine Ins.*, No. 2:05-CV-1057-MEF, 2006 WL 902269, at *4 (M.D. Ala. Apr. 6, 2006) (Fuller, C.J.) (bold emphasis added). Where, as here, the procedural defects in the Notice of Removal are indisputable, remand is certainly mandated.

Having violated the procedural requirements for removal, and faced with a timely motion to remand, Defendants filed on August 2, 2006, a "Supplemental Submission" ("Supp. Sub.") (Dkt. 34), which purports to include all the process and records from the state court that were omitted from the Notice of Removal. In an apparent attempt to explain why they omitted the state court's file from the Notice of Removal, Defendants make the unsubstantiated claim that the return receipt cards they now file "were not contained in the file of the Circuit Clerk as of the date of removal of this cause." Supp. Sub. at 2. Yet, all the return receipts contained in the "Supplemental Submission" were stamped "Filed" between May 26, 2006, and June 9, 2006. *See* Supp. Sub. (Dkt. 34) Ex. B. Defendants' Notice of Removal was filed on June 15, 2006. Defendants offer no other reason for having failed to comply with either 28 U.S.C. § 1446(a) or M.D. Ala. LR 81.1, particularly with respect to their failure to file the summonses and civil cover sheet that were clearly in the state court's file at the time of removal.

In any event, Defendants' attempt to "supplement" the Notice of Removal comes too late. Defendants admitted in their Notice of Removal that at least one defendant was served on May 24, 2006. Notice of Removal (Dkt. 8) ¶ 2. Therefore, the time to remove, or to amend or supplement the notice of removal to add missing information, expired thirty days later, on June 23, 2006.

After the 30-day period for filing a notice of removal has passed, "the notice of removal may be amended 'only to set forth more specifically grounds for removal which were imperfectly stated in the original petition.'" *Newman v. Spectrum Stores, Inc.*, 109 F. Supp. 2d 1342, 1347 (M.D. Ala.

2000) (Albritton, J.) (quoting *American Educators Fin. Corp. v. Bennett*, 928 F. Supp. 1113, 1115

(M.D. Ala. 1996) (Albritton, J.)). Even though the time limit within which to comply with the

removal statute is not jurisdictional, it is "mandatory and 'must be strictly construed.'" *Newman*, 109

F. Supp. 2d at 1345 (quoting *Production Stamping Corp. v. Maryland Cas. Co.*, 829 F. Supp. 1074,

1076 (E.D. Wis. 1993); citing *Webster*, 925 F. Supp. at 729).[2] Defendants' Supplemental

Submission, filed August 2, 2006, almost six weeks after the expiration of the 30-day removal

period, is far too late.[3]

---

[2] *See also Russell Corp. v. American Home Assur. Co.*, 264 F.3d 1040, 1050 (11th Cir. 2001) (holding that "bright line limitations on federal removal jurisdiction . . . that some might regard as arbitrary and unfair[,] . . . are an inevitable feature of a court system of limited jurisdiction that strictly construes the right to remove.").

[3] Even where an amended notice of removal would otherwise satisfy the procedural removal requirements, remand is appropriate where the amended notice is filed more than 30 days after service of process was received. *Whetstone*, 2006 WL 559596, at *3. Here, it appears that Defendants' "Supplemental Submission" still does not satisfy M.D. Ala. LR 81.1. Defendants claim to include "[i]tems in addition to process currently contained in the file of the Circuit Clerk of Montgomery County," Supp. Sub. (Dkt. 34) at 2, but include only one return receipt card for Amerisource Bergen Coporation ("ABC"), which, like the other defendants, was served with both the Complaint and the First Amended Complaint. *See* Montgomery County Circuit Court Docket (Motion to Remand (Dkt. 25) Ex. A) (noting entry of return of service on ABC on 5/30/06 and 6/21/06). Although the Circuit Clerk's docket entry for return of service on ABC is dated June 21, 2006, after the date of removal, so are the entries for return of service on Takeda Pharmaceutical Co. Ltd., Takeda America Holdings, Inc.(collectively "Takeda Defendants"), Abbott, and TAP. *See id.* Yet, the return receipt cards for these defendants are all stamped "Filed" by the Circuit Clerk June 6 or 9, before removal. *See* Supp. Sub. (Dkt. 34) Ex. B. It therefore appears likely that a second return receipt card for ABC was filed in the state court before removal, and that Defendants have still not complied with M.D. Ala. LR 81.1. In any event, where compliance with the procedural requirements for removal are "not absolutely clear," *Crews*, 2006 WL 902269, at *4, remand is mandated.

Moreover, Defendants assert incorrectly that "[t]here is no dispute that Defendants provided with the Notice . . . the dates of service of the summons and complaints on all Defendants, identified by way of affidavits." Defs. Opp. (Dkt. 32) at 15-16. There is clearly a dispute as to this assertion because there was no affidavit supplied with the Notice of Removal as to when the Takeda Defendants, ABC, Oncology Supply Company ("OSC"), or Amerisource Bergen Specialty Group ("ABSG") were served. Therefore, the documents provided with the notice of removal did not, as Defendants claim, provide the Court with "all the information necessary to determine the propriety of the Notice." Defs' Jt. Opp. (Dkt. 32) at 16. The only affidavits supplied with the Notice of Removal as to service dates were from TAP (Dkt. 8, Ex. 2) and Abbott (Dkt. 8, Ex. 3). The affidavit from ABC discussed only the corporate structures of ABC, OSC, and ABSG, and did not mention service dates. (Dkt. 8, Ex. 4). The consent to removal filed by OSC and ABSG also did not mention service dates. (Dkt. 8, Ex. 5). In *Adams v. Aero Services Int'l, Inc.*, 657 F. Supp. 519 (E.D. Va. 1987), cited in *Newman*, the court held that the failure of a consenting defendant to specify when he received service of process, prevented the court from determining whether the notice of removal was proper. *Adams*, 657 F. Supp. at 521.

-4-

Defendants go to great lengths to ask this Court to excuse their undisputed failure to comply with either 28 U.S.C. § 1446(a) or M.D. Ala. LR 81.1. They claim that "almost every federal court nationwide" (or at least "a vast majority of the courts") have rejected Plaintiffs' position. Defs. Resp. at 16. In fact, they argue that district courts in other circuits are of "the sweeping view" that procedural deficiencies like those in Defendants' Notice of Removal do not require remand, *id.* at 20, and that such courts "consistently" so hold. *Id.* at 18. Defendants assert that their position is based on "well settled," *id.* at 17, and "binding precedent of the Eleventh Circuit," *id.* at 20, and, citing to only one case from a district court in Kentucky, argue that Judge Acker's opinion in *Kisor v. Collins*, 338 F. Supp. 2d 1279 (N.D. Ala.2004) (Acker, J.) has been "widely rejected." Defs. Opp. (Dkt. 32) at 17. Defendants' grossly exaggerated arguments are simply inaccurate.

As to forgiveness of Defendants' deficiencies being "well-settled," the contrary is true. As early as 1883, courts have unhesitatingly remanded removed cases for failure to file the required record within the removal period. In *St. Paul & C.R. Co. v. McLean*, 108 U.S. 212 (1883), the removing defendant failed to file a copy of the record within the time required by statute, and the plaintiff moved to remand on that basis alone. *Id.* at 212. Defendant's counsel, upon learning of the omission, filed the record and submitted an affidavit explaining that the omission was due to inadvertence, but the district court granted the motion to remand. *Id.* at 212. In affirming the remand, the Supreme Court noted that the only reason given by the defendant for not filing the required record within the proper time was inadvertence, and held, "[i]t is scarcely necessary to say that this did not constitute a sufficient legal reason for not complying with the statute." *Id.* at 217.

Since 1883, the removal statute has undergone a number of amendments. The gaping hole in Defendants' argument, and cases on which they rely, is that they fail to recognize the impact of

the most significant of these amendments, which occurred in 1988. "For many years [28 U.S.C. § 1447(c)] provided that if at any time prior to final judgment it appeared that a case was removed improvidently **and without jurisdiction**, the federal court must remand the case. Since its amendment in 1988, the statute has drawn a distinction between defects in subject-matter jurisdiction, which require remand 'at any time before final judgment' and other defects, which can be the basis of a motion to remand only if 'made within 30 days after the filing of the notice of removal under section 1446(a).'" 20 Charles Alan Wright & Mary Kay Kane, Federal Practice & Procedure § 43 (citing 28 U.S.C. § 1447(c), as amended by Act of Nov. 19, 1988, Pub. L. 100-702, title X, § 1016(a), 102 Stat. 4669; Act of Oct. 1, 1996, Pub. L. 104-219, § 1, 110 Stat. 3022)) (bold emphasis added).[4]

In *Employers-Shopmens Local 516 Pension Trust v. Travelers Casualty & Surety Co. of America*, No. 05-444-KI, 2005 WL 1653629 (D. Or. Jul. 6, 2005), the Oregon district court, faced with an almost identical situation to that here, recently explained the significance of the amendment as follows:

> I agree with plaintiffs' contention that the amendment destroys the persuasiveness of cases based on the pre-1988 statute which ignore merely formal defects because they are not jurisdictional.[5] The current statute applies to 'any defect' and does not further

---

[4] " [Section 1447] differentiates between removals that are defective because of lack of subject-matter jurisdiction and removals that are defective for some other reason, *e.g.*, because the removal took place after relevant time limits had expired. For the latter kind of case, there must be a motion to remand filed no later than 30 days after the filing of the removal notice. § 1447(c). For the former kind of case, remand may take place without such motion and at any time. *Ibid.* The provision, then, helps to specify a procedural difference that flows from a difference in the kinds of reasons that could lead to a remand." *Wisconsin Dep't of Corrections v. Schacht*, 524 U.S. 381, 392 (1998).

[5] The jurisdictional vs. procedural distinction is not recognized by Defendants, who suggest that this Court's exercise of jurisdiction over cases that have been removed with procedural defects, means that procedural defects in removal are not grounds for remand. Defs. Resp. at 20 n.16. Defendants fail to note that in five of the six cases they cite, *no motion for remand was filed at all*. In one of the cases, *Gibbs v. Metropolitan Life Ins. Co.*, 1:03-cv-00630-MEF (M.D. Ala.), a motion to remand was filed, *but raised no procedural defects. See Gibbs*, Dkt. 5, filed 7/3/03. That the plaintiffs in those cases waived their right to remand on procedural grounds has no impact on

-6-

divide defects into the formal or modal variety versus the substantial or prejudicial variety. . . . [T]he removal statute must be strictly construed in order to keep from expanding this court's limited jurisdiction.

*Id.* at *3.

In *Employers-Shopmens*, the defendants, like those here, relied on cases like *Efford v. Milam*, 368 F. Supp. 2d 380 (E.D. Pa. 2005), in which the court had excused defendant's failure to file the required pleadings and process within the 30-day removal period. The court in *Employers-Shopmens* found the reliance misplaced, stating: "*Efford*, relying on pre-1988 cases, excuses the procedural defect as one that is "merely formal or modal." . . . As explained above, I do not believe that reasoning is persuasive given the amendment to the statute." *Employers-Shopmens*, 2005 WL 1653629 , at *4.

