# EXHIBIT "A"

IN THE CIRCUIT COURT OF
MONTGOMERY COUNTY, ALABAMA

STATE OF ALABAMA,                    )
                                     )
Plaintiff,                           )
                                     )
v.                                   )    CV- 05- 219 _____
                                     )
ABBOTT LABORATORIES, INC.; AGOURON   )
PHARMACEUTICALS, INC.; ALCON         )    JURY TRIAL DEMANDED
LABORATORIES, INC.; ALLERGAN, INC.;  )
ALPHARMA, INC.; ALZA CORPORATION;    )
AMGEN, INC.; ANDRX CORPORATION;      )
ANDRX PHARMACEUTICALS, INC.;         )
ASTRAZENECA PHARMACEUTICALS LP;      )
ASTRAZENECA LP; AVENTIS PHARMA-      )
CEUTICALS, INC.; AVENTIS BEHRING,    )
L.L.C.; BARR LABORATORIES, INC.;     )
BAXTER HEALTHCARE CORPORATION;       )
BAXTER INTERNATIONAL, INC.; BAYER    )
CORPORATION; BAYER PHARMACEUTI-      )
CALS CORPORATION; BAYER HEALTH-      )
CARE, LLC; BIOVAIL PHARMACEUTI-      )
CALS, INC.; BOEHRINGER INGELHEIM     )
CORPORATION; BOEHRINGER INGEL-       )
HEIM PHARMACEUTICALS, INC.;          )
BRISTOL-MYERS SQUIBB COMPANY; DEY,   )
L.P.; EISAI, INC.; ELI LILLY AND COM- )
PANY; ENDO PHARMACEUTICALS, INC.;    )
ETHEX CORPORATION; FOREST LABORA-    )
TORIES, INC.; FOREST PHARMACEUTI-    )
CALS, INC.; FUJISAWA HEALTHCARE,     )
INC.; FUJISAWA USA, INC.; G.D. SEARLE, )
L.L.C.; GENZYME CORPORATION; GILEAD  )
SCIENCES, INC.; GLAXOSMITHKLINE      )
P.L.C.; GLAXO WELLCOME, INC.;        )
HOFFMANN-LAROCHE, INC.; IMMUNEX      )
CORPORATION; IVAX CORPORATION;       )
IVAX PHARMACEUTICALS, INC.; JANSSEN  )
PHARMACEUTICA PRODUCTS, LP;          )
JOHNSON & JOHNSON; K-V PHARMACEU-    )
TICAL COMPANY; KING PHARMACEUTI-     )
CALS, INC.; MCNEIL-PPC, INC.; MED-   )
IMMUNE, INC.; MERCK & CO., INC.;     )

FILED
CIRCUIT COURT OF
MONTGOMERY COUNTY

2005 JAN 26  PM 3: 52

MONARCH PHARMACEUTICALS, INC.;　)
MYLAN LABORATORIES, INC.; MYLAN　)
PHARMACEUTICALS, INC.; NOVARTIS　)
PHARMACEUTICALS CORPORATION;　)
NOVO NORDISK PHARMACEUTICALS,　)
INC.; ORGANON PHARMACEUTICALS USA,　)
INC.; ORTHO BIOTECH PRODUCTS, LP;　)
ORTHO-MCNEIL PHARMACEUTICAL,　)
INC.; PAR PHARMACEUTICAL, INC.;　)
PFIZER, INC.; PHARMACIA CORPORA-　)
TION; PHARMACIA & UPJOHN COMPANY　)
CORPORATION; PURDUE PHARMA, L.P.;　)
PUREPAC PHARMACEUTICAL CO.;　)
ROCHE LABORATORIES, INC.; ROXANE　)
LABORATORIES, INC.; SANDOZ, INC.;　)
SANOFI-SYNTHELABO, INC.; SCHERING-　)
PLOUGH CORPORATION; SMITHKLINE　)
BEECHAM CORPORATION; TAKEDA　)
PHARMACEUTICALS NORTH AMERICA,　)
INC.; TAP PHARMACEUTICAL PRODUCTS,　)
INC.; TEVA PHARMACEUTICALS USA,　)
INC.; UDL LABORATORIES, INC.;　)
WARRICK PHARMACEUTICALS CORPOR-　)
ATION; WATSON LABORATORIES, INC.;　)
WATSON PHARMA, INC.; WATSON　)
PHARMACEUTICALS, INC.; WYETH, INC.;　)
WYETH PHARMACEUTICALS, INC.; ZLB　)
BEHRING, L.L.C., and FICTITIOUS　)
DEFENDANTS 1 through 200, whose true　)
names are not presently known, but who are　)
manufacturers, distributors, marketers, and/or　)
sellers of prescription drugs who reported or　)
caused to be reported false and inflated pricing　)
information to industry publishers upon which　)
information the Alabama Medicaid Agency　)
relied in reimbursing providers for the　)
dispensing of such drugs, and whose true names　)
will be added upon discovery,　)
　)
Defendants.　)

## COMPLAINT

The State of Alabama, by and through its Attorney General (hereinafter "the State"), brings this complaint against the above-named Defendants and alleges, on information and belief, the following:

## INTRODUCTION

1.    The Defendants have engaged in false, misleading, wanton, unfair, and deceptive acts and practices in the pricing and marketing of their prescription drug products.    The Defendants' fraudulent pricing and marketing of their prescription drugs have impacted elderly, disabled, and poor Alabama citizens covered by the State's Medicaid program ("Alabama Medicaid") by causing the Alabama Medicaid Agency to pay grossly excessive prices for the Defendants' prescription drugs.

2.    Fair and honest drug pricing is a matter of great importance to the State and its citizens.  Expenditures by the State and its agencies for prescription drug reimbursement have increased dramatically in the past several years as a result, in part, of Defendants' fraudulent pricing scheme. Each year Alabama spends hundreds of millions of dollars on prescription drugs under the Alabama Medicaid program.  In the past year alone, Alabama Medicaid has spent almost $600 million on prescription drugs.  Since 1990, Alabama Medicaid prescription drug expenditures have increased tenfold.  This exponential increase in prescription drug costs in recent years has contributed to a health care funding crisis within the State that requires action to ensure fair dealing between the Defendants and the State and its agencies.

3.    The State is accountable to its citizens and taxpayers for how it spends limited State resources, and it is obligated to pursue any party whose unlawful conduct has led to the overspending of State funds.  Consequently, the State, by and through its Attorney General,

3

brings this action to recover amounts overpaid for prescription drugs by Alabama Medicaid, including pharmacy dispensed drugs and co-payments for drugs covered by Medicare, as a result of the fraudulent and wanton conduct of Defendants. The State further seeks to prohibit and permanently enjoin Defendants from continuing to perpetrate their drug-pricing scheme, to require Defendants to publicly disclose true drug prices, and to require Defendants to account for and disgorge all profits obtained by Defendants as a result of their improper and unlawful actions.

4.       This lawsuit seeks legal and equitable redress for the fraudulent and wanton marketing and pricing conduct of Defendants, who have profited from their wrongful acts and practices at the expense of the State.

## PARTIES

5.       Plaintiff is the State of Alabama. The State brings this action in its capacity as sovereign and on behalf of the Alabama Medicaid Agency.

6.       The Attorney General, as chief law officer of the State of Alabama pursuant to Alabama Code § 36-15-12, is statutorily authorized to initiate and maintain this action.

### Defendant Abbott

7.       Defendant Abbott Laboratories, Inc. ("Abbott") is a Delaware corporation with its principal place of business located at 100 Abbott Park Road, Abbott Park, IL  60064. Ross Products is a division of Abbott.  Abbott is engaged in the business of manufacturing, distributing, marketing, and/or selling prescription drugs that are reimbursed by state Medicaid agencies nationwide. Pharmaceuticals that are manufactured, distributed, marketed, and/or sold by Abbott and reimbursed by Alabama Medicaid include, but are not limited to, Biaxin®, Biaxin

XL®, Depakote®, Depakote® ER, Depakote® Sprinkle, Flomax®, Kaletra®, Omnicef®, Tricor®, Synagis®, OxyContin®, Prevpac®, Synthroid®, and PediaSure.

### Defendant Alcon

8.     Defendant Alcon Laboratories, Inc. ("Alcon") is a Delaware corporation with its principal place of business located at 6201 S. Freeway (T1-3), Fort Worth, TX  76134-2099. Alcon is engaged in the business of manufacturing, distributing, marketing, and/or selling prescription drugs that are reimbursed by state Medicaid agencies nationwide.  Pharmaceuticals that are manufactured, distributed, marketed, and/or sold by Alcon and reimbursed by Alabama Medicaid include, but are not limited to, Patanol® and Cipro® HC OTIC.

### Defendant Allergan

9.     Defendant Allergan, Inc. ("Allergan") is a Delaware corporation with its principal place of business located at 2525 Dupont Drive, Irvine, CA  92612.  Allergan is engaged in the business of manufacturing, distributing, marketing, and/or selling prescription drugs that are reimbursed by state Medicaid agencies nationwide.  Pharmaceuticals that are manufactured, distributed, marketed, and/or sold by Allergan and reimbursed by Alabama Medicaid include, but are not limited to, Alphagan® P and Alphagan®.

### The Alpharma Defendants

10.     Defendant Alpharma, Inc. ("Alpharma") is a Delaware corporation with its principal place of business located at One Executive Drive, Fort Lee, NJ 07024-1399.