The court in *Employers-Shopmens* remanded the case because, although the defendant had filed the complaint served on it, it did not file the exhibits to the complaint until it filed an amended notice of removal after the 30-day removal period had expired. *Id.* at *2. The court, on plaintiffs' timely motion to remand, concluded that "any defect in removal procedure must be cured within the 30-day removal period or it is fatal to the removal." *Id.* at *4 (citing *Kisor*, 338 F. Supp. 2d 1279; *Macri v. M&M Contractors, Inc.*, 897 F. Supp. 381 (N.D. Ill. 1995)).

Even in *Yellow Transp., Inc. v. Apex Digital, Inc.*, 406 F. Supp. 2d 1213 (D. Kan. 2005), upon which Defendants rely, the court recognized the significance of the amendments to 28 U.S.C. § 1447(c) when it stated:

---

Plaintiffs' Motion to Remand. Despite Defendants' assertion that "it is not uncommon for the removal papers to omit copies of the summons served upon one or more of the removing defendants," Defs. Opp. at 20 n.16, such a deficiency still requires remand when it is raised by a timely motion to remand, as it is here.

The general rationale of the cases granting remand where the removing party has failed to file the required state court papers within the thirty-day removal period is based on their reading of the interrelationship of the language in the current version of the removal statutes. *Covington*, *Riehl*[6], and their progeny, on the other hand, derive their origin from a prior version of § 1447(c), as both *Covington* and *Riehl* predated the 1988 amendments to § 1447. Prior to that time, § 1447(c) required remand "[i]f at any time before final judgment it appears that the case was removed improvidently and without jurisdiction."

*Id.* at 1216 (quoting *Sheet Metal Workers' Int'l, AFL-CIO v. Carter*, 450 U.S. 949, 950 (1981)).

While the *Yellow Transportation* court ultimately would not remand based on the procedural deficiencies, it did so only because the defendants had "[i]nadvertently fail[ed] to attach one document," which distinguished it from other cases in that district (cases not cited by Defendants in their sampling of the "vast majority" of cases). *Id.* at 1218 (citing *Carrothers Constr. Co. v. USA Slide, Inc.*, Case No. 98-2097-JWL, 1998 WL 295602, at *1 (D. Kan. May 18, 1998); *Patel v. Moore*, 968 F. Supp. 587, 591 (D. Kan. 1997)).[7] The *Yellow Transportation* court did note,

---

[6] In *Riehl v. National Mut. Ins. Co.*, 374 F.2d 739 (7th Cir. 1967), the Seventh Circuit held that remand was not required because the removing defendant's failure to attach a copy of the pleadings, process and orders served on it, did not defeat the district court's subject matter jurisdiction. Yet, *Riehl*, like *Covington*, was decided when 28 U.S.C. § 1447(c) provided that a case would be remanded where improvidently removed *and without jurisdiction*. The *Riehl* court's decision was also based on the fact that the "omitted complaint [was] substantially identical with the complaint in [a companion action before the court] . . ." *Riehl*, 374 F.2d at 742. It was only "[i]n this context," that the Seventh Circuit found that "the omission was but a minor irregularity of no consequence," which would not defect subject matter jurisdiction. *Id.* Even under *Riehl*, therefore, Defendants' omission would not be excused.

[7] In *Corrothers* the same court held that, even where the defendant had complied with 28 U.S.C. § 1447(c), the failure to comply with the local rule, which required that the defendant file a copy of the state court record, required remand. *Corrothers*, 1998 WL 295602 at *1. In so holding, the *Corrothers* court cited *Patel v. Moore*, 968 F. Supp. 587 (D. Kan. 1997) (bases for remand included failure to comply with the local rule; awarding fees and costs to plaintiff under § 1447(c)); *Federated Rural Elec. Ins. Co. v. Mohave Elec. Coop.*, No. 92-2279-O, 1992 WL 309524, at *1 (D. Kan. Sept. 9, 1992) (remanding solely for failure to comply with this local rule, and taxing costs against defendant); *Bell v. Norfold S. R.R.*, No. 94-2242-GTV, 1995 WL 88214, at *2 (D. Kan. Jan. 30, 1995) (bases for remand included failure to comply with the local rule); *Country Hill Bank v. General Dev., L.P.*, No. 90-2288-V, 1990 WL 168417, at *2 (D. Kan. Sept. 26, 1990) (same; awarding fees and costs to plaintiff). *See also FastPro Intern., Inc. v. Great Plains Software O.C., Inc.*, No. CIV. A. 01-2082-KHV, 2001 WL 395287, at *1 (D. Kan. Apr. 10, 2001) (bases for remand included failure to comply with the local rule). The *Corrothers* court also noted that 28 U.S.C. § 1447(b) allows district courts to "'require the removing party to file with its clerk copies of all records and proceedings in such State court,'" *id.* (quoting 28 U.S.C. § 1447(b)), and held that "compliance with section 1446(a) does not satisfy the additional requirement authorized by section 1447(b) and imposed by [the local rule]."

however, that a "party's total failure to comply with the local rule . . . thwarts the record gathering

process and bodes particularly ill for the 'just, speedy, and inexpensive determination' of the action."

*Id.*

In *Bagnato v. The Home Depot*, No. 03-CV-0789E(SC), 2004 WL 625270 (W.D.N.Y. Jan.

15, 2004), the district court remanded an action to state court for the removing defendant's failure

to comply with a local rule that required the filing of copies of all state court records and proceedings

with the notice of removal. *Id.* at *1 (citing *Lafarge Coppee v. Venezolana de Cementos*, 31 F.3d 70,

72 (2d Cir. 1996) ("Subsection 1447(c) authorizes a remand 'on the basis of any defect in removal

procedure . . . .'" (quoting *Hamilton v. Aetna Life & Casualty Co.*, 5 F.3d 642, 644 (2d Cir. 1993),

*cert. denied*, 510 U.S. 1130 (1994))); *Corrothers*, 1998 WL 295602, at *1). The *Bagnato* court

recognized that it must "'construe the removal statute narrowly, resolving any doubts against

removability,'" *id.* (citations omitted), and that "'Local Rules have the force of law . . . [where] they

do not conflict with rules prescribed by the Supreme Court, Acts of Congress, or the Constitution.'"

*Id.* (quoting *Somlyo v. J. Lu-Rob Enters.*, 932 F.2d 1043, 1046 (2d Cir. 1991)). "[T]o permit 'the

filing of a notice of removal without compliance with the Local Rules would subvert the policy

behind the Local Rules and encourage noncompliance.'" *Id.* (quoting *Somlyo*, 932 F.2d at 1047).

In *Somlyo*, on which the *Bagnato* court relied, the Second Circuit stressed the importance of

complying with district courts' local rules, stating: "Appellees minimize the importance of the Local

Rules,[8] implying that the Local Rules address picayune matters which should not be a factor in

---

*Corrothers*, 1998 WL 295602, at *1.

   [8] Defendants here have similarly minimized the importance of this Court's local rules, claiming inaccurately that it "has similar requirements as § 1446(a)." Defs. Opp. at 20 n.15.

determining the removability of this action. We strongly disagree. District courts do not institute Local Rules to frustrate litigators, but to ensure the efficient and expedient execution of justice." *Somlyo*, 932 F.2d at 1048.[9]

Like the Defendants in *Employers-Shopmens*, Defendants here rely on cases that were either decided pre-1988, or which rely without substantive discussion on pre-1988 cases. None of them provide support for Defendants' position.

For instance, Defendants cite to *Covington v. Indemnity Ins. Co. of North America*, 251 F.2d 930 (5th Cir. 1957), *cert. denied*, 357 U.S. 921 (1958) as "binding precedent." Defs. Resp. at 17. Yet, Defendants ignore *Peterson v. BMI Refractories*, 124 F.3d 1386 (11th Cir. 1997), in which the Eleventh Circuit, following the 1988 amendment, stated that, despite its holding in *Covington*, "a federal court might be justified in granting a *timely* motion to remand under 28 U.S.C. § 1447 on the grounds of [a procedural defect]." *Id.* at 1395 (citing *Covington*, 251 F.2d at 932; *Mackay v. Uinta Development Co.*, 229 U.S. 173, 176 (1913)[10]) (emphasis added).

Defendants also ignore other Eleventh Circuit precedent. In *Velchez v. Carnival Corp.*, 331 F.3d 1207 (11th Cir. 2003), the Eleventh Circuit, in holding that it had no jurisdiction to review the grant of a *timely* remand motion based on procedural defects, held specifically that remand based on

---

[9] *See also Brown v. City of Meridian*, 356 F.2d 602, 606 (5th Cir. 1966) (holding pre-1988 that, even in a civil rights action, rejection of defective removal petition that fails to comply with local rules regarding removal, is not "a gross abuse of discretion if requiring [compliance with local rules] would not so delay matters as to operate to deprive petitioners of effective access to federal courts").

[10] In *Mackay v. Uinta Development Co.*, 229 U.S. 173 (1913), the Supreme Court held that defects in removal procedures did not divest a district court of subject matter jurisdiction because objections to procedural defects could be waived. *Id.* at 176. However, the Supreme Court did *not* hold that procedural defects could be ignored *if the plaintiff filed a timely objection*. In fact, the Court specifically held: "As in other forms of process, the litigant has the right to rely upon the statute, and to insist that, *in compliance with its terms*, the case will be taken from the state to the Federal court . . . ."*Id.* (citation omitted) (emphasis added). "*Mackay* is an old case, but it has never been overruled." *Peterson*, 124 F.3d at 1392.

the defendant's "fail[ure] to attach 'a copy of all process, pleadings, and orders served' as required by § 1446(a)," *id.* at 1208-09, constituted "a defect in removal procedure within the meaning of § 1447(c)." *Id.* at 1209.

Of course, the timeliness of the plaintiff's motion to remand, which raises procedural deficiencies in removal, is the distinction drawn in *Kisor* by Judge Acker. "The crucial distinction between *Covington* and *Woodall* [*v. Insurance Co. of North America*, 582 F. Supp. 247 (N.D. Ga. 1984)], on the one hand, and the instant case, on the other, is that **Kisor here filed a timely motion to remand after the expiration of defendants' time for filing a notice of removal**." *Kisor*, 338 F. Supp. 2d at 1281 (bold emphasis in original).