11.     Defendant Purepac Pharmaceutical Co. ("Purepac"), a wholly-owned subsidiary of Alpharma, is a Delaware corporation with its principal place of business located at 14 Commerce Drive, Suite 301, Cranford, NJ 07016.

5

12.    Alpharma and Purepac (collectively, the "Alpharma Defendants") are diversified healthcare companies that individually, and/or in combination with one another, engage in the business of manufacturing, distributing, marketing, and/or selling prescription drugs that are reimbursed by state Medicaid agencies nationwide.  Pharmaceuticals that are manufactured, distributed, marketed, and/or sold by the Alpharma Defendants and reimbursed by Alabama Medicaid include, but are not limited to, Isosorbide Mononitrate.

The Amgen Defendants

13.    Defendant Amgen, Inc. ("Amgen") is a Delaware corporation with its principal place of business located at One Amgen Center Drive, Thousand Oaks, CA  91320-1799.

14.    Defendant Immunex Corporation ("Immunex"), a Washington corporation with its principal place of business located at 51 University Street, Seattle, WA  98101, was acquired by Amgen in 2002.

15.    Amgen and Immunex (collectively, the "Amgen Defendants") are diversified healthcare companies that individually, and/or in combination with one another, engage in the business of manufacturing, distributing, marketing, and/or selling prescription drugs that are reimbursed by state Medicaid agencies nationwide.  Pharmaceuticals that are manufactured, distributed, marketed, and/or sold by the Amgen Defendants and reimbursed by Alabama Medicaid include, but are not limited to, Enbrel®, Neupogen®, Procrit®, and Epogen®.

The Andrx Defendants

16.    Defendant Andrx Corporation ("Andrx") is a Delaware corporation with its principal place of business located at 4955 Orange Drive, Davie, FL 33314.

17.    Defendant Andrx Pharmaceuticals, Inc. ("Andrx Pharm") is a Florida corporation with its principal place of business located a 4955 Orange Drive, Davie, FL 33314.

18.   Andrx and Andrx Pharm (collectively, the "Andrx Defendants) are diversified healthcare companies that individually, and/or in combination with one another, engage in the business of manufacturing, distributing, marketing, and/or selling prescription drugs that are reimbursed by state Medicaid agencies nationwide.   Pharmaceuticals that are manufactured, distributed, marketed, and/or sold by the Andrx Defendants and reimbursed by Alabama Medicaid include, but are not limited to, Cartia XT®.

The AstraZeneca Defendants

19.   Defendant AstraZeneca Pharmaceuticals LP ("AstraZeneca Pharm") is a Delaware limited partnership with its principal place of business located at 1800 Concord Pike, P.O. Box 15437, Wilmington, DE  19850-5437.

20.   Defendant AstraZeneca LP ("AstraZeneca"), formerly Astra Pharmaceuticals LP, is a Delaware limited partnership with its principal place of business located at 725 Chesterbrook Boulevard, Wayne, PA  19087.

21.   AstraZeneca Pharm and AstraZeneca (collectively, the "AstraZeneca Defendants") are diversified healthcare companies that individually, and/or in combination with one another, engage in the business of manufacturing, distributing, marketing and/or selling prescription drugs that are reimbursed by state Medicaid agencies nationwide.   Pharmaceuticals that are manufactured, distributed, marketed, and/or sold by the AstraZeneca Defendants and reimbursed by Alabama Medicaid include, but are not limited to, Nexium®, Pulmicort Respules®, Pulmicort Turbuhaler®, Rhinocort Aqua®, Seroquel®, Toprol-XL®, Plendil®, Prilosec®, Accolate®, Zestoretic®, and Zestril®.

7

## The Aventis Defendants

22.    Defendant Aventis Pharmaceuticals, Inc. ("Aventis") is a Delaware corporation with its principal place of business located at 300 Somerset Corporate Boulevard, Bridgewater, NJ 08807-2854.

23.    Defendant Aventis Behring, L.L.C. ("Aventis Behring") is a Delaware limited liability company with its principal place of business located at 1020 First Avenue, King of Prussia, PA 19406–1310. Aventis Behring was formerly known as Centeon, L.L.C. and currently operates as ZLB Behring.

24.    Defendant ZLB Behring, L.L.C. ("ZLB Behring"), formerly known as Aventis Behring, is a Delaware limited liability company and a subsidiary of CSL Limited of Melbourne Australia, with its principal place of business located at 1020 First Avenue, P.O. Box 61501, King of Prussia, PA 19406-0901.

25.    Aventis, Aventis Behring, and ZLB Behring (collectively, the "Aventis Defendants") are diversified healthcare companies that individually, and/or in combination with one another, engage in the business of manufacturing, distributing, marketing, and/or selling prescription drugs that are reimbursed by state Medicaid agencies nationwide. Pharmaceuticals that are manufactured, distributed, marketed, and/or sold by the Aventis Defendants and reimbursed by Alabama Medicaid include, but are not limited to, Helixate® FS, Allegra®, Amaryl®, DDAVP®, Lantus®, Lovenox®, Nasacort® AQ, Altace®, Kogenate® FS, Kogenate®, Actonel®, and Cardizem® CD.

## Defendant Barr

26.    Defendant Barr Laboratories, Inc. ("Barr"), a subsidiary of Barr Pharmaceuticals, Inc., is a Delaware corporation with its principal place of business located at 2 Quaker Road,

P.O. Box 2900, Pomona, NY 10970-0519. Barr is engaged in the business of manufacturing, distributing, marketing, and/or selling prescription drugs that are reimbursed by state Medicaid agencies nationwide. Pharmaceuticals that are manufactured, distributed, marketed, and/or sold by Barr and reimbursed by Alabama Medicaid include, but are not limited to, Amphetamine Salt Combinations, Ciproflaxin Hydrocholoride, Warfarin Sodium, Fluoxetine HCl, and Tamoxifen Citrate.

The Baxter Defendants

27.    Defendant Baxter International, Inc. ("Baxter International") is a Delaware corporation with its principal place of business located at One Baxter Parkway, Deerfield, IL 60015-4633.

28.    Defendant Baxter Healthcare Corporation ("Baxter Healthcare"), a wholly-owned subsidiary of Baxter International, Inc., is a Delaware corporation with its principal place of business located at One Baxter Parkway, Deerfield, IL 60015.

29.    Baxter International and Baxter Healthcare (collectively, the "Baxter Defendants") are diversified healthcare companies that individually, and/or in combination with one another, engage in the business of manufacturing, distributing, marketing, and/or selling prescription drugs that are reimbursed by state Medicaid agencies nationwide. Pharmaceuticals that are manufactured, distributed, marketed, and/or sold by the Baxter Defendants and reimbursed by Alabama Medicaid include, but are not limited to, Feiba® VH Immuno, Recombinate, and Hemofil M.

The Bayer Defendants

30.    Defendant Bayer Corporation ("Bayer"), formerly Miles, Inc., is an Indiana corporation with its principal place of business located at 100 Bayer Road, Pittsburgh, PA

9

15205-9707. Bayer Corporation is a wholly-owned United States subsidiary of Bayer AG, a German corporation with its principal place of business located at 51368 Leverkusen, Germany.

31.    Defendant Bayer Pharmaceuticals Corporation ("Bayer Pharm") is a Delaware corporation with its principal place of business located at 400 Morgan Lane, West Haven, CT 06516.

32.    Defendant Bayer Healthcare, LLC ("Bayer Healthcare") is a legally independent company with six divisions operating under the Bayer AG umbrella. Bayer Healthcare is a Delaware limited liability company with its principal place of business located at 511 Benedict Avenue, Tarrytown, NY 10591.

33.    Bayer, Bayer Pharm, and Bayer Healthcare (collectively, the "Bayer Defendants") are diversified healthcare companies that individually, and/or in combination with one another, engage in the business of manufacturing, distributing, marketing, and/or selling prescription drugs and biological products that are reimbursed by state Medicaid agencies nationwide. Pharmaceuticals and biological products that are manufactured, distributed, marketed, and/or sold by the Bayer Defendants and reimbursed by Alabama Medicaid include, but are not limited to, Kogenate® FS, Cipro®, Helixate® FS, Kogenate®, Adalat® CC, Baycol®, and Gamimune® N.

The Biovail Defendants

34.    Defendant Biovail Pharmaceuticals, Inc. ("Biovail") is a Delaware corporation with its principal place of business located at 700 Route 202/206, North Bridgewater, NJ 08807. Biovail is engaged in the business of manufacturing, distributing, marketing, and/or selling prescription drugs that are reimbursed by state Medicaid agencies nationwide. Pharmaceuticals

10

that are manufactured, distributed, marketed, and/or sold by Biovail and reimbursed by Alabama Medicaid include, but are not limited to, Vasotec® and Cardizem® CD.

### The Boehringer Defendants

35.    Defendant Boehringer Ingelheim Corporation ("Boehringer") is a Nevada corporation with its principal place of business located at 900 Ridgebury Road, Ridgefield, CT 06877.  Boehringer includes a number of subsidiary companies that manufacture, distribute, market, and/or sell prescription drugs, including, but not limited to, the following:

      a.    Defendant    Boehringer    Ingelheim    Pharmaceuticals,    Inc. ("Boehringer Pharm") is a Delaware corporation with its principal place of business located at 900 Ridgebury Road, Ridgefield, CT 06877; and

      b.    Defendant Roxane Laboratories, Inc. ("Roxane"), a Delaware corporation with its principal place of business located at 1809 Wilson Road, Columbus, OH 43228-9579.