Clearly, the distinction drawn by the Eleventh Circuit in *Peterson*, and applied by the court in *Kisor* is far from "dubious," as Defendants assert. Defs. Resp. at 17 n.14. Neither does *Kisor* "appear to stand alone in modern jurisprudence," as the court in *Gilfert v. Liberty Mutual Ins. Co.*, No. 305CV527S, 2006 WL 288628, at *3 (W.D. Ky. Feb. 2, 2006), stated.[11] Indeed, it is in "modern

---

[11] In *Gilfert v. Liberty Mut. Ins. Co.*, No. 305CV527S , 2006 WL 288628 (W.D. Ky. Feb. 2, 2006), the district court, ignoring "modern jurisprudence," relied on 29A Federal Procedure, L. Ed. (West Publ., 1998) § 69:75 and 14C Charles Alan Wright, Arthur R. Miller, *et al.*, Federal Practice & Procedure ("Wright & Miller") § 3733, as Defendants do here. Yet, 29A Fed. Proc., L. Ed. § 69:75 does not provide persuasive authority for the Defendants' position. While § 69:75 does assert that "the failure of the party seeking removal to file with the notice all of the documents required by the statute should not render the notice of removal defective," it provides no authority for the assertion whatsoever. In fact, elsewhere, the treatise provides: "Although 28 U.S.C.A. § 1447(c) refers simply to 'defects' as a ground for remand, clearly procedural defects are included in this term and the Federal District Court may remand a case to the state court as a result of a procedural defect, provided that a timely motion to remand is filed." 29A Fed. Proc., L. Ed. § 69:131. That § 69:75 provides that "failure to file such documents should not be considered a jurisdictional defect, but merely a formal omission which may be remedied subsequently," *id.* (citing *Dri Mark Products, Inc. v. Meyercord Co.*, 194 F. Supp. 536 (S.D.N.Y. 1961)) does not help Defendants. Plaintiffs' timely motion to remand based on Defendants' clear procedural defect allows this Court to remand on a basis other than subject matter jurisdiction, and its remand order will not be reviewable on appeal. *See Velchez*, 331 F.3d at 1208-09. (For discussion of Wright & Miller § 3733, *see infra* n.15.)

jurisprudence," i.e., after the 1988 amendment to 28 U.S.C. § 1447(c), that *Kisor* is based. Moreover, *Kisor* is far from alone.[12]

The court in *Employers-Shopmens* cited both to *Kisor* and to *Macri v. M&M Contractors, Inc.*, 897 F. Supp. 381 (N.D. Ill. 1995), in granting plaintiffs' motion to remand. *Employers-Shopmens*, 2005 WL 1653629, at *4. In *Macri*, the district court held that procedural defects in a notice of removal are not curable outside the 30-day time limit for removal, absent the plaintiff's waiver. *Macri*, 897 F. Supp. at 383-84. The court, applying the Seventh Circuit's reasoning in *Rothner v. City of Chicago*, 879 F.2d 1402 (7th Cir. 1989), held that, while "a defect in removal procedure will not be a ground for a remand so long as the petitioner corrects the defect within the thirty-day time period, . . . [a]mendments to cure procedural defects after the thirty-day time limit has passed will not serve to avoid remand, since the petitioner could not simply properly refile the petition after the thirty day deadline." *Macri*, 897 F. Supp. at 384 (citing *Rothner*, 879 F.2d at 1412 n.10 (holding that "the question is not whether noncompliance with statutory requirements is a § 1447(c) ground for remand – that conclusion seems to be beyond dispute")).[13]

_____

[12] *See, e.g., Fuller v. Exxon Corp.*, 78 F. Supp. 2d 1289, 1294 (S.D. Ala. 1999) (Vollmer, J.) (recognizing that procedural defect in notice of removal provided proper basis for remand, but only if raised within 30 days from date of removal); *Cartee v. Precise Cable Const., Inc.*, No. CA 05-0515-C, 2005 WL 2893951, at *2 (S.D. Ala. Nov. 1, 2005) (Cassady, M.J.) (sitting by consent pursuant to 28 U.S.C. § 636(c) & Fed. R. Civ. P. 73) (remanding case where procedural defect raised by plaintiff in timely motion to remand); *Cury v. Royal Palm Sav. Ass'n*, 713 F. Supp. 388, 389 (S.D. Fla. 1989) (holding that failure to provide with notice of removal all pleadings, process and orders served on removing defendant constituted ground for remand).

[13] In *Issa v. Priority Transp., LLC*, No. 05-CV-394, 2006 WL 304028 (N.D. Ind. Feb. 7, 2006), cited by Defendants, the court distinguished *Macri* and forgave the defendant's failure to file pleadings, process and orders served on them, because unlike *Macri*, where the defendant had not filed the required documents until "over two weeks after the thirty day deadline had expired," *id.* at *2, defendants in *Issa* had corrected the procedural defect by filing the complaint one day after filing the notice of removal. *Id.* Therefore, *Issa* provides no support for Defendants, who did not attempt to remedy their procedural defects until almost six weeks after the removal deadline had passed.

The *Macri* court also held that "[t]he defendant bears the burden of meeting all of the statutory requirements for removal, . . . '[t]he plaintiff has a right to remand if the defendant did not take the right steps when removing', and 'a removed matter must be remanded if there are any defects in the removal procedure.'" *Id.* (citations omitted). The *Macri* court therefore remanded the case to state court, and awarded fees and costs to the plaintiff. *Id.* at 385-86.

Defendants also incorrectly rely on the following cases, which either are pre-1988, rely on pre-1988 cases without analysis, rely on no authority at all, or are otherwise clearly distinguishable:

- *Boxdorfer v. Daimler Chrysler Corp.*, 396 F. Supp. 946 (C.D. Ill. 2005) (relied solely on the Seventh Circuit's 1967 *Riehl* decision when forgiving procedural defects that did not impact subject matter jurisdiction)

- *Littleton v. American Bankers Life Ins. Co. of Florida*, 289 F. Supp. 2d 776, 781-82 (S.D. Miss. 2003) (citing to no authority)

- *Usatores v. Marina Mercante Nicaraguenses*, 768 F.2d 1285 (11th Cir. 1985) (pre-1988 case in which defendants had failed to file a motion to dismiss, which is not a "pleading, process, or order" required by 28 U.S.C. § 1446(a))

- *Kizzire v. General Motors Corp., Inc.*, No. 95-B-1322, 1996 WL 539739 (N.D. Ala. Mar. 19, 1996) (Blackburn, J.) (citing to no authority)[14]

- *Agee v. Huggins*, 888 F. Supp. 1573 (N.D. Ga. 1995) (relying only on pre-1988 cases, noting that defendants claimed to have filed all documents with which they were served, and referencing no local rule that would have required more)

- *In re MTBE Products Liability Litigation*, 399 F. Supp. 340 (S.D.N.Y. 2005) (denying remand where plaintiffs did not raise procedural defect within 30 days from removal)

- *Flores v. Baldwin*, No. 301CV2873P, 2002 WL 1118504 (N.D. Tex. May 28, 2002) (relying only on *Covington*)

---

[14] Compare State of Alabama v. Kemp, 952 F. Supp. 722, 723 (N.D. Ala. 1997) (Hancock, J.) (defendant's failure to attach "a copy of all process, pleadings, and orders served upon such defendant" to the notice of removal, as required by 28 U.S.C. § 1446(a), constituted ground for summary remand under 28 U.S.C. § 1446(c)(4)).

•    *International Gateway Communs., Inc. v. Communication Telsys. Int'l, Inc.*, 922 F. Supp. 122 (N.D. Ill. 1996) (relying only on *Shaw*[15] and *Riehl*)

•    *Anderson v. Federated Mut. Ins. Co.*, No. 00 C 0312, 2000 WL 34228194 (W.D. Wis. Aug. 15, 2000) (relying only on *Riehl* and *International Gateway*)

•    *McKnight v. United Airlines, Inc.*, 1993 WL 434093 (N.D. Ill. Oct. 22, 1993) (citing only to *Riehl*, *Covington*, and Wright & Miller § 3373[16])

•    *Cooper v. Washington Mut. Bank*, No. 03-554, 2003 WL 1563999 (N.D. Cal. Mar. 19, 2003) (citing only to *Riehl*)

•    *Bank IV Salina, N.A. v. Aetna Casualty & Surety Co.*, 783 F. Supp. 1315 (D. Kan. 1992) (citing to no authority).

Defendants failed to comply with the requirements of the federal removal statute or this Court's local rule regarding removal. Plaintiffs have filed a timely motion to remand. Defendants did not attempt to remedy the deficiencies in their Notice of Removal until almost six weeks following the expiration of the time within which they could remove, and their attempt still appears to be in vain. Under these circumstances, Defendants can cite to no case that supports denial of the Motion to Remand. "If it clearly appears on the face of the notice and any exhibits annexed thereto that removal should not be permitted, the court shall make an order for summary remand." 28 U.S.C.

---

[15]  In *Shaw v. Dow Brands, Inc.*, 994 F.2d 364 (7th Cir. 1993), the Seventh Circuit affirmed the district court's judgment dismissing plaintiff's state law claims as preempted by federal law. Just before oral argument, the Seventh Circuit raised the issue of removal jurisdiction with the parties, and the plaintiff argued that procedural defects in the removal petition prevented the district court from having jurisdiction to dismiss the plaintiff's claims. *Id.* at 365-66. Because the plaintiff had not raised the issue on motion to remand, the Seventh Circuit affirmed. *Id.* at 369.

[16]  Wright & Miller § 3733, on which Defendants also rely, cites only to *Usatorres, Riehl, Covington, Efford, Agee,* and *Dri Mark*, which, as discussed herein, are not persuasive, and *Puckett Mach. Co. v. United Rentals, Inc.*, 342 F.Supp. 2d 610 (S.D. Miss. 2004), in which the court found no procedural defect, but merely a clerical error, where the "County Court" from which the case was removed was incorrectly referred to as the "Circuit Court," an error that does not compare to the deficiencies in Defendants' Notice of Removal in this case.

-14-

§ 1446(c)(4). With Plaintiffs' timely Motion for Remand before it, this Court should order summary remand without further considering whether it has subject matter jurisdiction.

## II.    Plaintiffs' Complaint Alleges Only State Law Claims and Does Not Raise a Substantial Federal Issue.

Once again, Defendants return to the Supreme Court's decision in *Grable & Sons Metal Prods., Inc. v. Darue Eng'g & Mfg.*, 545 U.S. 308, 125 S.Ct. 2363, 162 L. Ed. 2d. 257 (2005). As articulated by the Supreme Court, the relevant inquiry must be: "[D]oes a state-law claim necessarily raise a stated federal issue, actually disputed and substantial, which a federal forum may entertain without disturbing any congressionally approved balance of federal and state judicial responsibilities." *Grable,* 125 S. Ct. at 2368.