36.    Boehringer, Boehringer Pharm, and Roxane (collectively "the Boehringer Defendants") are diversified healthcare companies that individually, and/or in combination with one another, engage in the business of manufacturing, distributing, marketing, and/or selling prescription drugs that are reimbursed by state Medicaid agencies nationwide.  Pharmaceuticals that are manufactured, distributed, marketed, and/or sold by the Boehringer Defendants and reimbursed by Alabama Medicaid include, but are not limited to, Flomax®, Atrovent®, Combivent®, Megestrol Acetate, Synagis®, Enbrel®, and Ipratropium Bromide.

11

Defendant Bristol-Myers Squibb

37.    Defendant Bristol-Myers Squibb Company ("Bristol-Myers Squibb"), formerly Bristol-Myers Company, is a Delaware corporation with its principal place of business located at 345 Park Avenue, New York, NY 10154-0037. Bristol-Myers Squibb, which includes a number of divisions and/or subsidiary companies, is engaged in the business of manufacturing, distributing, marketing, and/or selling prescription drugs that are reimbursed by state Medicaid agencies nationwide. Pharmaceuticals that are manufactured, distributed, marketed, and/or sold by Bristol-Myers Squibb, and/or its subsidiaries and divisions, and reimbursed by Alabama Medicaid include, but are not limited to, Sustiva®, Cefzil®, Glucophage® XR, Glucovance®, Monopril®, Plavix®, Pravachol®, Avalide®, Abilify®, Coumadin®, Prevpac®, Tequin®, Zerit®, Megace®, Serzone®, BuSpar®, and Sinemet® CR.[1]

Defendant DEY

38.    Defendant DEY, L.P. ("DEY"), formerly DEY Laboratories, is a Delaware limited partnership with its principal place of business located at 2751 Napa Valley Corporate Drive, Napa, CA 94558. DEY is an indirect subsidiary of Merck KGaA, a German pharmaceutical conglomerate, and is an affiliate of EMD, Inc. DEY is engaged in the business of manufacturing, distributing, marketing, and/or selling prescription drugs that are reimbursed by state Medicaid agencies nationwide. Pharmaceuticals that are manufactured, distributed, marketed, and/or sold by DEY and reimbursed by Alabama Medicaid include, but are not limited to, Albuterol Sulfate and Ipratropium Bromide.

---

[1] Upon information and belief, Avalide® and Plavix® are distributed by Bristol-Myers Squibb Sanofi-Synthelabo Partnership.

### Defendant Eisai

39.     Defendant Eisai, Inc. ("Eisai"), the U.S. pharmaceutical subsidiary of Tokyo-based Eisai Co., Ltd., is a Delaware corporation with its principal place of business located is 500 Frank W. Burr Boulevard, Teaneck, NJ   07666.   Eisai is engaged in the business of manufacturing, distributing, marketing, and/or selling prescription drugs that are reimbursed by state Medicaid agencies nationwide.   Pharmaceuticals that are manufactured, distributed, marketed, and/or sold by Eisai and reimbursed by Alabama Medicaid include, but are not limited to, Aricept®, Zonegran®, and Aciphex®.

### Defendant Eli Lilly

40.     Defendant Eli Lilly and Company ("Eli Lilly") is an Indiana corporation with its principal place of business located at Lilly Corporate Center, Indianapolis, IN  46285. Eli Lilly is engaged in the business of manufacturing, distributing, marketing, and/or selling prescription drugs that are reimbursed by state Medicaid agencies nationwide.   Pharmaceuticals that are manufactured, distributed, marketed, and/or sold by Eli Lilly and reimbursed by Alabama Medicaid include, but are not limited to, Actos®, Evista®, Humalog®, Humalog® Mix75/25™, Humulin® 70/30, Humulin® N, Strattera®, Zyprexa®, Zyprexa® Zydis®, Humulin®, and Prozac®.

### Defendant Endo

41.     Defendant Endo Pharmaceuticals, Inc. ("Endo"), formerly Endo Laboratories, L.L.C., and a subsidiary of Endo Pharmaceuticals Holdings, Inc., is a Delaware corporation with its principal place of business located at 100 Painters Drive, Chadds Ford, PA  19317. Endo is engaged in the business of manufacturing, distributing, marketing, and/or selling prescription drugs that are reimbursed by state Medicaid agencies nationwide.   Pharmaceuticals that are

13

manufactured, distributed, marketed, and/or sold by Endo and reimbursed by Alabama Medicaid include, but are not limited to, Lidoderm®.

### The Forest Defendants

42.    Defendant Forest Laboratories, Inc. ("Forest") is a Delaware corporation with its principal place of business located at 909 Third Avenue, New York, NY 10022.

43.    Defendant Forest Pharmaceuticals, Inc. ("Forest Pharm"), wholly-owned subsidiary of Forest, is a Delaware corporation with its principal place of business located at 13600 Shoreline Drive, St. Louis, MO 63045.

44.    Forest and Forest Pharm (collectively, the "Forest Defendants") are diversified healthcare companies that individually, and/or in combination with one another, engage in the business of manufacturing, marketing, distributing, and/or selling prescription drugs that are reimbursed by State Medicaid agencies nationwide. Pharmaceuticals that are manufactured, distributed, marketed, and/or sold by the Forest Defendants and reimbursed by Alabama Medicaid include, but are not limited to Celexa®, Lexapro®, Tiazac®, AeroChamber Plus™, and Aerobid®.

### The Fujisawa Defendants

45.    Defendant Fujisawa Healthcare, Inc. ("Fujisawa") is a Delaware corporation and a wholly-owned subsidiary of Fujisawa Pharmaceutical Company, Ltd., of Osaka, Japan. Fujisawa's principal place of business is located at Three Parkway North, Deerfield, IL 60015.

46.    Defendant Fujisawa USA, Inc. ("Fujisawa USA") is or was a Delaware corporation with its principal place of business located at Three Parkway North, Deerfield, IL 60015.

47.    Fujisawa and Fujisawa USA (collectively, the "Fujisawa Defendants") are or were engaged in the business of manufacturing, distributing, marketing, and/or selling prescription

drugs that are reimbursed by state Medicaid agencies nationwide. Pharmaceuticals that are or were manufactured, distributed, marketed, and/or sold by the Fujisawa Defendants and reimbursed by Alabama Medicaid include, but are not limited to, Prograf® and Protopic®.

### Defendant Genzyme

48.    Defendant Genzyme Corporation ("Genzyme"), formerly Genzyme Massachusetts Corporation, is a Massachusetts corporation with its principal place of business located at 500 Kendall Street, Cambridge, MA 02139. Genzyme is engaged in the business of manufacturing, distributing, marketing, and/or selling prescription drugs that are reimbursed by state Medicaid agencies nationwide. Pharmaceuticals that are manufactured, distributed, marketed, and/or sold by Genzyme and reimbursed by Alabama Medicaid include, but are not limited to, Renagel®.

### Defendant Gilead

49.    Defendant Gilead Sciences, Inc. ("Gilead") is a Delaware corporation with its principal place of business located at 333 Lakeside Drive, Foster City, CA 94404. Gilead is engaged in the business of manufacturing, distributing, marketing, and/or selling prescription drugs that are reimbursed by state Medicaid agencies nationwide. Pharmaceuticals that are manufactured, distributed, marketed, and/or sold by Gilead and reimbursed by Alabama Medicaid include, but are not limited to, Viread®.

### The GlaxoSmithKline Defendants

50.    Defendant GlaxoSmithKline P.L.C. ("GlaxoSmithKline") is an English public limited company with its principal place of business located at 980 Great West Road, Brentford, Middlesex, TW8 9GS, England. With the merger of Glaxo Wellcome, Inc. and SmithKline Beecham Corporation in 2000, GlaxoSmithKline became the second largest drug company in the world.

51.    Defendant Glaxo Wellcome, Inc. ("Glaxo") is or was a North Carolina corporation with its principal place of business located at 5 Moore Drive, Research Triangle Park, NC 27709.

52.    Defendant SmithKline Beecham Corporation ("SmithKline"), is a Pennsylvania corporation with its principal place of business located at One Franklin Plaza, 200 North 16th Street, Philadelphia, PA 19102.

53.    GlaxoSmithKline, Glaxo, and SmithKline (collectively, the "GSK Defendants") are diversified healthcare companies that individually, and/or in combination with one another, engage in the business of manufacturing, distributing, marketing, and/or and selling prescription drugs that are reimbursed by state Medicaid agencies nationwide.  Pharmaceuticals that are manufactured, distributed, marketed, and/or sold by the GSK Defendants and reimbursed by Alabama Medicaid include, but are not limited to, Advair Diskus®, Augmentin ES-600®, Avandamet®, Avandia®, Bactroban Cream®, Bactroban Nasal®, and Bactroban Ointment®, Combivir®, Coreg®, Flonase®, Flovent®, Imitrex®, Lamictal®, Paxil®, Paxil CR™, Valtrex®, Wellbutrin SR®, Wellbutrin XL®, Zantac®, Zofran®, Amoxil®, Augmentin®, Serevent® Diskus®, Trizivir®, Ceftin®, Lanoxin®, and Epivir®.