While the contours and outer limits of *Grable* are still being mapped – that is to say, interpreted – by the various federal courts that have subsequently faced what the Supreme Court described as the "less frequently encountered, variety of federal 'arising under' jurisdiction," *Grable*, 125 S. Ct. at 2366, the consensus[17] appears to be that, even after *Grable, Merrell Dow*

---

[17] *See e.g., Harmon v. Maury County, Tennessee*, No. 1:05-CV-0026, 2005 WL 2133697, at *4 (M.D. Tenn. Aug. 31, 2005) (granting remand because "[p]laintiffs' claims fall within that broad class of state law claims based on federal regulations in the state court, as described in *Grable*."); *Kentucky v. Claymore Group of America Corp.*, No. 3:05-CV-40-JMH, 2005 WL 1868810, at *3 (E.D. Ky. Aug. 4, 2005) (granting remand because "[t]he only reason that federal law will be considered is because Defendants will raise it. This, in the Court's view, is not sufficient to establish federal question jurisdiction."); *Kentucky v. China Tobacco Anyang Cigarette Factory*, No. 3:05-CV-38-JMH, 383 F. Supp. 2d 917, 920 (E.D. Ky. 2005) (granting remand, and using exactly the same language as in the *Claymore* case.)  In both *Claymore* and *China Tobacco*, the Kentucky district court evaluated the three factors identified by the Court of Appeals for the Sixth Circuit in *Grable*, 377 F.3d 592 (6th Cir. 2004), *aff'd* 545 U.S. 308, 125 S. Ct. 2363, 162 L. Ed. 257 (2005), namely that "a federal question may arise out of a state law case or controversy if the plaintiff asserts a federal right that 1) involves a substantial question of federal law; 2) is framed in terms of state law; and 3) requires interpretation of federal law to resolve the case." *Id.* at 595, 2366. Having weighed those various factors, the Kentucky district court found that, "with respect to the third consideration, interpretation of federal law is not required, again, with respect to Plaintiff's claim."  See *Claymore*, 2005 WL 1868810, at *3; *China Tobacco*, 383 F. Supp. 2d at 920.  Similarly, despite Defendants' protestations in the present action, interpretation of federal law is not required to resolve Plaintiffs' state law claims; rather, any interpretation of federal law is directed solely toward the various anticipated defenses that may be raised by Defendants.

*Pharmaceuticals, Inc. v. Thompson*, 478 U.S. 804, 106 S. Ct. 3229, 92 L. Ed.2d 650 (1986) "remains good law and stands for the proposition that Congress's failure to provide a federal cause of action in a statute may be indicative of its intent not to provide a federal forum for state law actions alleging violations of the statute." *McCormick v. Excel Corp.*, 413 F. Supp. 2d 967, 969 (E.D. Wis. 2006) (citing *Grable*, 125 S. Ct. at 2370-71).

Indeed, this Court in the recent case of *King v. Provident Bank*, No. 2:05-CV-961-MEF, 428 F. Supp. 2d 1226 (M.D. Ala. 2006) (Fuller, C.J.), considered the matter of federal question jurisdiction in the wake of *Grable*. As in this case, in *King* the conservator of the estates of a mortgagor and his wife brought only state law claims (including counts for fraudulent misrepresentation, negligence, unconscionability and unjust enrichment) against Provident and other defendants. The defendants sought to remove the action, asserting that "this Court had federal question jurisdiction over this action because the claims raise substantial questions of federal law." *Id.* at 1229. Specifically, defendants maintained that federal Truth-in-Lending ("TILA") and Real Estate Settlement Procedures Act ("RESPA") and the implementing federal agency regulations would be implicated.

Acknowledging the dispositive question as articulated in *Grable*, this Court found no contradiction between *Grable* and the earlier precedents of *Mobil Oil Corp. v. Coastal Petroleum Co.*, 671 F.2d 419 (11th Cir. 1982) and *Merrell Dow*. Under *Mobil Oil*, this Court noted that "[f]ederal law 'must be an essential element of the plaintiff's claim; the federal right or immunity that forms the basis of the claim must be such that the claim will be supported if the federal law is given one construction and defeated if it is given another." *King,* 428 F. Supp. 2d at 1230 (quoting *Mobil Oil*, 671 F.2d at 422). This Court quoted approvingly from *Merrell Dow* that "the 'mere

presence' of a federal issue 'does not automatically confer federal-question jurisdiction." *Id.* at 1230 (quoting *Merrell Dow*, 478 U.S. at 813).

This Court then considered "whether King's state law claims necessarily raise substantial TILA and/or RESPA issues that would permit the Court to exercise jurisdiction over this case." *Id.* at 1230. Based on a thorough review of this jurisdiction's caselaw[18], the Court observed that "[i]n considering similar state law claims, a number of courts in this district have concluded that those claims do not necessarily depend on the interpretation of TILA, and therefore do not give rise to federal jurisdiction." *Id.* at 1230.

In *King*, the Court noted that the plaintiff "has very clearly alleged only state law claims and has stated that she disclaims any potential federal law claims." *Id.* at 1231. Accordingly, this Court held that "there is no basis for federal question jurisdiction pursuant to TILA," and that "[b]ecause King has stated valid state law claims independent of RESPA, the Court finds that there is also no basis for federal question jurisdiction pursuant to RESPA." *Id.* at 1231. *See also Dimension, LLC v. True*, No. 2:06-CV-113-SRW, 2006 WL 1061952 (M.D. Ala. April 21, 2006) (Walker, M.J.) (remanding for lack of federal question jurisdiction, because plaintiffs' state law claims were not completely preempted by federal law); *Cowan v. Combined Ins. Co. of America*, No. 98-D-812-E, 67 F. Supp. 2d 1312, 1320 (M.D. Ala. 1999) (DeMent, J.) (remanding for lack of federal question

---

[18] In *King*, 428 F. Supp. 2d at 1230-31, the Court examined the following cases: *Levett v. Am. Int'l Group*, No. 3:06CV52-MHT, 2006 WL 680592 (M.D. Ala. Mar. 13, 2006) (Thompson, J.) (finding that state law claims of *inter alia* fraud and misrepresentation in connection with a loan agreement did not give rise to federal question jurisdiction under TILA); *Walker v. Commerical Credit Corp.*, 192 B.R. 260 (M.D. Ala. 1996) (Albritton, J.) (holding that plaintiff's allegations of state law fraud in connection with a loan agreement did not give rise to jurisdiction under TILA); *Anderson v. Household Fin. Corp.*, 900 F. Supp. 386 (M.D. Ala. 1995) (DeMent, J.) (finding that TILA was not essential to state law claims of fraud, misrepresentation, and suppression of material facts in connection with a mortgage loan).

jurisdiction because "the first and second provisions of HIPAA do not call for application of the complete preemption doctrine").[19]

In this case, as in *King*, the Plaintiffs have alleged only state law claims (some of which are the same causes of action as those alleged in *King*). Moreover, the plaintiffs have expressly disavowed all federal claims, placing this case in an even stronger position for remand as compared with *King*. The FAC reads:

> No aspect of the claims asserted in this Complaint is brought pursuant to any federal law, including either the Employee Retirement Income Security Act of 1974, 29 U.S.C. §§ 1001-1461 ("ERISA") or the Medicare Act, 42 U.S.C. § 1395, and thus no federal question is raised by any of the claims asserted. To the extent any of Plaintiffs' claims or factual allegations herein may be construed to have stated any claim under federal law, such claim is expressly and undeniably disavowed and disclaimed by Plaintiffs. Moreover, to the extent any of Plaintiffs' claims or factual allegations herein are urged by any Defendant to have stated any claim under federal law, Plaintiffs expressly disavow such claims or allegations and reserve the right to modify this Complaint to conform their claims and/or they authorize the court to do so by Order based upon this express disclaimer of any federal right or remedy.

FAC (Ex. 1 to Notice of Removal (Dkt. 8)) ¶50.

---

[19] In its analysis of whether federal question jurisdiction existed in *Cowan*, the Court examined several prior federal cases, the first being *Means v. Independent Life & Accident Ins. Co.*, 963 F. Supp. 1131 (M.D. Ala. 1997) (Albritton, J.). In *Means*, the Court relied on *Metropolitan Life Ins. Co. v. Taylor*, 481 U.S. 58, 107 S. Ct. 1542, 95 L. Ed. 2d 55 (1987), summarizing the three factors critical to finding "complete preemption" as follows: "First, the 'touchstone of the federal district court's removal jurisdiction is . . . the intent of Congress.' Second, it is not sufficient that the federal law preempt the state law claim; the federal law must also 'displace' the state law claim with a cause of action. Third, the jurisdictional and enforcement provisions of ERISA and the LMRA must have a close parallel in the federal law at issue. *Means*, 963 F. Supp. at 1133 (citing *Metropolitan Life Ins. Co.*, 107 S. Ct. at 1548, 1544-45, 1547).

*See also, Wright v. Combined Ins. Co. of Am.*, 959 F. Supp 356, 362 (N.D. Miss. 1997) (federal statute must "reflect a clear Congressional intent to make the preempted state claims removable to federal court."); *Rodgers v. Independent Life & Accident Ins. Co*, No. 6:96-cv-03024-SLB, Memorandum Opinion (Dkt. 8) (N.D. Ala. Apr 30, 1997) ("neither the [HIPAA] Act nor the statute as a whole 'converts an ordinary state common-law complaint into one stating a federal claim for purposes of the well-pleaded complaint rule.'" *Id.* at 6 (quoting *Metropolitan Life Ins. Co.*, 481 U.S. at 65).

This Court's ruling in *King* echoes the well-settled principle in the Eleventh Circuit that remand is favored where federal jurisdiction is not absolutely clear. *See Burns v. Windsor Ins. Co.*, 31 F.3d 1092, 1095 (11th Cir. 1994). Similarly, it is well-settled that Medicare does not preempt a state from regulating fraudulent billing practices under state consumer protection statutes. *See In re Pharm. Indus. Average Wholesale Price Litig.*, 263 F. Supp. 2d 172, 187, 188 (D.Mass. 2003) (Saris, J.) (holding that there is no "evidence of a clear and manifest intent to preempt the entire field of state regulation of fraudulent billing practices"; "there was no legislative intent to preempt supervision of the compensation of person providing health services"). Judge Saris' decision is consonant with a long line of pre-*Grable* Alabama federal district cases, where federal question jurisdiction was found lacking. As discussed, *supra*, this Court's recent, post-*Grable* decision in *King*, 428 F. Supp. 2d at 1226, makes clear that the reasoning of those earlier cases remains fundamentally sound.

For instance, in *Sapp v. AT&T Corp.*, No. 02-A-53-E, 215 F. Supp. 2d 1273 (M.D. Ala. 2002) (Albritton, J.)[20] the Court remanded because "the court concludes that Plaintiff's claims are not completely preempted, and therefore the court does not have federal question jurisdiction over this case." *Id.* at 1278. Several years previously, in *Means v. Independent Life & Accident Insurance. Co.*, No. 97-491-N, 963 F. Supp. 1131 (M.D. Ala. 1997) (Albritton, J.), the Court remanded for much the same reason. Addressing the defendants' alternative argument for 'arising under' jurisdiction, Judge Albritton wrote: "The Eleventh Circuit has held that state law claims do not confer federal question jurisdiction merely because they reference federal law in establishing an

---

[20] Interestingly, Defendants cite approvingly to Judge Albritton's opinion in *Howell v. Circuit City*, 330 F. Supp. 2d 1314 (M.D. Ala. 2004) in one section of their briefing, *see* Defs. Opp. at 10-11, but completely ignore these three cases where Judge Albritton found subject matter jurisdiction lacking.

element of the state law claim." *Means,* 963 F. Supp. at 1136 (citing *Hill v. Marston*, 13 F.3d 1548,

1550 (11th Cir. 1994)). In *Brown v. Commonwealth National Life Insurance Co., Inc.*, No. 94-A-

1419-N, 875 F. Supp. 800 (M.D. Ala. 1995) (Albritton, J.), the Court similarly remanded because

defendant failed to satisfy its burden of proving that plaintiffs' claims were preempted by ERISA.