<u>The Hoffmann-LaRoche Defendants</u>

54.    Defendant Hoffmann-LaRoche, Inc. ("Hoffmann-LaRoche") is a New Jersey corporation with its principal place of business located at 340 Kingsland Street, Nutley, NJ 07110-1199. Hoffmann-LaRoche is the U.S. prescription drug unit of the Roche Group.

55.    Defendant Roche Laboratories, Inc. ("Roche Labs") is a Delaware corporation with its principal place of business located at 340 Kingsland Street, Nutley, NJ 07110-1199.  Roche Labs is a marketing and sales subsidiary of Hoffmann-LaRoche.

16

56.    Hoffmann-LaRoche and Roche Labs (collectively, the "Hoffmann-LaRoche Defendants") are diversified healthcare companies that individually, and/or in combination with one another, engage in the business of manufacturing, distributing, marketing, and/or selling prescription drugs that are reimbursed by state Medicaid agencies nationwide. Pharmaceuticals that are manufactured, distributed, marketed, and/or sold by the Hoffmann-LaRoche Defendants and reimbursed by Alabama Medicaid include, but are not limited to, CellCept®, Rocephin®, Tamiflu®, and Demadex®.

### The IVAX Defendants

57.    Defendant IVAX Corporation ("IVAX") is a Florida corporation with its principal place of business located at 4400 Biscayne Blvd., Miami, FL 33137-3227.

58.    Defendant IVAX Pharmaceuticals, Inc. ("IVAX Pharm"), a wholly-owned subsidiary of IVAX, is a Florida corporation with its principal place of business located at 4400 Biscayne Blvd., Miami, FL 33137.

59.    IVAX and IVAX Pharm (collectively, the "IVAX Defendants") are diversified healthcare companies that individually, and/or in combination with one another, engage in the business of manufacturing, distributing, marketing, and/or selling prescription drugs that are reimbursed by state Medicaid agencies nationwide.  Pharmaceuticals that are manufactured, distributed, marketed, and/or sold by the IVAX Defendants and reimbursed by Alabama Medicaid include, but are not limited to, Clozapine.

### The J&J Defendants

60.    Defendant Johnson & Johnson ("J&J") is a New Jersey corporation with its principal place of business located at One Johnson & Johnson Plaza, New Brunswick, NJ 08933.

J&J includes a number of subsidiary or affiliate companies including, but not limited to, the following:

      a.    Defendant ALZA Corporation ("ALZA"), is a Delaware corporation with its principal place of business located at 1900 Charleston Road, Mountain View, CA 94039, and was acquired by J&J from Defendant Abbott in 2000;

      b.    Defendant Janssen Pharmaceutica Products, LP ("Janssen"), a wholly-owned subsidiary of J&J, is a New Jersey limited partnership with its principal place of business located at 1125 Trenton-Harbourton Road, Titusville, NJ 08560;

      c.    Defendant McNeil-PPC, Inc. ("McNeil"), a wholly-owned subsidiary of J&J, is a New Jersey corporation with its principal place of business located at 7050 Camp Hill Road, Fort Washington, PA 19034. McNeil Consumer & Specialty Pharmaceuticals ("McNeil Cons") is a division of McNeil-PPC, Inc.;

      d.    Defendant Ortho Biotech Products, LP ("Ortho Biotech"), a wholly-owned subsidiary of J&J, is a New Jersey limited partnership with its principal place of business located at 430 Rt. 22 East, Bridgewater, NJ 08807-0914; and

      e.    Defendant Ortho-McNeil Pharmaceutical, Inc. ("Ortho McNeil"), a wholly-owned subsidiary of J&J, is a Delaware corporation with its principal place of business located at 1000 U.S. Route 202 South, Raritan, NJ 08869.

    61.    J&J, ALZA, Janssen, McNeil, Ortho Biotech, and Ortho McNeil (collectively "the J&J Defendants") are diversified healthcare companies that individually, and/or in combination with one another, engage in the business of manufacturing, distributing, marketing, and/or selling prescription drugs that are reimbursed by state Medicaid agencies nationwide. Pharmaceuticals that are manufactured, distributed, marketed, and/or sold by the J&J Defendants and reimbursed by Alabama Medicaid include, but are not limited to, Duragesic®, Reminyl®, Risperdal®, Risperdal® Consta™, Ditropan XL®, Topamax®, Ultracet®, Concerta®, Procrit®, Levaquin®,

Floxin®, Ultram®, Aciphex®, Pepcid® AC, Regranex®, Propulsid®, Nizoral®, Ortho Tri-Cyclen®, and Sporanox®.

The K-V Defendants

62.    Defendant K-V Pharmaceutical Company ("K-V") is a Delaware corporation with its principal place of business at 2503 South Hanley Road, St. Louis, MO 63144.

63.    Defendant ETHEX Corporation ("ETHEX"), a wholly-owned subsidiary of K-V, is a Missouri corporation with its principal place of business at 10888 Metro Court, St. Louis, MO 63043-2413.

64.    K-V and ETHEX (collectively, the "K-V Defendants") are diversified healthcare companies that individually, and/or in combination with one another, engage in the business of manufacturing, distributing, marketing, and/or selling prescription drugs that are reimbursed by state Medicaid agencies nationwide.  Pharmaceuticals that are sold by the K-V Defendants and reimbursed by Alabama Medicaid include, but are not limited to, Potassium Chloride.

The King Defendants

65.    Defendant King Pharmaceuticals, Inc. ("King") is a Tennessee corporation with its principal place of business located at 501 Fifth Street, Bristol, TN 37620.

66.    Defendant Monarch Pharmaceuticals, Inc. ("Monarch"), a wholly-owned subsidiary of King, is a Tennessee corporation with its principal place of business located at 501 Fifth Street, Bristol, TN 37620.

67.    King and Monarch (collectively, the "King Defendants") are diversified healthcare companies that individually, and/or in combination with one another, engage in the business of manufacturing, distributing, marketing, and/or selling prescription drugs that are reimbursed by state Medicaid agencies nationwide.  Pharmaceuticals that are manufactured, distributed,

19

marketed, and/or sold by the King Defendants and reimbursed by Alabama Medicaid include, but are not limited to, Altace®, Skelaxin®, and Lorabid®.

### Defendant MedImmune

68.    Defendant MedImmune, Inc. ("MedImmune") is a Delaware corporation with its principal place of business located at One MedImmune Way, Gaithersburg, MD   20878. MedImmune is engaged in the business of manufacturing, distributing, marketing, and/or selling prescription drugs that are reimbursed by state Medicaid agencies nationwide.   Pharmaceuticals that are manufactured, distributed, marketed, and/or sold by MedImmune and reimbursed by Alabama Medicaid include, but are not limited to, Synagis®.

### Defendant Merck

69.    Defendant Merck & Co., Inc. ("Merck") is a New Jersey corporation with its principal place of business located at One Merck Drive, P.O. Box 100, Whitehouse Station, NJ 08889-0100. Merck is engaged in the business of manufacturing, distributing, marketing, and/or selling prescription drugs that are reimbursed by state Medicaid agencies nationwide. Pharmaceuticals that are manufactured, distributed, marketed, and/or sold by Merck and reimbursed by Alabama Medicaid include, but are not limited to, Cosopt®, Cozaar®, Fosamax®, Hyzaar®, Singulair®, Vioxx®, Zocor®, Zetia®, Prinivil®, Mevacor®, Pepcid® AC, Vasotec®, Plendil®, Prilosec®, and Sinemet® CR.[2]

### The Mylan Defendants

70.    Defendant Mylan Laboratories, Inc. ("Mylan") is a Pennsylvania corporation with its principal place of business located at 1500 Corporate Drive, Suite 400, Canonsburg, PA 15317.

---

[2] Upon information and belief, Zetia® is manufactured by Schering Corporation for Merck/Schering-Plough Pharmaceuticals, which is a joint venture between Merck & Co., Inc. and Schering-Plough Corporation.

71.    Defendant Mylan Pharmaceuticals, Inc. ("Mylan Pharm"), a wholly-owned subsidiary of Mylan, is a West Virginia corporation with its principal place of business located at 1500 Corporate Drive, Suite 400, Canonsburg, PA 15317.

72.    Defendant UDL Laboratories, Inc. ("UDL"), a wholly-owned subsidiary of Mylan, is an Illinois corporation with its principal place of business located at 1718 Northrock Court, Rockford, IL 61103.

73.    Mylan, Mylan Pharm, and UDL (collectively, the "Mylan Defendants") are diversified healthcare companies that individually, and/or in combination with one another, engage in the business of manufacturing, distributing, marketing, and/or selling prescription drugs that are reimbursed by state Medicaid agencies nationwide. Pharmaceuticals that are manufactured, distributed, marketed, and/or sold by the Mylan Defendants and reimbursed by Alabama Medicaid include, but are not limited to, Clonidine Hydrochloride, Famotidine, Furosemide, Lorazepam, Nifedipine Extended-release, Omeprazole, Extended Phenytoin Sodium, Buspirone HCl, Diltiazem HCl, Propoxyphene Napsylate with APAP, and Lisinopril.

The Novartis Defendants

74.    Defendant Novartis Pharmaceuticals Corporation ("Novartis") is a Delaware corporation with its principal place of business located at One Health Plaza, East Hanover, NJ 07936-1080.