*Id.* at 803. *See also Campbell v. General Motors Corp.*, 19 F. Supp. 2d 1260, 1275 (N.D. Ala. 1998)

(granting motion to remand because "even if the plaintiffs' state law claims were based on violations

of [a federal statute], no federal question jurisdiction would exist") (citing *Coardes v. Chrysler*

*Corp.*, 785 F. Supp. 480 (D.Del.1992)).

In *Commonwealth of Pennsylvania v. TAP Pharmaceutical Products, Inc.,* 415 F. Supp. 2d

516, 524-525 (E.D. Pa. 2005) – a case involving many of the very same defendant companies as in

the present action – Judge Sanchez found that "the term 'average wholesale price' is not 'actually

disputed' because the Commonwealth does not premise its *parens patriae* claim on the construction

of these words as they appear in the applicable Medicare statute and regulations." *Id.* at 524.

Accordingly, Judge Sanchez reasoned that:

> Neither Congress nor Medicare ever defined "average wholesale
> price," and there were no regulations in place to approve AWP or to
> verify the accuracy of the reported figures. Faithful adherence to the
> plain language of these words does not reveal an aspect of federal law
> that is "actually disputed." More importantly, a court (be it federal or
> state) does not need to ascribe any meaning to the words "average
> wholesale price" for the Commonwealth to prevail. Instead the
> Commonwealth must prove the Defendants' conduct was in
> derogation of state law.

*Id.* at 524-525.

Judge Sanchez continued his analysis, observing that "[p]rovided the Commonwealth

adduces evidence to support its allegations, Defendants must counter by marshaling facts to suggest

-20-

their conduct did not violate state law. Like the federal labeling provision at issue in *Merrell Dow*, AWP was no more than a federal standard." *Id.* at 525.

The same holds true in the present action, where Plaintiffs have alleged only violations of state law. Far from being "an essential element of Plaintiff's FAC", as defendants seek to characterize it, *see* Defs. Opp. (Dkt. 32) at 13, here – just as in the *Pennsylvania v. TAP* case – "AWP was no more than a federal standard. AWP governed the amount a health-care professional would be paid for prescriber-dispensed prescription drugs. That is the only purpose it served and its meaning in that regard is not in dispute." *Pennsylvania v. TAP*, 415 F. Supp. 2d 516, 525.

The decision in the *Commonwealth of Pennsylvania* case is significant because the same counsel in that case represent the plaintiffs in the instant case, and the complaint in this case was modeled after the *Pennsylvania* complaint. Indeed, the two cases are being prosecuted simultaneously against defendants TAP and Abbott. Accordingly, despite what defendants urge about the federal nature of the claims alleged in this case, the reality is there are no federal claims or issues that warrant this court's exercise of subject matter jurisdiction, and based on the decisions of the many courts that have faced the very issue before this court, remand should be granted.[21]

---

[21] Moreover, Defendants have not responded to Plaintiffs' argument for remand regarding Judge Thompson's rejection of almost identical arguments by Defendants TAP and Abbott. *See* Motion to Remand (Dkt. 25) at ¶ 25 & Ex. C thereto . The State of Alabama Medicaid Agency's AWP case, which raises many of the same issues in this case, was removed by TAP, Abbott, and other defendants, with a notice of removal that asserted: "In particular, federal question jurisdiction exists because the State of Alabama's claim to recover Medicare Part B co-payments raises a substantial federal question in that it requires the resolution of issues of federal law relating to the federal Medicare program." *State of Alabama v. Abbott Laboratories, Inc., et al*, No. 2:05-cv-00647-MHT-VPM, Notice of Removal (Dkt. 1), at 1 (citing *Grable*, 545 U.S. ___, 125 S. Ct. 2363 (June 13, 2005); *Franchise Tax Bd.*, 463 U.S. 1, 9, 28 (1983); *State of Montana v. Abbott Labs.*, 266 F. Supp. 2d 250, 255-56 (D. Mass. 2003)). Judge Thompson remanded the case to Montgomery County Circuit Court, stating: "After careful consideration of the state-law claims presented in this case, the court does not believe that the claims 'necessarily raise a stated federal issue, actually disputed and substantial, which a federal forum may entertain without disturbing any congressionally approved balance of federal and state judicial responsibilities.'" *Id.*, Order (Dkt. 162), at 1-2, attached to Plaintiffs' Motion to Remand (Dkt. 25) as Ex. C (quoting *Grable*, 125 S. Ct. at 2368; citing *Caterpillar, Inc. v. Williams*, 482 U.S. 386 (1987); *Metropolitan Life Ins. Co.*, 481 U.S. 58 (1987); *Merrell Dow Pharmaceuticals, Inc. v. Thompson*,

**III.    This Case Should be Remanded Because There is Not Complete Diversity of Citizenship Between Plaintiffs and Defendants.**

Defendants have not met their burden of showing that defendant Oncology Supply Company ("OSC ") is diverse from Plaintiffs, and because the co-conspirator doctor defendants are Alabama residents and destroy complete diversity.  If this Court is not inclined to remand immediately, Plaintiffs request that the Court permit them to go forward with limited jurisdictional discovery on these issues.

**A.    Defendants Have Not Met Their Burden of Proving OSC's Citizenship As Diverse from Plaintiffs.**

Not surprisingly, Defendants ABC, ABSG and OSC argue that they have no "evidentiary burden" at the time of removal to establish diversity of citizenship. Defs. Opp. (Dkt. 32) at 2 n.2. This is simply not the law. "The party seeking removal has the burden of establishing federal jurisdiction." *See Diaz v. Sheppard,* 85 F.3d 1502, 1505 (11th Cir. 1996).  "Thus, a defendant seeking to remove a case on diversity grounds, must **show:** (1) complete diversity of citizenship between each plaintiff and every defendant, and (2) that the amount in controversy exceeds $75,000.00." *Owens v. Life Ins. Co. of Georgia*, 289 F. Supp. 2d 1319, 1323 (M.D. Ala. 2003) (Fuller, J.) (bold emphasis added). **"The removing party has a burden of showing facts sufficient to establish diversity of citizenship, which mere legal conclusions and generalities fail  to establish. A statement that a state is "the principal place of business"  is a mere legal conclusion without factual content or weight."** *McMahan v. CRC Industries, Inc.,* No. 8:05-CV-

---

478 U.S. 804 (1986); *Franchise Tax Bd. v. Construction Laborers Vacation Trust*, 463 U.S. 1 (1983); *Gully v. First National Bank of Meridian*, 299 U.S. 109 (1936)). Certainly, if the State of Alabama's claims did not present a federal question, the claims of Plaintiffs here – private payers seeking to recover private funds – cannot.

1359-T-23TBM, 2005 WL 2077318, at *2 (M.D. Fla. Aug. 29, 2005) (bold emphasis added). "[T]he diversity jurisdiction statute, 28 U.S.C. § 1332, is strictly construed because of the significant federalism concerns raised by federal courts passing on matters of state law." *Owens,* 289 F. Supp. 2d, at 1322.

Defendants' own pleadings recognize this burden. At the time of removal, Defendants sought to show OSC's citizenship by a three paragraph conclusory affidavit from ABC's Senior Legal Assistant, Ms. Dianne Kammerer. Notice of Removal (Dkt. 8) Ex. 4.[22] As noted by Plaintiffs on Motion to Remand, and not refuted by Defendants, Ms. Kammerer's Affidavit fails, as a matter of law, to establish OSC's citizenship as diverse from Plaintiffs. A removing defendant's "dismissive submission of a sparse and conclusory affidavit, notwithstanding the readily available and abundant information about the location and extent of the corporate enterprise[23], leaves the disinterested observer somewhat puzzled but, nonetheless, confident that [defendant] has not met the initial burden necessary to maintain federal diversity jurisdiction." *McMahan v. CRC Industries, Inc.,* 2005 WL 2077318, at *2 (M.D. Fla. August 29, 2005).

---

[22]The Notice of Removal itself contains only a conclusory allegation that OSC is a trade name of ASD Specialty HealthCare, Inc., whose principal place of business is baldly stated to be Texas, while citing to Ms. Kammerer's Affidavit, which parrots the same legal conclusion.. *See* Notice of Removal (Dkt. 8) at ¶ 17. Contrary to Defendants' present argument that it has no evidentiary burden on removal, the Notice asks this Court to consider matters outside the pleading, Ms. Kammermer's Affidavit, in support of its claim that OSC's citizenship is diverse from Plaintiffs. *Id.*

[23]Defendants ABC, ABSG, and OSC brusquely dismiss Plaintiffs' review of their public information about themselves on their websites as having no evidentiary value. Defs. Opp. (Dkt. 32) at 4 n.5. This is obviously not true, and, pursuant Federal Rule of Evidence 201, Plaintiffs request that this Court take note of these statements. *See Johnson v. Crosby,* No. 3:05-cv-102-J-25TEM, 2005 WL 1126863 (S.D. Fla. May 9, 2005); *Ubuy Holdings, Inc. v. Gladstone,* 340 F.Supp.2d 1343, 1346 (S.D. Fla. 2005) ("A district court may ... take judicial notice of public records."); *cf. McMahan,* 2005 WL 2077318, at *2 (district court not asked to take judicial notice of public records regarding defendant, and did not rely on public information for purposes of ruling on motion). The fact remains that Defendants still have not explained why their public statements as to their organizational structure, with ABSG the subsidiary of ABC, and ASD Healthcare, OSC and Besse Medical sister companies under ABSG, is at variance with their present claims that ASD Specialty Healthcare, Inc. is the wholly owned ABC subsidiary, and ABSG, OSC, Besse Medical, and ASD Healthcare are trade names of ASD Specialty.

"It is well-established that the court's diversity jurisdiction is determined at the time the notice of removal is filed." *St. Paul Mercury Indemnity Co. v. Red Cab Co.,* 303 U.S. 283, 289, 58 S.Ct. 586, 590 (1983). At the time of the present Notice of Removal, Defendants had utterly failed to show that OSC was not an Alabama citizen for purposes of complete diversity. Implicitly recognizing this fatal flaw, Defendants now try to supply this lack by submitting Exhibits 1-4 to their Joint Opposition to Plaintiffs' Motion to Remand. Because these exhibits are submitted post-removal, they should not considered by this Court.

Defendants' attempts to now fill in the blanks left by their legally ineffective and conclusory allegations and to add facts regarding ASD Specialty Healthcare, Inc.'s and OSC's citizenship is tantamount to an amendment of their previously defective Notice of Removal. It is well-settled that, as here, after the 30-day period for filing the notice of removal has passed, "the notice of removal may be amended 'only to set forth specifically grounds for removal which were imperfectly stated in the original petition.'" *Newman v. Spectrum Stores, Inc.,* 109 F. Supp. 2d 1342, 1347 (M.D. Ala. 2000) (Albritton, J.) (quoting *American Educators Fin. Corp. v. Bennett,* 928 F. Supp. 1113, 1115 (M.D. Ala. 1996)). Since these grounds for removal were not stated in the Notice, or in the affidavit accompanying it, they can hardly be added now.[24]

Further, even considering the Defendants' improper post-removal submissions, it is by no means crystal clear that they have met their burden of showing OSC's citizenship as diverse from Plaintiffs. This is so even assuming that OSC is not separately incorporated from ASD Specialty

---

[24]No such issue as to the post-removal propriety of additional evidentiary materials was raised by the parties or addressed by the *McMahan* court. In any event, unlike here, it appears from the *McMahan* decision that the defective affidavit submitted by defendants in opposition to remand was their first attempt to allege facts supporting their claim of diversity. *See* 2005 WL 2077318, at *2.