75.    Defendant Sandoz, Inc. ("Sandoz"), formerly known as Geneva Pharmaceuticals, Inc., and a member of the Novartis group of companies, is a Delaware corporation with its principal place of business located at 506 Carnegie Center, Suite 400, Princeton, NJ 08540-6243.

21

76.    Novartis and Sandoz (collectively, the "Novartis Defendants") are diversified
healthcare companies that individually, and/or in combination with one another, engage in the
business of manufacturing, distributing, marketing, and/or selling prescription drugs that are
reimbursed by state Medicaid agencies nationwide. Pharmaceuticals that are manufactured,
distributed, marketed, and/or sold by the Novartis Defendants and reimbursed by Alabama
Medicaid include, but are not limited to, Desferal®, Diovan®, Diovan HCT®, Elidel®,
Exelon®, Lamisil®, Lotrel®, Miacalcin®, Ritalin LA®, Trileptal®, Zelnorm®, Promethazine
HCl, Lotensin®, Neoral®, Lescol®, Sandimmune®, Tegretol®, Tegretol®-XR, Amox
Tr/Potassium Clavulanate, Terazosin HCl, Clozaril®, and Ranitidine HCl.

### Defendant Novo Nordisk

77.    Defendant Novo Nordisk Pharmaceuticals, Inc. ("Novo Nordisk") is a Delaware
corporation with its principal place of business located at 100 College Road West, Princeton, NJ
08540-7814. Novo Nordisk is the U.S. health care affiliate of Novo Nordisk A/S. Novo Nordisk
is engaged in the business of manufacturing, distributing, marketing, and/or selling
pharmaceuticals that are reimbursed by state Medicaid agencies nationwide. Pharmaceuticals
that are manufactured, distributed, marketed, and/or sold by Novo Nordisk and reimbursed by
Alabama Medicaid include, but are not limited to, Novolin® 70/30 and NovoSeven®.

### Defendant Organon

78.    Defendant Organon Pharmaceuticals USA, Inc. ("Organon"), a subsidiary of Akzo
Nobel NV, is a Delaware corporation with its principal place of business located at 56 Livingston
Avenue, Roseland, NJ    07068. Organon is engaged in the business of manufacturing,
distributing, marketing, and/or selling prescription drugs that are reimbursed by state Medicaid

agencies nationwide.  Pharmaceuticals that are manufactured, distributed, marketed, and/or sold by Organon and reimbursed by Alabama Medicaid include, but are not limited to, Remeron®.

### Defendant Par

79.    Defendant Par Pharmaceutical, Inc. ("Par") is a New Jersey corporation with its principal place of business located at One Ram Ridge Road, Spring Valley, NY 10977.  Par is engaged in the business of manufacturing, distributing, marketing, and/or selling prescription drugs that are reimbursed by state Medicaid agencies nationwide.  Pharmaceuticals that are manufactured, distributed, marketed, and/or sold by Par and reimbursed by Alabama Medicaid include, but are not limited to, Fluoxetine HCl, Megestrol Acetate, Paroxetine HCl, Ranitidine HCl, and Tizanidine HCl.

### The Pfizer Defendants

80.    Defendant Pfizer, Inc. ("Pfizer") is a Delaware corporation with its principal place of business located at 235 East 42nd Street, New York, NY 10017.  With the merger of Pfizer and Pharmacia Corporation in 2003, Pfizer became the largest drug company in the world today.

81.    Defendant Pharmacia Corporation ("Pharmacia") is a Delaware corporation with its principal place of business located at 235 East 42nd Street, New York, NY 10017-5755.

82.    Defendant Pharmacia & Upjohn Company Corporation ("P & U"), a subsidiary of Pharmacia Corporation, is a Delaware corporation with its principal place of business located at 235 E. 42nd Street, New York, NY 10017-5703.

83.    Defendant G.D. Searle, L.L.C. ("Searle"), a subsidiary of Pharmacia Corporation, is a Delaware limited liability company with its principal place of business located at 4901 Searle Parkway, Skokie, IL 60077-2919.

84.    Defendant Agouron Pharmaceuticals, Inc. ("Agouron") is a California corporation with its principal place of business located at 10777 Science Center Drive, San Diego, CA 92121.

85.    Pfizer, Pharmacia, P & U, Searle and Agouron (collectively, the "Pfizer Defendants") are diversified healthcare companies that individually, and/or in combination with one another, engage in the business of manufacturing, distributing, marketing, and/or selling prescription drugs that are reimbursed by state Medicaid agencies nationwide. Pharmaceuticals that are manufactured, distributed, marketed, and/or sold by the Pfizer Defendants and reimbursed by Alabama Medicaid include, but are not limited to, Aricept®, Accupril®, Diflucan®, Dilantin® Kapseals®, Dilantin® Infatabs®, Geodon®, Glucotrol XL®, Lipitor®, Neurontin®, Norvasc®, Zithromax®, Zoloft®, Zyrtec®, Bextra®, Celebrex®, Depo-Provera®, Detrol® LA, Xalatan®, Zyvox®, Viracept®, Detrol®, Cardura®, Procardia XL®, Cytotec®, Dilantin-125®, Rezulin®, and Vantin®.

### Defendant Purdue

86.    Defendant Purdue Pharma, L.P. ("Purdue") is a Delaware limited partnership with its principal place of business located at One Stamford Forum, 201 Tresser Boulevard, Stamford, CT 06901-3431. Purdue is engaged in the business of manufacturing, distributing, marketing, and/or selling prescription drugs that are reimbursed by state Medicaid agencies nationwide. Pharmaceuticals that are manufactured, distributed, marketed, and/or sold by Purdue and reimbursed by Alabama Medicaid include, but are not limited to, OxyContin® and MS Contin®.

### Defendant Sanofi

87.    Defendant Sanofi-Synthelabo, Inc. ("Sanofi"), the U.S. affiliate of the global pharmaceutical company Sanofi-Aventis, is a Delaware corporation with its principal place of

business located at 90 Park Avenue, New York, NY 10016. Sanofi is engaged in the business of manufacturing, distributing, marketing, and/or selling prescription drugs that are reimbursed by state Medicaid agencies nationwide. Pharmaceuticals that are manufactured, distributed, marketed, and/or sold by Sanofi and reimbursed by Alabama Medicaid include, but are not limited to, Avalide®,[3] Plavix®, and Ambien®.

The Schering Defendants

88. Defendant Schering-Plough Corporation ("Schering-Plough") is a New Jersey corporation with its principal place of business located at 2000 Galloping Hill Road, Kenilworth, NJ 07033.

89. Defendant Warrick Pharmaceuticals Corporation ("Warrick"), a wholly-owned subsidiary of Schering-Plough, is a Delaware corporation with its principal place of business located at 12125 Moya Blvd., Reno, NV 89506-2600.

90. Schering-Plough and Warrick (collectively, the "Schering Defendants") are diversified healthcare companies that individually, and/or in combination with one another, engage in the business of manufacturing, distributing, marketing, and/or selling prescription drugs that are reimbursed by state Medicaid agencies nationwide. Pharmaceuticals that are manufactured, distributed, marketed, and/or sold by the Schering Defendants and reimbursed by Alabama Medicaid include, but are not limited to, Cipro®, Clarinex®, Elocon®, Nasonex®, Zetia®,[4] Albuterol, Isosorbide Mononitrate, Claritin®, Peg-Intron®, Rebetol®, Albuterol Sulfate, Adalat® CC, K-Dur®, and Lotrisone®.

---

[3] Upon information and belief, Avalide® is distributed by Bristol-Myers Squibb Sanofi-Synthelabo Partnership.

[4] Upon information and belief, Zetia® is manufactured by Schering Corporation for Merck/Schering-Plough Pharmaceuticals, which is a joint venture between Merck & Co., Inc. and Schering-Plough Corporation.

### Defendant TAP Pharmaceutical

91.     Defendant TAP Pharmaceutical Products, Inc. ("TAP"), a joint venture between Abbott Laboratories and Takeda Chemical Industries, Ltd., of Osaka, Japan, is a Delaware corporation with its principal place of business located at 675 North Field Drive, Lake Forest, IL 60045. TAP is engaged in the business of manufacturing, distributing, marketing, and/or selling prescription drugs that are reimbursed by state Medicaid agencies nationwide. Pharmaceuticals that are manufactured, distributed, marketed, and/or sold by TAP and reimbursed by Alabama Medicaid include, but are not limited to, Prevacid® and Prevpac®.

### Defendant Takeda Pharmaceuticals

92.     Defendant Takeda Pharmaceuticals North America, Inc. ("Takeda Pharm"), a wholly-owned subsidiary of Takeda Pharmaceutical Company Limited, is a Delaware corporation with its principal place of business located at 475 Half Day Road, Suite 500, Lincolnshire, IL   60069.   Takeda Pharm is engaged in the business of manufacturing, distributing, marketing, and/or selling prescription drugs that are reimbursed by state Medicaid agencies nationwide. Pharmaceuticals that are manufactured, distributed, marketed, and/or sold by Takeda Pharm and reimbursed by Alabama Medicaid include, but are not limited to, Actos®.