Healthcare, Inc. Plaintiffs maintain that it is appropriate to apply principles regarding the citizenship of parent and subsidiary corporations to the ASD Specialty Healthcare, Inc. and OSC relationship.[25] *Cf. McGinnitie v. Hobbs,* 420 F.3d 1234, 1240 (11th Cir. 2005)("The question of the principal place of business of an 'inactive corporation' is one of first impression in this Circuit. We need not, however, reach that issue, because our existing total activities test is sufficient to resolve the question before us."). Considerations apart from corporate law may apply to the determination of an entity's citizenship for diversity removal. This is in keeping with the underlying rationale for diversity removal jurisdiction: preventing a foreign defendant from being haled into another state's court and treated unfairly as an outsider. This factor is simply not present where a corporation conducts business in a state under a trade name as a local company, with a local place of business, and with no indications to the public that it is anything other than a local company.

In the Eleventh Circuit, it is well-settled that a subsidiary corporation may have citizenship separate from its parent, with its own principal place of business. *See Fitzgerald v. Seaboard System R.R., Inc.,* 647 F. Supp. 205, 208 (S.D. Ga. 1985). The citizenship of the subsidiary must be evaluated individually. *See McGinnitie v. Hobbs,* 420 F.3d 1234, 1239 (11th Cir. 2005). Both "nerve center" and "total activities" tests are applied in making these determinations. *Fitzgerald,* 647 F. Supp. at 208; *Sweet Pea Marine, Ltd. v. APJ Marine, Inc.,* 411 F.3d 1242 (11th Cir. 2005).

---

[25]Plaintiffs' research reflects that the Eleventh Circuit has not ruled on this precise issue. *See McGinnitie v. Hobbs, supra.* None of the cases cited by Defendants in their brief involve the issue of the citizenship of a division or trade name for diversity purposes. *Western Beef, Inc. v. Compton Inv. Co.,* 611 F.2d 587 (5th Cir. 1980) (scope of damages under contract with subsidiaries, including unincorporated subsidiary, for cattle feeding agreements); *In re Sugar Industry Antitrust Litig.,* 579 F.2d 13 (3rd Cir. 1978) (scope of *Illinois Brick* ban against Clayton Act suits by non-direct purchasers and relationship between subsidiary and division and parents as to sales); *Brizendine v. Continental Casualty Co.,* 773 F. Supp. 313 (N.D. Ala. 1991) (remand to state court on ground of untimeliness where a company was sued under its trade name); *Kingvision Pay-Per-View v. McCoy,* No. CIV 00-288-M, 2001 WL 274800 (D.N.H. Jan. 11, 2001) (trade name did not insulate defendants from individual liability for violations of Federal Communications Act).

Defendants, here, however, misinterpret this standard and these tests, posing the question as only the citizenship of ASD Specialty HealthCare, Inc., with no evaluation or analysis of the citizenship of OSC. *See* Defs Opp. (Dkt. 32) at 6-10 & Exs. 1-4. While Mr. Mullen, the Chief Financial Officer of ABSG, testifies regarding the activities of ASD Specialty Healthcare, Inc., the little told of OSC weighs in favor of finding it to be a separate entity, with its own principal place of business in Alabama, for purposes of diversity. *Cf. McMahan v. CRC Industries, Inc.,* 2005 WL 2077318, at *2 (omissions in affidavit as to defendant's corporate activities in State of Florida failed to meet defendant's burden of showing facts to establish diversity of citizenship and remand was proper.) Mr. Mullen testifies:

> \*  OSC is "a leading distributor of oncology products to physicians. Oncology Supply's business office is located in     Alabama,    and    it operates and distributes products from a    distribution center in Alabama;" (Dkt. 32 at Ex. 1 ¶ 6);

> \*  OSC, as well as ASD Specialty Healthcare, Inc., "also keep sales records for their particular branch at their offices in ... Alabama;" (*Id.* ¶ 11);

> \*  OSC "also has a finance department. With respect to Sarbanes-Oxley compliance, each divisional finance department reports to the AmerisourceBergen Specialty Group Controller in Addison, Texas, who in turn reports to the Vice President of Finance for AmerisourceBergen Corporation who is in Pennsylvania;" (*Id.* ¶ 15);

> \*  "There are no separate state or federal tax returns for Oncology Supply;" (*Id.* ¶ 16);

> \*  "There are no corporate trade bank accounts in Alabama," with no mention made of whether or not OSC maintains an Alabama bank account; (*Id.* ¶ 17)

* "Approximately one-third of the employees of ASD Specialty Healthcare, Inc. work in Alabama," presumably those who work at OSC. Two of the twelve senior management of ABSG live in Alabama;" (*Id.* ¶ 18);

* "Less than 15% of ASD Specialty Healthcare, Inc.'s real property, plant and equipment values are in Alabama;" (*Id.* ¶ 21); and

* "[OSC] makes day to day decisions about staffing and routine business matters, but personnel issues are supervised by the Human Resources department in Texas, and all non-routine, major decisions about the business require consultation with senior management in Texas." (*Id.* ¶ 22).

While no factor is determinative, an argument can be made from this that OSC possesses some indicia of separateness, and it certainly is a far cry from Defendants' claim that it has "no existence apart from ASD Specialty Healthcare, Inc." Defs. Opp. (Dkt. 32) at 6.

Finally, in the alternative, and as argued in Plaintiffs' Motion to Remand , (Dkt. #25) at 15 n.10, 16 n.11, if this Court does not remand forthwith for these reasons, it should permit Plaintiffs limited jurisdictional discovery as to OSC's citizenship, as well as that of ASD Specialty Healthcare, Inc. This is especially true here because Plaintiffs sought to discover this information, which is in the control of Defendants. Not only did counsel for Defendants ABC, ABSG and OSC refuse to begin the discovery process, after doing so, they then submitted an affidavit, not subject to cross-examination, selectively addressing the very issues on which Plaintiff have sought discovery. Trial by affidavits submitted only by one side post-removal is not an appropriate procedure on removal

or what Rule 26 was intended to allow. *See* Plaintiffs' Motion to Permit Limited Jurisdictional Discovery or, in the Alternative, for Rule 26(f) Conference (Dkt #35). [26]

For these reasons, Plaintiffs request that this Court remand this case or, in the alternative, permit Plaintiffs to proceed with the requested limited jurisdictional discovery as to this issue.

**B.    Because the Citizenship of the Co-Conspirator Fictitious Doctor-Defendants Cannot Be Questioned, Remand is Appropriate.**

The facts of this case fit snugly within the well-established exception to 28 U.S.C. § 1447(a)'s rule of not considering the citizenship of fictitious defendants for removal purposes. Because Plaintiffs' FAC identifies and states viable claims against fictitious defendants identified as **Alabama** doctors, whose identity is known to Defendants, and who are co-conspirators with Defendants in the fraudulent scheme to overcharge Plaintiffs for Lupron[27], this Court should remand this case. [28]

*Marshall v. CSX Transp. Co.,* 916 F. Supp. 1319 (M.D. Ala. 2003) (DeMent, J.) conclusively refutes Defendants' sweeping claim that this Court has always construed the 1988 amendment to 28 U.S.C. § 1447(a) as a bright line rule prohibiting any consideration of the citizenship of fictitious

---

[26]Plaintiffs do not here address Defendants' claim that *Brizendine v. Continental Casualty Co.,* 773 F. Supp. 313 (N.D. Ala. 1991) somehow established a procedure for dismissal of OSC and ABSG. That claim is the topic of Defendants' Motion to Dismiss (Dkt. 33) . Plaintiffs have moved to stay consideration of that motion pending this Court's resolution of their Motion to Remand. *See* Plaintiffs' Motion for Stay (Dkt. 36).

[27]*See* Motion to Remand (Dkt. 25) at 16-18, detailing allegations of FAC against fictitious doctor defendants.

[28]Although Plaintiffs believe the law and facts are clear that a remand is in order, Plaintiffs have also asked for jurisdictional discovery on the narrow issue of the specific identity of these Alabama doctors, a fact which is uniquely in the possession of the Defendants. *See* Motion to Remand (Dkt. 25) at ¶¶ 55, 60, and Plaintiffs' Motion for Limited Jurisdictional Discovery or, in the Alternative, for Rule 26(f) Conference (Dkt. 35). As the court in *Brown v. TranSouth Fin. Corp.,* 897 F. Supp. 1398, 1401-02 (M.D. Ala. 1995) (DeMent, J.), stated: "It would be unfair to force the plaintiffs from their state court forum into federal court by allowing TranSouth to plead ignorance about the defendant-employee's identity and citizenship when TranSouth was in a position to know that information."

defendants for removal purposes. Defs. Opp. (Dkt. 32) at 10.[29] Because *Marshall* is factually and legally very similar to the present case, Defendants go to great lengths to minimize and misconstrue it. *See id.* at 10-12 & n. 9. To set the record straight, the text of *Marshall,* the cases it relies upon, and the cases following it, must be examined.

*Marshall* involved claims for injuries Ms. Felicia Marshall, the driver of a car, received when her car was hit by a CSX train. The Marshalls filed suit in the Circuit Court of Chambers County, Alabama, against CSX, the alleged train engineer at the time of the accident, Mr. Huntley, and a "Fictitious Defendant B," described as "the engineer who was operating the train at the time of the incident described in the complaint." The passenger in Ms. Marshall's car, Larica Jones, brought a separate lawsuit in the Circuit Court of Chambers County, Alabama, for her injuries from this accident. It was undisputed that CSX and Mr. Huntley were citizens of Virginia, Florida and Georgia. 916 F. Supp. 1150, at 1150-51.