### Defendant Teva

93.     Defendant Teva Pharmaceuticals USA, Inc. ("Teva"), a wholly-owned American subsidiary of Teva Pharmaceutical Industries, Ltd. and formerly Lemmon Pharmaceutical Company, is a Delaware corporation with its principal place of business located at 1090 Horsham Road, P.O. Box 1090, North Wales, PA  19454-1090. Teva is engaged in the business of manufacturing, distributing, marketing, and/or selling prescription drugs that are reimbursed by state Medicaid agencies nationwide.  Pharmaceuticals that are manufactured, distributed,

26

marketed, and/or sold by Teva and reimbursed by Alabama Medicaid include, but are not limited to, Amox Tr/Potassium Clavulanate, Cephalexin, Mirtazapine, Ranitidine HCl, Diltiazem HCl, Propoxyphene Napsylate and Acetaminophen, and Clonazepam.

### The Watson Defendants

94.    Defendant Watson Pharmaceuticals, Inc. ("Watson") is a Nevada corporation with its principal place of business located at 311 Bonnie Circle, Corona, CA 92880.

95.    Defendant Watson Laboratories, Inc. ("Watson Labs"), a wholly-owned subsidiary of Watson, is a Nevada corporation with its principal place of business located at 311 Bonnie Circle, Corona, CA 92880.

96.    Defendant Watson Pharma, Inc. ("Watson Pharma"), a wholly-owned subsidiary of Watson since 2000, is a Delaware corporation with its principal place of business located at 311 Bonnie Circle, Corona, CA 92880.

97.    Watson, Watson Labs, and Watson Pharma (collectively, the "Watson Defendants") are diversified healthcare companies that individually, and/or in combination with one another, engage in the business of manufacturing, distributing, marketing, and/or selling prescription drugs that are reimbursed by state Medicaid agencies nationwide. Pharmaceuticals that are manufactured, distributed, marketed, and/or sold by the Watson Defendants and reimbursed by Alabama Medicaid include, but are not limited to, Hydrocodone Bitartrate and APAP (Hydrocodone with Acetaminophen) and Buspirone HCl.

### The Wyeth Defendants

98.    Defendant Wyeth, Inc. ("Wyeth"), formerly American Home Products Corp., is a Delaware corporation with its principal place of business located at Five Giralda Farms, Madison, NJ 07940.

27

99.    Defendant Wyeth Pharmaceuticals, Inc. ("Wyeth Pharm"), a division of Wyeth, is a Delaware corporation with its principal place of business located at 500 Arcola Road, Collegeville, PA 19426.

100.    Wyeth and Wyeth Pharm (collectively, the "Wyeth Defendants") are diversified healthcare companies that individually, and/or in combination with one another, engage in the business of manufacturing, distributing, marketing, and/or selling prescription drugs that are reimbursed by state Medicaid agencies nationwide.  Pharmaceuticals that are manufactured, distributed, marketed, and/or sold by the Wyeth Defendants and reimbursed by Alabama Medicaid include, but are not limited to, Enbrel®, Effexor XR®, Premarin®, Protonix®, Altace®, Suprax®, Phenergan®, and Ziac®.

Fictitious Defendants

101.    Fictitious Defendants 1 through 200, whose true names are presently unknown, are manufacturers, distributors, marketers, and/or sellers of prescription drugs who reported or caused to be reported false and inflated pricing information to industry publishers upon which information the Alabama Medicaid Agency relied in reimbursing providers for the dispensing of such drugs, and whose true names will be added upon discovery.

102.    Upon information and belief, the drugs identified above for each Defendant are involved in the fraudulent or wanton pricing scheme outlined in this complaint.  In addition to those drugs, there may be other drugs which are or have been manufactured, distributed, marketed, and/or sold by Defendants and which are subject to the fraudulent pricing scheme, but the names of those drugs are unavailable to Alabama Medicaid at the present time.  For example, some of the Defendants manufacture, distribute, market, and/or sell multiple source brand name and generic drugs not listed above which are also manufactured by other companies.  Alabama

28

Medicaid is unable to determine without additional investigation and information which Defendants sold these multiple source brand name drugs and/or generic drugs as part of the scheme (and, if so, to what extent) for which Alabama Medicaid paid reimbursement to the provider. Likewise, Alabama Medicaid is unable to determine without additional information which Defendants sold physician-dispensed (Medicare Part B) drugs as part of the scheme for which Alabama Medicaid paid reimbursement to the provider. The State intends for this complaint to cover all drugs manufactured, distributed, marketed, and/or sold by Defendants (including Fictitious Defendants 1-200) which are subject to the fraudulent or wanton pricing scheme described herein, even though the names of some of those drugs are not identified because the information is not currently available to the State.

### JURISDICTION AND VENUE

103.    This Court has jurisdiction over the State's claims as they involve claims arising exclusively under Alabama law.

104.    This Court has personal jurisdiction over each Defendant either because the Defendant resides in Alabama, does business in Alabama, purposefully directs or directed its actions toward Alabama, and/or has the requisite minimum contacts with Alabama necessary to constitutionally permit the Court to exercise jurisdiction.

105.    Venue is proper in Montgomery County, Alabama pursuant to Alabama Code § 6-3-7, because the State pays reimbursement through Alabama Medicaid for prescription drugs dispensed in this County and throughout the State. The events giving rise to the claims herein arose, in substantial part, in this County, the State's principal office and operations are located in this County, and the State regularly and systematically conducts business in this County.

## FACTUAL BACKGROUND

### The Alabama Medicaid Program

106.    The Alabama Medicaid program is a state-administered program with federal matching funds which pays for medical care, including prescription drug benefits, for Alabama's low-income and disabled citizens.  Alabama Medicaid currently covers approximately 900,000 individuals.  Prescription drug benefits represent over 15% of Alabama Medicaid's annual budget.  Since 1990, the total annual cost of pharmacy-dispensed prescription drugs to Alabama Medicaid has increased tenfold, from total annual costs of approximately $60 million in 1990 to approximately $600 million in 2004.

107.    Alabama Medicaid reimburses medical providers, including physicians and pharmacists, for drugs prescribed for, and dispensed to, Alabama Medicaid recipients pursuant to statutory and administrative formulas.  Alabama Medicaid also pays up to the 20% co-payment for physician administered prescription drugs for Alabama Medicare beneficiaries who are qualified to receive Medicaid benefits.

108.    Reimbursement for pharmacy-dispensed prescription drugs under the Alabama Medicaid program is based on information supplied by Defendants to industry reporting services.  This information includes the following price indices:  (i) Average Wholesale Price ("AWP"), which is commonly understood as the average price charged by wholesalers to retailers, such as hospitals, doctors and pharmacies, for prescription drugs, (ii) Wholesale Acquisition Cost ("WAC"), which is commonly understood as the average price paid by wholesalers to the manufacturers for prescription drugs, and (iii) on occasion (but prior to 2003), Direct Price, which is commonly understood as the price charged by drug manufacturers to non-wholesaler customers for prescription drugs.  At all times relevant to this action, Defendants were aware of

30

Alabama Medicaid's drug reimbursement formulas and procedures for pharmacy-dispensed drugs.

109.    Medicare is a health insurance program created by the federal government for the elderly, disabled, and other eligible persons. Individuals become eligible for Medicare health insurance benefits when they turn 65 years of age or earlier if they are certified as disabled. There are two major components of the Medicare Program, Part A and Part B. Medicare Part B is an optional program that provides coverage for some healthcare services for Alabama's participating elderly, disabled and other eligible citizens not covered by Part A. Medicare Part B pays for a portion of the cost of prescription drugs, generally those drugs which are administered by a physician provider or used with certain medical equipment.

110.    For prescription drugs covered by Part B, Medicare pays eighty percent (80%) of the allowable amount under federal regulations. (Until recently, the allowable amount was 95% of the national AWP for the drug.) The remaining 20% is paid by the Medicare beneficiary as a co-payment. For Alabama Medicare beneficiaries who are also qualified to receive Medicaid benefits, Alabama Medicaid pays the 20% co-payment up to the amount Alabama Medicaid would have paid if it were the only payor. At all relevant times to this action, Defendants were aware of the Alabama Medicaid's drug reimbursement formulas and procedures for Medicare Part B drugs.

### The Defendants' Reporting of Inflated Pricing Information

111.    Defendants knowingly, willfully, wantonly, and/or intentionally provided or caused to be provided false and inflated AWP, WAC, and/or Direct Price information for their drugs to various nationally known drug industry reporting services, including First DataBank (a/k/a Blue Book), Medical Economics, Inc. (a/k/a Red Book), and Medispan. These reporting

31

services published the pricing information to various reimbursers, such as Alabama Medicaid, who have contracted to receive the information (either in electronic or hard copy form) as a basis to provide reimbursement to the medical or pharmacy providers who provide the drugs to patients.

112.    Alabama Medicaid purchased and utilized the Defendants' published AWP, WAC, and Direct Price information from First DataBank (Blue Book), and Medical Economics, Inc. (Red Book). The information from Blue Book was and is used by Alabama Medicaid with respect to reimbursement for pharmacy-dispensed drugs.    As a general matter, the information from Red Book was and is used with respect to reimbursement for Medicare Part B drug co-payments.    At all relevant times to this action, Alabama Medicaid relied upon the AWP, WAC, and/or Direct Price provided by Defendants to the industry reporting services in determining the amount Alabama Medicaid reimburses providers.