After filing the complaint, the Marshalls learned of the other engineer's name, which had been left off the accident report by mistake, and filed a motion in state court for leave to amend to substitute a Mr. Patrick for Fictitious Defendant B. Defendants' Notice of Removal was docketed

---

[29]Defendants cite two cases in support of this claim: *Owens v. Life Ins. Co. of Georgia,* 289 F. Supp. 2d 1319 (M.D. Ala. 2003) (Fuller, J.) and *Howell v. Circuit City,* 330 F. Supp. 1314 (M.D. Ala. 2004) (Albritton, J.). *Owens* involved the issue of the fraudulent joinder of an undisputedly non-diverse named defendant. 289 F. Supp.2d at 1323. In reciting the factual background of the case, this Court noted that "Plaintiff's Complaint also lists as Defendants several fictitious parties, the identity of which are not yet known to Plaintiff," and that it would not consider the citizenship of those parties, not apparent from the opinion, in determining complete diversity. 289 F. Supp. 1319, 1322 n. 2. *Owens* did not involve a discussion, much less application, of any possible exception to 28 U.S.C. 1441(a), and is weak support at best for Defendants' ringing claim of a clear and consistent pattern of applying 28 U.S.C. § 1441(a). *Howell,* while factually dissimilar from the present case, as discussed in text above, is the sole support for Defendants' claim. *Howell* has never been cited or followed by any court, including this one. *Howell* is a slim reed to alone support Defendants' claimed application of 28 U.S.C. § 1441(a) as a bright line rule.

in state court just prior to the plaintiffs' motion to amend. This motion was not, then, properly before the court on removal. *Id.* at 1151.[30]

Addressing these facts, the court found "the main issue ... is whether 'Fictitious Defendant "B"' should be considered for diversity purposes." *Id.* In language directly contradicting present Defendants' argument, the court answered this question as follows:

> [U]nder the recently amended removal statute, the citizenship of defendants sued under fictitious names should be disregarded for purposes of removal. *See* 28 U.S.C. § 1441(a). **However, subsequent to this amendment of the removal statute, courts have found that where a plaintiff's complaint provides a description of a fictitious defendant in such a way that his or her identity cannot reasonably be questioned, the court should consider the citizenship of the fictitious defendant.** *Lacy v. ABC Ins. Co.,* No. CIV.A.95-3122, 1995 WL 688786 at *3 (E.D. La. Nov. 17, 1995); *Brown v. TranSouth Financial Corp.,* 897 F. Supp. 1398, 1401-02 (M.D. Ala. 1995); *Tompkins v. Lowe's Home Ctr., Inc.,* 847 F. Supp. 462, 464 (E.D. La. 1994)(citing *Green v. Mutual of Omaha,* 550 F. Supp. 815, 818 (N.D. Cal. 1982)). Moreover, each of these courts has held that if a fictitious defendant is described in the plaintiff's complaint as "an individual who acted as a company's agent," then that employee should be considered as a named defendant for determining diversity jurisdiction. *Id.* Furthermore, the fact that the defendant was in a better position than the plaintiff to ascertain the

---

[30] No such amendment was filed in the federal case by the plaintiffs. Thus, *Marshall* did not, as Defendants claim, turn on the pendency of an amendment in federal court to substitute a named for a fictitious defendant. In fact, the court "consider[ed] Mr. Patrick as a defendant for diversity purposes **without requiring the plaintiffs to file a motion with this court to add him as a party.** 916 F. Supp. 2d at 1154 (bold emphasis added). Citing *Wright v. Sterling Investors Life Ins. Co.,* 747 F. Supp. 653, 655 (N.D. Ala. 1990), the *Marshall* court noted that: "at least one federal court has declined to exercise jurisdiction where a non-diverse fictitious defendant was an individual who was identifiable to both the plaintiffs and the defendants **notwithstanding the fact that the plaintiffs had not filed a motion to amend their complaint to add the non-diverse party to the lawsuit in either the state or the federal district court.** *Id.* at 1153 (bold emphasis added). Instead, the *Wright* court stated that it was exercising its discretion under 28 U.S.C. 1447(e) based on the facts before it, as "a shorthand method of allowing an amendment to add the non-diverse party and then remanding" without a motion. 747 F. Supp. at 655.

Defendants are simply wrong in trying to distinguish *Marshall* and *Wright* from this case on the ground they involved a motion to amend to add a non-diverse fictitious defendant. The *Howell* court's snapshot characterizations of *Marshall* and *Wright* as involving a motion to amend misses the point as well. *See Howell,* 330 F. Supp. 2d 1314, at 1318.

> citizenship of the non-diverse defendant at the commencement of the
> action in state court is a factor that weighs in favor of considering a
> fictitious defendant's citizenship for diversity purposes. *Lacy*, 1995
> WL 688786 at *3. In this regard, this court recently found that a court
> may assume that a corporation knows the identity and address of an
> employee acting as its agent when a plaintiff's cause of action is
> based on the acts of that agent. *TranSouth*, 897 F. Supp. at 1401.

*Id.* (bold emphasis added). Conspiracy and agency claims are closely akin; it is black letter law that

conspirators are agents of one another. As in *Marshall* and the cases it cites, the identity, names and

addresses of their Alabama doctor co-conspirators are known and have been known to present

Defendants, who now oppose jurisdictional discovery on this, or any other issue.[31] Thus, this Court

---

[31]Plaintiffs have diligently sought this discovery. *See* Motion to Remand (Dkt. 25) ¶¶ 55, 60; Plaintiffs' Motion for Limited Jurisdictional Discovery, Or in the Alternative, for Rule 26(f) Conference (Dkt. 35). Following the filing of Plaintiffs' Motion to Remand, third party subpoenas were mistakenly sent to Alabama doctors who prescribed Lupron seeking this information. Two days later, Plaintiffs made their first disclosures and requested a Rule 26(f) planning meeting at the same time as notice of issuance of the subpoenas and interrogatories and requests for production. With Defendants' agreement, Plaintiffs corresponded with the subpoened doctors and requested they not respond. Defendants have refused, however, to respond to Plaintiffs' request for a planning meeting. Plaintiffs' diligence in seeking discovery alone, apart from 28 U.S.C. § 1447(e)'s analysis of plaintiffs' post-removal motion to amend, distinguishes this case from that cited by Defendant. *Porterfield v. Flowers Baking Co. of Opelika*, No.2:05-cv-937-MEF, 2006 WL 1147333 (M.D. Ala. May 1, 2006) (Fuller, C.J.). Interestingly, *Porterfield* does not stand for the proposition it was cited for by Defendants, that Plaintiffs' request for jurisdictional discovery should be denied.

Defendants are also wrong in arguing that limited discovery for the purpose of identifying fictitious defendants is not within this court's discretion. Defendants miscite *Harris v. Beaulieu,* 394 F. Supp. 2d 1348, 1356-1357 (M.D. Ala. 2005), claiming that the court specifically refused to permit jurisdictional discovery for this purpose on remand. Instead, the court found that:

> In limited circumstances, however, courts have considered the citizenship of
> unnamed defendants in determining whether diversity jurisdiction supports
> removal. *See Marshall v. CSX Transp. Co.,* 916 F. Supp. 1150, 1152 (M.D. Ala.
> 1995); *Brown v. TranSouth Financial Corp.,* 897 F. Supp. 1398, 1401 (M.D.
> Ala. 1995). **Plaintiff has not relied upon any of these narrow exceptions and,
> thus, they are not relevant to the present analysis. Because the actual
> identity and citizenship of the fictitious defendants are not revealed in the
> pleadings, the court finds that Plaintiff's arguments urging a remand based
> on the presence of fictitious parties is, at best, "speculative" and
> "premature."**

*Id.* at 1352 (bold emphasis added). The court, after denying the motion to remand, assuming jurisdiction and dismissing the one named defendant, **granted** limited discovery as to the identity of the fictitious defendants. "In this case, dismissing the fictitious defendants without allowing Plaintiff reasonable time to conduct discovery to

may assume that Defendants knew the identity, address, and citizenship of its co-conspirator doctors at the time of the notice of removal since Plaintiffs' cause of action is based on the acts of the Alabama doctors acting in concert with the Defendants. This fact alone weighs heavily in favor of following *Marshall* in this case.

The *Marshall* court also discussed two other factors in arriving at its holding. Analyzing the 28 U.S.C. § 1447(e) amendment factors considered in *Lacy v. ABC Ins. Co.,* No. CIV-A-95-3172, 1995 WL 688786 (E.D. La. Nov. 17, 1995)[32], the court found that "plaintiffs' claim against the train engineers is not solely intended to destroy diversity jurisdiction." 916 F.Supp. at 1154. It is undisputed that present Plaintiffs' claims against the Alabama doctor co-conspirators with Defendants are not made solely to destroy diversity jurisdiction. Further, the *Marshall* court found that a remand was even more appropriate in the case before it than in the *Wright* case "because the companion case brought by Larica Jones ... is currently progressing in the Circuit Court of Chambers

_____

discern their identities will work an unjust and harsh result on Plaintiff." *Id.* at 1356.

[32]Neither Defendants nor the *Howell* court addressed the *Lacy* decision, relied upon by the court in *Marshall*, in which the court found that additional equitable factors influenced its decision to permit the plaintiff to amend to add in a non-diverse defendant and then remanded the case to state court:

> Although 28 U.S.C. § 1441 (a) states that the citizenship of fictitious defendants is disregarded for purposes of removal, **when plaintiff's allegations give a definite clue about the identity of a fictitious defendant by specifically referring to an individual who acted as a company's agent, the defendant has reason to consider the citizenship of the fictitious defendant.** *Tompkins,* 847 F. Supp. at 463. One of the arguments made by [defendant] Dolgencorp herein is that Dollar General Stores are 'small "mom and pop" operations, and there are never more than three or four employees working at any given time.' **Thus, based on the information about the employees ("John Doe" and "Jim Doe") provided in the original petition, defendant was in a better position than plaintiff to ascertain the citizenship of these  employees at the commencement of the action, and could have divined the questionable nature of the removal.**

*Lacy,* 1995 WL 688786, at *3 (bold emphasis added).

County and any further delay in remanding this action could affect the possible consolidation of this action with the action brought by Larica Jones." *Id.*

> The court further finds that a decision to include Mr. Patrick as defendant and remand this action would reduce the monetary expenses of the trial to both the parties and the judicial system because this action could be consolidated in state court with the action brought by Larica Jones for injuries she suffered in the same accident. Furthermore, the court finds that any prejudice that the defendants might suffer in state court is outweighed by the unfairness that the Marshalls would suffer if they could not pursue all their viable claims in the same court. Last, remanding this action to state court will reduce the risk of inconsistent verdicts.

*Id.* at 1155.

Here, before removal, Plaintiffs' case was transferred to Judge Price, the judge handling the State of Alabama's average wholesale price (AWP) litigation. *State of Alabama v. Abbott Laboratories, Inc., et al.,* CV 05-219 (Circuit Court of Montgomery County, Alabama). The details of the State's Complaint (attached hereto as Exhibit "A") set forth the same injury as Plaintiffs, overpayment for prescription drugs, from the same alleged fraudulent scheme by defendants Abbott, TAP, and Takeda to inflate the AWP of a drug, and then market the spread to doctors. Ex. A at ¶¶ 111 - 119. In fact, the State notes TAP's guilty plea in the Lupron case, and TAP's agreement to pay "over $875 million in fines and civil penalties to the federal government and the fifty (50) states." *Id.* at ¶124. Ironically, as previously noted in Plaintiffs' Motion to Remand, these Defendants sought dismissal of the State's case on the ground that unnamed doctor defendants were indispensable parties. Motion to Remand (Dkt. 25) ¶ 48 & Ex. B. The identity of claims between this case and

-33-

the State's, if not drugs, falls within the rationale of *Marshall* and *Lacy*. As in *Marshall*, this factor

weighs heavily in favor of remand.[33]

As to cases relied upon by *Marshall*, Defendants fail to distinguish the core principle relied

upon in those cases and by the *Marshall* Court, which is equally applicable here: "when a plaintiff's

allegations give a definite clue about the identity of the fictitious defendant by specifically referring

to an individual who acted as a company's agent, the court should consider the citizenship of the

fictitious defendant." *Brown v. TranSouth Financial Corp.*, 897 F. Supp. 1398, 1401 (M.D. Ala.