113.    Defendants knew that the false and deceptive inflation of AWP, WAC, and/or Direct Price for their drugs would cause Alabama Medicaid to pay excessive amounts for these drugs. Defendants' inflated AWPs, WACs, and Direct Prices greatly exceeded the actual prices at which they sold their drugs to retailers (physicians, hospitals, and pharmacies) and wholesalers.    Defendants' reported AWPs, WACs, and/or Direct Prices were false and misleading and bore no relation to any price, much less a wholesale or actual sales price.

114.    Defendants knowingly, willfully, wantonly, and/or intentionally concealed the true AWP, WAC, and/or Direct Price information for their respective drugs from Alabama Medicaid. Each Defendant knows its own AWP, WAC, and Direct Price which it reports to the industry reporting services for use by Medicare and the state Medicaid agencies.    Each Defendant also knows whether the prices it reports to the reporting services accurately and

32

truthfully represent the actual prices as reflected by market experience and conditions. Unless governmental or industry surveys, lawsuits, or criminal or regulatory investigations publicly reveal the true AWP, WAC, or Direct Price for a particular drug at issue, Alabama Medicaid, like other state Medicaid agencies, is not privy to the actual market prices which it can then compare against the reported prices. Defendants have concealed true market pricing information from the State for the purpose of avoiding detection of the fraudulent scheme described herein.

115.    Defendants used undisclosed discounts, rebates and other inducements which had the effect of lowering the actual wholesale or sales prices charged to their customers as compared to the reported prices. In addition, Defendants employed secret agreements to conceal the lowest prices charged for their pharmaceutical products. As a result of these concealed inducements, Defendants have prevented third parties, including Alabama Medicaid, from determining the true prices it charges its customers.

### Defendants' Marketing of the "Spread"

116.    Defendants refer to the difference between the reported AWP and WAC, on the one hand, and the actual price of a drug, on the other, as the "spread" or, alternatively, "return to practice" or "return on investment." Defendants knowingly and intentionally created a "spread" on their drugs and used the "spread" to increase their sales and market share of these drugs, thereby increasing their profits. Defendants induced physicians, pharmacies, and pharmacy chain stores to purchase their drugs, rather than competitors' drugs, by persuading them that the larger "spread" on Defendants' drugs would allow the physicians and pharmacies to receive more money, and make more of a profit, through reimbursement at the expense of Alabama Medicaid.

117.    Defendants manipulated and controlled the size of the "spread" on their drugs by both increasing their reported AWPs, WACs, and Direct Prices and decreasing their actual prices to wholesalers and providers over time.

118.    In addition to manipulating the reported AWP, WAC, and/or Direct Price, Defendants used free goods, educational grants and other incentives to induce providers to purchase their drugs, all of which lowered the actual prices of the Defendants' drugs, resulting in increased profits for providers, as well as increased market share and profits of the Defendants, at the expense of Alabama Medicaid.

119.    The unfair, fraudulent, wanton, and deceptive practices engaged in by the Defendants in creating and reporting, or causing to be reported, false and inflated AWP, WAC, and/or Direct Price information for their drugs, or otherwise concealing actual pricing information, and marketing the "spread" on their drugs as an inducement to providers to utilize Defendants' drugs, has resulted in the State paying millions of dollars in excess Medicaid payments, while at the same time enriching Defendants with excessive, unjust and illegal profits.

**Other Lawsuits, Settlements, Government Investigations, and Criminal Proceedings**

120.    The State's complaint was not drafted in a vacuum. Each family of Defendants in this case has been sued for the same or similar Medicaid drug pricing fraud scheme in one or more of at least seventeen other states.[5] A number of the Defendants have also been sued for related conduct in one or more of numerous pending federal actions.[6]

---

[5] Lawsuits have been filed by the States of Arizona, Arkansas, California, Connecticut, Florida, Kentucky, Massachusetts, Minnesota, Montana, Nevada, New Jersey, New York, North Carolina, Ohio, Pennsylvania, Texas, and West Virginia and by the City of New York.

[6] Most of the lawsuits that assert claims for violations of federal law have been consolidated for pretrial purposes in multi-district federal litigation in Boston, Massachusetts. However, no federal claims are being asserted in this case.

121.    Published opinions and other public record documents generated during the course of the parallel state and federal litigation reveal that these Defendants reported fraudulent AWPs or other pricing information for selected drugs that bore no relationship whatsoever to the price at which those drugs were actually being sold to pharmacies and providers. For example, a majority of the Defendants and drugs referenced above have been made the subject of an action in New York alleging a fraudulent AWP pricing scheme.[7]  In that suit, New York City (which pays 25% of Medicaid costs for its residents) sets forth for each of the manufacturers and drugs at issue the inflated AWP reported to industry reporting services by the Defendants and the estimated true AWP which should have been reported. Depending on the drug in question, New York City alleges that, in some instances, the reported price is over 8 times the true price. New York City's reimbursement methodology, similar to Alabama Medicaid's, is based upon AWP reported by the manufacturers to the same reporting services upon which Alabama Medicaid relies. Because the reported AWP's and, correspondingly, the true AWP's are national (not regional) in scope, New York City's experience likely parallels Alabama's and lends obvious support to the State's allegations herein. The other state lawsuits, dealing with many of the same defendants and drugs at issue in Alabama, also lend corroborative support.

122.    Federal criminal actions have been instituted against various of the named Defendants.[8]  As part of those criminal proceedings, a number of the drug companies named in this lawsuit pled guilty to and/or agreed to settle criminal charges of having engaged in unlawful marketing and sales practices with respect to certain of their prescription drugs reimbursed under

---

[7] *The City of New York v. Abbott Laboratories, Inc.*, 04-CV-06054, in the United States District Court for the Southern District of New York (August 4, 2004).

[8] The criminal actions include: *USA v. TAP Pharmaceutical Products, Inc.*, 1:01-cr-10354-WGY (D. Mass); *USA v. AstraZeneca Pharmaceuticals, LP*, 1:03-cr-00055 (D. Del.); and *USA v. Bayer Corp.*, 1:03-cr-10118-RGS (D. Mass.).

federal programs, such as Medicare, and state programs, such as Medicaid. These Defendants paid record fines and civil penalties for this admittedly wrongful conduct.

123.    The guilty pleas, settlements, and admissions of fault by the criminal defendants implicate some of the Defendants herein in what is becoming to be known as a far-reaching and widespread scheme in the pharmaceutical industry to unlawfully increase market share and profits for their products. For example, in early 2001, Bayer agreed to settle the federal criminal investigation into Bayer's marketing and sales practices with respect to KOaTE® and Kogenate®, and Bayer paid $14 million to the federal and state governments. The Government had alleged that Bayer set and reported AWPs for the drugs at levels far higher than the actual acquisition costs of the products. Then, in 2003, Bayer agreed to plead guilty to federal criminal charges and paid fines and civil penalties totaling over $257 million for, among other things, illegally relabeling its drugs Cipro® and Adalat CC® in order to circumvent the Medicaid Rebate Program, thus defrauding the state Medicaid programs of millions of dollars in rebate payments.

124.    In October 2001, Defendant TAP, in order to resolve federal criminal charges, agreed to plead guilty to federal criminal and civil fraud charges for, among other things, conspiring to violate the Prescription Drug Marketing Act ("PDMA") by providing free samples of Lupron® to medical providers "knowing and expecting" that these medical providers would charge patients for such free samples. TAP agreed to pay over $875 million in fines and civil penalties to the federal government and the fifty (50) states.

125.    In June 2003, certain of the AstraZeneca Defendants agreed to plead guilty to criminal charges similar to those brought against TAP. In particular, the AstraZeneca Defendants pled guilty to federal criminal and civil fraud charges for, among other things,

conspiring to violate the PDMA by providing free samples of Zoladex® to medical providers "knowing and expecting" that those medical providers would charge patients for such free samples and illegally bill those free samples to state Medicaid programs. The AstraZeneca Defendants were also charged with knowingly and willfully offering and paying illegal remuneration to physicians by marketing a "Return-to-Practice" program to induce orders to purchase Zoladex®. The Return-to-Practice program consisted of inflating the AWP used by Medicaid for reimbursement of the drug, deeply discounting the price paid by physicians for the drug, and marketing the spread between the AWP and the discounted price to physicians. The AWP was set at levels far higher than the majority of its physician customers actually paid for the drug. In resolution of these charges, the AstraZeneca Defendants paid almost $355 million in damages and fines to the federal and state governments.

126.    In April 2003, GlaxoSmithKline PLC agreed to resolve a federal criminal investigation and to pay fines and civil penalties to the federal and state governments totaling more than $87 million to resolve claims against the GSK Defendants similar to those made against the Bayer Defendants.

127.    In October 2002, Pfizer agreed to resolve a federal criminal investigation into its marketing and sales practices. Pfizer admitted providing unrestricted "educational grants" to customers designed to hide the true best price of Lipitor®. While this case does not involve any "best price" claims, the wrongdoing admitted by Pfizer that led to liability under federal law also provides evidence of liability under state law – i.e., evidence of Pfizer's participation in the unfair and deceptive scheme in this case, including, but not limited to, evidence that Pfizer provided improper incentives and inducements to encourage sales of its products at inflated prices.

128.    In 2004, Schering-Plough Corporation agreed to settle criminal and civil charges relating to the best price reporting of Claritin®. The Schering Plough Defendants paid $293 million to the federal and state governments to resolve its civil and administrative liabilities.