1995) (DeMent, J.)[34] (citing *Tompkins v. Lowe's Home Center, Inc.*, 847 F. Supp. 462, 464 (E.D. La.

1994)).[35] Further, and unlike *Howell, Tompkins, Brown, Wright* and *Marshall* have been cited and

---

[33]*Harris v. Beaulieu,* 394 F. Supp. 2d 1348 (M.D. Ala. 2005) (DeMent, J.), is not, as Defendants claim, to the contrary. In *Harris*, citing *Losoya v. Coca-Cola Enters. Inc.*, No. Civ-A-05-007, 2005 WL 1799618, *2 (S.D. Tex. July 26, 2005), the author of *Marshall* found that where diversity jurisdiction was established, the efficiencies of consolidation in state court alone would not support remand: "Plaintiff's arguments in support of her motion to remand, in essence, are arguments that the court decline to exercise the jurisdiction which it undisputably possesses, not that the court remand this action for lack of subject matter jurisdiction or based upon a procedural defect in the removal process." 394 F. Supp. 2d at 1352. That is certainly not the case here, and Defendants' reliance on *Harris* and *Losoya*, without discussion or reference to *Marshall* on this point, is misleading.

[34]The *Howell* court listed *Brown* in its parenthetical of cases, including *Marshall* and *Wright,* as involving an amendment to add a non-diverse defendant. *Howell*, 330 F. Supp.2d at 1318. As with a careful reading of *Marshall* and *Wright*, however, that is not exactly the case. In *Brown*, the court had previously granted Plaintiff's motion to amend the complaint to substitute Karen White for one of the fictitious defendants described as Defendants "A, B, and C, those persons who or which were employed by Defendant ... on the dates complained of herein and who or which made the misrepresentations to Plaintiff as described in this complaint." *Brown*, 897 F. Supp. at 1400. The court denied defendants' motion for reconsideration of this ruling. Turning to the motion to remand, however, the court was careful to rely only upon the allegations as of the date of the notice of removal: "The Court finds that TranSouth knew or should have known of the fictitious defendant's identity [at the time of removal], because White was employed by TranSouth and acted as an agent of the lender on the transaction in question." *Id.* at 1401. Had the amendment been the gravamen of the Court's holding, no discussion of the exception to the fictitious defendant rule would have been necessary to explain the remand.

[35]The *Howell* court dismissed this case as "incorrectly rely[ing] on pre-1988 law." The *Tompkins* court does cite, without discussion, *Green v. Mutual of Omaha,* 550 F. Supp. 815 (N.D. Cal. 1982). Plaintiffs submit that the *Green* court's analysis would still be correct under the 1988 amendments, and in line with that followed by the *Brown* and *Marshall* courts. "Plaintiffs' Doe allegations gave a definite clue as to the identity of the fictitious defendant. The complaint specifically referred to the individual who acted as the company's agent in selling the insured an individual policy. These allegations easily could have put defendant on notice that the unnamed party was Richard Campbell."*Green*, 550 F. Supp. at 818. And, as here, "This court cannot state the plaintiff included Does in her complaint without reason or superstitiously. **On the contrary, the allegations against the fictitious defendants**

followed by other district courts. *See Bryant v. Hardees Food System,* No. 3:99-cv-109-P-A, 1999 WL 33537223 (N.D. Miss. Nov. 4, 1999) (no motion to amend to add identified non-diverse defendant filed; motion to remand granted in reliance on *Tompkins* and *Brown*); *Ibieta v. Brink's Inc.*, No. CIV-A-97-2851, 1997 WL 781291 (E.D. La. Dec. 16, 1997) (agreeing with *Marshall* analysis and remanding case).

Further, *Howell* is not, as Defendants contend, irreconcilable with *Marshall*. The facts in *Howell* involved an Alabama resident's purchase of a television from an "unnamed sales representative" of Circuit City. *Howell*, 330 F. Supp. 2d at 1314. The complaint did not allege that the employees of Circuit City were Alabama residents, or allege claims against the fictitious defendants that arose from the same acts as the named defendants; instead "the Plaintiff asks the court to consider that employees of the Defendants **will** be identified as Alabama citizens." *Id.* at 1317 (bold emphasis supplied).

Here, of course, Plaintiffs' FAC identifies the fictitious defendants as Alabama doctors, and details claims against them arising from their participation as co-conspirators in Defendants' overpricing scheme. Unlike this case and *Marshall*, the *Howell* fictitious defendants could very well have been shams solely for the purpose of defeating federal jurisdiction. And, there is no allegation in *Howell,* as in *Marshall* and here, that Circuit City was in a better position than Howell, who had dealt with the representative, to identify him. *See Howell v. Circuit City, et al.,* Civil Action No. 2:04-cv-607-A, Defendants' Opposition to Plaintiff's Motion to Remand (M. D. Ala. July 21, 2004), filed (attached as Exhibit "B") (discussing Plaintiff's Complaint, which was not electronically filed;

---

not only state a potential cause of action against the Does, but they specifically identify the relationship between plaintiff, [the named defendant], and the particular unnamed parties." *Id.* (citations omitted) (bold emphasis added).

no reply made by Plaintiff to Defendants' Opposition.). *Howell*, then, is similar to *Harris*, where, unlike here, Plaintiff simply failed to allege the factors necessary to invoke the exception to the general rule of not considering the citizenship of fictitious defendants for diversity purposes.

For these reasons, Plaintiffs request remand on the ground that there is not complete diversity of citizenship.

## CONCLUSION

For all of these reasons, as well as those stated in Plaintiffs' Motion to Remand (Dkt. 25), Plaintiffs respectfully request that this Court remand this case forthwith. In the alternative, Plaintiffs request that this Court grant them permission to conduct limited jurisdictional discovery.

Respectfully submitted,

Dated:  August 9, 2006

/s/ Kimberly R. West
Kimberly R. West (ASB-2419-E65K)
kw@wallacejordan.com
**WALLACE JORDAN RATLIFF & BRANDT LLC**
P.O. Box 530910
Birmingham, AL 35298
Telephone:    (205) 870-0555
Facsimile:    (205) 871-7534

Pamela B. Slate (ASB-8938-A43P)
pslate@slatekennedy.com
**SLATE KENNEDY LLC**
166 Commerce Street, Suite 350
Montgomery, AL 36104
Telephone:    (334) 262-3300
Facsimile:    (334) 262-3301

Donald E. Haviland, Jr. (PSB 66615)
Donald.Haviland@KlineSpecter.com
**KLINE & SPECTER**
**A PROFESSIONAL CORPORATION**
1525 Locust Street, 19th Floor
Philadelphia, PA  19102
Telephone:     (215) 772-1000
Facsimile:     (215) 735-0957

**ATTORNEYS FOR PLAINTIFFS**
**BLUECROSS AND BLUESHIELD OF ALABAMA AND**
**BLUECROSS AND BLUESHIELD OF MICHIGAN**

## CERTIFICATE OF SERVICE

I hereby certify that on this date, August 9, 2006, I electronically filed the foregoing with the Clerk of the United States District Court for the Middle District of Alabama, using the CM/ECF system, which will send notification of such filing to the following:

COUNSEL FOR DEFENDANT TAP PHARMACEUTICAL PRODUCTS, INC.

Tabor Robert Novak, Jr., Esquire
Ball Ball Matthews & Novak PA
P.O. Box 2148
Montgomery, AL 36102-2148
Telephone:    (334) 387-7680
Facsimile:    (334) 387-3222
tnovak@ball-ball.com

Daniel Edward Reidy, Esquire
Jones Day
77 West Wacker Drive
Chicago, IL 60601-1692
Telephone:    (312) 269-4140
Facsimile:    (312) 782-8585
dereidy@jonesday.com

James R. Daly, Esquire
Jones Day
77 West Wacker Drive
Chicago, IL 60601-1692
Telephone:    (312) 782-4141
Facsimile:    (312) 782-8585
jrdaly@jonesday.com

COUNSEL FOR DEFENDANT ABBOTT LABORATORIES

Robert A. Huffaker, Esquire
Rushton Stakely Johnston & Garrett PC
P.O. Box 270
Montgomery, AL 36101-0270
Telephone:    (334) 206-3100
Facsimile:    (334) 262-6277
rah@rsjg.com

Erik W. Snapp, Esquire
Winston & Strawn LLP
35 West Wacker Drive
Chicago, IL 60601
Telephone:    (312) 558-5600
Facsimile:    (312) 558-5700
esnapp@winston.com

George Carter Lombardi, Esquire
Winston & Strawn LLP
35 West Wacker Drive
Chicago, IL 60601
Telephone:    (312) 558-5969
Facsimile:    (312) 558-5700
glombardi@winston.com

COUNSEL FOR DEFENDANTS TAKEDA AMERICA HOLDINGS, INC.
and
TAKEDA PHARMACEUTICAL COMPANY LIMITED

Joseph C. Espy, III, Esquire
Melton Espy & Williams, PC
P.O. Drawer 5130
Montgomery, AL 36103-5130
Telephone:     (334) 263-6621
Facsimile:     (334) 263-7252
jespy@mewlegal.com

Nada Djordjevic, Esquire
Jenner & Block LLP
One IBM Plaza
330 North Wabash Avenue
Chicago, IL 60611
Telephone:     (312) 222-9350
Facsimile:     (312) 840-7305
ndjordjevic@jenner.com

Robert R. Stauffer, Esquire
Jenner & Block LLP
One IBM Plaza
330 North Wabash Avenue
Chicago, IL 60611
Telephone:     (312) 923-2905
Facsimile:     (312) 840-7305
rstauffer@jenner.com

Thomas P Sullivan, Esquire
Jenner & Block, LLP
One IBM Plaza
330 North Wabash Avenue
Chicago, IL 60611
Telephone:     (312) 923-2928
Facsimile:     (312) 840-7305
tsullivan@jenner.com

COUNSEL FOR DEFENDANTS AMERISOURCE BERGEN CORPORATION,
AMERISOURCE BERGEN SPECIALTY GROUP,
and
ONCOLOGY SUPPLY COMPANY

Sandra Grisham Robinson, Esquire
Cabaniss Johnston Gardner Dumas & O'Neal
P.O. Box 2906
Mobile, AL 36652-2906
Telephone:     (251) 415-7308
Facsimile:     (251) 415-7350
sgr@cabaniss.com

Ian David Rosenthal, Esquire
Cabaniss Johnston Gardner Dumas & O'Neal
P.O. Box 2906
Mobile, AL 36652-2906
Telephone:     (251) 415-7309
Facsimile:     (251) 415-7350
idr@cabaniss.com

/s/ Kimberly R. West
Kimberly R. West (ASB-2419-E65K)
kw@wallacejordan.com
**WALLACE JORDAN RATLIFF & BRANDT LLC**
P.O. Box 530910
Birmingham, AL 35298
Telephone:     (205) 870-0555
Facsimile:     (205) 871-7534