129.    While a portion of the federal settlement proceeds from the above-described cases has been returned to the states, including Alabama, the State has not been compensated fully for its losses from the wrongful conduct that these guilty pleas or civil settlements evidence.[9]

130.    Government investigations by Congress, the General Accounting Office ("GAO"), Health and Human Services, and the Department of Justice ("DOJ") have also revealed fraudulent drug pricing schemes by various Defendants. For example, according to Representative Pete Stark of the U.S. House Ways and Means Committee, Abbott has engaged in a price manipulation scheme through inflated representations regarding AWP and direct prices. Representative Stark has stated that: "Abbott has intentionally reported inflated prices and has engaged in other improper business practices in order to cause its customers to receive windfall profits from . . . Medicaid . . . for the express purpose of expanding sales and increasing market share . . . This was achieved by arranging financial benefits or inducements that influenced the decisions of health care providers submitting . . . Medicaid claims" The U.S. Department of Justice has documented at least 81 instances in which Abbott's reported AWPs were substantially higher than the actual wholesale prices paid by wholesalers. Indeed, the federal government's investigation revealed that Abbott created spreads of *more than 20,000 percent* through the reporting of false and misleading average wholesale prices.

131.    Generic or multi-source drug manufacturers are aware of the AWPs reported by their competitors and of the actual sales price of their generic competitors' products. Generic drug manufacturers manipulate their own AWPs in order to gain or maintain a competitive

---

[9] None of the settlements described herein operate as a bar to any of the claims made in this complaint.

advantage in the market for their generic products. The natural and expected result is that multi-source drugs have some of the highest spreads of any drugs, sometimes resulting in an AWP exceeding actual costs by over 50,000%. A few examples collected by the DOJ are set forth below:

| Defendant | Multi-source Drug | RedBook AWP | DOJ Determined Actual AWP | Percentage Spread |
|---|---|---|---|---|
| Baxter* | Dextrose | $ 928.51 | $ 2.25 | 41,167% |
| Baxter* | Sodium Chloride | $ 928.51 | $ 1.71 | 54,199% |
| Boehringer* | Leucovorin Calcium | $ 184.40 | $ 2.76 | 6,581% |
| B. Braun | Sodium Chloride | $ 11.33 | $ 1.49 | 660% |
| Bristol-Myers Group* | Etoposide (Vepesid) | $ 136.49 | $ 34.30 | 298% |
| Dey* | Albuterol Sulfate | $ 30.25 | $ 9.17 | 230% |
| Immunex* | Leucovorin Calcium | $ 137.94 | $ 14.58 | 846% |
| Pharmacia* | Etoposide | $ 157.65 | $ 9.47 | 1,565% |
| Sicor Group | Tobramycin Sulfate | $ 342.19 | $ 6.98 | 4,802% |
| Watson* | Vancomycin HCL | $ 70.00 | $ 3.84 | 1,567% |

* Defendants herein.

132.     Some of the conduct described herein goes back over 10 years prior to the filing of this complaint. As explained above, however, the nature and extent of the fraudulent scheme were not known to the State because information concerning the true prices which should have been reported to the reporting services was concealed and not publicly available. It has only been through recent regulatory investigations, criminal actions, and civil actions that the impact of the fraudulent scheme on the State has been indicated or revealed. Even today, the true market prices for many of the drugs in question for the entire time period at issue are not known by the State.

133.     Additionally, it would be impractical, if not impossible, to list in this Complaint, for the entire time period that the inflated pricing scheme has been in effect, the true market price as compared to the reported price for each drug in question. It is not unusual for a drug

manufacturer to report fluctuating prices for a particular drug on multiple occasions within a particular year, month, week, or even day. To display pricing reports for all of the Defendants and all of the drugs in question over a ten-year-plus period would be a massive undertaking, and limitations of time and space do not permit that information, even if it were available, to be set forth in this pleading.

134.    For purposes of specificity of pleading (particularly with respect to the fraud allegations), suffice it to say that Defendants are and have been on notice of the claims asserted herein as a result of the many investigations and actions undertaken around the country on this same subject. Indeed, each Defendant should know without further allegation from the State exactly how its reported prices compare to its true prices and whether it has engaged in an inflated pricing scheme regarding prescription drugs.

**CLAIMS**

**COUNT ONE – FRAUDULENT MISREPRESENTATION**

135.    The State hereby repeats, incorporates by reference and realleges each and every allegation set forth above in this Complaint.

136.    Defendants committed fraud against the State and its agency, Alabama Medicaid. Defendants reported or caused to be reported AWP, WAC, and Direct Price for their products on a periodic and continuing basis for publication and dissemination to state Medicaid agencies such as Alabama Medicaid. Defendants knew that the AWP, WAC, and Direct Price information which they provided and caused to be reported was false. Defendants misrepresented the pricing information with the intent of inducing Alabama Medicaid to rely on the false information in setting prescription drug reimbursement rates. Alabama Medicaid reasonably relied on the false pricing data in setting prescription drug reimbursement rates and

40

making payment based on said rates. Defendants' misrepresentations are continuing, as they regularly and periodically continue to issue false and inflated AWP, WAC, and Direct Price information for publication by the industry reporting services. As a result of Defendants' fraudulent conduct, the State has been damaged by paying grossly excessive amounts for Defendants' prescription drugs.

137.    By engaging in acts and practices described above, the Defendants have engaged and continue to engage in repeated fraudulent acts and practices in violation of Alabama common law.

138.    Defendants' conduct was and is knowing, intentional, gross, oppressive, malicious, wanton, and/or committed with the intention to cause injury.

### COUNT TWO– WANTONNESS

139.    The State hereby repeats, incorporates by reference and realleges each and every allegation set forth above in this Complaint.

140.    With reckless indifference to the consequences, Defendants consciously reported false and inflated pricing information, including AWP, WAC, and Direct Price, while knowing of the falsities and being conscious that, from reporting such false and inflated pricing information, injury would likely or probably result.

141.    Defendants' actions did, in fact, injure the State, and specifically Alabama Medicaid, by causing Alabama Medicaid to pay grossly excessive amounts for Defendants' prescription drugs.

142.    By engaging in such actions and practices, the Defendants have engaged and continue to engage in repeated wanton acts and practices in violation of Alabama common law.

143.    Defendants' conduct was and is knowing, intentional, gross, oppressive, malicious, fraudulent, and/or committed with the intention to cause injury.

## COUNT THREE – UNJUST ENRICHMENT

144.    The State hereby repeats, incorporates by reference and realleges each and every allegation set forth above in this Complaint.

145.    As a result of the false and misleading statements and representations regarding drug prices contained in each Defendant's reporting of AWP, WAC, and Direct Price, Alabama Medicaid has paid excessive amounts in connection with purchases or reimbursements of purchases of Defendants' prescription drugs.

146.    Defendants knew that medical providers, including pharmacies and physicians, who obtained Medicaid reimbursement for Defendants' drug products were not entitled to improperly inflated reimbursement rates that were based on Defendants' false AWPs, WACs, and Direct Prices.

147.    As a result of the excessive payments to providers by Alabama Medicaid of all or part of the "spread," Defendants obtained increased sales and market share for their products, and, therefore, increased profits, and were unjustly enriched at the expense of the State and Alabama Medicaid.

148.    Defendants knew they were not entitled to the profits that resulted from the sales obtained through the use of the spreads they created, and Defendants should be required to account for and make restitution to the State of all such amounts obtained through the use of such spreads.

42

## PRAYER FOR RELIEF

Wherefore, Plaintiff prays for relief as follows:

(1)    an order enjoining each and every Defendant from continuing the fraudulent, wanton, deceptive and/or unfair acts or practices complained of herein, and requiring corrective measures;

(2)    an award of compensatory damages to the State in such amount as is proved at trial;

(3)    an award of punitive damages;

(4)    an accounting of all profits or gains derived in whole or in part by each Defendant through the fraudulent, wanton, unfair and/or deceptive acts or practices complained of herein;

(5)    an order imposing a constructive trust on and/or requiring disgorgement by each Defendant of all profits and gains earned in whole or in part through the fraudulent, wanton, unfair and/or deceptive acts or practices complained of herein;

(6)    an award of costs and prejudgment interest; and

(7)    such other and further relief as the Court may deem appropriate and just.

## JURY DEMAND

Plaintiff hereby requests a trial by jury on all claims so triable.

43

Dated: January 26th 2005.


_____
TROY KING
ATTORNEY GENERAL


_____
Roger L. Bates (BAT006)
Deputy Attorney General
HAND ARENDALL, L.L.C.
1200 Park Place Tower
2001 Park Place North
Birmingham, AL 35203
(205) 324-4400
(205) 322-1163 (facsimile)

Caine O'Rear III (ORE003)
Deputy Attorney General
Windy C. Bitzer (BIT005)
HAND ARENDALL, L.L.C.
P. O. Box 123
Mobile, AL 36601
(251) 432-5511
(251) 694-6375 (facsimile)

44

Jere L. Beasley (BEA020)
Deputy Attorney General
W. Daniel "Dee" Miles, III (MIL060)
Clinton C. Carter (CAR112)
BEASLEY, ALLEN, CROW, METHVIN, PORTIS
  & MILES, P.C.
P. O. Box 4160
Montgomery, AL  36103-4160
(334) 269-2343
(334) 954-7555 (facsimile)

45